ACCEPTED
13-14-00623-CV
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
6/16/2015 2:52:27 PM
CECILE FOY GSANGER
CLERK

## NO. 13-14-00623-CV

IN THE COURT OF APPEALS
13TH DISTRICT OF TEXAS
CORPUS CHRISTI, TEXAS

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
6/16/2015 2:52:27 PM
CECILE FOY GSANGER
Clerk

**G.W. KOLSTAD AND WILLIAM FRASER,
APPELLANTS,**

**v.**

**MARY JUNE OWEN MERRELL,
APPELLEE**

On Appeal from the

156th Judicial District Court of Live Oak County, Texas

**CAUSE NO. L-13-0197-CV-B**

**BRIEF OF APPELLANTS- PLAINTIFFS,
G.W. KOLSTAD AND WILLIAM FRASER**

S. Tim Yusuf
State Bar No. 50511534
Law Offices of S. Tim Yusuf, PLLC
Pearland Town Center
11200 Broadway, Suite 2743
Pearland, Texas 77584
Telephone: 866-249-7633
Facsimile: 866-249-7635
tyusuf@yusuflegal.com

Attorney for
Appellants/Plaintiffs

## IDENTITY OF PARTIES & COUNSEL

Appellants' counsel certifies that the listed persons and entities, as described in TEX. R. APP. P. 38, have an interest in the outcome of this case:

**Appellants – Plaintiffs:**

G. W. Kolstad and William Fraser, as successor in interest to Ms. Doris Fraser, are residents of Montana and rightful owners of the mineral estate made the basis of the declaratory judgment.

**Counsel for Appellants – Plaintiffs:**

S. Tim Yusuf
State Bar No. 50511534
Law Offices of S. Tim Yusuf, PLLC
Pearland Town Center
11200 Broadway, Suite 2743
Pearland, Texas 77584
Telephone: 866-249-7633
Facsimile: 866-249-7635
tyusuf@yusuflegal.com

M. Ryan Kirby
State Bar Number: 24036915
KIRBY, MATHEWS & WALRATH, PLLC
Esperson Building
815 Walker St., Suite 240
Houston, TX 77002
Telephone: (713) 489-4620
Telecopier: (713) 489-4619

**Appellee – Defendant:**

Mary June Owen Merrill, the surviving spouse of Charles R. Merrell, is the lessee on the mineral lease made the basis of the declaratory judgment.

**Counsel for Appellee Mary June Owen Merrell**

Michael C. Sartori
502A Houston Street
P.O. Box 1222
George West, Texas 78022-1222
michael@msartori.com

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL ............................................................... 2

TABLE OF AUTHORITIES ............................................................................ 5

APPENDIX ............................................................................................... A1

STATEMENT OF THE CASE ........................................................................ 6

ISSUES PRESENTED FOR REVIEW…………………………………………...7

STATEMENT OF FACTS…………………………………………………...……8

STANDARD OF REVIEW……………………………………………….…...…10

SUMMARY OF THE ARGUMENT………………………………………...11

ARGUMENT……………………………………………………………………11

    I.      The property sought and granted by the prior Judgment was already severed from the mineral estate.

        a.  Appellee Merrell's claim under the five-year statute conveys title after the mineral estate was already severed.

        b.  Under the ten or twenty-five year statutes, Appellee Merrell lacked exclusivity because the record holder of title exercised dominion over the mineral estate.

    II.    Appellee's res judicata defense in 2015 is not supported by Appellee's record in 1993.

CONCLUSION AND PRAYER………………………………………….…16

CERTIFICATE OF COMPLIANCE………………………………….…...……17

CERTIFICATE OF SERVICE…………………………………………...…17

# TABLE OF AUTHORITIES

*Conley v. Comstock Oil & Gas, LP*,
356 S.W.3d 755, 769 (Tex. App. – Beaumont 2011, no pet.)…………………12

*Great Am Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*,
391 S.W.2d 41, 47 (Tex. 1965)………………………………………...............10

*Marino v. State Farm Fire & Cas. Ins. Co.*,
787 S.W.2d 948, 950 (Tex. 1990)…………………………………………..…14

*Rhodes v. Cahill,*
802 S.W.2d 643, 645 (Tex. 1990)…………………………………………..13

*Skiles v. Jack in the Box, Inc.*,
170 S.W.3d 173, 178 (Tex. App. – Dallas 2006, no pet)………………………10

*In re Staley,*
320 S.W.3d 490, 502 (Tex. App. – Dallas 2010, pet. denied)…………...……15

*Tran v. Macha,*
213 S.W.3d 913, 914-15 (Tex. 2006)………………………………………13

*Valence Operating Co. v. Dorsett*,
164 S.W.3d 656, 661 (Tex. 2005)…………………………………..………10

*Wilhoite v. Sims*,
401 S.W.3d 752, 758 (Tex.App. - Dallas 2013, no pet.)………………………13

# STATEMENT OF THE CASE

On October 28, 2013, Appellants (Plaintiffs) filed suit against Appellee (Defendant) to establish rights under a mineral lease (R.1-12) by means of a Suit to Quiet Title, Trespass to Try Title and the Declaratory Judgments Act. (R. 8-10) Appellee asserted that Appellants' claims are barred by res judicata because the prior judgment granted her adverse possession of both the mineral and surface rights to the property in question. (R. 42). Parties agreed to most facts. Appellee's asserted res judicata barred Appellants' claims. (R. 126) Appellants' analyzed why the 1993 judgment, as a matter of law, could not have granted the mineral rights along with the surface rights. (R. 343-345) Appellee's motion for summary judgment was granted on September 24, 2014. (R. 357). Appellants' filed their Notice of Appeal.

## ISSUES PRESENTED FOR REVIEW

Does the conveyance of mineral rights by record title owner negate the element of exclusivity prerequisite to a claim for adverse possession?

Does the conveyance of mineral rights by record title owner constitute the exercise dominion over property?

Does the execution of a mineral lease constitute the exercise of dominion?

Does ambiguity in a judgment preclude res judicata?

Does ambiguity in a judgment create a genuine issue of material fact precluding summary judgment based upon res judicata?

Does res judicata allow a prevailing party to define an ambiguous judgment to include relief contrary to substantive law?

Does prior litigation between parties serve as a bar to claims outside the scope of the prior judgment?

Can an incorrect finding of fact or conclusion of law result in a void judgment immune from subsequent challenges?

Can the improper application of res judicata deprive a party from an adequate remedy at law?

## STATEMENT OF FACTS

Parties agree to the following facts regarding the title history of the property in question:

By warranty deed dated November 1, 1917, the United States Installment Realty Company, as Grantors conveyed Tracts 191, 192, and 193 in Block 16 of the Live Bee Land Subdivision No. 4, and originally a part of the Festus Doyle Survey, No. 4, Live Oak County, to H. E. Hanson and reserved a one-half (1/2) mineral interest. Thereafter, H. E. Hanson passed away intestate in January, 1940. As such, his one-half (1/2) mineral interest devolved in accordance with the Texas laws concerning intestate distribution as follows: one-half of one-half (1/2 of 1/2) to Eli Ness Hanson, and one-third of one-half (1/3 of 1/2) to Annie H. Kolstad, Hannah H. Keeney, and Sophia R. Routier, each. Eli Ness Hanson passed away intestate on January 26, 1955, and her interested devolved in equal shares to Annie H. Kolstad, Hannah H. Keeney, and Sophia R. Routier. By Quit-Claim deed dated January 29, 1965, Sophia Routier, as Grantor, quit-claimed all her interest in Lots 191, 192, and 193 of Block 16 of the Live Bee Land Subdivision in the Festus Doyle Survey No. 4, to Hannah Keeney, as Grantee. By Warranty Deed dated June 10, 1970, recorded in Volume 227, Page 208 of the Deed Records, Hannah Keeney and Annie Kolstad, as Grantors, conveyed the surface only to Tracts 191, 192, and 193, Block 16,

8

Live Bee Land Subdivision No. 4, to Maurice M. Chapman, as Grantee, and specifically reserved all minerals. After this Warranty Deed in 1970, 100% of the surface was vested in Maurice M. Chapman, and a 2/3 of 1/2 mineral interest was vested in Hannah Keeney and a 1/3 of 1/2 mineral interest was vested in Annie Kolstad.

In January 1989, Charles R. and Margie L. Merrell, husband and wife, unlawfully entered, occupied and sought to adversely possess the subject property. (R. 235) In March 1989, Charles R. and Margie L. Merrell, husband and wife, filed *Charles R. Merrell, et al vs. Mrs. Henrietta Williman*, et al., Cause No. 6990-A in the 36th Judicial District Court of Live Oak County, Texas. (R. 218-234).

After being served with citation of suit, Appellants (Defendants) G.W. Kolstad and Ms. Doris Fraser predecessor in interest to Appellant William Fraser, answered in April 1989 (R. 265-279). In addition, to entering a general denial to the adverse possession, Kolstad and Fraser provided Merrell with evidence of Kolstad and Fraser's mineral interests on some of the property identified in Merrell's suit. Two years later, Kolstad and Fraser were served with an amended petition. Kolstad and Fraser reviewed the amended petition and found that Merrell had not changed a single word of the factual claims, property descriptions or causes of action and did not refute or reply to their claims in any way.

9

Kolstad and Fraser took no further action and Merrell adversely possessed the surface rights in May 1993 (R. 293-310). Years later, Kolstad and Fraser discovered that Mary June Merrell, had signe  a lease as Lessor and, granted, leased and let Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, Killam Oil Co, LTD, as Lessee.

After brief discussions among the relevant parties, Appellants Kolstad and Fraser file suit.

### STANDARD OF REVIEW

A summary judgment is reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). On appeal, evidence that favors the movant will not be "considered unless it is uncontroverted." *Great Am Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965). When the motion for summary judgment is based on several different grounds and the order granting the motion is silent as to the reason for granting the motion, the appellant must show that each independent grounds alleged is insufficient support summary judgment. *Skiles v. Jack in the Box, Inc.*, 170 S.W.3d 173, 178 (Tex. App. – Dallas 2006, no pet.)

## SUMMARY OF THE ARGUMENT

The 1993 judgment was factually and legally insufficient to have conveyed the mineral estate as Appellees assert based upon the agreed upon facts and relevant law. Appellee's interpretation of the scope of the previous judgment is incorrect or would result in a void judgment. As such, Appellants' claims should pierce the res judicata defense and be presented before the trier of fact.

## ARGUMENT

I. **The property sought and granted by the prior Judgment was already severed from the mineral estate.**

   a. **Appellee Merrell's claim under the five-year statute conveys title after the mineral estate was already severed.**

In making a claim under the five-year statute, Merrell specifically claimed adverse possession of the real property described and conveyed "under Deed dated October 31, 1975, and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County, Texas…" (R. 235 (Orig. Pet.)), (R. 255 (Am. Pet.)), (R. 305 (Judm.)).

Parties agree that Warranty Deed dated June 10, 1970, recorded in Volume 227, Page 208 of the Deed Records, in which Hannah Keeney and Annie Kolstad, as Grantors, conveyed the surface only to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, to Maurice M. Chapman, as Grantee, and specifically reserved all minerals. After this

11

Warranty Deed in 1970, 100% of the surface was vested in Maurice M. Chapman, and a 2/3 of 1/2 mineral interest was vested in Hannah Keeney and a 1/3 of 1/2 mineral interest was vested in Annie Kolstad.

In order for mineral rights to pass along with surface rights to adverse possessors, it must be prior to severance of the minerals from the surface estate. *Conley v. Comstock Oil & Gas, LP*, 356 S.W.3d 755, 769 (Tex. App. – Beaumont 2011, no pet.) When a mineral interest has been separated from the surface ownership, no interest in the minerals can be acquired; for the mineral owner has an estate that is distinct from the surface fee.

### b. Under the ten or twenty-five year statutes, Appellee Merrell lacked exclusivity because the record holder of title exercised dominion over the mineral estate.

Appellants' Kolstad and Fraser Original Answer asserted claims and defenses with particularity, "[defendants] are the owners of one-half (1/2) of the oil and gas mineral estate and ores underlying said Tracts 191, 192, 193…" (R. 269). Appellants also submitted a mineral lease executed by G.W. Kolstad in 1983. (R. 276-279)

Merrell's subsequent amended petition, findings of fact and judgment, however, failed to refute or address in any way, Appellants' claims. In fact, from the original petition in March 1989 (R. 218) until the final judgment in May 1993 (R. 310) - Merrell's factual allegations and

12

claims remained word for word identical. Merrell's judgment failed to explain or even address why Kolstad's 1983 lease ought not break the chain of Merrell's adverse possession.

"Adverse Possession," as defined in TEX. CIV. PRAC. & REM. CODE 16.021, "must be commenced and continued under a claim of right that is inconsistent with and hostile to the claim of another." The possession of the land cannot be shared with the record title owner or the public in general. *Tran v. Macha,* 213 S.W.3d 913, 914-15 (Tex. 2006); *see Rhodes v. Cahill,* 802 S.W.2d 643, 645 (Tex. 1990) ([adverse] possession must be of such character as to indicate *unmistakably* an assertion of a claim of exclusive ownership in the occupant (emphasis in original)). Appellee Merrell must show possession exclusive enough to exclude Kolstad's mineral lease. *Wilhoite v. Sims*, 401 S.W.3d 752, 758 (Tex.App. - Dallas 2013, no pet.)(denying adverse possession because the element of exclusive possession was unsatisfied).

## II. Appellee's res judicata defense in 2015 is not supported by Appellee's record in 1993.

A judgment is res judicata only with respect to facts and conditions that existed at the time of the judgment. Res judicata will not bar a later action if there had been a change in the material facts between the first judgment and the second suit. *Marino v. State Farm Fire & Cas. Ins. Co.,* 787 S.W.2d 948, 950 (Tex. 1990). The underlying record herein reveals a material change in Appellee's actions. If the underlying record (1989 – 1993) contained even one of the numerous arguments from Appellee's summary judgment, Appellants would have been on notice to directly attack the judgment. Comparing Appellee's original petition (R. 219- 237) with the amended petition (R. 239-257) filed (two years) after Appellants' answers – not a single word was changed. The reasonable conclusion is that Appellee had no need to respond to Appellants' defenses because Appellee's was unaffected by them – because, Appellee only sought to adversely possess the surface estate.

In 2015, Appellee argues that the adverse possession, (R. 132)

could have commenced at any time during the 82 years following November 1, 1917. The record in the prior case does not contain the exact date on which the adverse possession commenced. The date certain will be supplied as prior to November 1, 1917 will be presumed in order to support the

Whereas in 1989, Appellee swears:

> A. That on or about the the first day of January, 1989, Plaintiffs were in actual possession of the above-described property. On this date, Defendants unlawfully entered upon said lands and premises and withheld from Plaintiffs the possession thereof. Defendants continue to withhold the possession of the above described property.

Appellee makes the same statement two years later. (R. 254) This is clearly a material change in facts and representations between 1993 and 2015. Res judicata is a plea in avoidance. It does not deny the plaintiff's claims but rather alleges an independent reason why the plaintiff should not recover. *In re Staley*, 320 S.W.3d 490, 502 (Tex. App. – Dallas 2010, pet. denied). For the doctrine of res judicata to apply in a subsequent proceeding, the original judgment must not be void nor contain fundamental error. Appellee Merrell's claim under 1993 judgment includes a finding of fact that "*The persons holding the apparent record title to the Property*, or portions thereof, *have not exercised dominion over the property…* during the twenty-

five (25) years preceding the commencement of this action." (R. 306, emphasis added). This statement can only be correct if the judgment was limited to the surface estate. If Appellee Merrell's judgment is expanded to include the mineral estate, res judicata is still inapplicable.

## CONCLUSION AND PRAYER

Appellants' claims should not be barred by res judicata. Appellee's claims to the mineral rights are unsupported by the underlying record and untenable at law. WHEREFORE PREMISES CONSIDERED, Appellants pray that this Court grant the relief requested and allow the case to be remanded to the 156th District Court for actions consistent with the orders of this Court.

Respectfully submitted,

**LAW OFFICES OF S. TIM YUSUF, PLLC.**

By:_____
S. Tim Yusuf
State Bar No. 50511534
Pearland Town Center
11200 Broadway, Suite 2743
Pearland, Texas 77584
Telephone: 866-249-7633
Facsimile: 866-249-7635
tyusuf@yusuflegal.com

16

## CERTIFICATE OF COMPLIANCE

I certify that this document was produced on a computer using Microsoft Word 2011 for Mac and contains 2,611 words as determined by the computer software's word-count function and complies with TRAP 9.4(i)(3).

_____
S. Tim Yusuf

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 8th day of June 2015, a true and correct copy of the attached and foregoing Appellants' Brief was electronically filed with the Clerk of the Court for the 13th Circuit Court of Appeals, and a copy of the foregoing Appellants' Brief electronically served upon Counsel for Appellee

**Counsel for Appellee Mary June Owen Merrell**
Michael C. Sartori
502A Houston Street
P.O. Box 1222
George West, Texas 78022-1222
michael@msartori.com

_____
S. Tim Yusuf

NO. 13-14-00623-CV

IN THE COURT OF APPEALS
13TH DISTRICT OF TEXAS
CORPUS CHRISTI, TEXAS

**G.W. Kolstad and William Fraser,**
**Appellants,**

**v.**

**Mary June Owen Merrell,**
**Appellee**

## APPELLANTS' APPENDIX

Documents from
*Kolstad and Fraser v. Merrell,* Cause No. L-13-0197-CV-B
in the 156th Judicial District Court, Live Oak County, Texas

1. Order Granting Summary Judgment - September 24, 2014
   R. 357 ...................................................................................................... A003

2. Plaintiffs' Original Petition – October 28, 2013

   R. 5 ......................................................................................................... A004

3. Defendant's Original Answer – November 21, 2013

   R. 13 ........................................................................................................ A012

4. Defendant's 1st Am. Answer – July 14, 2014

   R. 41 ........................................................................................................ A040

5. Defendant's 2nd Am. Answer – July 17, 2014

   R. 53 ........................................................................................................ A052

Documents from
*Merrell & Merrell v. Williman, et* al, Cause No. 6990-A
in the 36th Judicial District Court, Live Oak County, Texas

6. Plaintiff's Original Petition for Adverse Possession – March 29, 1989
   R. 219 ...............................................................................................A125


7. Original Answer, Kolstad & Fraser – April 21, 1989
   R. 265 ...............................................................................................A144


8. Plaintiff's 1st Am. Petition – October 23, 1991
   R. 239 ...............................................................................................A156


9. Findings of Fact from Adverse Possession – May 12, 1993
   R. 281 ...............................................................................................A175


10. Judgment granting Adverse Possession – May 12, 1993
   R. 294 ...............................................................................................A187

Cause No. L-13-0197-CV-B

| | | |
|---|---|---|
| G. W. KOLSTAD and | § | IN THE DISTRICT COURT OF |
| WILLIAM FRASER, | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | LIVE OAK COUNTY, TEXAS |
| | § | |
| MARY JUNE OWEN MERRELL, | § | |
| Defendant | § | 156TH JUDICIAL DISTRICT |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Honorable Joel B. Johnson, Presiding Judge.

On the __24__ day of __Sept__, 2014, came to be considered Defendant's Motion

for Summary Judgment. The Court, having read and considered the arguments of Plaintiffs and

Defendant's counsel, is of the opinion that Defendant's Motion is well taken and should be

GRANTED on all grounds.

It is therefore ORDERED, ADJUDGED and DECREED that Defendant's Motion for

Summary Judgment is hereby GRANTED on all grounds and that all relief sought by Plaintiffs is

denied with prejudice.

THIS IS A FINAL JUDGMENT DISPOSING OF ALL PARTIES AND ALL CLAIMS AND

IS APPEALABLE.

SIGNED on this __24__ day of __Sept_____, 2014.

At __4:40__ FILED __P__ M
O'Clock
At George West, Texas

SEP 24 2014

MELANIE MATKIN
District Clerk, Live Oak County, Texas
By_____Deputy

_____
Honorable Judge Joel B. Johnson

No. L-13-0197-CV-B

| | | |
|---|---|---|
| G.W. KOLSTAD and | § | IN THE DISTRICT COURT OF |
| WILLIAM FRASER | § | |
| Plaintiffs | § | |
| | § | |
| | § | |
| V. | § | LIVE OAK COUNTY, TEXAS |
| | § | |
| MARY JUNE OWEN MERRELL | § | |
| Defendant | § | |
| | § | |
| | § | 156TH JUDICIAL DISTRICT |
| | § | |

ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, G.W. KOLSTAD and WILLIAM FRASER, Plaintiffs in the above

named and numbered suit and file their Original Petition and Requests for Disclosure

complaining of Defendant MARY JUNE OWEN MERRELL and for cause would show

unto the Court as follows:

I.
DISCOVERY CONTROL PLAN

1. Plaintiffs intend to conduct discovery under Level 2 of the Texas Rules of Civil

Procedure and affirmatively plead that this suit is not governed by the expedited-

actions process in TEX. R. CIV. P. 169.

II.
CLAIM FOR RELIEF

2. Pursuant to TEX. R. CIV. P. 47, Plaintiffs seek any and all monetary compensation

delivered to Defendant by virtue of that certain Oil, Gas and Mineral Lease dated

March 24, 2010, recorded in Volume 157, Page 487 of the Deed Record, from Mary

June Merrell, as Lessor, to Killam Oil Co, LTD, as Lessee, as it pertains to Tracts 191,

192, and 193, Block 16, Live Bee Land Subdivision No. 4.

FILED
At 1:30 O'Clock P M
At George West, Texas

OCT 28 2013

MELANIE MATKIN
District Clerk, Live Oak County, Texas
By /LeyAnne Johnson Deputy

1

A004

## III.
## PARTIES

3. Plaintiff, G. W. Kolstad is a resident of Montana who may be contacted by and through Counsel of Record.

4. Plaintiff William Fraser, successor in interest to Ms. Doris Fraser, is a resident of Montana who may be contacted by and through Counsel of Record.

5. Defendant Mary June Owen Merrill is the surviving spouse of Charles R. Merrell, and may be served with citation of suit at her place of residence 2411 Oak Brooke, Portland, Texas 78274.

## IV.
## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction because this suit seeks to establish title on real property.

7. Venue is proper in Live Oak County, Texas, pursuant to TEX. CIV. PRAC. & REM. CODE §§ 15.000 as this suit involves real property located in Live Oak County, Texas.

## V.
## FACTS

8. In Cause No. 6990-A, *Charles R. Merrell and wife, Margie L. Merrell v. Henrietta Willimann, et al.*, in the 36th Judicial District Court of Live Oak County, Texas, filed suit against Doris Fraser and G. W. Kolstead, successors in interest to Hannah Keeney and Annie Kolstad, for Trespass to Try Title and Adverse Possession as it relates to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, since October 31, 1975.

9. On May 12, 1993, the 36th Judicial District Court of Live Oak County, Texas, issued a "Statement of Facts and Judgment" in favor of Plaintiffs finding that actual, open,

2

peaceable notorious, exclusive, hostile and adverse possession of Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, had been had since October 31, 1975.

10. By Warranty Deed dated November 1, 1917, recorded in the Deed Records of Live Oak County, Texas, C. W. Reynolds, as Trustee and the United States Installment Realty Company, as Grantors, conveyed Tracts 191, 192, and 193 in Block 16 of the Live Bee Land Subdivision No. 4, and originally a part of the Festus Doyle Survey, No. 4, Live Oak County, Texas, to H. E. Hanson, as Grantee, and reserved a one-half (1/2) mineral interest. Thereafter, H. E. Hanson passed away intestate in January, 1940. As such, his one-half (1/2) mineral interest devolved in accordance with the Texas laws concerning intestate distribution as follows: one-half of one-half (1/2 of 1/2) to Eli Ness Hanson, and one-third of one-half (1/3 of 1/2) to Annie H. Kolstad, Hannah H. Keeney, and Sophia R. Routier, each. Eli Ness Hanson passed away intestate on January 26, 1955, and her interested devolved in equal shares to Annie H. Kolstad, Hannah H. Keeney, and Sophia R. Routier.

11. By Quit-Claim deed dated January 29, 1965, Sophia Routier, as Grantor, quit-claimed all her interest in Lots 191, 192, and 193 of Block 16 of the Live Bee Land Subdivision in the Festus Doyle Survey No. 4, to Hannah Keeney, as Grantee. By Warranty Deed dated June 10, 1970, recorded in Volume 227, Page 208 of the Deed Records, Hannah Keeney and Annie Kolstad, as Grantors, conveyed the surface only to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, to Maurice M. Chapman, as Grantee, and specifically reserved all minerals. After this Warranty Deed in 1970, 100% of the surface was vested in Maurice M. Chapman, and a 2/3 of 1/2 mineral interest was vested in Hannah Keeney and a 1/3 of 1/2 mineral interest was vested in Annie Kolstad.

3

A006

12. By Oil, Gas and Mineral Lease dated March 24, 2010, recorded in Volume 157, Page 487 of the Deed Record, Mary June Merrell, as Lessor, granted, leased and let Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, Killam Oil Co, LTD, as Lessee.

## VI.
## CAUSES OF ACTION
### SUIT TO QUIET TITLE

13. Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein.

14. Plaintiffs seek to have the title record corrected by the filing of a judgment in the deed records to show ownership of the mineral rights and/or mineral title to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4.

15. Plaintiffs have title to the mineral rights based upon the previously mentioned facts. To wit: By Warranty Deed dated June 10, 1970, recorded in Volume 227, Page 208 of the Deed Records, Hannah Keeney and Annie Kolstad, as Grantors, conveyed the surface only to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, to Maurice M. Chapman, as Grantee, and specifically reserved all minerals. After this Warranty Deed in 1970, 100% of the surface was vested in Maurice M. Chapman, and a 2/3 of 1/2 mineral interest was vested in Hannah Keeney and a 1/3 of 1/2 mineral interest was vested in Annie Kolstad.

16. When a mineral interest has been separated from the surface ownership, no interest in the minerals can be acquired; for the mineral owner has an estate that is distinct from the surface fee. As such, the Trespass to Try Title and Adverse Possession matter brought did not divest Mr. William Fraser (as successor in interest to Ms. Doris Fraser) and Mr. G. W. Kolstad of their mineral interest in Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4.

4

A007

## TRESPASS TO TRY TITLE

17. Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein.

18. Plaintiffs seek to recover the possession of mineral rights from that certain land unlawfully withheld from Defendants who currently maintain rights of immediate possession.

19. Plaintiffs can show title in the mineral rights to the disputed land emanating from a common source to which the Defendant claim. Specifically: by Warranty Deed dated June 10, 1970, recorded in Volume 227, Page 208 of the Deed Records, Hannah Keeney and Annie Kolstad, as Grantors, conveyed the surface only to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, to Maurice M. Chapman, as Grantee, and specifically reserved all minerals. After this Warranty Deed in 1970, 100% of the surface was vested in Maurice M. Chapman, and a 2/3 of 1/2 mineral interest was vested in Hannah Keeney and a 1/3 of 1/2 mineral interest was vested in Annie Kolstad.

20. As such, the previous litigation could not have divested Plaintiffs of their mineral interest in the land because the mineral interest has been separated from the surface ownership before the Defendants adversely possessed the subject land.

## DECLARATORY JUDGMENTS ACT

21. Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein.

22. Plaintiffs bring suit under the Declaratory Judgments Act (DJA) TEX. CIV. PRAC. & REM. CODE §§ 37.001, et seq. "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations" relating to the mineral rights associated with the subject land.

5

A008

23. Plaintiffs bring suit under the Declaratory Judgments Act (DJA) TEX. CIV. PRAC. & REM. CODE §§ 37.001, et seq. "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations" relating to the Oil, Gas and Mineral Lease dated March 24, 2010, recorded in Volume 157, Page 487 of the Deed Record, Mary June Merrell, as Lessor, granted, leased and let Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, Killam Oil Co, LTD, as Lessee.

24. Pursuant to TEX. CIV. PRAC. & REM. CODE §§ 37.004, et seq., Plaintiffs petition this Court for a declaration that Cause No. 6990-A, *Charles R. Merrell and wife, Margie L. Merrell v. Henrietta Willimann, et al.*, the Trespass to Try Title and Adverse Possession matter, did not divest Plaintiffs of their mineral interest in the real property described as Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4.

## VII.
## DAMAGES

25. Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein.

26. Plaintiffs herein seek damages relating to the Oil, Gas and Mineral Lease dated March 24, 2010, recorded in Volume 157, Page 487 of the Deed Record, Mary June Merrell, as Lessor, granted, leased and let Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, Killam Oil Co, LTD, as Lessee. To wit, any amounts payable to Defendant under said lease are properly owed to Plaintiffs.

6

A009

## VIII.
## ATTORNEYS' FEES

27. Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein.

28. As a result of Defendants' actions, Plaintiffs were forced to retain the Law Offices of S. Tim Yusuf, PLLC to file this action for declaratory relief and have agreed to pay the firm reasonable and necessary attorney's fees. An award of reasonable and necessary attorney's fees to the Plaintiffs would be equitable and just and therefore authorized by Section 37.009 of the Texas Civil Practice and Remedies Code.

## IX.
## REQUESTS FOR DISCLOSURE

29. Pursuant to TEX. R. CIV. P. 194.3(a), Defendants are requested to disclose, within 50 days of service of this request, the information and material described in TEX. R. CIV. P. 194.2(a) – (l).

7

A010

## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, and that this Court , and that upon final judgment, this Court award Plaintiffs all damages, attorneys fees, costs and all other relief; general or specific; at law or in equity; to which Plaintiffs may be entitled.

LAW OFFICES OF S. TIM YUSUF, PLLC.

By: _____

S. Tim Yusuf
State Bar No. 50511534
Pearland Town Center
11200 Broadway, Suite 2743
Pearland, Texas 77584
Telephone: 866-249-7633
Facsimile: 866-249-7635

KIRBY, MATHEWS & WALRATH, PLLC

By: _____

M. Ryan Kirby
State Bar Number: 24036915
Esperson Building
815 Walker St., Suite 240
Houston, TX 77002
Telephone: (713) 489-4620
Telecopier: (713) 489-4619

**ATTORNEYS FOR PLAINTIFFS**

8

12

Cause No. L-13-0197-CV-B

| | | |
|---|---|---|
| G. W. KOLSTAD and | § | IN THE DISTRICT COURT OF |
| WILLIAM FRASER, | § | |
| **Plaintiffs** | § | |
| | § | |
| v. | § | LIVE OAK COUNTY, TEXAS |
| | § | |
| MARY JUNE OWEN MERRELL, | § | |
| **Defendant** | § | 156TH JUDICIAL DISTRICT |

At 3:00 O'Clock FILED Pm At George West, Texas NOV 21 2013 MELANIE MATKIN District Clerk, Live Oak County, Texas By, Roxanne Johnson Deputy

## DEFENDANT'S ORIGINAL ANSWER

MARY JUNE OWEN MERRELL (social security number ending in 229) and (driver's license number ending in 443), Defendant in the above-entitled and numbered cause, makes, files and serves her Special Exceptions, Original Answer to Plaintiffs' Original Petition, Verified Denial, Affirmative Defenses, and Plea of "Not Guilty" to Plaintiffs' Original Petition and any petition filed thereafter, and respectfully shows the Court the following:

### I.

### *Discovery Level*

1. Discovery is intended to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

### II.

### *Special Exceptions*

2. Defendant, in addition to pleading the affirmative defense of *res judicata*, hereinafter, would specially except, as a predicate to the subsequent filing of a Rule 91a of the Texas Rules of Civil Procedure motion to dismiss, to Plaintiffs' pleadings as a whole in that said causes of action, if any

*Defendant's Original Answer*
*Page - 1 -*

 **SCANNED**

truly be asserted, are barred by the doctrine of *res judicata* as a matter of law. Defendant represents that previously, judgment was entered in a trespass to try title action styled *"Charles R. Merrell and wife, Margie L. Merrell, Plaintiffs, vs. Mrs. Henrietta Willimann, et al,"* in the 36th Judicial District Court of Live Oak County, Texas. The judgment of that suit, Cause No. 6990-A, signed and entered May 12, 1993, is recorded in Volume 42, Page 75, of the minutes of the District Court of Live Oak County, Texas. That judgment granted Plaintiff, Charles R. Merrell (Plaintiff Margie L. Merrell being deceased), all relief sought in such action and decreed that the ownership of the Property which is also the subject of this action, amongst others, was vested one hundred percent (100%) in Charles R. Merrell. (*See* Judgment marked Exhibit "A", attached hereto and incorporated herein for all purposes as if copied verbatim)(hereinafter the "Judgment"). The land described in Plaintiffs' Original Petition is carved out of the same land described in the Judgment. Two of the Defendants named in the Judgment are the same persons or privies to the same persons as the Plaintiffs in this suit. The Defendant in this suit is a successor to Charles R. Merrell, a Plaintiff in the earlier action. Defendant is the surviving spouse of Charles R. Merrell. Plaintiff G. W. Kolstad was a named Defendant in that earlier action, and was served, answered and noticed in said cause. Plaintiff William Fraser is the successor in interest to Doris Fraser, a named Defendant in that earlier action, who was served, answered and noticed in said cause. The Judgment remains in full force and has not been appealed, reversed, modified, or voided, and is a valid and final judgment. The Judgment is *res judicata* of the matters complained of by the Plaintiffs herein. Plaintiffs are estopped to seek recovery in this suit of the title to the property described therein, and the Judgment is expressly pleaded as a complete bar to the cause of action asserted by Plaintiffs. The facts set forth by Plaintiffs do not constitute a valid cause of action because the same are barred by the doctrine of *res*

*Defendant's Original Answer*
*Page - 2 -*

14

A013

*judicata.* Defendant requests that the court sustain this special exception and order Plaintiffs' pleadings dismissed.

3.     Defendant specially excepts to Section II., ¶2. of Plaintiffs' Original Petition in that it fails to set forth a cause of action sufficient to give Defendant fair notice of the jurisdictional amount claimed by Plaintiffs in this matter. Plaintiffs, allege unleased mineral ownership of 52.6 acres of land, and seek to recover all monies received by Defendant from a third party contract (Oil, Gas and Mineral Lease, dated March 24, 2010, from Mary June Merrell, as Lessor, and Killam Oil Co., as Lessee, covering 246.33 acres of land out of the Live Bee Land Subdivision No. 4, Live Oak County, Texas, and recorded in Vol. 157, Page 487 of the Official Public Records of Live Oak County, Texas, (hereinafter "the Lease"). The Lease covers 246.33 acres of land. Plaintiffs claim ownership of 55.04 acres of land. The Lease contains a warranty clause only for the benefit of the Lessee and the same is subject to a proportionate reduction clause. Plaintiffs fail to identify what, if any monies payable under the Lease are due Plaintiffs. Terms, conditions and royalties payable under the Lease are the subject to the Lease/contract between Defendant and a third party lessee. Plaintiffs have no contract with such third party lessee. Plaintiffs are not parties to the Lease, nor direct beneficiaries or third party beneficiaries, thereof. Plaintiffs' lack of specificity makes it impossible to know what monies, attributable to what payment obligation and to what acreage, Plaintiffs are seeking. Plaintiffs further specify such damages, as set forth in Article VII., ¶ 26., of Plaintiffs' Original Petition, to be "any amounts payable to Defendant under the Lease are properly owned by Plaintiffs." Plaintiffs have failed to allege any viable cause of action against Defendant for which damages may be sought against Defendant irrespective of the amount of such claimed. Plaintiffs have failed to allege any facts supporting a claim that they are parties to the "Lease"; that they are "third party

*Defendant's Original Answer*
*Page - 3 -*

15

A014

beneficiaries" to the Lease; nor that the parties to the Lease intended the Plaintiffs to be parties to or beneficiaries under the Lease. Plaintiffs have failed to allege any breach of the Lease by any party thereto. Defendant would point out that any deficiency of ownership by the Defendant that might be alleged having been excused by the "proportionate reduction" clause contained in the Lease. Plaintiffs have failed to assert any damages to Plaintiffs by Defendant by Defendant's entering into the Lease with a third party, which third party sought out and contracted with the Defendant and not Plaintiffs. Plaintiffs have failed to allege that the Lease upon which Plaintiffs base their claim has been breached by anyone owing a duty to Plaintiffs. Plaintiffs have failed to set forth the manner in which monies payable under the Lease to which Plaintiffs may have a claim are calculated. The facts set forth by Plaintiffs do not constitute a valid cause of action. It is impossible to determine the amount in controversy in this matter so as to establish that this Court has jurisdiction over this case and which amount the Plaintiffs have the burden of alleging and proving. Defendant requests that the court sustain this special exception and order Plaintiffs to set forth a short statement of the cause of action sufficient to give fair notice of the claim involved and the amount in controversy at issue, and that such amendment to their pleadings be made on or before thirty (30) days of the filing of this Original Answer, and that, if the Plaintiffs fail or refuse to do so, this action be dismissed.

4.     Defendant specially excepts to the allegations in Paragraph II and VII of Plaintiffs' Original Petition, on the ground that the pleading demonstrates that Plaintiffs are making a claim under a contract/Lease in which the Plaintiffs have no standing to bring. Standing is a party's justiciable interest in the suit and is a component of subject-matter jurisdiction. Plaintiffs, at best, are unleased mineral owners and not royalty owners, not being a party to any oil, gas and other mineral lease. Defendant is no a mineral owner, but his mineral interest was sold to a lessee with a possiblity of

A015

reverter. Defendant is now a royalty owner under an oil, gas and other mineral lease. The Defendant receives royalties by reason of a third party contract to which Plaintiffs are strangers, and as such, Plaintiffs have no cause of action against Defendant for such royalties. Plaintiffs are neither parties to the Lease nor third party beneficiaries of the Lease. The Lease indicates on its face that Plaintiffs lack standing to bring suit against Defendant for the acts and/or omissions complained of in Plaintiffs' Original Petition. Defendant requests that the court sustain this special exception and order Plaintiffs to set forth a short statement of the cause of action sufficient to give fair notice to Defendant that Plaintiffs having standing to bring this action, and that such amendment to their pleadings be made on or before thirty (30) days of the filing of this Original Answer, and that, if the Plaintiffs fail or refuse to do so, this action be dismissed.

5.      Defendant specially excepts to the allegations in Article VII, ¶28 on the ground that the pleading demonstrates that Plaintiffs are attempting to artfully plead a title dispute as a declaratory judgment action just to obtain attorney's fees when that claim is a trespass-to-try-title action. A trespass to try title lawsuit is an action to recover possession of land withheld from an owner with a right to immediate possession. The Declaratory Judgment Act, on the other hand, provides a method to seek a declaration of rights under certain instruments, and permits an award of attorney's fees subject to the trial court's discretion. The language in Texas Property Code §22.001 ("trespass to try title action is *the* method of determining title") is mandatory. Texas courts have held that if the determination only *prospectively* implicates title, then the dispute does not have to be brought as a trespass to try title action. Here the Plaintiffs are not asking for a prospective determination of title but one that goes backwards. The substance and not the form of the pleadings is used to determine whether an action is properly considered as a trespass or declaratory judgment action. Any

*Defendant's Original Answer*
*Page - 5 -*

17

suit involving a dispute over the title to land is an action in trespass to try title, whatever its form and regardless of the relief sought. Defendant requests that the court sustain this special exception and order Plaintiffs to strike Article VIII of Plaintiffs' Original Petition from said pleading on or before thirty (30) days of the filing of this Original Answer.

## III.

### *General Denial*

6.      Subject to the foregoing special exception, Defendant denies generally each and every allegation in Plaintiffs' Original Petition and demands strict proof thereof upon the trial of this case. Subject to such special exceptions, stipulations, affirmative defenses and admissions as may be hereafter made, the Defendant asserts a general denial, as authorized by Rule 92, <u>Texas Rules of Civil Procedure</u>, and requests that the Plaintiffs be required to prove by a preponderance of the evidence all of the charges and allegations made against the Defendant in Plaintiffs' Original Petition, as required by the <u>Texas Rules of Civil Procedure</u>, and the laws of the State of Texas.

7.      Pursuant to Rule 63, 69 and 98 of the <u>Texas Rules of Civil Procedure</u>, the Defendant reserves the right to amend and/or supplement her answer to further answer and specially except to Plaintiffs' allegations and claims.

## IV.

### *Verified Denial*

8.      Subject to and without waiving the foregoing Special Exceptions and General Denial, or in the alternative, but only to the extent necessary to protect her rights, Defendant specifically asserts, pursuant to Rule 93(4) of the <u>Texas Rules of Civil Procedure</u>, that there is a defect of parties as

A017

claimed and set forth by Plaintiffs.

## V.

### *Affirmative Defenses*

9.    Subject to and without waiving the foregoing Special Exceptions, General Denial and Verified Denial, Defendant asserts, pursuant to Rule 94 of the Texas Rules of Civil Procedure, the following affirmative defenses which, singly or in combination, bar Plaintiffs' right to recover, in whole or in part, the damages alleged in Plaintiff's Original Petition:

a.    Plaintiffs' claims are barred, in whole or in part, because Plaintiff lacks the requisite standing to bring this action. Plaintiffs are not parties to the Lease made the subject of Plaintiffs' suit. Plaintiffs are not third party beneficiaries to the Lease made the subject of this suit. Defendant owes no duty to Plaintiffs. Defendant has no contractual relationship with Plaintiffs. As pled by Plaintiffs there is no real controversy between Plaintiffs and Defendant which can be determined by this suit. Plaintiffs lack standing to sue over proceeds of the Lease, the Lease is a contract, Plaintiffs are not parties to the Lease, the Lease is a contract that is subject to its terms and conditions, the Lease clearly states that it covers 246.33 acres of land, and that the Lessor is to be paid under the Lease based upon that the terms and conditions of the Lease subject to a proportionate reduction clause. Assuming that Plaintiffs are owners of unleased minerals covered by the description in the Lease, Plaintiffs are still not parties to the Lease nor a third party beneficiaries to the Lease. They are and remain unlease mineral owners and their rights do not stem from the Lease but rather than from the alleged ownership in the minerals. If correct in their claim, Plaintiffs are entitled to their proportionate share of the proceeds derived by the working interest owner under the Lease less any

*Defendant's Original Answer*
*Page - 7 -*

A018

and all costs of production.

b. Defendant would further show that Plaintiffs' lawsuit is frivolous, groundless, unreasonable, and brought in bad faith. As a result of the frivolous lawsuit, Defendant has been forced to hire the undersigned attorneys to defend herself and has incurred and will incur reasonable and necessary attorneys' fees for the trial and any appeals of this case. Defendant is entitled to and hereby seek an award of all its reasonable attorneys' fees, as well as her costs incurred in defending this lawsuit.

c. Plaintiffs' claims and issues are barred, in whole or in part, by application of the doctrine of *res judicata* because a final judgment on the merits has been rendered in litigation involving the same parties or their privies, claims and issues, including trespass to try title. The claims and issues asserted by Plaintiffs could have been raised, in the earlier litigation and are now barred by *res judicata*. In determining whether a claim or cause of action not asserted in a prior action is considered to be one that should have been raised there, Texas follows the "transactional approach," which, generally stated, looks to whether the subsequent claim or cause of action arises out of the same subject matter and set of facts as the previous action and which, through the exercise of "diligence," could have been litigated in the previous suit. There has been no change in the nucleus of operative facts which existed at the time of the previous suit and at this time. A change of legal theories will not prevent the doctrine of *res judicata* from barring claims. The doctrine stands for the position that any cause of action which arises out of those same facts should be litigated in the same lawsuit. In other words, a final judgment in an action should bar subsequent suits based on the same "transaction," or series of connected "transactions," out of which the first

*Defendant's Original Answer*
*Page - 8 -*

20

action arose.

d.       Plaintiffs' claims and issues are barred, in whole or in part, by application of the doctrine of collateral estoppel because a final judgment on the merits has been rendered in litigation involving the same claims and issues, including trespass to try title. The claims and issues addressed by Plaintiffs could have been raised in the earlier litigation and are now barred by collateral estoppel.

e.       Plaintiffs' claims and issues are barred, in whole or in part, by application of the statute of limitations.

f.       Plaintiffs' claims and issues are barred, in whole or in part, by application of the Statute of Frauds.

## VI.

### *Plea of Not Guilty*

Pursuant to Rule 788 of the Texas Rules of Civil Procedure, Defendant pleads that she is "not guilty" of the injury complained of in the Plaintiffs' Original Petition filed against Defendant.

## VII.

### *Request For Disclosure*

10.       Pursuant to Rule 194 of the Texas Rules of Civil Procedure, you (Plaintiffs) are requested to disclose, within 30 days after service of this request, the information or material described in rule 194.2 of the Texas Rules of Civil Procedure. The originals or copies of documents and other tangible items requested must be produced for inspection and copying at the Law Office of Michael C. Sartori, 502A Houston Street, George West, Texas 78022, within 30 days after service of this

*Defendant's Original Answer*
*Page - 9 -*

request, together with a written response. Each written response must be preceded by the request to which it applies. No objection or assertion of work product privilege is permitted to a request under this rule. If you fail to comply with this request, the court may order sanctions against you in accordance with the Texas Rules of Civil Procedure. Your response must be signed.

WHEREFORE, Defendant requests judgment of the court as follows:

1. That Plaintiffs take nothing by their suit.

2. That Defendant have judgment over and against Plaintiffs to compensate her for reasonable attorney's fees.

3. That Defendant recover all costs, together with such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

MICHAEL C. SARTORI, Attorney for
Defendant
502A Houston Street
P. O. Box 1222
George West, Texas 78022
(361) 449-2691
(361) 449-2380 (FAX)
SBN# 17655500

*Defendant's Original Answer*
*Page - 10 -*

22

A021

<u>**VERIFICATION**</u>

STATE OF TEXAS            §

COUNTY OF San Patricio      §

ANGELINA A. MENDEZ
Notary Public
STATE OF TEXAS
My Comm. Exp. 05-06-2017

Before me, the undersigned Notary Public, on this day personally appeared **MARY JUNE OWEN MERRELL**, and after being duly sworn stated under oath that she is the Defendant in this cause; that she has read the above Defendant's Original Answer; and that every Verified Denial contained in the answer is within her personal knowledge and is true and correct.

_____
**MARY JUNE OWEN MERRELL**

SUBSCRIBED AND SWORN TO BEFORE ME on __11/20_____, 2013.

_____
Notary Public in and for the State of Texas

CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the <u>Texas Rules of Civil Procedure</u> on _November 21_, 2013.

_____
Michael C. Sartori
Attorney for Defendant

*Defendant's Original Answer*
*Page - 11 -*

23

A022

 

NO. <u>6990-A</u>

| | | |
|---|---|---|
| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

<u>JUDGMENT</u>

On <u>12th</u> day of <u>MAY</u>, 1993, this case came on for hearing. Plaintiffs appeared by and through their attorney of record, Michael C. Sartori, and announced ready for trial. Defendants, G. W. KOLSTAD and DORIS FRASER, having answered, did not appear. Those Defendants cited by publication appeared by and through their attorney ad litem, William L. Hardwick, and announced ready for trial.

The following Defendants, although duly cited to appear, did not appear and wholly made default:

Mrs. Henrietta Willimann; Fintan J. Willimann; Mrs. Fintan J. Willimann; Fred Anderson; Mrs. Fred Anderson; M. J. Couch; Mrs. M. J. Couch; S. L. McKay; Mrs. S. L. McKay; Joseph Vanderyacht; Mrs. Joseph Vanderyacht; Earl E. Vanderyacht; Mrs. Earl E. Vanderyacht; J. W. Hauser; Mrs. J. W. Hauser; H. S. Tallakson; Mrs. H. S. Tallakson; Herman S. Tallakson; Mrs. Hermann S. Tallakson; Joseph Reichert; Mrs. Joseph Reichert; W. E. Ruckmann; Pearl M. Ruckmann; J. B. Hazlitt; Mrs. J. B. Hazlitt; W. A. Felix; Mrs. W. A. Felix; H. H. Johnson; Mrs. H. H. Johnson; Ottilie M. Gensch; Mrs. Ottilie M. Gensch; Fred Stadelman; Mrs. Fred Stadelman; C. E. Crook; Mrs. C. E. Crook; Jeannie E. Scoby; E. B. Grabow; Mrs. E. B. Grabow; Albert James; Mrs. Albert James; Adolph Hanson; Mrs. Adolph Hanson; Norman M. Negaard; Mrs. Norman M. Negaard; Charles Burkhard; Mrs. Charles Burkhard; Herman Burkhard; Mrs. Herman Burkhard; L. W. Greer; Mrs. L. W. Greer; T. L. Thoreson; Mrs. T. L. Thoreson; Henry L. Thoreson; Mrs. Henry L. Thoreson; A. E. Gage; Mrs. A. E. Gage; Mrs. Nellie Cooley; R. E. Baum; Mrs. R. E. Baum; A. Wenger; Mrs. A. Wenger; Adolph Wenger; Mrs. Adolph Wenger; W. S. Duffy; Mrs. W. S. Duffy; John T. Strand; Mrs. John T. Strand; George H. McMurtie; Mrs. George H. McMurtie; Carl A. Jensen; Mrs. Carl A. Jensen; Marie Bertha Jensen; Leo M. Foley; Mrs. Leo M. Foley; Arthur H. Forsan; Mrs. Arthur H. Forsan; A. J. LeFebvre; Mrs. A.

42 PAGE 25

 

J. LeFebvre; Arthur C. Voss; Mrs. Arthur C. Voss; D. F. Wade; Mrs. D. F. Wade; J. V. McAfee; Mrs. J. V. McAfee; Helge S. Casperson; Lewis Mortenson; Mrs. Lewis Mortenson; Peter E. Parson; Mrs. Peter E. Parson; Rev. A. Richter; Mrs. A. Richter; Bernard Powers; Mrs. Bernard Powers; James B. Fitzgerald; Mrs. James B. Fitzgerald; W. D. Youngquist; Mrs. W. D. Youngquist; L. T. Bougie; Mrs. L. T. Bougie; Swan Ericson; Mrs. Swan Ericson; Hans H. Jaul; Mrs. Hans H. Jaul; David Henry; Mrs. David Henry; W. P. Spangenberg; Mrs. W. P. Spangenberg; W. F. Marquardt; Mrs. W. F. Marquardt; O. P. Kendel; Mrs. O. P. Kendel; Grover J. Krumsiek; Mrs. Grover J. Krumsiek; A. H. Hoyne; Mrs. A. H. Hoyne; Hulda Bergdahl; P. A. Bergdahl; Mrs. P. A. Bergdahl; Albert Pederson; Mrs. Albert Pederson; Jeannine Powell Corley; Charles D. Lovelace; Mrs. Charles D. Lovelace; Albert Pederson; Marie E. Mattison; V. H. Houston; Mrs. V. H. Houston; J. B. Martindale; Mrs. J. B. Martindale; R. N. Martindale; Mrs. R. N. Martindale. The unknown stockholders of The First State Bank of Le Sueur Center; The unknown stockholders of U. S. I. Realty Co.; The unknown stockholders of Mid-Frio Petroleum Co.; The unknown stockholders of George C. Vaughn & Sons, Inc.; The unknown stockholders of Martindale Mortgage Co.; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 and recorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward

2

Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward

3



Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16, 1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger,

4

A026



dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 and recorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas; The unknown claimants who may

5

42 PAGE 79

28

A027

claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920 and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of

6

A028



Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas.

The Court finds that the pleadings of the Plaintiffs and Defendants are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction over this cause of action and the parties. All persons entitled to citation were properly cited. A jury was waived, and all questions of fact and of law were submitted to the Court.

The Court, after hearing the evidence and arguments of counsel, finds that:

7

VOLUME 42 PAGE 81

A029

1. The Property which is the subject of this suit is situated in Live Oak County, Texas, and is described as follows:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts: with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri

8

31

A030

Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post

9

A031



for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172

10

33

A032




and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

(hereinafter referred to as the "Property").

2. The Plaintiff, Margie L. Merrell, is deceased. All references in this judgment to the Plaintiff is to CHARLES R. MERRELL.

3. As to Plaintiffs' claim of ownership the Court finds that:

11

A033

a. At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the Property owning and claiming the same in fee simple.

b. Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the Property, claiming under Deed dated October 31, 1975, and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County, Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on the Property as they became due, and before delinquency.

c. Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the Property for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of his possession.

d. Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held the Property under claim of right, in good faith and under duly recorded deed purporting to convey the Property.

e. Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. Plaintiff

12

35

A034



has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

f.     Plaintiff and Plaintiffs' predecessors in interest have openly exercised dominion over and asserted claim to the Property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action.  The persons holding the apparent record title to the Property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years  during the twenty-five (25) years preceding the commencement of this action.

4.     That the ownership of the Property which is the subject of Plaintiff's suit is vested one hundred percent (100%) in the Plaintiff.

IT IS THEREFORE ORDERED, DECREED AND ADJUDGED, that the Plaintiff shall have and recover from the Defendants, and shall hold in fee simple, the following described tracts and parcels of land:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts:  with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of

13

A035

Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page

14

37

A036

24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

15

38

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

16

A038




THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

together with all and singular the rights and appurtenances thereto.

All costs of court incurred are taxed against the party incurring same, for which execution may issue.

SIGNED AND ENTERED, this the _12th_ day of _MAY_, 1993.

_____
JUDGE PRESIDING
RONALD M. YEAGER

APPROVED AS TO FORM:

_____
Michael C. Sartori, Attorney for Plaintiff

_____
William L. Hardwick, Attorney ad Litem for Defendants served by publication.

FILED
At _10:50_ O'Clock _a_ M
MAY 1 2 1993
ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _____ Deputy

17

40

A039

Cause No. L-13-0197-CV-B

| | | |
|---|---|---|
| G. W. KOLSTAD and | § | IN THE DISTRICT COURT OF |
| WILLIAM FRASER, | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | LIVE OAK COUNTY, TEXAS |
| | § | |
| MARY JUNE OWEN MERRELL, | § | |
| Defendant | § | 156TH JUDICIAL DISTRICT |

## DEFENDANT'S FIRST AMENDED ORIGINAL ANSWER

MARY JUNE OWEN MERRELL (social security number ending in 229) and (driver's license number ending in 443), Defendant in the above-entitled and numbered cause, makes, files and serves her Special Exceptions, First Amended Original Answer to Plaintiffs' Original Petition, Verified Denial, Affirmative Defenses, and Plea of "Not Guilty" to Plaintiffs' Original Petition and any petition filed thereafter, and respectfully shows the Court the following:

### I.

### *Discovery Level*

1.    Discovery is intended to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

### II.

### *Special Exceptions*

2.    Defendant, in addition to pleading the affirmative defense of *res judicata*, hereinafter, would specially except, as a predicate to the subsequent filing of a Texas Rules of Civil Procedure Rule 166a motion for summary judgment, to Plaintiffs' pleadings as a whole in that said causes of action,

*Defendant's First Amended Answer*
*Page - 1 -*

At __1.05__ FILED O'Clock ____ P M
At George West, Texas

JUL 1 4 2014

MELANIE MATKIN
District Clerk, Live Oak County, Texas
By__Roxanne Johnson__ Deputy
41

A040

if any truly be asserted, are barred by the doctrine of *res judicata* as a matter of law. *Res judicata* requires proof of the following three elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action on the same claims as were raised or could have been raised in the first action. The above listed *res judicata* elements exist in the case before the bar. The first element is met by the Final Judgment, as supported by a Statement of Facts on file in this case, both of which having been signed and entered May 12, 1993, a trespass to try title action styled *"Cause No. 6990-A, Charles R. Merrell and wife, Margie L. Merrell, Plaintiffs, vs. Mrs. Henrietta Willimann, et al,"* was filed in the 36th Judicial District Court of Live Oak County, Texas and recorded in Volume 42, Page 75, of the minutes of the District Court of Live Oak County, Texas. (The judgment in the prior case was based upon Plaintiff's First Amended Original Petition, a copy of the same being marked as Exhibit "A", attached hereto and incorporated herein for all purposes as if copied verbatim; a copy of the final, and appealable, judgment rendered in that suit being marked as Exhibit "B", attached hereto and incorporated herein for all purposes as if copied verbatim (hereinafter the "Judgment"); and Statement of Facts marked Exhibit "C" attached hereto and incorporated herein for all purposes as if copied verbatim (hereinafter "Statement of Facts"). The Judgment granted Plaintiff, Charles R. Merrell all relief sought in such action and decreed that the ownership of the Property which is also the subject of this action, amongst others, was vested one hundred percent (100%) in Charles R. Merrell. The land described in the petition in the earlier action was a tract of land out of which the Property in this case was carved. The second element of *res judicata* is met in that the Plaintiffs in this case, or their privies were Defendants in the earlier case. The Defendant in this case is the successor to Charles R. Merrell, the Plaintiff in the earlier action. Plaintiff G. W. Kolstad was a

*Defendant's First Amended Answer*
*Page - 2 -*

42

named Defendant in that earlier action, and was served, and answered and noticed in said cause. Plaintiff William Fraser is the successor in interest to Doris Fraser, a named Defendant in that earlier action, who was served, and answered in said cause. The Defendants G. W. Kolstad and Doris Fraser in the earlier case filed a joint answer and in addition to a general denial raised the issue of mineral ownership, and claimed that they owned collectively one-half (½) the minerals under the minerals which are the subject of this suit, a copy of said joint answer is marked Exhibit "D" attached hereto and incorporated herein for all purposes as if copied verbatim (hereinafter "Answer"). The Judgment remains in full force and has not been appealed, reversed, modified, or voided, and is a valid and final judgment. The Judgment is *res judicata* of the matters complained of by the Plaintiffs herein. Plaintiffs are estopped to seek recovery in this suit of the title to the property described therein, and the Judgment is expressly pleaded as a complete bar to the causes of action asserted by Plaintiffs. Defendant requests that the court sustain this special exception and order Plaintiff to replead the petition within thirty days of the date of the Court's Order in accordance with Texas law and this Court's ruling on this special exception.

3.      Defendant, in addition to pleading the affirmative defense of *collateral estoppel*, hereinafter, would specially except, as a predicate to the subsequent filing of a <u>Texas Rules of Civil Procedure</u> Rule 166a motion for summary judgment, to Plaintiffs' pleadings as a whole in that said causes of action, if any truly be asserted, are barred by the doctrine of *collateral estoppel*, issue preclusion, as a matter of law. The party seeking to assert the bar of collateral estoppel must establish that 1) the facts sought to be litigated in the second suit (trespass to try title, quiet title) were fully and fairly litigated in the first action, an issue was "actually litigated" when it was properly raised, by the pleadings or otherwise, and it was submitted for determination, and determined (*See* Petition,

*Defendant's First Amended Answer*
*Page - 3 -*

Answer, Judgment and Statement of Facts); 2) those facts were essential to the first judgment, the fact issues litigated in first action were the essential elements necessary to prevail under trespass to try tile, including all elements necessary to prove and/or defend title under the 5, 10 and 25 year adverse possession statutes of limitation, 10, and 25 year statutes, and which represented the factual determinations necessary to form a basis of the judgement; and 3) the parties in the present case were cast as adversaries in that first suit. In this case the Plaintiffs are identical to Defendants in the prior case or priviy to such Defendants. The Defendant in this case is priviy to the Plaintiff in the prior case.

4.     Defendant specially excepts to Section II., ¶2. of Plaintiffs' Original Petition in that it fails to set forth a cause of action sufficient to give Defendant fair notice of the jurisdictional amount claimed by Plaintiffs in this matter. Plaintiffs, allege unleased mineral ownership of 52.6 acres of land, and seek to recover all monies received by Defendant from a third party contract (Oil, Gas and Mineral Lease, dated March 24, 2010, from Mary June Merrell, as Lessor, and Killam Oil Co., as Lessee, covering 246.33 acres of land out of the Live Bee Land Subdivision No. 4, Live Oak County, Texas, and recorded in Vol. 157, Page 487 of the Official Public Records of Live Oak County, Texas, (marked as Exhibit "C" attached hereto and incoporated herein for all purposes as if copied verbatim)(hereinafter "the Lease"). The Lease covers 246.33 acres of land. Plaintiffs claim ownership of an interest in 55.04 acres of land. The Lease contains a warranty clause only for the benefit of the Lessee and the same is subject to a proportionate reduction clause. Plaintiffs fail to identify what, if any monies payable under the Lease are due Plaintiffs. Terms, conditions and royalties payable under the Lease are the subject to the Lease/contract between Defendant and a third party lessee. Plaintiffs have no contract with such third party lessee. Plaintiffs are not parties to the

*Defendant's First Amended Answer*
*Page - 4 -*

44

A043

Lease, nor direct beneficiaries or third party beneficiaries, thereof. Plaintiffs' lack of specificity makes it impossible to know what monies, attributable to what payment obligation and to what acreage, Plaintiffs are seeking. Plaintiffs further specify such damages, as set forth in Article VII., ¶ 26., of Plaintiffs' Original Petition, to be "any amounts payable to Defendant under the Lease are properly owned by Plaintiffs." Plaintiffs have failed to allege any viable cause of action against Defendant for which damages may be sought against Defendant irrespective of the amount of such claimed. Plaintiffs have failed to allege any facts supporting a claim that they are parties to the "Lease"; that they are "third party beneficiaries" to the Lease; nor that the parties to the Lease intended the Plaintiffs to be parties to or beneficiaries under the Lease. Plaintiffs have failed to allege any breach of the Lease by any party thereto. Defendant would point out that any deficiency of ownership by the Defendant that might be alleged having been excused by the "proportionate reduction" clause contained in the Lease. Plaintiffs have failed to assert any damages to Plaintiffs by Defendant by Defendant's entering into the Lease with a third party, which third party sought out and contracted with the Defendant and not Plaintiffs. Plaintiffs have failed to allege that the Lease upon which Plaintiffs base their claim has been breached by anyone owing a duty to Plaintiffs. Plaintiffs have failed to set forth the manner in which monies payable under the Lease to which Plaintiffs may have a claim are calculated. The facts set forth by Plaintiffs do not constitute a valid cause of action. It is impossible to determine the amount in controversy in this matter so as to establish that this Court has jurisdiction over this case and which amount the Plaintiffs have the burden of alleging and proving. Defendant requests that the court sustain this special exception and order Plaintiffs to set forth a short statement of the cause of action sufficient to give fair notice of the claim involved and the amount in controversy at issue, and that such amendment to their

*Defendant's First Amended Answer*
*Page - 5 -*

pleadings be made on or before thirty (30) days of the filing of this Original Answer, and that, if the Plaintiffs fail or refuse to do so, this action be dismissed.

5.      Defendant specially excepts to the allegations in Paragraph II and VII of Plaintiffs' Original Petition, on the ground that the pleading demonstrates that Plaintiffs are making a claim under a contract/Lease in which the Plaintiffs have no standing to bring.  Standing is a party's justiciable interest in the suit and is a component of subject-matter jurisdiction.  Plaintiffs, at best, are unleased mineral owners and not royalty owners, not being a party to any oil, gas and other mineral lease. Defendant is no a mineral owner, but his mineral interest was sold to a lessee with a possiblity of reverter.  Defendant is now a royalty owner under an oil, gas and other mineral lease.  The Defendant receives royalties by reason of a third party contract to which Plaintiffs are strangers, and as such, Plaintiffs have no cause of action against Defendant for such royalties.  Plaintiffs are neither parties to the Lease nor third party beneficiaries of the Lease.  The Lease indicates on its face that Plaintiffs lack standing to bring suit against Defendant for the acts and/or omissions complained of in Plaintiffs' Original Petition.  Defendant requests that the court sustain this special exception and order Plaintiffs to set forth a short statement of the cause of action sufficient to give fair notice to Defendant that Plaintiffs having standing to bring this action, and that such amendment to their pleadings be made on or before thirty (30) days of the filing of this Original Answer, and that, if the Plaintiffs fail or refuse to do so, this action be dismissed.

6.      Defendant specially excepts to the allegations in Article VII, ¶28 on the ground that the pleading demonstrates that Plaintiffs are attempting to artfully plead a title dispute as a declaratory judgment action just to obtain attorney's fees when that claim is a trespass-to-try-title action.  A

trespass to try title lawsuit is an action to recover possession of land withheld from an owner with a right to immediate possession. The Declaratory Judgment Act, on the other hand, provides a method to seek a declaration of rights under certain instruments, and permits an award of attorney's fees subject to the trial court's discretion. The language in Texas Property Code §22.001 ("trespass to try title action is *the* method of determining title") is mandatory. Texas courts have held that if the determination only *prospectively* implicates title, then the dispute does not have to be brought as a trespass to try title action. Here the Plaintiffs are not asking for a prospective determination of title but one that goes backwards. The substance and not the form of the pleadings is used to determine whether an action is properly considered as a trespass or declaratory judgment action. Any suit involving a dispute over the title to land is an action in trespass to try title, whatever its form and regardless of the relief sought. Defendant requests that the court sustain this special exception and order Plaintiffs to strike Article VIII of Plaintiffs' Original Petition from said pleading on or before thirty (30) days of the filing of this Original Answer.

### III.

### *General Denial*

7.     Subject to the foregoing special exception, Defendant denies generally each and every allegation in Plaintiffs' Original Petition and demands strict proof thereof upon the trial of this case. Subject to such special exceptions, stipulations, affirmative defenses and admissions as may be hereafter made, the Defendant asserts a general denial, as authorized by Rule 92, Texas Rules of Civil Procedure, and requests that the Plaintiffs be required to prove by a preponderance of the evidence all of the charges and allegations made against the Defendant in Plaintiffs' Original

*Defendant's First Amended Answer*
*Page - 7 -*

Petition, as required by the Texas Rules of Civil Procedure, and the laws of the State of Texas.

8. Pursuant to Rule 63, 69 and 98 of the Texas Rules of Civil Procedure, the Defendant reserves the right to amend and/or supplement her answer to further answer and specially except to Plaintiffs' allegations and claims.

## IV.

### *Verified Denial*

9. Subject to and without waiving the foregoing Special Exceptions and General Denial, or in the alternative, but only to the extent necessary to protect her rights, Defendant specifically asserts, pursuant to Rule 93(4) of the Texas Rules of Civil Procedure, that there is a defect of parties as claimed and set forth by Plaintiffs.

## V.

### *Affirmative Defenses*

10. Subject to and without waiving the foregoing Special Exceptions, General Denial and Verified Denial, Defendant asserts, pursuant to Rule 94 of the Texas Rules of Civil Procedure, the following affirmative defenses which, singly or in combination, bar Plaintiffs' right to recover, in whole or in part, the damages alleged in Plaintiff's Original Petition:

a. Plaintiffs' claims are barred, in whole or in part, because Plaintiff lacks the requisite standing to bring this action. Plaintiffs are not parties to the Lease made the subject of Plaintiffs' suit. Plaintiffs are not third party beneficiaries to the Lease made the subject of this suit. Defendant owes no duty to Plaintiffs. Defendant has no contractual relationship with Plaintiffs. As pled by

*Defendant's First Amended Answer*
*Page - 8 -*

48

A047

Plaintiffs there is no real controversy between Plaintiffs and Defendant which can be determined by this suit. Plaintiffs lack standing to sue over proceeds of the Lease, the Lease is a contract, Plaintiffs are not parties to the Lease, the Lease is a contract that is subject to its terms and conditions, the Lease clearly states that it covers 246.33 acres of land, and that the Lessor is to be paid under the Lease based upon that the terms and conditions of the Lease subject to a proportionate reduction clause. Assuming that Plaintiffs are owners of unleased minerals covered by the description in the Lease, Plaintiffs are still not parties to the Lease nor a third party beneficiaries to the Lease. They are and remain unlease mineral owners and their rights do not stem from the Lease but rather than from the alleged ownership in the minerals. If correct in their claim, Plaintiffs are entitled to their proportionate share of the proceeds derived by the working interest owner under the Lease less any and all costs of production.

b.      Defendant would further show that Plaintiff's' lawsuit is frivolous, groundless, unreasonable, and brought in bad faith. As a result of the frivolous lawsuit, Defendant has been forced to hire the undersigned attorneys to defend herself and has incurred and will incur reasonable and necessary attorneys' fees for the trial and any appeals of this case. Defendant is entitled to and hereby seek an award of all its reasonable attorneys' fees, as well as her costs incurred in defending this lawsuit.

c.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the doctrine of *res judicata* because a final judgment on the merits has been rendered in litigation involving the same property, parties or their privies, claims and issues, including trespass to try title. The claims and issues asserted by Plaintiffs in this cause could have been raised, and ***were raised***,

*Defendant's First Amended Answer*
*Page - 9 -*

49

A048

in the earlier litigation and are now barred by *res judicata*. There has been no change in the nucleus of operative facts which existed at the time of the previous suit and at this time. A change of legal theories will not prevent the doctrine of *res judicata* from barring claims. The doctrine stands for the position that any cause of action which arises out of those same facts should be litigated in the same lawsuit. In other words, a final judgment in an action should bar subsequent suits based on the same "transaction," or series of connected "transactions," out of which the first action arose.

d.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the doctrine of *collateral estoppel* because a final judgment on the merits has been rendered in litigation involving the same claims and issues, including trespass to try title. The claims and issues addressed by Plaintiffs could have been raised in the earlier litigation and are now barred by *collateral estoppel*.

e.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the statute of limitations.

f.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the Statute of Frauds.

g.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the affirmative defense of laches.

## VI.

### *Plea of Not Guilty*

Pursuant to Rule 788 of the Texas Rules of Civil Procedure, Defendant pleads that she is "not guilty" of the injury complained of in the Plaintiffs' Original Petition filed against Defendant.

*Defendant's First Amended Answer*
*Page - 10 -*

WHEREFORE, Defendant requests judgment of the court as follows:

1.      That Plaintiffs take nothing by their suit.

2.      That Defendant have judgment over and against Plaintiffs to compensate her for reasonable attorney's fees.

3.      That Defendant recover all costs, together with such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

MICHAEL C. SARTORI, Attorney for Defendant
502A Houston Street
P. O. Box 1222
George West, Texas 78022
(361) 449-2691
(361) 449-2380 (FAX)
SBN# 17655500
Email: michael@msartori.com

*Defendant's First Amended Answer*
*Page - 11 -*

51

A050

<u>VERIFICATION</u>

STATE OF TEXAS      §

COUNTY OF *San Patricio*

Before me, the undersigned Notary Public, on this day personally appeared **MARY JUNE OWEN MERRELL**, and after being duly sworn stated under oath that she is the Defendant in this cause; that she has read the above Defendant's Original Answer; and that every Verified Denial contained in the answer is within her personal knowledge and is true and correct.

*Mary June Owen Merrell*
**MARY JUNE OWEN MERRELL**

SUBSCRIBED AND SWORN TO BEFORE ME on *July 11*_____, 2014.

STEPHANIE TURANY
Notary Public
STATE OF TEXAS
My Comm. Exp. 08-03-2016

*Stephanie Turany*
Notary Public in and for the State of Texas

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the <u>Texas Rules of Civil Procedure</u> on *July 14*_____, 2014.

Michael C. Sartori
Attorney for Defendant

*Defendant's First Amended Answer*
*Page - 12 -*

Cause No. L-13-0197-CV-B

| G. W. KOLSTAD and | § | IN THE DISTRICT COURT OF |
|---|---|---|
| WILLIAM FRASER, | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | LIVE OAK COUNTY, TEXAS |
| | § | |
| MARY JUNE OWEN MERRELL | § | |
| Defendant | § | 156TH JUDICIAL DISTRICT |

FILED
At 3:25 3'Clock P M
At Geo§je We st, Texas

JUL 1 7 2014

MELSNIE MATKIN
District Clerk, Isve 9ak County, Texas
By_Lorann Johnson_Deputy

## DEFENDANT'S SECOND AMENDED ORIGINAL ANSWER

MARY JUNE OWEN MERRELL (social security number ending in 229) and (driver's license number ending in 443), Defendant in the above-entitled and numbered cause, makes, files and serves her Special Exceptions, Second Amended Original Answer to Plaintiffs' Original Petition, Verified Denial, Affirmative Defenses, and Plea of "Not Guilty" to Plaintiffs' Original Petition and any petition filed thereafter, and respectfully shows the Court the following:

### I.

### *Discovery Level*

1.    Discovery is intended to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

### II.

### *Special Exceptions*

2.    Defendant, in addition to pleading the affirmative defense of *res judicata*, hereinafter, would specially except, as a predicate to the subsequent filing of a Texas Rules of Civil Procedure Rule 166a motion for summary judgment, to Plaintiffs' pleadings as a whole in that said causes of action,

*Defendant's Second Amended Answer*
*Page - 1 -*

53

A052

if any truly be asserted, are barred by the doctrine of *res judicata* as a matter of law. *Res judicata* requires proof of the following three elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action on the same claims as were raised or could have been raised in the first action. The above listed *res judicata* elements exist in the case before the bar. The first element is met by the Final Judgment, as supported by a Statement of Facts on file in this case, both of which having been signed and entered May 12, 1993, a trespass to try title action styled *"Cause No. 6990-A, Charles R. Merrell and wife, Margie L. Merrell, Plaintiffs, vs. Mrs. Henrietta Willimann, et al,"* was filed in the 36th Judicial District Court of Live Oak County, Texas and recorded in Volume 42, Page 75, of the minutes of the District Court of Live Oak County, Texas. (The judgment in the prior case was based upon Plaintiff's First Amended Original Petition, a copy of the same being marked as Exhibit "A", attached hereto and incorporated herein for all purposes as if copied verbatim; a copy of the final, and appealable, judgment rendered in that suit being marked as Exhibit "B", attached hereto and incorporated herein for all purposes as if copied verbatim (hereinafter the "Judgment"); and Statement of Facts marked Exhibit "C" attached hereto and incorporated herein for all purposes as if copied verbatim (hereinafter "Statement of Facts"). The Judgment granted Plaintiff, Charles R. Merrell all relief sought in such action and decreed that the ownership of the Property which is also the subject of this action, amongst others, was vested one hundred percent (100%) in Charles R. Merrell. The land described in the petition in the earlier action was a tract of land out of which the Property in this case was carved. The second element of *res judicata* is met in that the Plaintiffs in this case, or their privies were Defendants in the earlier case. The Defendant in this case is the successor to Charles R. Merrell, the Plaintiff in the earlier action. Plaintiff G. W. Kolstad was a

*Defendant's Second Amended Answer*
*Page - 2 -*

54

named Defendant in that earlier action, and was served, and answered and noticed in said cause. Plaintiff William Fraser is the successor in interest to Doris Fraser, a named Defendant in that earlier action, who was served, and answered in said cause. The Defendants G. W. Kolstad and Doris Fraser in the earlier case filed a joint answer and in addition to a general denial raised the issue of mineral ownership, and claimed that they owned collectively one-half (½) the minerals under the minerals which are the subject of this suit, a copy of said joint answer is marked Exhibit "D" attached hereto and incorporated herein for all purposes as if copied verbatim (hereinafter "Answer"). The Judgment remains in full force and has not been appealed, reversed, modified, or voided, and is a valid and final judgment. The Judgment is *res judicata* of the matters complained of by the Plaintiffs herein. Plaintiffs are estopped to seek recovery in this suit of the title to the property described therein, and the Judgment is expressly pleaded as a complete bar to the causes of action asserted by Plaintiffs. Defendant requests that the court sustain this special exception and order Plaintiff to replead the petition within thirty days of the date of the Court's Order in accordance with Texas law and this Court's ruling on this special exception.

3.       Defendant, in addition to pleading the affirmative defense of *collateral estoppel*, hereinafter, would specially except, as a predicate to the subsequent filing of a <u>Texas Rules of Civil</u> <u>Procedure</u> Rule 166a motion for summary judgment, to Plaintiffs' pleadings as a whole in that said causes of action, if any truly be asserted, are barred by the doctrine of *collateral estoppel*, issue preclusion, as a matter of law. The party seeking to assert the bar of collateral estoppel must establish that 1) the facts sought to be litigated in the second suit (trespass to try title, quiet title) were fully and fairly litigated in the first action, an issue was "actually litigated" when it was properly raised, by the pleadings or otherwise, and it was submitted for determination, and determined (*See* Petition,

*Defendant's Second Amended Answer*
*Page - 3 -*

55

A054

Answer, Judgment and Statement of Facts); 2) those facts were essential to the first judgment, the fact issues litigated in first action were the essential elements necessary to prevail under trespass to try tile, including all elements necessary to prove and/or defend title under the 5, 10 and 25 year adverse possession statutes of limitation, 10, and 25 year statutes, and which represented the factual determinations necessary to form a basis of the judgement; and 3) the parties in the present case were cast as adversaries in that first suit. In this case the Plaintiffs are identical to Defendants in the prior case or priviy to such Defendants. The Defendant in this case is priviy to the Plaintiff in the prior case.

4.     Defendant specially excepts to Section II., ¶2. of Plaintiffs' Original Petition in that it fails to set forth a cause of action sufficient to give Defendant fair notice of the jurisdictional amount claimed by Plaintiffs in this matter. Plaintiffs, allege unleased mineral ownership of 52.6 acres of land, and seek to recover all monies received by Defendant from a third party contract (Oil, Gas and Mineral Lease, dated March 24, 2010, from Mary June Merrell, as Lessor, and Killam Oil Co., as Lessee, covering 246.33 acres of land out of the Live Bee Land Subdivision No. 4, Live Oak County, Texas, and recorded in Vol. 157, Page 487 of the Official Public Records of Live Oak County, Texas, (marked as Exhibit "E" attached hereto and incoporated herein for all purposes as if copied verbatim)(hereinafter "the Lease"). The Lease covers 246.33 acres of land. Plaintiffs claim ownership of an interest in 55.04 acres of land. The Lease contains a warranty clause only for the benefit of the Lessee and the same is subject to a proportionate reduction clause. Plaintiffs fail to identify what, if any monies payable under the Lease are due Plaintiffs. Terms, conditions and royalties payable under the Lease are the subject to the Lease/contract between Defendant and a third party lessee. Plaintiffs have no contract with such third party lessee. Plaintiffs are not parties to the

*Defendant's Second Amended Answer*
*Page - 4 -*

56

A055

Lease, nor direct beneficiaries or third party beneficiaries, thereof. Plaintiffs' lack of specificity makes it impossible to know what monies, attributable to what payment obligation and to what acreage, Plaintiffs are seeking. Plaintiffs further specify such damages, as set forth in Article VII., ¶ 26., of Plaintiffs' Original Petition, to be "any amounts payable to Defendant under the Lease are properly owned by Plaintiffs." Plaintiffs have failed to allege any viable cause of action against Defendant for which damages may be sought against Defendant irrespective of the amount of such claimed. Plaintiffs have failed to allege any facts supporting a claim that they are parties to the "Lease"; that they are "third party beneficiaries" to the Lease; nor that the parties to the Lease intended the Plaintiffs to be parties to or beneficiaries under the Lease. Plaintiffs have failed to allege any breach of the Lease by any party thereto. Defendant would point out that any deficiency of ownership by the Defendant that might be alleged having been excused by the "proportionate reduction" clause contained in the Lease. Plaintiffs have failed to assert any damages to Plaintiffs by Defendant by Defendant's entering into the Lease with a third party, which third party sought out and contracted with the Defendant and not Plaintiffs. Plaintiffs have failed to allege that the Lease upon which Plaintiffs base their claim has been breached by anyone owing a duty to Plaintiffs. Plaintiffs have failed to set forth the manner in which monies payable under the Lease to which Plaintiffs may have a claim are calculated. The facts set forth by Plaintiffs do not constitute a valid cause of action. It is impossible to determine the amount in controversy in this matter so as to establish that this Court has jurisdiction over this case and which amount the Plaintiffs have the burden of alleging and proving. Defendant requests that the court sustain this special exception and order Plaintiffs to set forth a short statement of the cause of action sufficient to give fair notice of the claim involved and the amount in controversy at issue, and that such amendment to their

*Defendant's Second Amended Answer*
*Page - 5 -*

A056

pleadings be made on or before thirty (30) days of the filing of this Original Answer, and that, if the Plaintiffs fail or refuse to do so, this action be dismissed.

5.    Defendant specially excepts to the allegations in Paragraph ll and VII of Plaintiffs' Original Petition, on the ground that the pleading demonstrates that Plaintiffs are making a claim under a contract/Lease in which the Plaintiffs have no standing to bring. Standing is a party's justiciable interest in the suit and is a component of subject-matter jurisdiction. Plaintiffs, at best, are unleased mineral owners and not royalty owners, not being a party to any oil, gas and other mineral lease. Defendant is no a mineral owner, but his mineral interest was sold to a lessee with a possiblity of reverter. Defendant is now a royalty owner under an oil, gas and other mineral lease. The Defendant receives royalties by reason of a third party contract to which Plaintiffs are strangers, and as such, Plaintiffs have no cause of action against Defendant for such royalties. Plaintiffs are neither parties to the Lease nor third party beneficiaries of the Lease. The Lease indicates on its face that Plaintiffs lack standing to bring suit against Defendant for the acts and/or omissions complained of in Plaintiffs' Original Petition. Defendant requests that the court sustain this special exception and order Plaintiffs to set forth a short statement of the cause of action sufficient to give fair notice to Defendant that Plaintiffs having standing to bring this action, and that such amendment to their pleadings be made on or before thirty (30) days of the filing of this Original Answer, and that, if the Plaintiffs fail or refuse to do so, this action be dismissed.

6.    Defendant specially excepts to the allegations in Article VII, ¶28 on the ground that the pleading demonstrates that Plaintiffs are attempting to artfully plead a title dispute as a declaratory judgment action just to obtain attorney's fees when that claim is a trespass-to-try-title action. A

A057

trespass to try title lawsuit is an action to recover possession of land withheld from an owner with a right to immediate possession. The Declaratory Judgment Act, on the other hand, provides a method to seek a declaration of rights under certain instruments, and permits an award of attorney's fees subject to the trial court's discretion. The language in Texas Property Code §22.001 ("trespass to try title action is *the* method of determining title") is mandatory. Texas courts have held that if the determination only *prospectively* implicates title, then the dispute does not have to be brought as a trespass to try title action. Here the Plaintiffs are not asking for a prospective determination of title but one that goes backwards. The substance and not the form of the pleadings is used to determine whether an action is properly considered as a trespass or declaratory judgment action. Any suit involving a dispute over the title to land is an action in trespass to try title, whatever its form and regardless of the relief sought. Defendant requests that the court sustain this special exception and order Plaintiffs to strike Article VIII of Plaintiffs' Original Petition from said pleading on or before thirty (30) days of the filing of this Original Answer.

## III.

### *General Denial*

7.      Subject to the foregoing special exception, Defendant denies generally each and every allegation in Plaintiffs' Original Petition and demands strict proof thereof upon the trial of this case. Subject to such special exceptions, stipulations, affirmative defenses and admissions as may be hereafter made, the Defendant asserts a general denial, as authorized by Rule 92, Texas Rules of Civil Procedure, and requests that the Plaintiffs be required to prove by a preponderance of the evidence all of the charges and allegations made against the Defendant in Plaintiffs' Original

*Defendant's Second Amended Answer*
*Page - 7 -*

Petition, as required by the Texas Rules of Civil Procedure, and the laws of the State of Texas.

8.      Pursuant to Rule 63, 69 and 98 of the Texas Rules of Civil Procedure, the Defendant reserves the right to amend and/or supplement her answer to further answer and specially except to Plaintiffs' allegations and claims.

## IV.

### *Verified Denial*

9.      Subject to and without waiving the foregoing Special Exceptions and General Denial, or in the alternative, but only to the extent necessary to protect her rights, Defendant specifically asserts, pursuant to Rule 93(4) of the Texas Rules of Civil Procedure, that there is a defect of parties as claimed and set forth by Plaintiffs. The Plaintiffs have failed to serve and include all necessary parties this suit, and in particular, all owners of interests in the mineral estate made the subject of Plaintiffs claims.

## V.

### *Affirmative Defenses*

10.     Subject to and without waiving the foregoing Special Exceptions, General Denial and Verified Denial, Defendant asserts, pursuant to Rule 94 of the Texas Rules of Civil Procedure, the following affirmative defenses which, singly or in combination, bar Plaintiffs' right to recover, in whole or in part, the damages alleged in Plaintiff's Original Petition:

        a.      Plaintiffs' claims are barred, in whole or in part, because Plaintiff lacks the requisite standing to bring this action. Plaintiffs are not parties to the Lease made the subject of Plaintiffs'

*Defendant's Second Amended Answer*
*Page - 8 -*

60

A059

suit. Plaintiffs are not third party beneficiaries to the Lease made the subject of this suit. Defendant owes no duty to Plaintiffs. Defendant has no contractual relationship with Plaintiffs. As pled by Plaintiffs there is no real controversy between Plaintiffs and Defendant which can be determined by this suit. Plaintiffs lack standing to sue over proceeds of the Lease, the Lease is a contract, Plaintiffs are not parties to the Lease, the Lease is a contract that is subject to its terms and conditions, the Lease clearly states that it covers 246.33 acres of land, and that the Lessor is to be paid under the Lease based upon that the terms and conditions of the Lease subject to a proportionate reduction clause. Assuming that Plaintiffs are owners of unleased minerals covered by the description in the Lease, Plaintiffs are still not parties to the Lease nor a third party beneficiaries to the Lease. They are and remain unlease mineral owners and their rights do not stem from the Lease but rather than from the alleged ownership in the minerals. If correct in their claim, Plaintiffs are entitled to their proportionate share of the proceeds derived by the working interest owner under the Lease less any and all costs of production.

b.      Defendant would further show that Plaintiff's' lawsuit is frivolous, groundless, unreasonable, and brought in bad faith. As a result of the frivolous lawsuit, Defendant has been forced to hire the undersigned attorneys to defend herself and has incurred and will incur reasonable and necessary attorneys' fees for the trial and any appeals of this case. Defendant is entitled to and hereby seek an award of all its reasonable attorneys' fees, as well as her costs incurred in defending this lawsuit.

c.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the doctrine of *res judicata* because a final judgment on the merits has been rendered in litigation

*Defendant's Second Amended Answer*
*Page - 9 -*

61

A060

involving the same property, parties or their privies, claims and issues, including trespass to try title. The claims and issues asserted by Plaintiffs in this cause could have been raised, and *__were raised__*, in the earlier litigation and are now barred by *res judicata*. There has been no change in the nucleus of operative facts which existed at the time of the previous suit and at this time. A change of legal theories will not prevent the doctrine of *res judicata* from barring claims. The doctrine stands for the position that any cause of action which arises out of those same facts should be litigated in the same lawsuit. In other words, a final judgment in an action should bar subsequent suits based on the same "transaction," or series of connected "transactions," out of which the first action arose.

d.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the doctrine of *collateral estoppel* because a final judgment on the merits has been rendered in litigation involving the same claims and issues, including trespass to try title. The claims and issues addressed by Plaintiffs could have been raised in the earlier litigation and are now barred by *collateral estoppel*.

e.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the statute of limitations.

f.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the Statute of Frauds.

g.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the affirmative defense of laches.

## VI.

### *Plea of Not Guilty*

Pursuant to Rule 788 of the Texas Rules of Civil Procedure, Defendant pleads that she is "not

*Defendant's Second Amended Answer*
*Page - 10 -*

62

A061

guilty" of the injury complained of in the Plaintiffs' Original Petition filed against Defendant.

WHEREFORE, Defendant requests judgment of the court as follows:

1. That Plaintiffs take nothing by their suit.

2. That Defendant have judgment over and against Plaintiffs to compensate her for reasonable attorney's fees.

3. That Defendant recover all costs, together with such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

MICHAEL C. SARTORI, Attorney for
Defendant
502A Houston Street
P. O. Box 1222
George West, Texas 78022
(361) 449-2691
(361) 449-2380 (FAX)
SBN# 17655500
Email: michael@msartori.com

*Defendant's Second Amended Answer*
*Page - 11 -*

63

A062

<u>**VERIFICATION**</u>

STATE OF TEXAS　　　§

COUNTY OF _San Patricio_

　　　Before me, the undersigned Notary Public, on this day personally appeared **MARY JUNE OWEN MERRELL**, and after being duly sworn stated under oath that she is the Defendant in this cause; that she has read the above Defendant's Original Answer; and that every Verified Denial contained in the answer is within her personal knowledge and is true and correct.


_Mary June Owen Merrell_
**MARY JUNE OWEN MERRELL**

SUBSCRIBED AND SWORN TO BEFORE ME on _July 15_　　, 2014.

**STEPHANIE TURANY**
Notary Public
STATE OF TEXAS
My Comm. Exp. 08-03-2016

_Stephanie Turany_
Notary Public in and for the State of Texas

**CERTIFICATE OF SERVICE**

　　　I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on _____, 2014.


Michael C. Sartori
Attorney for Defendant


_Defendant's Second Amended Answer_
_Page - 12 -_

<u>**VERIFICATION**</u>

STATE OF TEXAS              §

COUNTY OF _San Patricio_

Before me, the undersigned Notary Public, on this day personally appeared **MARY JUNE OWEN MERRELL,** and after being duly sworn stated under oath that she is the Defendant in this cause; that she has read the above Defendant's Original Answer; and that every Verified Denial contained in the answer is within her personal knowledge and is true and correct.


_Mary June Owen Merrell_
**MARY JUNE OWEN MERRELL**

SUBSCRIBED AND SWORN TO BEFORE ME on _July 15_____, 2014.

STEPHANIE TURANY
Notary Public
STATE OF TEXAS
My Comm. Exp. 08-03-2016

_Stephanie Turany_
Notary Public in and for the State of Texas


**CERTIFICATE OF SERVICE**

I certify that a true copy of the above was served on each attorney of record or party in accordance with the <u>Texas Rules of Civil Procedure</u> on _17 July_____, 2014.


Michael C. Sartori
Attorney for Defendant


_Defendant's Second Amended Answer_
_Page - 12 -_

65

A064

# EXHIBIT "A"

Exhibit "A"

NO. 6990-A

| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, CHARLES R. MERRELL, hereinafter called Plaintiff,

complaining of:

Mrs. Henrietta Willimann;
Fintan J. Willimann;
Mrs. Fintan J. Willimann;
Fred Anderson;
Mrs. Fred Anderson;
M. J. Couch;
Mrs. M. J. Couch;
S. L. McKay;
Mrs. S. L. McKay;
Joseph Vanderyacht;
Mrs. Joseph Vanderyacht;
Earl E. Vanderyacht;
Mrs. Earl E. Vanderyacht;
J. W. Hauser;
Mrs. J. W. Hauser;
H. S. Tallakson;
Mrs. H. S. Tallakson;
Herman S. Tallakson;
Mrs. Hermann S. Tallakson;
Joseph Reichert;
Mrs. Joseph Reichert;
W. E. Ruckmann;
Pearl M. Ruckmann;
J. B. Hazlitt;
Mrs. J. B. Hazlitt;
W. A. Felix;
Mrs. W. A. Felix;
H. H. Johnson;
Mrs. H. H. Johnson;
Ottilie M. Gensch;
Mrs. Ottilie M. Gensch;
Fred Stadelman;
Mrs. Fred Stadelman;
C. E. Crook;
Mrs. C. E. Crook;
Jeannie E. Scoby;



FILED
At 2:25 O'Clock P M
Oct 2 3 1991
ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _____ Deputy

67

A066

E. B. Grabow;
Mrs. E. B. Grabow;
Albert James;
Mrs. Albert James;
Adolph Hanson;
Mrs. Adolph Hanson;
Norman M. Negaard;
Mrs. Norman M. Negaard;
Charles Burkhard;
Mrs. Charles Burkhard;
Herman Burkhard;
Mrs. Herman Burkhard;
L. W. Greer;
Mrs. L. W. Greer;
T. L. Thoreson;
Mrs. T. L. Thoreson;
Henry L. Thoreson;
Mrs. Henry L. Thoreson;
A. E. Gage;
Mrs. A. E. Gage;
Mrs. Nellie Cooley;
R. E. Baum;
Mrs. R. E. Baum;
A. Wenger;
Mrs. A. Wenger;
Adolph Wenger;
Mrs. Adolph Wenger;
W. S. Duffy;
Mrs. W. S. Duffy;
John T. Strand;
Mrs. John T. Strand;
George H. McMurtie;
Mrs. George H. McMurtie;
Carl A. Jensen;
Mrs. Carl A. Jensen;
Marie Bertha Jensen;
Leo M. Foley;
Mrs. Leo M. Foley;
Arthur H. Forsan;
Mrs. Arthur H. Forsan;
A. J. LeFebvre
Mrs. A. J. LeFebvre;
Arthur C. Voss;
Mrs. Arthur C. Voss;
D. F. Wade;
Mrs. D. F. Wade;
J. V. McAfee;
Mrs. J. V. McAfee;
Helge S. Casperson;
Lewis Mortenson;
Mrs. Lewis Mortenson;
Peter E. Parson;

2

Mrs. Peter E. Parson;
Reverand A. Richter;
Mrs. A. Richter;
Bernard Powers;
Mrs. Bernard Powers;
James B. Fitzgerald;
Mrs. James B. Fitzgerald;
W. D. Youngquist;
Mrs. W. D. Youngquist;
L. T. Bougie;
Mrs. L. T. Bougie;
Swan Ericson;
Mrs. Swan Ericson;
Hans H. Jaul;
Mrs. Hans H. Jaul;
David Henry;
Mrs. David Henry;
W. P. Spangenberg;
Mrs. W. P. Spangenberg;
W. F. Marquardt;
Mrs. W. F. Marquardt;
O. P. Kendel;
Mrs. O. P. Kendel;
Grover J. Krumsiek;
Mrs. Grover J. Krumsiek;
A. H. Hoyne;
Mrs. A. H. Hoyne;
Hulda Bergdahl;
P. A. Bergdahl;
Mrs. P. A. Bergdahl;
Doris Fraser;
G. W. Kolstad;
Mrs. G. W. Kolstad;
Albert Pederson;
Mrs. Albert Pederson;
Gloria June Broach, Inedpendent Executrix of the Estate of Doreen
Ryan, Deceased;
Gloria June Broach, Trustee for Valerie Claire Broach;
Gloria June Broach, Trustee for Eric Weston Broach;
Melba Jo Parrott;
Jeannine Powell Corley;
William Morris Larimore;
Mrs. William Morris Larimore;
Charles D. Lovelace;
Mrs. Charles D. Lovelace;
David Peterson;
Mrs. David Peterson;
Albert Pederson;
Marie E. Mattison;
V. H. Houston;
Mrs. V. H. Houston;
J. B. Martindale;

3

Mrs. J. B. Martindale;
R. N. Martindale;
Mrs. R. N. Martindale;

In the event that any of the above named are deceased, their estates, their estates administrator or executor, if any, and their unknown heirs;

The unknown stockholders of The First State Bank of Le Sueur Center;
The unknown stockholders of U. S. I. Realty Co.;
The unknown stockholders of Mid-Frio Petroleum Co.;
The unknown stockholders of George C. Vaughn & Sons, Inc.;
The unknown stockholders of Martindale Mortgage Co.; and

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants;

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 andrecorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the

4

A069

hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas.

5

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16, 1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to

6

72

A071

Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger, dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas.

7

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 andrecorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas.

8

74

A073

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920 and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas.

9

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas;

all of whom are hereinafter collectively called Defendants, and for cause of action would respectfully show unto the Court:

I.

Parties

Plaintiff, CHARLES R. MERRELL is an individual residing in Live Oak County, Texas. MARGIE L. MERRELL, a named Plaintiff in

10

Plaintiffs' Original Petition is deceased.

With the exception of the hereinafter set forth and identified Defendants, the place of residence of each of the above named Defendants is unknown to Plaintiff, and after due diligence, Plaintiff have been unable to locate the whereabouts of any of such Defendants.

The names and addresses of the heirs of the persons above-named as are now deceased are unknown to the Plaintiff.

Plaintiff does not know the names of any person claiming title or an interest in the lands hereinafter described under the above-mentioned unrecorded Deeds.

Plaintiff does not know the names of any person claiming title or an interest in the lands hereinafter described under the above-mentioned Deeds.

Plaintiff does not know the names and addresses of the stockholders of The First State Bank of Le SuererCenter; U. S. I. Realty Co.; Mid-Frio Petroleum Co.; George C. Vaughn & Sons, Inc.; and Martindale Mortgage Co. Plaintiff has diligently checked and searched the records of the relevant Secretaries of State, but have been unable to locate such stockholders.

The Defendant's addresses which are known to Plaintiff, but which are not known to be current, are as follows:

Doris Fraser
P. O. Box 608
Chester, Montana 59522, Doris Fraser has answered in this cause and service may be had on Doris Fraser, acting Pro Se, at P. O. Box 608, Chester Montana 59522.

G. W. Kolstad
P. O. Box 121

11

A076

Lothair, Montana 59461, G. W. Kolstad has answered in this cause and service may be had on G. W. Kolstad, acting Pro Se, at P. O. Box 121, Lothair Montana 59461.

Gloria June Broach Independent Executor of the Estate of Doreen Ryan, Deceased
Gloria June Broach,
Trustee for Valerie Claire Broach and
Eric Weston Broach
4707 Bicentennial Court
Houston, Texas 77066, Gloria June Broach Independent Executor of the Estate of Doreen Ryan, Deceased, and Gloria June Broach, Trustee for Valerie Claire Broach and Eric Weston Broach, has answered in this cause and service may be had on the attorney of record, Alfred A. Steinle, Law Offices of Steinle & Wetherbee, P. O. Box 400, Jourdanton, Texas 78026.

Melba Jo Parrott
40 Hedwig Circle
Houston, Texas 77024

William Morris Larimore
2909 Piedmont Ave.
Berkeley, California 94703

David Peterson
2205 First Avenue East
Williston, North Dakota 58801

II.

Real Property

At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the following described lands and premises situated in Live Oak County, Texas, to-wit:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts: with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with

12

78

16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

13

79

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 fro a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest

14

80

corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre

15

A080

tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

owning and claiming the same in fee simple.

### III.

### Trespass to Try Title

A.    That on or about the the first day of January, 1989, Plaintiff was in actual possession of the above-described property. On this date, Defendants unlawfully entered upon said lands and premises and withheld from Plaintiff the possession thereof. Defendants continue to withhold the possession of the above described property.

B.    That Defendants have no right, title or interest in said lands, or any part thereof.

### IV.

### Adverse Possession

Without waiving the foregoing plea or Plaintiff's ownership or record title, and cumulative thereof, Plaintiff would show unto the Court:

A.    Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the real property hereinabove described, claiming under Deed dated October 31, 1975,

16

82

A081

and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County, Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on this property as they became due, and before delinquency.

B. Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the real property herein described for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of their possession.

C. Plaintiff and Plaintiff's predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the real property herein described for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held said real property under claim of right, in good faith and under duly recorded deed purporting to convey said real property.

D. Plaintiff and Plaintiff's predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the real property herein described for a period of more than twenty-five (25) years preceding the commencement of this

17

action. Plaintiff has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

E. Plaintiff and Plaintiff's predecessors in interest have openly exercised dominion over and asserted claim to this real property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action. The persons holding the apparent record title to the property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years during the twenty-five (25) years preceding the commencement of this action.

<div align="center">Prayer</div>

WHEREFORE, Plaintiff prays that the Defendants be cited to appear and answer, and that upon final hearing, Plaintiff have judgment for the title and possession of the real property which is the subject of this suit, for costs of suit, and for such other and further relief of which Plaintiff may be justly entitled.

Respectfully submitted,

_____
Michael C. Sartori
Attorney for Plaintiff
P. O. Box 1222
George West, Texas  78022
(512) 449-2691
(512) 449-2380 (Telecopier)
State Bar No. 17655500

<div align="center">18</div>

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been delivered to all attorneys of record in accordance with Rule 21a of the Texas Rules of Civil Procedure, on this the 23rd day of October, 1991.

Michael C. Sartori

19

# EXHIBIT "B"

 Exhibit "B"

## NO. 6990-A

| | | |
|---|---|---|
| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

## JUDGMENT

On 12th day of MAY, 1993, this case came on for hearing. Plaintiffs appeared by and through their attorney of record, Michael C. Sartori, and announced ready for trial. Defendants, G. W. KOLSTAD and DORIS FRASER, having answered, did not appear. Those Defendants cited by publication appeared by and through their attorney ad litem, William L. Hardwick, and announced ready for trial.

The following Defendants, although duly cited to appear, did not appear and wholly made default:

Mrs. Henrietta Willimann; Fintan J. Willimann; Mrs. Fintan J. Willimann; Fred Anderson; Mrs. Fred Anderson; M. J. Couch; Mrs. M. J. Couch; S. L. McKay; Mrs. S. L. McKay; Joseph Vanderyacht; Mrs. Joseph Vanderyacht; Earl E. Vanderyacht; Mrs. Earl E. Vanderyacht; J. W. Hauser; Mrs. J. W. Hauser; H. S. Tallakson; Mrs. H. S. Tallakson; Herman S. Tallakson; Mrs. Hermann S. Tallakson; Joseph Reichert; Mrs. Joseph Reichert; W. E. Ruckmann; Pearl M. Ruckmann; J. B. Hazlitt; Mrs. J. B. Hazlitt; W. A. Felix; Mrs. W. A. Felix; H. H. Johnson; Mrs. H. H. Johnson; Ottilie M. Gensch; Mrs. Ottilie M. Gensch; Fred Stadelman; Mrs. Fred Stadelman; C. E. Crook; Mrs. C. E. Crook; Jeannie E. Scoby; E. B. Grabow; Mrs. E. B. Grabow; Albert James; Mrs. Albert James; Adolph Hanson; Mrs. Adolph Hanson; Norman M. Negaard; Mrs. Norman M. Negaard; Charles Burkhard; Mrs. Charles Burkhard; Herman Burkhard; Mrs. Herman Burkhard; L. W. Greer; Mrs. L. W. Greer; T. L. Thoreson; Mrs. T. L. Thoreson; Henry L. Thoreson; Mrs. Henry L. Thoreson; A. E. Gage; Mrs. A. E. Gage; Mrs. Nellie Cooley; R. E. Baum; Mrs. R. E. Baum; A. Wenger; Mrs. A. Wenger; Adolph Wenger; Mrs. Adolph Wenger; W. S. Duffy; Mrs. W. S. Duffy; John T. Strand; Mrs. John T. Strand; George H. McMurtie; Mrs. George H. McMurtie; Carl A. Jensen; Mrs. Carl A. Jensen; Marie Bertha Jensen; Leo M. Foley; Mrs. Leo M. Foley; Arthur H. Forsan; Mrs. Arthur H. Forsan; A. J. LeFebvre; Mrs. A.

42 25

 

J. LeFebvre; Arthur C. Voss; Mrs. Arthur C. Voss; D. F. Wade; Mrs. D. F. Wade; J. V. McAfee; Mrs. J. V. McAfee; Helge S. Casperson; Lewis Mortenson; Mrs. Lewis Mortenson; Peter E. Parson; Mrs. Peter E. Parson; Rev. A. Richter; Mrs. A. Richter; Bernard Powers; Mrs. Bernard Powers; James B. Fitzgerald; Mrs. James B. Fitzgerald; W. D. Youngquist; Mrs. W. D. Youngquist; L. T. Bougie; Mrs. L. T. Bougie; Swan Ericson; Mrs. Swan Ericson; Hans H. Jaul; Mrs. Hans H. Jaul; David Henry; Mrs. David Henry; W. P. Spangenberg; Mrs. W. P. Spangenberg; W. F. Marquardt; Mrs. W. F. Marquardt; O. P. Kendel; Mrs. O. P. Kendel; Grover J. Krumsiek; Mrs. Grover J. Krumsiek; A. H. Hoyne; Mrs. A. H. Hoyne; Hulda Bergdahl; P. A. Bergdahl; Mrs. P. A. Bergdahl; Albert Pederson; Mrs. Albert Pederson; Jeannine Powell Corley; Charles D. Lovelace; Mrs. Charles D. Lovelace; Albert Pederson; Marie E. Mattison; V. H. Houston; Mrs. V. H. Houston; J. B. Martindale; Mrs. J. B. Martindale; R. N. Martindale; Mrs. R. N. Martindale. The unknown stockholders of The First State Bank of Le Sueur Center; The unknown stockholders of U. S. I. Realty Co.; The unknown stockholders of Mid-Frio Petroleum Co.; The unknown stockholders of George C. Vaughn & Sons, Inc.; The unknown stockholders of Martindale Mortgage Co.; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 and recorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward

2

A087

Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward

3

A088

Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16, 1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger,

4

A089

dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 and recorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas; The unknown claimants who may

5

A090

claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920 and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of

6

Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas.

The Court finds that the pleadings of the Plaintiffs and Defendants are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction over this cause of action and the parties. All persons entitled to citation were properly cited. A jury was waived, and all questions of fact and of law were submitted to the Court.

The Court, after hearing the evidence and arguments of counsel, finds that:

7

93

A092



1.    The Property which is the subject of this suit is situated in Live Oak County, Texas, and is described as follows:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts: with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri

8

A093

Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

### TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post

9

VOLUME 42 PAGE 83

for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

## TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172

10

A095

and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

(hereinafter referred to as the "Property").

2.     The Plaintiff, Margie L. Merrell, is deceased. All references in this judgment to the Plaintiff is to CHARLES R. MERRELL.

3.     As to Plaintiffs' claim of ownership the Court finds that:

11

a.  At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the Property owning and claiming the same in fee simple.

b.  Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the Property, claiming under Deed dated October 31, 1975, and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County, Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on the Property as they became due, and before delinquency.

c.  Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the Property for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of his possession.

d.  Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held the Property under claim of right, in good faith and under duly recorded deed purporting to convey the Property.

e.  Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. Plaintiff

12

VOLUME 42 PAGE 86

98

A097

has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

f.     Plaintiff and Plaintiffs' predecessors in interest have openly exercised dominion over and asserted claim to the Property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action. The persons holding the apparent record title to the Property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years during the twenty-five (25) years preceding the commencement of this action.

4.     That the ownership of the Property which is the subject of Plaintiff's suit is vested one hundred percent (100%) in the Plaintiff.

IT IS THEREFORE ORDERED, DECREED AND ADJUDGED, that the Plaintiff shall have and recover from the Defendants, and shall hold in fee simple, the following described tracts and parcels of land:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts: with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of

13

A098

Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page

14

VOLUME 42 PAGE 88

100

A099

24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

15

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

16

VOLUME 42 PAGE 98

102

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

together with all and singular the rights and appurtenances thereto.

All costs of court incurred are taxed against the party incurring same, for which execution may issue.

SIGNED AND ENTERED, this the 12ᵗʰ day of ___MAY___, 1993.

_____
JUDGE PRESIDING

RONALD M. YEAGER

APPROVED AS TO FORM:

_____
Michael C. Sartori, Attorney for
Plaintiff

_____
William L. Hardwick, Attorney ad Litem for
Defendants served by publication.

**FILED**

At 10:50 O'Clock a M

MAY 1 2 1993

ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _____ Deputy

17

# EXHIBIT "C"

## NO. 6990-A

| | | |
|---|---|---|
| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

### STATEMENT OF FACTS

On the /2th day of May, 1993, the trial of the above entitled and numbered Cause came on to be heard before this Court.

Plaintiffs appeared by and through their attorney of record, Michael C. Sartori, and announced ready for trial. Defendants, G. W. KOLSTAD and DORIS FRASER, having answered, did not appear. Those Defendants cited by publication appeared by and through their attorney ad litem, William L. Hardwick, and announced ready for trial.

The following Defendants, although duly cited to appear, did not appear and wholly made default:

Mrs. Henrietta Willimann; Fintan J. Willimann; Mrs. Fintan J. Willimann; Fred Anderson; Mrs. Fred Anderson; M. J. Couch; Mrs. M. J. Couch; S. L. McKay; Mrs. S. L. McKay; Joseph Vanderyacht; Mrs. Joseph Vanderyacht; Earl E. Vanderyacht; Mrs. Earl E. Vanderyacht; J. W. Hauser; Mrs. J. W. Hauser; H. S. Tallakson; Mrs. H. S. Tallakson; Herman S. Tallakson; Mrs. Hermann S. Tallakson; Joseph Reichert; Mrs. Joseph Reichert; W. E. Ruckmann; Pearl M. Ruckmann; J. B. Hazlitt; Mrs. J. B. Hazlitt; W. A. Felix; Mrs. W. A. Felix; H. H. Johnson; Mrs. H. H. Johnson; Ottilie M. Gensch; Mrs. Ottilie M. Gensch; Fred Stadelman; Mrs. Fred Stadelman; C. E. Crook; Mrs. C. E. Crook; Jeannie E. Scoby; E. B. Grabow; Mrs. E. B. Grabow; Albert James; Mrs. Albert James; Adolph Hanson; Mrs. Adolph Hanson; Norman M. Negaard; Mrs. Norman M. Negaard; Charles Burkhard; Mrs. Charles Burkhard; Herman Burkhard; Mrs. Herman Burkhard; L. W. Greer; Mrs. L. W. Greer; T. L. Thoreson; Mrs. T. L. Thoreson; Henry L. Thoreson; Mrs. Henry L. Thoreson; A. E. Gage; Mrs. A. E. Gage; Mrs. Nellie Cooley; R. E. Baum; Mrs. R. E. Baum; A. Wenger; Mrs. A. Wenger; Adolph Wenger; Mrs. Adolph Wenger; W. S. Duffy; Mrs. W. S. Duffy; John T. Strand; Mrs. John T. Strand; George H. McMurtie; Mrs. George H. McMurtie; Carl A. Jensen; Mrs. Carl A. Jensen; Marie Bertha Jensen; Leo M. Foley; Mrs. Leo M. Foley; Arthur H. Forsan; Mrs. Arthur H. Forsan; A. J. LeFebvre; Mrs. A. J. LeFebvre; Arthur C. Voss; Mrs. Arthur C. Voss; D. F. Wade; Mrs. D. F. Wade; J. V. McAfee; Mrs. J. V. McAfee; Helge S. Casperson; Lewis Mortenson; Mrs. Lewis Mortenson; Peter E. Parson; Mrs. Peter E. Parson; Rev. A. Richter; Mrs. A. Richter; Bernard Powers; Mrs. Bernard Powers; James B. Fitzgerald; Mrs. James B. Fitzgerald; W. D. Youngquist; Mrs. W. D. Youngquist; L. T. Bougie; Mrs. L. T. Bougie; Swan Ericson; Mrs. Swan Ericson; Hans H. Jaul; Mrs. Hans H. Jaul; David Henry; Mrs. David Henry; W. P. Spangenberg;

A104

Mrs. W. P. Spangenberg; W. F. Marquardt; Mrs. W. F. Marquardt; O. P. Kendel; Mrs. O. P. Kendel; Grover J. Krumsiek; Mrs. Grover J. Krumsiek; A. H. Hoyne; Mrs. A. H. Hoyne; Hulda Bergdahl; P. A. Bergdahl; Mrs. P. A. Bergdahl; Albert Pederson; Mrs. Albert Pederson; Jeannine Powell Corley; Charles D. Lovelace; Mrs. Charles D. Lovelace; Albert Pederson; Marie E. Mattison; V. H. Houston; Mrs. V. H. Houston; J. B. Martindale; Mrs. J. B. Martindale; R. N. Martindale; Mrs. R. N. Martindale. The unknown stockholders of The First State Bank of Le Sueur Center; The unknown stockholders of U. S. I. Realty Co.; The unknown stockholders of Mid-Frio Petroleum Co.; The unknown stockholders of George C. Vaughn & Sons, Inc.; The unknown stockholders of Martindale Mortgage Co.; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 and recorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and

2

106

A105

recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16,

3

1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger, dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and

4

A107

recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 and recorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920

5

A108

and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas.

No jury was demanded and all matters in controversy, including questions of fact and of law, were submitted to the Court.

After examining the pleadings the Plaintiff, Charles R. Merrell, testified as follows:

A.     That he claims the ownership in and to the following described lands, and premises in Live Oak County, Texas:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following

6

A109

acreage in the various tracts: with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest

7

corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the

8

42    70

A111

East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South

9

A112

47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

(hereinafter referred to as the "Property").

B.     That the records of the District Clerk and County Clerk were searched to obtain the names and addresses of all persons claiming or who could possibly claim an interest in the Property and all such people were served with citation or if their addresses were unavailable they were served by publication.

C.     The Plaintiff, Margie L. Merrell, is deceased. All references in this judgment to the Plaintiff is to CHARLES R. MERRELL.

D.     At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the Property owning and claiming the same in fee simple.

E.     Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the Property, claiming under Deed dated October 31, 1975, and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County,

10

Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on the Property as they became due, and before delinquency.

F.     Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the Property for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of his possession.

G.     Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held the Property under claim of right, in good faith and under duly recorded deed purporting to convey the Property.

H.     Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. Plaintiff has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

I.     Plaintiff and Plaintiffs' predecessors in interest have openly exercised dominion over and asserted claim to the Property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action. The persons holding the apparent record title to the Property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years during the twenty-five (25) years preceding the commencement of this action.

Plaintiff asked the Court to quiet title to the Property in the Plaintiff; to remove the cloud created by Defendants on the Property; have judgment for the title and possession of the Property which is the subject of this suit as set forth above and award such other and further relief to which Plaintiff may be justly entitled.

SIGNED this the _12th_ day of _MAY_, 1993.


_[signature]_
JUDGE PRESIDING
RONALD M. YEAGER

11

42    23

115

A114

APPROVED AS TO FORM:

_Michael C. Sartori_, Attorney for
Plaintiffs

_William L. Hardwick_, Attorney ad Litem for
Defendants served by publication.

**FILED**

At 10:50 O'Clock A M

MAY 1 2 1993

ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas

By _Ellen Jane McCarley_ Deputy

12

42 PAGE 14

116

A115

# EXHIBIT "D"

Exhibit "D"

G. W. Kolstad
P. O. Box 121
Lothair, MT  59461

Doris Fraser
P. O. Box 608
Chester, MT  59522



FILED

At _____O'Clock_____M

APR 2 1 1989

ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By_____Deputy

NO. 6990-A

| | |
|---|---|
| CHARLES R. MERRELL and wife,<br>MARGIE L. MERRELL, Plaintiffs,<br><br>VS.<br><br>MRS. HENRIETTA WILLIMANN, ET AL | IN THE DISTRICT COURT OF<br><br>LIVE OAK COUNTY, TEXAS<br><br>36TH JUDICIAL DISTRICT |

### ANSWER OF DEFENDANTS G. W. KOLSTAD AND

### DORIS FRASER TO PLAINTIFF'S ORIGINAL PETITION

COME NOW, G. W. KOLSTAD and DORIS FRASER, two of the Defendants in the above entitled action and in answer to Plaintiff's Original Petition, admit, deny and allege as follows:

I.

In answer to Paragraph I of Plaintiff's Original Petition, these answering Defendants admit that their names and addresses as listed therein are current and correct, allege they are without sufficient information as to the remainder of the allegations in Paragraph I and therefore deny the same.

II.

In answer to Paragraph II of Plaintiff's Original Petition, these answering Defendants deny that Plaintiffs were and are now seized and possessed of all interest in Tracts 191, 192, 193 and

118

A117

the portion of the old abandoned roadway appurtenant thereto as set forth in said Petition as being a portion of Tract III, deny that Plaintiffs own the same in fee simple and affirmatively allege that these answering Defendants are the owners of one-half (1/2) of the oil and gas mineral estate and ores underlying said Tracts 191, 192, 193 and the appurtenant portions of the abandoned roadway adjacent thereto, being out of Block No. 16 of the Live Bee Land Subdivision No. 4 as per plat thereof recorded in Volume 1, page 24 of the Plat Records of Live Oak County, Texas, by virtue of a reservation of the same by these answering Defendants' predecessors in interest recorded in the records of Live Oak County, Texas, as set forth on Exhibit "A" attached hereto, with G. W. Kolstad being the owner of an undivided one-third of one-half (1/3 of 1/2) and Doris Fraser being the owner of an undivided two-thirds of one-half (2/3 of 1/2) thereof.

III.

These answering Defendants deny in its entirety the allegations of Paragraph III of Plaintiff's Original Petition insofar as it may apply to the interest set forth in the paragraph next preceding.

IV.

These answering Defendants deny in its entirety the allegations of Paragraph IV of Plaintiff's Original Petition insofar as they apply to the interest set forth in Paragraph II of this Answer and affirmatively allege that these answering Defendants asserted ownership over such interests in said lands by way of

119

A118

oil and gas mineral lease (a copy of one of said leases being attached hereto as Exhibit "B") and that these answering

Defendants are and remain the owners of such interest as of the date hereof.

## PRAYER

Wherefore, these answering Defendants pray that the Plaintiffs' Original Petition be dismissed as to these Defendants, that Plaintiffs take nothing by their petition as against these Defendants and that these Defendants have judgment for the title and possession of the real property interests set forth in Paragraph II of this Answer, and for such other and further relief to which these Defendants be justly entitled.

Respectfully submitted,

_G W Kolstad_
G. W. Kolstad

_Doris Fraser_
Doris Fraser

STATE OF TEXAS
COUNTY OF LIVE OAK

I, the undersigned Clerk of the Oak County, Texas, do
hereby certify
that the foregoing is a true
copy as the same appears of record now on file in my office

EXHIBIT CHECK
Live Oak

# EXHIBIT "E"

Exhibit "E"

30Producers 88 (7-69)-Paid Up
With 640 Acres Pooling Provision

**Notice of Confidentiality Rights: If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the Public Records: Your Social Security Number or your Drivers License Number.**

# OIL, GAS AND MINERAL LEASE

__THIS AGREEMENT__ made this    24th    __day of March__            2010_ between _____ __Mary June Merrell,__ lessor (whether one or more), whose address is: _____ P.O. Box 1135, Portland, TX 78374_____ and, __Killam Oil Co., LTD__ whose address P.O. Box 499, Laredo, TX 78102 _____ , lessee, WITNESSETH:

1. Lessor, in consideration of Ten ($10.00) Dollars, receipt of which is hereby acknowledged, and of the covenants and agreements of lessee hereinafter contained, does hereby grant, lease and let unto lessee the land covered hereby for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas, sulphur and all other minerals (whether or not similar to those mentioned), together with the right to make surveys on said land, lay pipe lines, establish and utilize facilities for surface and subsurface disposal of salt water, construct roads and bridges, dig canals, build tanks, power stations, telephone lines, employee houses, and other structures on said land, necessary or useful in lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto. The land covered hereby, herein called " said land ", is located in the County of Live Oak, State of Texas, and is described as follows:

Being 246.33 acres of land, more or less, out of the Festus Doyle Survey 4, A-6, Live Oak County Texas, and being composed of the following two tracts to wit:

TRACT 1: 183.91 acres, more or less, being part of the Live Bee Subdivision No. 4, Block No. 16, Live Oak County, Texas, according to the map or plat of record recorded in Vol 1, Page 24 of the Plat Records of Live Oak County, Texas as follows: 7.14 acres of Tract No. 55; 5.67 acres of Tract No. 65; 3.81 acres of Tract No. 107; 11.62 acres of Tract No. 110; 22.35 acres in Tract No 111; 19.96 acres in Tract No. 112; 19.03 acres in Tract No.127; 20.05 acres in Tract No. 130; 20.00 acres in Tract No. 172; 16.12 acres in Tract No. 173; 17.76 acres in Tract No. 174; and 1.59 acres in the old abandoned roadway, in all a total of 183.91 acres and described as Tract 1, by metes and bounds in the deed reference below.
TRACT 2: 62.42 acres ,more or less, being part of the Live Bee Subdivision No. 4, Block No. 16, Live Oak County, Texas, according to the map or plat of record recorded in Vol 1, Page 24 of the Plat Records of Live Oak County, Texas as follows: 0.09 acres out of Tract No. 188; 25.20 acres out of Tract No. 191; 16.09 acres out of Tract No. 191; 13.75 acres out of Tract No. 193; 1.47 acres in the old abandoned roadway and 5.82 acres in Tract No. 171, in all a total of 62.42 acres and described as Tract 2, by metes and bounds in a certain deed dated April 27, 1999 from Charles R. Merrell, et ux Mary June Merrell to Rodrigo Lopez as recorded in Volume 557 at Page 141 of the Deed Records of Live Oak County, Texas.

This lease also covers and includes, in addition to that above described, all land, if any, contiguous or adjacent to or adjoining the land above described and (a) owned or claimed by lessor by limitation, prescription, possession, reversion or unrecorded instrument or (b) as to which lessor has a preference right of acquisition. Lessor agrees to execute any supplemental instrument requested by lessee for a more complete or accurate description of said land. For the purpose of determining the amount of any bonus or other payment hereunder, said land shall be deemed to contain 246.33 acres, whether actually containing more or less, and the above recital of acreage in any tract shall be deemed to be the true acreage thereof. Lessor accepts the bonus as lump sum consideration for this lease and all rights and options hereunder.

2. Unless sooner terminated or longer kept in force under other provisions hereof, this lease shall remain in force for a term of __Three (3)__ years from the date hereof, hereinafter called "primary term", and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

3. As royalty, lessee covenants and agrees: (a) To deliver to the credit of lessor, in the pipe line to which lessee may connect its wells, the equal One Fifth (1/5) part of all oil produced and saved by lessee from said land, or from time to time, at the option of lessee, to pay lessor the average posted market price of such One Fifth (1/5) part of such oil at the wells as of the day it is run to the pipe line or storage tanks, lessor's interest, in either case, to bear One Fifth (1/5) of the cost of treating oil to render it marketable pipe line oil; (b) To pay lessor on gas and casinghead gas produced from said land and (1) when sold by lessee, One Fifth (1/5) of the amount realized by lessee, computed at the mouth of the well or (2) when used by lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of One Fifth (1/5) of such gas and casinghead gas; (c) To pay lessor on all other minerals mined and marketed or utilized by lessee from said land, one-tenth either in kind or value at the well or mine at lessee's election, except that on sulphur mined and marketed the royalty shall be one dollar ($1.00) per long ton. If, at the expiration of the primary term or at any time or times thereafter, there is any well on said land or on lands with which said land or any portion thereof has been pooled, capable of producing oil or gas, and all such wells are shut-in, this lease shall, nevertheless, continue in force as though operations were being conducted on said land for so long as said wells are shut-in, and thereafter this lease may be continued in force as if no shut-in had occurred. Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee. If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of ninety consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, lessee shall pay or tender, by check or draft of lessee, as royalty, a sum equal to ten dollars ($10.00) for each acre of land then covered hereby. Lessee shall make like payments or tenders at or before the end of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions of this paragraph. Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid under this lease if the wells were producing, and may be deposited in the _____ Bank at _____ , or its successors, which shall continue as the depositories, regardless of changes in the ownership of shut-in royalty. If at any time that lessee pays or tenders shut-in royalty, two or more parties are, or claim to be, entitled to receive same, lessee may, in lieu of any other method of payment herein provided, pay or tender such shut-in royalty, in the manner above specified, either jointly to such parties or separately to each in accordance with their respective ownership thereof, as lessee may elect. Any payment hereunder may be made by check or draft of lessee deposited in the mail or delivered to the party entitled to receive payment or to a depository bank provided for above on or before the last date for payment. Nothing herein shall impair lessee's right to release as provided in paragraph 5 hereof. In the event of assignment of this lease in whole or in part, liability for payment hereunder shall rest exclusively on the then owner or owners of this lease, severally as to the acreage owned by each.

4. Lessee is hereby granted the right, at its option, to pool or unitize any land covered by this lease with any other land covered by this lease, and / or with any other land, lease, or leases, as to any or all minerals or horizons, so as to establish units containing not more than 640 surface acres, plus 10% acreage tolerance; provided, however, units may be established as to any one or more horizons, or existing units may be enlarged as to any one or more horizons, so as to contain not more than 640 surface acres plus 10% acreage tolerance, if limited to one or more of the following: (1) gas,

PAGE 1

other than casinghead gas, (2) liquid hydrocarbons ( condensate) which are not liquids in the subsurface reservoir, (3) minerals produced from wells classified as gas wells by the conservation agency having jurisdiction. If larger units than any of those herein permitted, either at the time established, or after enlargement, are required under any governmental rule or order, for the drilling or operation of a well at a regular location, or for obtaining maximum allowable from any well to be drilled, drilling, or already drilled, any such unit may be established or enlarged to conform to the size required by such governmental order or rule. Lessee shall exercise said option as to each desired unit by executing an instrument identifying such unit and filling it for record in the public office in which this lease is recorded. Each of such options may be exercised by lessee at any time and from time to time while this lease is in force, and whether before or after production has been established either on said land, or on the portion of said land included in the unit, or on other land unitized therewith. A unit established hereunder shall be valid and effective for all purposes even though there may be mineral, royalty, or leasehold interests in lands within the unit which are not effectively pooled or unitized. Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted upon said land under this lease. There shall be allocated to the land covered by this lease within each such unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) that proportion of the total production of unitized minerals from the unit, after deducting any used in lease or unit operations, which the number of surface acres in such land ( or in each separate tract) covered by this lease within the unit bears to the total number of surface acres in the unit, and the production so allocated shall be considered for all purposes, including payment or delivery of royalty, overriding royalty and any other payments out of production, to be the entire production of unitized minerals from the land to which allocated in the same manner as though produced therefrom under the terms of this lease. The owner of the reversionary estate of any term royalty or mineral estate agrees that the accrual of royalties pursuant to this paragraph or of shut-in royalties from a well on the unit shall satisfy any limitation of term requiring production of oil or gas. The formation of any unit hereunder which includes land not covered by this lease shall not have the effect of exchanging or transferring any interest under this lease ( including, without limitation, any shut- in royalty which may become payable under this lease) between parties owning interests in land covered by this lease and parties owning interest in land not covered by this lease. Neither shall it impair the right of lessee to release as provided in paragraph 5 hereof, except that lessee may not so release as to lands within a unit while there are operations thereon for unitized minerals unless all pooled leases are released as to lands within the unit. At any time while this lease is in force lessee may dissolve any unit established hereunder by filling for record in the public office where this lease is recorded a declaration to that effect, if at that time no operations are being conducted thereon for unitized minerals. Subject to the provisions of this paragraph 4, a unit once established hereunder shall remain in force so long as any lease subject thereto shall remain in force. If this lease now or hereafter covers separate tracts, no pooling or unitization of royalty interests as between any such separate tracts is intended or shall be implied or result merely from the inclusion of such separate tracts within this lease but lessee shall nevertheless have the right to pool or unitize as provided in this paragraph 4 with consequent allocation of production as herein provided. As used in this paragraph 4, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises.

5. Lessee may at any time and from time to time execute and deliver to lessor or file of record a release or releases of this lease as to any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations as to the released acreage or interest.

6. Whenever used in this lease the word "operations" shall mean operations for and any of the following: drilling, testing, completing, reworking, recompleting, deepening, plugging back or repairing of a well in search for or in an endeavor to obtain production of oil, gas, sulphur or other minerals, excavating a mine, production of oil, gas, sulphur or other mineral, whether or not in paying quantities.

7. Lessee shall have the use, free from royalty, of water, other than from lessor's water wells, and of oil and gas produced from said land in all operations hereunder. Lessee shall have the right at any time to remove all machinery and fixtures placed on said land, including the right to draw and remove casing. No well shall be drilled nearer than 200 feet to the house or barn now on said land without the consent of the lessor. Lessee shall pay for damages caused by its operations to growing crops and timber on said land.

8. The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any mineral or horizon. All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns. No change or division in the ownership of said land, royalties, or other moneys, or any part thereof, howsoever effected, shall increase the obligations or diminish the rights of lessee, including, but not limited to, the location and drilling of wells and the measurement of production. Notwithstanding any other actual or constructive knowledge or notice thereof of or to lessee, its successors or assigns, no change or division in the ownership of said land or of the royalties, or other moneys, or the right to receive the same, howsoever effected, shall be binding upon the then record owner of this lease until thirty (30) days after there has been furnished to such record owner at his or its principle place of business by lessor or lessor's heirs, successors, or assigns, notice of such change or division, supported by either originals or duly certified copies of the instruments which have been properly filed for record and which evidence such change or division, and of such court records and proceedings, transcripts, or other documents as shall be necessary in the opinion of such record owner to establish the validity of such change or division. If any such change in owner-ship occurs by reason of the death of the owner, lessee may, nevertheless pay or tender such royalties, or other moneys, or part thereof, to the credit of the decedent in a depository bank provided for above.

9. In the event lessor considers that lessee has not complied with all its obligations hereunder, both expressed and implied, lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by lessor. The service of said notice shall be precedent to the bringing of any action by lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee. Neither the service of said notice nor the doing of any act by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligations hereunder. If this lease is canceled for any cause, it shall nevertheless remain in force and effect as to (1) sufficient acreage around each well as to which there are operations to constitute a drilling or maximum allowable unit under applicable governmental regulations, (but in no event less than forty acres), such acreage to be designated by lessee as nearly as practicable in the form of a square centered at the well, or in such shape as then existing spacing rules require: and (2) any part of said land included in a pooled unit on which there are operations. Lessee shall also have such easements on said land as are necessary to operations on the acreage so retained.

10. Lessor hereby warrants and agrees to defend title to said land, against the claims of all persons whomsoever. Lessor's rights and interests hereunder shall be charged primarily with any mortgages, taxes or other liens, or interest and other charges on said land, but lessor agrees that lessee shall have the right at any time to pay or reduce the same for lessor, either before or after maturity, and be subrogated to the rights of the holder thereof and to deduct amounts so paid from royalties or other payments payable or which may become payable to lessor and / or assigns under this lease. If this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate ( whether lessor's interest is herein specified or not ), or no interest therein, then the royalties and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease ( whether or not owned by lessor) shall be paid out of the royalty herein provided. This lease shall be binding upon each party who executes it without regard to whether it is executed by all those named herein as lessor.

11. If, while this lease is in force, at, or after the expiration of the primary term hereof, it is not being continued in force by reason of the shut-in well provisions of paragraph 3 hereof, and lessee is not conducting operations on said land by reason of (1) any law, order, rule or regulation, (whether or not subsequently determined to be invalid) or (2) any other cause, whether similar or dissimilar, (except financial) beyond the reasonable control of lessee, the primary term hereof shall be extended until the first anniversary date hereof occurring ninety (90) or more days following the removal of such delaying cause, and this lease may be extended thereafter by operations as if such delay had not occurred.

12. It is expressly understood and agreed that the following typewritten agreements and provisions shall supersede and govern the provisions in the printed form of this lease whenever such printed form is in direct conflict herewith and shall inure to the benefit of and be finding upon the parties hereto and their respective heirs, devisees, legal representatives, successors and and assigns.

*PAGE 2*

123

A122

13. It is understood and agreed that wherever the fractions "one-eighth" and "one-tenth" appear in paragraph 3 hereof, they are hereby expressly amended and increased to "One Fifth (1/5)."

14. It is understood and agreed that this lease covers and includes oil and gas only (including with oil and gas, all constituent elements thereof and all other liquid or liquefiable hydrocarbons and products of every kind or character derived therefrom and produced therewith, including sulphur), and that all minerals other than oil and gas are excepted herefrom and reserved to Lessor. Including, but not limited to, among the minerals reserved to Lessor and excluded from this lease are coal, uranium and lignite.

15. Lessee agrees to conduct all operation on the leased premises according to the rules of the Texas Railroad Commission and all other regulatory authorities having jurisdiction over operations under this lease.

16. Those portions of this Agreement that pertain to the surface are applicable and cover only those certain tracts of land wherein the Lessor owns an interest in the surface.

17.     A. Lessee shall pay for all damage to roads, fences, improvements and growing crops caused by its operations hereunder and will fill and level all pits and mounds, remove all board roads and board road materials, level and fill all ruts, and restore the surface of the ground to as near its original condition as is reasonably practical within a reasonable period of time after cessation of operations at each well location on the leased premises.

    B. Lessee shall not cut any fence or fences unless Lessee shall brace the existing fence adequately on both side of such cut so that there will be no slackening of the wires. Lessee agrees to promptly install either a substantial metal gate in such opening or a substantial cattle guard and such gate or cattle guard shall become the property of the surface owner upon the termination of the lease. Lessee agrees to promptly close all gates which Lessee, his agents, servants or employees use in Lessee's operations on the leased premises. The surface owner may from time to time designate gates to be locked, closed or left open when not in use and Lessee shall comply with each such request.

    C. All operation of Lessee shall be conducted so as to minimize the amount of surface land used or damaged by Lessee and Lessee agrees to grade and reasonably maintain all roads used by Lessee on the leased premises in connection with operations on this lease to be the extent that they are passable in a passenger vehicle at all time. If production is established, then all roads constructed by Lessee shall be of good quality and design, crowned to turn water from the surface and surfaced with and with material suitable for all weather use. Lessee shall consult with the surface owner prior to the construction of any reads by Lessee and shall cooperate with the surface owner in the establishment of a reasonably satisfactory location for such road prior to commencement of any road construction.

    D. Lessee, his agents, servants or employees shall not being firearms or dogs on the leased premises, nor shall anyone have the right to hunt, fish

18. Notwithstanding anything to the contrary herein contained, drilling operations on or production from a pooled unit or units established under the provisions of Paragraph No. 4 hereof, embracing land covered hereby and other land, shall maintain this lease in force only as to land included in such unit or units. This lease may be maintained in force as to the remainder of the land in any manner herein provided for.

19. It is understood and provided this lease cannot be held, maintained nor extended by virtue of the shut-in gas well provisions of this lease for a longer term than the primary term and three (3) years immediately thereafter, or for shorter terms of different periods not to exceed three (3) years in the aggregate.

20. Notwithstanding any provisions hereof to the contrary, Lessor shall have the option to obtain any water well drilled by Lessee on this lease when said water well or wells have wholly served the purposes of Lessee, and are no longer needed by Lessee, its successors or assigns. The Lessor shall give notice, in writing, to Lessee of his desire to acquire such well or wells by executing all instruments required for transfer and liability of the same prior to the actual abandonment of same by Lessee.

21. Merrell Lease Service located in Gregory, TX shall be given an opportunity to bid any location or pipeline work that involves this lease.

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

Lessor:

_Mary June Merrell_
Mary June Merrell

A123

## ACKNOWLEDGEMENT

THE STATE OF TEXAS          §
COUNTY OF SAN PATRICIO      §

This instrument was acknowledged before me on the 25 day of March., 2010, by  Mary June Merrell          .

My Commission Expires:

10-18-2011

STEPHANIE TURANY
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-18-2011

Notary Public for The State of Texas

Notary's Printed Name: Stephanie Turany

(Seal)

2/10

```
FILED FOR RECORD IN:

    LIVE OAK COUNTY

ON: MAY 25, 2010  AT 04:15P

AS A(N) PUBLIC RECORDS

Karen Irving, COUNTY CLERK

CLERK NUMBER   188929  PAGES    4

AMOUNT:         28.00

    RECEIPT NUMBER 10002977

BY SHERRI
STATE OF TEXAS                    LIVE OAK COUNTY
THIS IS TO CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE DOCUMENT ON FILE IN
MY OFFICE WITNESS MY HAND AND OFFICIAL SEAL ON
THIS 25th DAY OF May____, 20 10.
AS STAMPED HEREON BY ME. /MAY 25, 2010

Karen Irving, COUNTY CLERK

Recorded:
```

After Recording Return to:
Killam Oil Co, LTD
Attn: Steve Marshall
P.O. Box 499
Laredo, TX 78102

A124

NO. _6990-A_

| | | |
|---|---|---|
| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | _36ᵗʰ_ JUDICIAL DISTRICT |

PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, CHARLES R. MERRELL and wife, MARGIE L. MERRELL, hereinafter called Plaintiffs, complaining of:

Mrs. Henrietta Willimann;
Fintan J. Willimann;
Mrs. Fintan J. Willimann;
Fred Anderson;
Mrs. Fred Anderson;
M. J. Couch;
Mrs. M. J. Couch;
S. L. McKay;
Mrs. S. L. McKay;
Joseph Vanderyacht;
Mrs. Joseph Vanderyacht;
Earl E. Vanderyacht;
Mrs. Earl E. Vanderyacht;
J. W. Hauser;
Mrs. J. W. Hauser;
H. S. Tallakson;
Mrs. H. S. Tallakson;
Herman S. Tallakson;
Mrs. Hermann S. Tallakson;
Joseph Reichert;
Mrs. Joseph Reichert;
W. E. Ruckmann;
Pearl M. Ruckmann;
J. B. Hazlitt;
Mrs. J. B. Hazlitt;
W. A. Felix;
Mrs. W. A. Felix;
H. H. Johnson;
Mrs. H. H. Johnson;
Ottilie M. Gensch;
Mrs. Ottilie M. Gensch;
Fred Stadelman;
Mrs. Fred Stadelman;



FILED
At _4:16_ O'Clock _P_ M
MAR 29 1989
ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _Ellen Jane McCarley_ Deputy

219

C. E. Crook;
Mrs. C. E. Crook;
Jeannie E. Scoby;
E. B. Grabow;
Mrs. E. B. Grabow;
Albert James;
Mrs. Albert James;
Adolph Hanson;
Mrs. Adolph Hanson;
Norman M. Negaard;
Mrs. Norman M. Negaard;
Charles Burkhard;
Mrs. Charles Burkhard;
Herman Burkhard;
Mrs. Herman Burkhard;
L. W. Greer;
Mrs. L. W. Greer;
T. L. Thoreson;
Mrs. T. L. Thoreson;
Henry L. Thoreson;
Mrs. Henry L. Thoreson;
A. E. Gage;
Mrs. A. E. Gage;
Mrs. Nellie Cooley;
R. E. Baum;
Mrs. R. E. Baum;
A. Wenger;
Mrs. A. Wenger;
Adolph Wenger;
Mrs. Adolph Wenger;
W. S. Duffy;
Mrs. W. S. Duffy;
John T. Strand;
Mrs. John T. Strand;
George H. McMurtie;
Mrs. George H. McMurtie;
Carl A. Jensen;
Mrs. Carl A. Jensen;
Marie Bertha Jensen;
Leo M. Foley;
Mrs. Leo M. Foley;
Arthur H. Forsan;
Mrs. Arthur H. Forsan;
A. J. LeFebvre
Mrs. A. J. LeFebvre;
Arthur C. Voss;
Mrs. Arthur C. Voss;
D. F. Wade;
Mrs. D. F. Wade;
J. V. McAfee;
Mrs. J. V. McAfee;

2

220

A126

Helge S. Casperson;
Lewis Mortenson;
Mrs. Lewis Mortenson;
Peter E. Parson;
Mrs. Peter E. Parson;
Reverand A. Richter;
Mrs. A. Richter;
Bernard Powers;
Mrs. Bernard Powers;
James B. Fitzgerald;
Mrs. James B. Fitzgerald;
W. D. Youngquist;
Mrs. W. D. Youngquist;
L. T. Bougie;
Mrs. L. T. Bougie;
Swan Ericson;
Mrs. Swan Ericson;
Hans H. Jaul;
Mrs. Hans H. Jaul;
David Henry;
Mrs. David Henry;
W. P. Spangenberg;
Mrs. W. P. Spangenberg;
W. F. Marquardt;
Mrs. W. F. Marquardt;
O. P. Kendel;
Mrs. O. P. Kendel;
Grover J. Krumsiek;
Mrs. Grover J. Krumsiek;
A. H. Hoyne;
Mrs. A. H. Hoyne;
Hulda Bergdahl;
P. A. Bergdahl;
Mrs. P. A. Bergdahl;
Doris Fraser;
G. W. Kolstad;
Mrs. G. W. Kolstad;
Albert Pederson;
Mrs. Albert Pederson;
Doreen Ryan;
Gloria June Broach, Trustee for Valerie Claire Broach;
Gloria June Broach, Trustee for Eric Weston Broach;
Melba Jo Parrott;
Jeannine Powell Corley;
William Morris Larimore;
Mrs. William Morris Larimore;
Charles D. Lovelace;
Mrs. Charles D. Lovelace;
Peter Bahn;
Mrs. Peter Bahn;
David Peterson;

3

221

A127

Mrs. David Peterson;
Albert Pederson;
Marie E. Mattison;
V. H. Houston;
Mrs. V. H. Houston;
J. B. Martindale;
Mrs. J. B. Martindale;
R. N. Martindale;
Mrs. R. N. Martindale;

In the event that any of the above named are deceased, their estates, their estates administrator or executor, if any, and their unknown heirs;

The unknown stockholders of The First State Bank of Le Sueur Center;
The unknown stockholders of U. S. I. Realty Co.;
The unknown stockholders of Mid-Frio Petroleum Co.;
The unknown stockholders of George C. Vaughn & Sons, Inc.;
The unknown stockholders of Martindale Mortgage Co.; and

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants;

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph

4

222

A128

Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 andrecorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded

5

in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee,to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas.

6

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16, 1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger, dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas.

7

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded

8

A132

in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 andrecorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard

9

227

A133

Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920 and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl,

10

228

dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas;

all of whom are hereinafter collectively called Defendants, and for cause of action would respectfully show unto the Court:

I.

Parties

Plaintiffs, CHARLES R. MERRELL and wife, MARGIE L. MERRELL, are individuals residing in Live Oak County, Texas.

With the exception of the hereinafter set forth and identified Defendants, the place of residence of each of the above named Defendants is unknown to Plaintiffs, and after due diligence, Plaintiffs have been unable to locate the whereabouts of any of such Defendants.

The names and addresses of the heirs of the persons above-named as are now deceased are unknown to the Plaintiffs.

Plaintiffs do not know the names of any person claiming title or an interest in the lands hereinafter described under the above-mentioned unrecorded Deeds.

11

229

A135

Plaintiffs do not know the names of any person claiming title or an interest in the lands hereinafter described under the above-mentioned Deeds.

Plaintiffs do not know the names and addresses of the stockholders of The First State Bank of Le SuererCenter; U. S. I. Realty Co.; Mid-Frio Petroleum Co.; George C. Vaughn & Sons, Inc.; and Martindale Mortgage Co. Plaintiffs have diligently checked and searched the records of the relevant Secretaries of State, but have been unable to locate such stockholders.

The Defendant's addresses which are known to Plaintiffs, but which are not known to be current, are as follows:

Doris Fraser
P. O. Box 608
Chester, Montana 59522

G. W. Kolstad
P. O. Box 121
Lothair, Montana 59461

Doreen Ryan
4707 Bicentennial Court
Houston, Texas 77066

Gloria June Broach,
Trustee for Valerie Claire Broach and
Eric Weston Broach
4707 Bicentennial Court
Houston, Texas 77066

Melba Jo Parrott
40 Hedwig Circle
Houston, Texas 77024

William Morris Larimore
2909 Piedmont Ave.
Berkeley, California 94703

Peter Bahn
Route 1
Bingham Lake, Minnesota 56118

12

230

A136

David Peterson
2205 First Avenue East
Williston, North Dakota 58801

II.

Real Property

At all times mentioned and relevant to this action Plaintiffs were and are now, lawfully ceased and possessed of the following described lands and premises situated in Live Oak County, Texas, to wit:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts: with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

13

231

A137

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

14

232

A138

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 fro a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

15

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45. 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

owing and claiming the same in fee simple.

16

234

A140

G. W. Kolstad
P. O. Box 121
Lothair, MT  59461

Doris Fraser
P. O. Box 608
Chester, MT  59522



FILED

At ___//:// O'Clock_____ M

APR 2 1 1989

ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _____ Deputy

NO. 6990-A

| | |
|---|---|
| CHARLES R. MERRELL and wife,<br>MARGIE L. MERRELL, Plaintiffs,<br><br>VS.<br><br>MRS. HENRIETTA WILLIMANN, ET AL | IN THE DISTRICT COURT OF<br><br>LIVE OAK COUNTY, TEXAS<br><br>36TH JUDICIAL DISTRICT |

ANSWER OF DEFENDANTS G. W. KOLSTAD AND

DORIS FRASER TO PLAINTIFF'S ORIGINAL PETITION

COME NOW, G. W. KOLSTAD and DORIS FRASER, two of the Defendants in the above entitled action and in answer to Plaintiff's Original Petition, admit, deny and allege as follows:

I.

In answer to Paragraph I of Plaintiff's Original Petition, these answering Defendants admit that their names and addresses as listed therein are current and correct, allege they are without sufficient information as to the remainder of the allegations in Paragraph I and therefore deny the same.

II.

In answer to Paragraph II of Plaintiff's Original Petition, these answering Defendants deny that Plaintiffs were and are now seized and possessed of all interest in Tracts 191, 192, 193 and

265

A141

the portion of the old abandoned roadway appurtenant thereto as set forth in said Petition as being a portion of Tract III, deny that Plaintiffs own the same in fee simple and affirmatively allege that these answering Defendants are the owners of one-half (1/2) of the oil and gas mineral estate and ores underlying said Tracts 191, 192, 193 and the appurtenant portions of the abandoned roadway adjacent thereto, being out of Block No. 16 of the Live Bee Land Subdivision No. 4 as per plat thereof recorded in Volume 1, page 24 of the Plat Records of Live Oak County, Texas, by virtue of a reservation of the same by these answering Defendants' predecessors in interest recorded in the records of Live Oak County, Texas, as set forth on Exhibit "A" attached hereto, with G. W. Kolstad being the owner of an undivided one-third of one-half (1/3 of 1/2) and Doris Fraser being the owner of an undivided two-thirds of one-half (2/3 of 1/2) thereof.

III.

These answering Defendants deny in its entirety the allegations of Paragraph III of Plaintiff's Original Petition insofar as it may apply to the interest set forth in the paragraph next preceding.

IV.

These answering Defendants deny in its entirety the allegations of Paragraph IV of Plaintiff's Original Petition insofar as they apply to the interest set forth in Paragraph II of this Answer and affirmatively allege that these answering Defendants asserted ownership over such interests in said lands by way of

266

A142

oil and gas mineral lease (a copy of one of said leases being attached hereto as Exhibit "B") and that these answering Defendants are and remain the owners of such interest as of the date hereof.

<center>PRAYER</center>

Wherefore, these answering Defendants pray that the Plaintiffs' Original Petition be dismissed as to these Defendants, that Plaintiffs take nothing by their petition as against these Defendants and that these Defendants have judgment for the title and possession of the real property interests set forth in Paragraph II of this Answer, and for such other and further relief to which these Defendants be justly entitled.

Respectfully submitted,

_G W Kolstad_

G. W. Kolstad

_Chris Fraser_

Doris Fraser

STATE OF TEXAS
COUNTY OF LIVE OAK

I, Melanie Martin, District Clerk of Live Oak County, Texas, do hereby certify that the foregoing is a true and correct copy of the original now in my lawful custody and possession, as appears of record in _____ minutes of said Court on file in my office.

Witness my official hand and seal of office this _____

_____ , DISTRICT CLERK
_____ County, Texas
By _____

267

G. W. Kolstad
P. O. Box 121
Lothair, MT  59461

Doris Fraser
P. O. Box 608
Chester, MT  59522



FILED
At //:// O'Clock __ M

APR 21 1989

ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _____

NO. 6990-A

CHARLES R. MERRELL and wife,    )    IN THE DISTRICT COURT OF
MARGIE L. MERRELL, Plaintiffs,  )
                                )    LIVE OAK COUNTY, TEXAS
    VS.                         )
                                )    36TH JUDICIAL DISTRICT
MRS. HENRIETTA WILLIMANN, ET AL )

## ANSWER OF DEFENDANTS G. W. KOLSTAD AND

## DORIS FRASER TO PLAINTIFF'S ORIGINAL PETITION

COME NOW, G. W. KOLSTAD and DORIS FRASER, two of the Defendants in the above entitled action and in answer to Plaintiff's Original Petition, admit, deny and allege as follows:

I.

In answer to Paragraph I of Plaintiff's Original Petition, these answering Defendants admit that their names and addresses as listed therein are current and correct, allege they are without sufficient information as to the remainder of the allegations in Paragraph I and therefore deny the same.

II.

In answer to Paragraph II of Plaintiff's Original Petition, these answering Defendants deny that Plaintiffs were and are now seized and possessed of all interest in Tracts 191, 192, 193 and

A144

the portion of the old abandoned roadway appurtenant thereto as set forth in said Petition as being a portion of Tract III, deny that Plaintiffs own the same in fee simple and affirmatively allege that these answering Defendants are the owners of one-half (1/2) of the oil and gas mineral estate and ores underlying said Tracts 191, 192, 193 and the appurtenant portions of the abandoned roadway adjacent thereto, being out of Block No. 16 of the Live Bee Land Subdivision No. 4 as per plat thereof recorded in Volume 1, page 24 of the Plat Records of Live Oak County, Texas, by virtue of a reservation of the same by these answering Defendants' predecessors in interest recorded in the records of Live Oak County, Texas, as set forth on Exhibit "A" attached hereto, with G. W. Kolstad being the owner of an undivided one-third of one-half (1/3 of 1/2) and Doris Fraser being the owner of an undivided two-thirds of one-half (2/3 of 1/2) thereof.

III.

These answering Defendants deny in its entirety the allegations of Paragraph III of Plaintiff's Original Petition insofar as it may apply to the interest set forth in the paragraph next preceding.

IV.

These answering Defendants deny in its entirety the allegations of Paragraph IV of Plaintiff's Original Petition insofar as they apply to the interest set forth in Paragraph II of this Answer and affirmatively allege that these answering Defendants asserted ownership over such interests in said lands by way of

269

A145

oil and gas mineral lease (a copy of one of said leases being attached hereto as Exhibit "B") and that these answering

Defendants are and remain the owners of such interest as of the date hereof.

## PRAYER

Wherefore, these answering Defendants pray that the Plaintiffs' Original Petition be dismissed as to these Defendants, that Plaintiffs take nothing by their petition as against these Defendants and that these Defendants have judgment for the title and possession of the real property interests set forth in Paragraph II of this Answer, and for such other and further relief to which these Defendants be justly entitled.

Respectfully submitted,

_G. W. Kolstad_

G. W. Kolstad

_Doris Fraser_

Doris Fraser

270

A146

County, Texas, Book "V" page 33?. Said Tract hereby conveyed is bounded as follows:

Beginning at the Most Southerly corner of Lot 501, thence in a Northwesterly direction along the Southwest line of said Lot 501 a distance of 660 feet, thence at right angles to said line of lot 501 in a Northeasterly direction and parallel to what is known as North road on Block "A" a distance of 660 feet, thence in a Southeasterly direction to said Southwest line of Lot 501 to the Southeast line of lot 501 which is the Northeast line of said North road, thence in a Southerly direction along the line of said lot 501 and said North Road to the place of beginning 660 feet.

Said tract of land hereby conveyed being a tract of ten (10) acres lying in a square in the most southerly corner of lot 501.

TO HAVE AND TO HOLD the said tract of land unto the said Albert H. Burrell, Thomas McCarrol and E. F. Lea, trustees, and their successors in office in fee simple title forever. And I bind myself, my heirs and representatives, to forever warrant and defend the title thereto unto the said grantees and their successors against all persons lawfully claiming or to claim the same or any part thereof.

THIS CONVEYANCE IS IN TRUST HOWEVER and subject to the following condition; that said tract of land and all improvements thereon be used only for free school purposes as a school house and grounds for the education of the children residing in Live Oak County from time to time, and for religious purposes. And it is expressly stipulated that in event said property is used for any other purposes and such use continues for thirty (30) days after written notice thereof from me or my heirs, then such use for any other purpose shall work a forfeiture of the title to said tract of land, and thereupon title shall immediately pass to and vest in me and my heirs free of said trust.

Dated this 27th day of September, 1917.

Geo W. West.

THE STATE OF TEXAS )
( 
COUNTY OF BEXAR.   ) Before me, the undersigned authority, on this day personally appeared George W. West, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 27th day of September 1917.
(Seal)  Annie A. Connors, Notary Public in and for Bexar County, Texas.

Filed for record in my office on the 27th day of November 1917 at 10 o'clock, A. M. and duly recorded this the 28th day of November 1917 at 4:30 o'clock P. M.

Clerk County Court, Live Oak County, Texas.

*Deed into H.E. Hanson in which ½ mineral interest is reserved.*

THE STATE OF MINNESOTA )
COUNTY OF HENNEPIN.    ) KNOW ALL MEN BY THESE PRESENTS: That C. W. Reynolds, as Trustee and the United States Installment Realty Company, of the County of Hennepin State of Minnesota, for and in consideration of the sum of Two Thousand Nine Hundred Forty-three and 05/100 ($2943.05) Dollars, to them in hand paid by H. E. Hanson, have Granted, Sold and Conveyed and by these presents do Grant, Sell and Convey, unto the said H. E. Hanson, of the County of Grand Forks, State of North Dakota all that certain land and realestate situated in the County of Live Oak, State of Texas, described as follows, to-wit:

271

A147

Tracts One, Hundred Ninety-one (191) One Hundred Ninety-two (192) and One Hundred Ninety-three (193) in Block Sixt●● 16) of Live Bee Land Subdivision ●●4. according to the plat of said land on file and of record in the office of the Clerk of the County Court and Recorded of said Live Oak County, Texas, and originally a part of the Foutse Doyle Survey No. 4. in said County.

This conveyance is made upon the express condition that said land shall not, nor shall any part or portion thereof be by said party of the Second part, his heirs or assigns, sold or conveyed to a negro or person of African Descent, and that if the said Party of the Second Part, his heirs or assigns, shall sell or convey or attempt to sell or convey to a negro any title or interest in the said real estate hereinabove described, then this conveyance shall become null, void and of no effect, and the title to said realestate shall immediately revest in said parties of the first part, as if this conveyance had not been made.

It is agreed that the consideration paid for said land is in payment only for the ownership thereof, exclusively of the ownership of an undivided one-half of any and all oils, gas or minerals, mineral oils, mineral paints, fossils or ores that may be in or upon said land and that the ownership of said one-half of all such oils, gas or minerals, mineral oils, mineral paints, fossils or ores that may be in or upon said land is not sold paid for or conveyed to said second party, and that said ownership is retained by said first parties; that said first parties also retain the right to enter upon the land and the right and every part thereof and/to dig and bore on said land for such oil gas or minerals, and the right to remove all the same from said land, and the right to lay pipe lines and to construct roads over and across said land for the purposes of removing therefrom any and all such oil, gas or minerals; that they, their heirs, administrators, successors or assigns, may sell the same, and all thereof, but that the net proceeds of the sale of any and all such oil, gas or minerals, after paying the cost of mining or drilling, of transportation, of refining or other process to which it may be necessary to subject the same and of said shall be equally divided between the parties hereto, their heirs administrators successors or assigns; and that the amount of the consideration and purchase price which said second party pays and said first parties accept is lessened by reason of the reservations and rights retained by said first parties.

TO HAVE AND TO HOLD the above described premises together with all and singular the rights and appurtenances thereto in anywise belonging unto the said H. E. Hanson hisheirs and assigns forever. And we do hereby bind ourselves, our heirs, executors administrators and successors, to WARRANT AND FOREVER DEFEND all and singular the said premises unto the said H. E. Hanson, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

Witness our hands at Minneapolis, Minnesota, this 1st day of November, A.D. 1917.

C. W. Reynolds, As Trustee,

UNITED STATES INSTALLMENT REALTY COMPANY (Seal)

By, E. H. Evans, Its President,
By, A. J. Johnson, Its Treasurer,

Witnesses at request of grantor;
Arthur England,
H. V. Waterston.

THE STATE OF MINNESOTA )
                        (
COUNTY OF HENNEPIN.     )      Before me, H. V. Waterston, a Notary Public, in and for Hennepin County Minnesota, on this day personally appeared , C. W. Reynolds, known to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and considerations therein expressed, and in the capacity therein stated.

272

Given under my hand and seal of office this 1st day of November A.D. 1917.

(Seal) H. V. Waterston, Notary Public, Hennepin County, Minnesota, My Commission expires July 10, 1923.

THE STATE OF MINNESOTA )
                        ) ss.
COUNTY OF HENNEPIN      )   Before me, H. V. Waterston, a Notary Public, in and for Hennepin County, Minnesota, personally came United States Installment Realty Company, by its President, E. H. Evans, and its Treasurer, A. J. Johnson, known to me to be the persons whose names are subscribed to the foregoing instrument as president and treasurer, of said United States Installment Realty Company, and acknowledged to me that they executed the same for the purposes and consideration therein expressed, in the capacity therein stated, and as the act and deed of said corporation.

Given under my hand and seal of office this 1st day of November, A.D. 1917.

(Seal) H. V. Waterston, Notary Public, Hennepin County, Minnesota, My Commission expires July, 10, 1917.

Filed for record in my office on the 27th day of November 1917 at 4 o'clock P. M. and duly recorded this the 29th day of November, 1917, at 9:30 o'clock A. M.

Clerk County Court, Live Oak County, Texas.

*Release of Lien on 56.21 Ac Hansen Tract.*

THE STATE OF CONNECTICUT )
                         (
COUNTY OF HARTFORD       )   WHEREAS, by deed dated December 10th, 1912, and recorded in Volume S. pages 439 et seq., Deed records of Live Oak County, Texas, William Green, Philip Welhausen, R. S. Dilworth and S. V. Houston, did convey unto E. L. Plimpton certain realestate and premises in Live Oak County, Texas, amounting in the aggregate to 16050 acres of land, more or less, out of the original Pant Ranch, fully set out and described in said deed, to which reference is here made for more particular description, retaining therein a vendor's lien to secure the payment of $240,896.32, for which the said E. L. Plimpton and United States Installment Realty Company, Company executed thirty-five certain promissory notes; twenty-eight (28) of said notes representing one hundred twenty thousand four hundred forty-eight and 16/100 ($120,448. 16) Dollars, payable to the order of William Green, Phillip Welhausen, R. S. Dilworth and S. V. Houston, each note for the sum of four thousand three hundred one and 72/100 ($4301.72) Dollars, four of said twenty-eight notes being due January 1st, 1915, four due January 1st 1916, four due January 1st 1917 four due January 1st, 1918, four due January 1st, 1919, four due January 1st, 1920 and four due January 1st, 1921, respectively; and seven of said thirty-five notes represen-ting the sum of one hundred twenty thousand four hundred forty-eight and 16/100 ($120,448.16 Dollars and being for the sum of Seventeen thousand two hundred six and 88/100 ($17,206.88) Dollars each, due January 1st, 1915, 1916, 1917, 1918, 1919, 1920, and 1921, respectively and payable to the order of William Green, Phillip Welhausen, R. S. Dilworth and S. V. Houston, at the Yoakum State Bank of Yoakum, DeWitt County, Texas, bearing interest at the rate of eight (8) per cent per annum from July 1st, 1913, interest payable annually and

WHEREAS, by instrument in writing dated March 15th 1915, and recorded in Volume S. page 495-6 deed records of Live Oak County, Texas, the said William Green, Phillip Welhausen, R. S. Dilworth and S. V. Houston did sell, transfer and assign unto Aetna Life Insurance Company the seven notes for $17,206.88 each, last above described, together with the vendor's lien securing the payment of said seven notes, which lien

273

was made a superior lien to that securing payment of twenty-eight notes for $4301.72 each above described, and

WHEREAS, for a valuable consideration thereunto moving said Aetna Life Insurance Company, and said William Green, Phillip Welhausen, R. S. Dilworth and S. V. Houston wish to release from said vendor's lien the following described tracts or parcels of land, and noe other, to-wit:

56.21 acres of land, being all of tract 191, containing 24.86 acres, all of tract 192, containing 17.84 acres, and all of tract 193 containing 13.51 acres all in Block Sixteen (16) , Live Bee Land Subdivision No. 4. a subdivision of the above mentioned tract of land, as evidenced by the grantees in the above mentioned deed; said tracts being fully set out and described in a plat of the above mentioned subdivision which is of record in the records of Live Oak County, Texas, to which said plat and the record thereof reference is here made for more particular description of said land.

NOW , THEREFORE, Aetna Life Insurance Company, William Green, Phillip Welhausen R. S. Dilworth, and S. V. Houston, owners and holders of all of the above described notes and the vendor's lien securing same, in consideration of the premises, do hereby release the tracts of land last above described, amounting in the aggregate to 56.21 acres and none other, from all of the liens retained in the above mentioned deed to secure the payment of said notes; but said vendor's lien is to remain in full force, virtue and effect as to the balance of the land in said deed described and not heretofore released.

IN TESTIMONY WHEREOF, Aetna Life Insurance Company has caused this instrument to be signed by M. B. Brainard its vice president, and said William Green, Phillip Welhausen, R. S. Dilworth and S. V. Houston have hereunto subscribed their names this 3rd day of November A. D. 1917,

(Seal)

AETNA LIFE INSURANCE COMPANY
By, M. B. Brainard, Its Vice President.

Wm. Green
Phillip Welhausen,
R. S. Dilworth,
S. V. Houston,

THE STATE OF CONNECTICUT )
COUNTY OF HARTFORD. ) Before me, the undersigned authority, on this day personally appeared M. B. Brainard, vice president, known to me to be the person whose name is subscribed to the foregoing instrument ( being a partial release of vendor's lien from Aetna Life Insurance Company, William Green, et al. to E. L. Plimpton) and acknowledged to me that he executed the same for the purposes and consideration therein expressed, in the capacity therein stated and as the act and deed of Aetna Life Insurance Company.

Given under my hand and seal of office this 16th day of November A.D.,1917.
(Seal) James J. Coleman, Notary Public, Hartford County, Connecticut.

THE STATE OF TEXAS )
COUNTY OF DEWITT ) Before me, the undersigned authority, on this day personally appeared William Green, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 3rd day of November, A. D. 1917.
(Seal) Gladys Messimer, Notary Public, DeWitt County, Texas.

274

A150

*Heirship affidavit*

THE STATE OF TEXAS }

COUNTY OF .NUECES }

BEFORE me, the undersigned authority, on this day personally appeared

HANNAH H. KEENEY, a widow, and ANNIE H. KOLSTAD, a widow,

who being duly sworn by me, on oath depose and say :

That our mother, Eli Ness Hanson, and our father, Hans E. Hanson, were married at Grand Forks, North Dakota, in January, 1892 and they continued to live together as husband and wife until our father's death, which occurred in January, 1940; that to this marriage the following children were born and are now living: (1) Mrs. Annie H. Kolstad, a widow, of Chester, Montana; (2) Mrs. Hannah H. Keeney, a widow, of Paducah, Kentucky; and (3) Mrs. Sophia R. Routier, of Devils Lake, North Dakota; that no other children were born to the marriage of Eli Ness Hanson and Hans E. Hanson, and no children were adopted by them; that said parties were married once and only once and then to each other; that the said Hans E. Hanson died intestate and there was no administration on his estate, as none was necessary there being no debts or claims due or owing by said estate, nor were there any State inheritance taxes or Federal estate taxes due and owing by his estate.

EXECUTED this the 13th day of June, 1970.

HANNAH H. KEENEY

SUBSCRIBED AND SWORN TO BEFORE ME this the __24__ day of __June__, 1970.

My Commission Expires August 5, 1970

Notary Public, McCracken County, Kentucky

ANNIE H. KOLSTAD

SUBSCRIBED AND SWORN TO BEFORE ME this the 29th day of __June__, 1970.

Commission Expires 7-16-73

Notary Public, __Toole__ County, Montana

KENTUCKY

STATE OF ~~TEXAS~~

COUNTY OF Mo Cracken

BEFORE ME, the undersigned authority, on this day personally appeared

HANNAH H. KEENEY

275

A151

# OIL, GAS



# AND MINERAL LEASE

PRODUCERS 88 REV. TEXAS (1-69)
WITH 80/640 ACRES POOLING PROVISION

THIS AGREEMENT made this ____20th____ day of ____May____, 19 _83_ , between

G. W. Kolstad

Lessor (whether one or more), whose address is: P. O. Box /21, /0/da/s, Montana 59461

and EXXON CORPORATION, P. O. Box 2303, Houston, Texas 77252 , Lessee, WITNESSETH:

1. Lessor in consideration of _____Ten and No/100_____ Dollars

($10.00——————) in hand paid, of the royalties herein provided and of the agreements of Lessee herein contained, hereby grants, leases and lets exclusively to Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas, sulphur, fissionable materials and all other minerals (whether or not similar to those mentioned), conducting exploration, geologic and geophysical tests and surveys, injecting gas, water and other fluids and air into subsurface strata, laying pipelines, establishing and utilizing facilities for the disposition of salt water, dredging and maintaining canals, building roads, bridges, tanks, telephone lines, power stations and other structures thereon, and on, over and across lands owned or claimed by Lessor adjacent and contiguous thereto necessary to Lessee in operations to produce, save, take care of, treat, transport and own said minerals, the following described land in ____Live Oak____ County, Texas, to-wit:

56.21 acres of land, more or less, out of and a part of the Festus Doyle Survey No. 4, A-6; and being Tracts Nos. 191,192, and 193, and being out of Block No. 16 of the Live Bee Land Subdivision No. 4, as per plat thereof recorded in Volume 1, Page 24, of the Plat Records of Live Oak County, Texas, reference to which is hereby made for all purposes.

This lease also covers and includes all land and interest in land owned or claimed by Lessor adjacent or contiguous to the land particularly described above, whether the same be in said survey or surveys or in adjacent surveys. For the purpose of calculating rental payments hereunder, said land is estimated to contain __56.21__ acres, whether it contains more or less.

2. Unless sooner terminated or longer kept in force under other provisions hereof, this lease shall remain in force for a term of __three__ years from the date hereof (called "primary term") and as long thereafter as oil, gas, sulphur, fissionable materials or other mineral is produced from said land or land pooled therewith.

3. The royalties to be paid by Lessee are: (a) on oil, _____ of that produced and saved from said land, the same to be delivered at the wells or to the credit of Lessor into the pipeline to which the wells may be connected; Lessee may from time to time purchase any royalty oil in its possession, paying the market price therefor prevailing for the field where produced on the date of purchase, and Lessee may sell any royalty oil in its possession and pay Lessor the price received by Lessee for such oil computed at the well; (b) on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used off the premises or for the extraction of gasoline or other product therefrom, the market value at the well of _____ of the gas so sold or used, provided that on gas sold by Lessee the market value shall not exceed the amount received by Lessee for such gas computed at the mouth of the well, and on gas sold at the well the royalty shall be _____ of the amount realized by Lessee from such sale; and (c) on fissionable materials and all other minerals mined and marketed, _____ either in kind or value at the well or mine, at Lessee's election, except that on sulphur mined or marketed, the royalty shall be Two Dollars ($2.00) per long ton. If the price of any mineral or substance upon which royalty is payable hereunder is regulated by any governmental agency, the market value or market price of such mineral or substance for the purpose of computing royalty hereunder shall not be in excess of the price which Lessee may receive and retain. Lessee shall have free from royalty or other payment the use of water, other than water from Lessor's wells or tanks, and of oil, gas and coal produced from said land in all operations which Lessee may conduct hereunder, including water injection and secondary recovery operations, and the royalty on oil, gas and coal shall be computed after deducting any so used. If Lessee drills a well on land covered by this lease or on land pooled therewith, which well is capable of producing oil or gas but such well is not being produced and this lease is not being maintained otherwise as provided herein, this lease shall not terminate, whether it be during or after the primary term, (unless released by Lessee) and it shall nevertheless be considered that oil or gas is being produced from the land covered by this lease. When the lease is continued in force in this manner, Lessee shall pay or tender as royalty to the parties who at the time of such payment would be entitled to receive royalty hereunder if the well were producing, or deposit to their credit in the depository bank as hereinafter provided a sum equal to 1/12 of the amount of the annual rental payable in lieu of drilling operations during the primary term on the number of acres subject to this lease at the time such payment is made for each calendar month, or portion thereof, thereafter during which said well is situated on said land, or on land pooled therewith, and this lease is not otherwise maintained, or this lease is not released by Lessee as to the land on which or the horizon, zone or formation in which the well is completed. The first payment of such sum shall be made on or before the first day of the calendar month after expiration of ninety (90) days from the date the lease is not otherwise maintained for all accruals to such date, and thereafter on or before the first day of each third calendar-month for all accruals to each such date. Lessee's failure to pay or tender or to properly or timely pay or tender any such sum as royalty shall render Lessee liable for the amount due but it shall not operate to terminate this lease.

4. If operations for drilling are not commenced on said land or on land pooled therewith on or before one year from the date hereof, this lease shall terminate as to both parties, unless on or before such date Lessee shall pay or tender (or make a bona fide attempt to pay or tender) to Lessor or to the credit of Lessor in ____Northwestern Bank (12-995-5)____ Bank at ____Great Falls, Montana____

____ the sum of ____Forty Six and 85/100————————————————

Dollars ($46.85——————) (herein called "rental"), which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. In like manner and upon like payment or tender annually, the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. The payment or tender of rental under this paragraph and of royalty under Paragraph 3 on any well which is not being produced, hereinafter referred to as "shut-in royalty", may be made by check or draft of Lessee mailed or delivered to the parties entitled thereto or to said bank on or before the date of payment. Such bank and its successors are Lessor's agent and shall continue as depository for all rental and shut-in royalty payable hereunder regardless of changes in ownership of said land, rental or shut-in royalty. If said bank (or any successor bank) should fail, liquidate or be succeeded by another bank or for any reason fail or refuse to accept rental or shut-in royalty, Lessee shall not be held in default for failure to make such payment or tender of rental or shut-in royalty until thirty (30) days after the party or parties entitled thereto shall deliver to Lessee a proper recordable instrument naming another bank as agent to receive such payment or tender. If Lessee shall make a bona fide attempt on or before any payment date to pay or deposit rental to a party or parties entitled thereto, according to Lessee's records, or to a party or parties who, prior to such attempted payment or deposit, have given Lessee notice in accordance with subsequent provisions of this lease of their right to receive rental, and if such payment or deposit shall be ineffective or erroneous in any regard, Lessee shall be unconditionally obligated to pay to such party or parties entitled thereto the rental properly payable for the rental period involved, and this lease shall not terminate but shall be maintained in the same manner as if such erroneous or ineffective rental payment or deposit had been properly made, provided that the erroneous or ineffective rental payment or deposit be corrected within thirty (30) days after receipt by Lessee of written notice by such party or parties of such error accompanied by such instruments as are necessary to enable Lessee to make proper payment. Failure to make proper payment or deposit of delay rental as to any interest in said land shall not affect this lease as to any interest therein as to which proper payment or deposit is made. The down cash payment is consideration for this lease according to its terms and shall not be allocated as rental for a period. Lessee may at any time, and from time to time, execute and deliver to Lessor, or to the depository bank, or file for record a release or releases of this lease as to any part or all of said land or of any mineral or subsurface interval or any depths thereunder and thereby be relieved of all obligations as to the released land, mineral, horizon, zone or formation. If this lease is released as to all minerals, horizons, zones and formations under a portion of said land, the delay rental, shut-in royalty and other payments computed in accordance therewith shall thereupon be reduced in the proportion that the acreage released bears to the acreage which was covered by this lease immediately prior to such release.

5. Lessee, at its option, is hereby given the right and power during or after the primary term while this lease is in effect to pool or combine the land covered by this lease, or any portion thereof, as to oil, gas and other minerals, or any of them, with any other land covered by this lease, and/or any other land, lease or leases in the immediate vicinity thereof, when in Lessee's judgment it is necessary or advisable to do so in order properly to explore, or to develop and operate the leased premises in compliance with the spacing rules of the Railroad Commission of Texas, or other lawful authority, or when to do so would, in the judgment of Lessee, promote the conservation of oil, gas or other mineral in and under said land that may be produced from the premises. Units pooled for oil hereunder shall not substantially exceed in area 80 acres each plus a tolerance of 10% thereof, and units pooled for gas hereunder shall not substantially exceed in area 640 acres each plus a tolerance of 10% thereof, provided that should governmental authority having jurisdiction prescribe or permit the creation of units larger than those specified, units thereafter created may conform substantially in size with those prescribed or permitted by governmental regulations. Lessee may pool or combine land covered by this lease or any portion thereof, as above provided as to oil in any one or more strata and as to gas in any one or more strata. Units formed by pooling as to any stratum or strata need not conform in size or area with units as to any other stratum or strata, and oil units need not conform as to area with gas units. Pooling in one or more instances shall not exhaust the rights of Lessee to pool this lease or portions thereof into other units. Lessee shall file for record in the appropriate records of the county in which the leased premises are situated an instrument describing and designating the pooled acreage as a pooled unit: the unit shall become effective as provided in said instrument, or if said instrument makes no such provision, it shall become effective upon the date it is filed for record. Each unit shall be effective as to all parties hereto, their heirs, successors and assigns, irrespective of whether or not the unit is likewise effective as to all other owners of surface, mineral, royalty or other rights in land included in such unit. Lessee may at its election exercise its pooling option as to oil, gas and other minerals before or after commencing operations for or completing an oil or gas well or well or mine for other mineral on the leased premises, and the pooled unit may include, but is not required to include, land or leases upon which a well or mine capable of producing oil, gas or other mineral in paying quantities has theretofore been completed or upon which operations for drilling of a well or mine for oil, gas or other mineral have theretofore been commenced. Operations for drilling on, or production of oil, gas or other mineral from any part of a pooled unit which includes all or a portion of the land covered by this lease, regardless of whether such operations for drilling were commenced or such production was secured before or after the execution of this lease or the instrument designating the pooled unit, shall be considered as operations for drilling on or production of oil, gas or other mineral from land covered by this lease whether or not the well or wells or mine be located on land covered by this lease, and the entire acreage constituting such unit or units, as to oil, gas or other minerals, or any of them, as herein provided, shall be treated for all purposes, except the payment of royalties on production from the pooled unit, as if the same were included in this lease; provided that if after creation of a pooled unit, a well or mine is drilled on the unit area, other than on the land covered hereby and included in the unit, which well is not classified as the type of well for which the unit was created (oil, gas or other mineral as the case may be), such well or mine shall be considered a dry hole for purposes of applying the additional drilling and reworking and resumption of delay rental provisions of Paragraph 6 hereof. If an oil well on an oil unit, which includes all or a portion of the leased premises, is reclassified as a gas well, or if a gas well on a gas unit, which includes all or a portion of the leased premises, is reclassified as an oil well, the date of such reclassification shall be considered as the date of cessation of production for purposes of applying the additional drilling and reworking and resumption of delay rental provisions of Paragraph 6 hereof as to all leases any part of which are included in the unit other than the leased premises on which the well is located. For the purpose of computing royalties to which owners of royalties and payments out of production and each of them shall be entitled on production of oil, gas or other minerals from each pooled unit, there shall be allocated to the land covered by this lease and included in said unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) a pro rata portion of the oil, gas or other minerals produced from the unit after deducting that used for operations on the unit. Such allocation shall be on an acreage basis — that is, there shall be allocated to the acreage covered by this lease and included in the pooled unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) that pro rata portion of the oil, gas or other minerals produced from the unit which the number of surface acres covered by this lease (or in each separate tract) and included in the unit bears to the total number of surface acres included in the unit. As used in this paragraph, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises. Royalties hereunder shall be computed on the portion of such production, whether it be oil, gas or other minerals, so allocated to the land covered by this lease and included in the unit-just as though such production were from such land. Production from an oil well will be considered as production from the lease or oil pooled unit from which it is producing and not as production from a gas pooled unit; and production from a gas well will be considered as production from the lease or gas pooled unit from which it is producing and not from an oil pooled unit. Any pooled unit designated by Lessee in accordance with the terms hereof may be dissolved by Lessee by instrument filed for record in the appropriate records of the county in which the leased premises are situated at any time after completion of a dry hole or cessation of production on said unit.




6. If Lessee shall drill a dry hole or holes on said land, or on acreage pooled therewith, and this lease is not being maintained otherwise as provided herein, or if oil, gas or other mineral is discovered and not produced for any cause, or if the production thereof should cease from any cause, this lease shall not terminate if Lessee commences operations for drilling or reworking within sixty (60) days thereafter and continues drilling or reworking operations on said well or any additional well with no cessation of more than sixty (60) consecutive days, or if it be within the primary term, commences the payment or tender of rental or commences operations for drilling or reworking on or before the rental paying date next ensuing after the expiration of sixty (60) days from the date of completion of dry hole, or discovery of oil, gas or other mineral, or cessation of production and continues drilling or reworking operations on said well or any additional well with no cessation of more than sixty (60) consecutive days. If at any time subsequent to sixty (60) days prior to the beginning of the last year of the primary term and prior to the discovery of oil, gas or other mineral on said land, or on acreage pooled therewith, Lessee should drill a dry hole thereon, no rental payment or operations are necessary in order to keep this lease in force during the remainder of the primary term. If at the expiration of the primary term, oil, gas or other mineral is not being produced on said land, or on acreage pooled therewith, but Lessee is then engaged in drilling or reworking operations thereon or shall have completed a dry hole thereon within sixty (60) days prior to the end of the primary term, this lease shall remain in force so long as operations on said well or for drilling or reworking of any additional well are prosecuted with no cessation of more than sixty (60) consecutive days, and if they result in the production of oil, gas or other mineral so long thereafter as oil, gas or other mineral is produced from said land or acreage pooled therewith. In the event a well or wells producing oil or gas in paying quantities should be brought in by Lessee or any other operator on adjacent land and within three hundred thirty (330) feet of and draining the leased premises, or acreage pooled therewith, Lessee agrees to drill such offset wells, as a reasonably prudent operator would drill under the same or similar circumstances. within 60 days

7. Lessee shall have the right at any time during or after the expiration of this lease to remove all property and fixtures placed by Lessee on said land, including the right to draw and remove all casing. When necessary for utilization of the surface for some intended use by Lessor and upon request of Lessor or when deemed necessary by Lessee for protection of the pipeline, Lessee will bury pipelines below ordinary plow depth, and no well shall be drilled within two hundred (200) feet of any residence or barn now on said land without Lessor's consent.

8. The rights of either party hereunder may be assigned in whole or in part, and the provisions hereof shall extend to their heirs, successors and assigns; but no change or division in ownership of the land, rentals or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee, including, but not limited to, the location and drilling of wells and the measurement of production; and no change or division in such ownership shall be binding on Lessee until forty-five (45) days after Lessee shall have been furnished by registered U.S. mail at Lessee's principal place of business with a certified copy of recorded instrument or instruments evidencing same. In the event of assignment hereof in whole or in part, liability for breach of any obligation hereunder shall rest exclusively upon the owner of this lease or of a portion thereof who commits such breach. In the event of the death of any person entitled to rentals hereunder, Lessee may pay or tender such rentals to the credit of the deceased or the estate of the deceased until such time as Lessee is furnished with proper evidence of the appointment and qualifications of an executor or administrator of the estate, or if there be none, until Lessee is furnished with evidence satisfactory to it as to the heirs or devisees of the deceased and that all debts of the estate have been paid. If at any time two or more persons be entitled to participate in rental payable hereunder, Lessee may pay or tender said rental jointly to such persons or to their joint credit in the depository bank; or, at Lessee's election, the proportionate part of rental to which each participant is entitled may be paid or tendered to him separately or to his separate credit in said depository; and payment or tender to any participant of his portion of the rental hereunder shall maintain this lease as to such participant. In event of assignment of this lease as to a segregated portion of said land, rental hereunder shall be apportionable as between the several leasehold owners ratably according to the surface area of each, and default in rental payment by one shall not affect the rights of other leasehold owners hereunder. If six or more parties become entitled to royalty hereunder, Lessee may withhold payment thereof unless and until furnished with a recordable instrument executed by all such parties designating an agent to receive payment for all.

9. Breach by Lessee of any obligation hereunder shall not work a forfeiture or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for cancellation hereof in whole or in part. In the event Lessor considers that operations are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if in default, shall have sixty (60) days after receipt of such notice in which to commence compliance with the obligations imposed by this lease. After discovery of oil, gas or other mineral in paying quantities on said premises, Lessee shall develop the acreage retained hereunder as a reasonable prudent operator but in discharging this obligation as to oil and gas it shall in no event be required to drill more than one well per eighty (80) acres of the area retained hereunder plus a tolerance of 10% thereof and capable of producing oil in paying quantities and one well per 640 acres plus a tolerance of 10% of 640 acres of the area retained hereunder and capable of producing gas in paying quantities.

10. Lessor hereby warrants and agrees to defend the title to said land and agrees that Lessee at its option may discharge any tax, mortgage or other lien upon said land, either in whole or in part, and if Lessee does so, it shall be subrogated to such lien with right to enforce same and apply rentals and royalties accruing hereunder toward satisfying same. When required by state, federal or other law, Lessee may withhold taxes with respect to rental, royalty and other payments hereunder and remit the amounts withheld to the applicable taxing authority for the credit of Lessor. Without impairment of Lessee's rights under the warranty in event of failure of title, if Lessor owns an interest in the oil, gas or other minerals on, in or under said land less than the entire fee simple estate, whether or not this lease purports to cover the whole or a fractional interest, the royalties, shut-in royalties _____ to be paid Lessor shall be reduced in the proportion that his interest bears to the whole and undivided fee and in accordance with the nature of the estate of which Lessor is seized. Should any one or more of the parties named above as Lessor fail to execute this lease, it shall nevertheless be binding upon the party or parties executing same. Failure of Lessee to reduce rental paid hereunder shall not impair the right of Lessee to reduce royalties.

11. Should Lessee be prevented from complying with any express or implied covenant of this lease, from conducting drilling or reworking operations thereon or on land pooled therewith or, from producing oil, gas or other mineral therefrom or from land pooled therewith by reason of scarcity or of inability to obtain or to use equipment or material, or by operation of force majeure, any federal or state law or any order, rule or regulation of governmental authority, then while so prevented, Lessee's obligation to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith: and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on or from producing oil, gas or other mineral from the leased premises or land pooled therewith, and the time while Lessee is so prevented shall not be counted against Lessee, anything in this lease to the contrary notwithstanding.

12. Each singular pronoun herein shall include the plural whenever applicable.

SEE ADDENDUM ATTACHED HERETO AND
MADE A PART HEREOF:

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

√ Soc. Sec. No. _____    √ _____

G. W. Kolstad

_____

LESSOR _____    SOCIAL SECURITY NO. _____    LESSOR _____    SOCIAL SECURITY NO. _____

THE STATE OF ~~TEXAS~~ MONTANA
COUNTY OF _____

BEFORE ME, the undersigned authority, on this day personally appeared _____ G. W. Kolstad _____ known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the _____ day of _____, 19 83

_____ Notary Public in and for _____ County XXXX
Montana

THE STATE OF TEXAS
COUNTY OF _____

BEFORE ME, the undersigned authority, on this day personally appeared _____

and _____, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the _____ day of _____, 19 _____

Notary Public in and for _____ County, Texas

277

A153

# ADDENDUM



To Oil, Gas, and Mineral Lease dated _____ May 20 _____ 19_83_ from

__ G. W. Kolstad _____ , Lessor,

to ____ Exxon Corporation _____ Lessee,

covering __ 56.21 _____ acres, more or less in _____ Live Oak _____

County, Texas.

## Additional Provisions of Lease

Notwithstanding anything to the contrary in the foregoing printed form Oil, Gas and Mineral Lease, it is agreed and understood as follows, to-wit:

13. It is expressly understood and agreed that this lease covers oil and gas only, along with the products and by-products thereof, but this lease does not cover any other minerals of any type including Uranium, Thorium, and other fissionable materials, Iron Ore, Copper, Coal, Sand, Gravel, or any other minerals of any type, it being understood that this lease is made for oil & gas purposes only.

14. If, within one (1) year after the end of the primary term of this lease, a part but not all of the leased land on a surface acre basis is included within a unit or units, in accordance with the provisions hereof, this lease shall terminate as to such part, or parts of the leased land lying outside of such unit or units, unless this lease is perpetuated as to such land outside of such unit or units by operations conducted thereon or by production of oil, gas or other minerals, or by such operation and such production in accordance with the provisions hereof.

15. Lessee shall level all pits or other excavations dug by it in its operations hereunder promptly after termination of its use hereof. Also, Lessee shall pay for all damage done or caused to be done to all buildings, fences, roads, culverts, trees turf and other improvements, including the surface of cultivated land and growing crops on said land.

16. Lessee's right to maintain this lease solely by virtue of the shut-in gas well royalty payment provided for in paragraph 3 hereof, is hereby limited to a period of no longer than three (3) consecutive years (or lesser periods whch aggregate together three years) after the end of the primary term of this lease.

17. Notwithstanding the provisions of Paragraph 5 hereof, any unit pooled for gas as specified in Paragraph 5 hereof, as to any or all horizons down to, but not below, a depth of 10,000 feet from the surface shall contain not to exceed 320 acres plus 10% tolerance.

Signed for Identification Only:

✓ _____
G. W. Kolstad

278

ON UR BEFORE ___15___
BANKING DAYS AFTER SIGHT
OR SUBJECT TO TITLE APPROVAL

# CUSTOMER'S DRAFT

(NOT A CASH ITEM)

CORPUS CHRISTI, TEXAS, _____May 20, _____ 19 83

PAY TO THE
ORDER OF ___G. W. Kolstad___                                    $468.42

Four Hundred Sixty Eight and 42/100 ___COPY___----------------- DOLLARS

Bonus consideration covering Lessor's int. in 56.21 acres, Live Oak County, Texas.

VALUE RECEIVED AND CHARGE TO ACCOUNT OF

TO: CORPUS CHRISTI NATIONAL BANK                    Ronald B. Silber
P.O. BOX 301, CORPUS CHRISTI, TEXAS 78403
ACCOUNT: EXXON COMPANY, U.S.A.

Golden-Bonner #1062

279

A155

NO. 6990-A

| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
|---|---|---|
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, CHARLES R. MERRELL, hereinafter called Plaintiff,

complaining of:

Mrs. Henrietta Willimann;
Fintan J. Willimann;
Mrs. Fintan J. Willimann;
Fred Anderson;
Mrs. Fred Anderson;
M. J. Couch;
Mrs. M. J. Couch;
S. L. McKay;
Mrs. S. L. McKay;
Joseph Vanderyacht;
Mrs. Joseph Vanderyacht;
Earl E. Vanderyacht;
Mrs. Earl E. Vanderyacht;
J. W. Hauser;
Mrs. J. W. Hauser;
H. S. Tallakson;
Mrs. H. S. Tallakson;
Herman S. Tallakson;
Mrs. Hermann S. Tallakson;
Joseph Reichert;
Mrs. Joseph Reichert;
W. E. Ruckmann;
Pearl M. Ruckmann;
J. B. Hazlitt;
Mrs. J. B. Hazlitt;
W. A. Felix;
Mrs. W. A. Felix;
H. H. Johnson;
Mrs. H. H. Johnson;
Ottilie M. Gensch;
Mrs. Ottilie M. Gensch;
Fred Stadelman;
Mrs. Fred Stadelman;
C. E. Crook;
Mrs. C. E. Crook;
Jeannie E. Scoby;



FILED
At 2:25 O'Clock P M
Oct 2 3 1991
ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _____ Deputy

239

A156

E. B. Grabow;
Mrs. E. B. Grabow;
Albert James;
Mrs. Albert James;
Adolph Hanson;
Mrs. Adolph Hanson;
Norman M. Negaard;
Mrs. Norman M. Negaard;
Charles Burkhard;
Mrs. Charles Burkhard;
Herman Burkhard;
Mrs. Herman Burkhard;
L. W. Greer;
Mrs. L. W. Greer;
T. L. Thoreson;
Mrs. T. L. Thoreson;
Henry L. Thoreson;
Mrs. Henry L. Thoreson;
A. E. Gage;
Mrs. A. E. Gage;
Mrs. Nellie Cooley;
R. E. Baum;
Mrs. R. E. Baum;
A. Wenger;
Mrs. A. Wenger;
Adolph Wenger;
Mrs. Adolph Wenger;
W. S. Duffy;
Mrs. W. S. Duffy;
John T. Strand;
Mrs. John T. Strand;
George H. McMurtie;
Mrs. George H. McMurtie;
Carl A. Jensen;
Mrs. Carl A. Jensen;
Marie Bertha Jensen;
Leo M. Foley;
Mrs. Leo M. Foley;
Arthur H. Forsan;
Mrs. Arthur H. Forsan;
A. J. LeFebvre
Mrs. A. J. LeFebvre;
Arthur C. Voss;
Mrs. Arthur C. Voss;
D. F. Wade;
Mrs. D. F. Wade;
J. V. McAfee;
Mrs. J. V. McAfee;
Helge S. Casperson;
Lewis Mortenson;
Mrs. Lewis Mortenson;
Peter E. Parson;

2

Mrs. Peter E. Parson;
Reverand A. Richter;
Mrs. A. Richter;
Bernard Powers;
Mrs. Bernard Powers;
James B. Fitzgerald;
Mrs. James B. Fitzgerald;
W. D. Youngquist;
Mrs. W. D. Youngquist;
L. T. Bougie;
Mrs. L. T. Bougie;
Swan Ericson;
Mrs. Swan Ericson;
Hans H. Jaul;
Mrs. Hans H. Jaul;
David Henry;
Mrs. David Henry;
W. P. Spangenberg;
Mrs. W. P. Spangenberg;
W. F. Marquardt;
Mrs. W. F. Marquardt;
O. P. Kendel;
Mrs. O. P. Kendel;
Grover J. Krumsiek;
Mrs. Grover J. Krumsiek;
A. H. Hoyne;
Mrs. A. H. Hoyne;
Hulda Bergdahl;
P. A. Bergdahl;
Mrs. P. A. Bergdahl;
Doris Fraser;
G. W. Kolstad;
Mrs. G. W. Kolstad;
Albert Pederson;
Mrs. Albert Pederson;
Gloria June Broach, Inedependent Executrix of the Estate of Doreen
Ryan, Deceased;
Gloria June Broach, Trustee for Valerie Claire Broach;
Gloria June Broach, Trustee for Eric Weston Broach;
Melba Jo Parrott;
Jeannine Powell Corley;
William Morris Larimore;
Mrs. William Morris Larimore;
Charles D. Lovelace;
Mrs. Charles D. Lovelace;
David Peterson;
Mrs. David Peterson;
Albert Pederson;
Marie E. Mattison;
V. H. Houston;
Mrs. V. H. Houston;
J. B. Martindale;

3

Mrs. J. B. Martindale;
R. N. Martindale;
Mrs. R. N. Martindale;

In the event that any of the above named are deceased, their estates, their estates administrator or executor, if any, and their unknown heirs;

The unknown stockholders of The First State Bank of Le Sueur Center;
The unknown stockholders of U. S. I. Realty Co.;
The unknown stockholders of Mid-Frio Petroleum Co.;
The unknown stockholders of George C. Vaughn & Sons, Inc.;
The unknown stockholders of Martindale Mortgage Co.; and

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants;

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 andrecorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the

4

hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas.

5

243

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee,to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas.

The.unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16, 1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to

6

244

Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger, dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas.

7

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 andrecorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas.

8

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920 and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas.

9

A164

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas;

all of whom are hereinafter collectively called Defendants, and for cause of action would respectfully show unto the Court:

I.

Parties

Plaintiff, CHARLES R. MERRELL is an individual residing in Live Oak County, Texas. MARGIE L. MERRELL, a named Plaintiff in

10

Plaintiffs' Original Petition is deceased.

With the exception of the hereinafter set forth and identified Defendants, the place of residence of each of the above named Defendants is unknown to Plaintiff, and after due diligence, Plaintiff have been unable to locate the whereabouts of any of such Defendants.

The names and addresses of the heirs of the persons above-named as are now deceased are unknown to the Plaintiff.

Plaintiff does not know the names of any person claiming title or an interest in the lands hereinafter described under the above-mentioned unrecorded Deeds.

Plaintiff does not know the names of any person claiming title or an interest in the lands hereinafter described under the above-mentioned Deeds.

Plaintiff does not know the names and addresses of the stockholders of The First State Bank of Le SuererCenter; U. S. I. Realty Co.; Mid-Frio Petroleum Co.; George C. Vaughn & Sons, Inc.; and Martindale Mortgage Co. Plaintiff has diligently checked and searched the records of the relevant Secretaries of State, but have been unable to locate such stockholders.

The Defendant's addresses which are known to Plaintiff, but which are not known to be current, are as follows:

Doris Fraser
P. O. Box 608
Chester, Montana 59522, Doris Fraser has answered in this cause and service may be had on Doris Fraser, acting Pro Se, at P. O. Box 608, Chester Montana 59522.

G. W. Kolstad
P. O. Box 121

11

A166

Lothair, Montana 59461, G. W. Kolstad has answered in this cause and service may be had on G. W. Kolstad, acting Pro Se, at P. O. Box 121, Lothair Montana 59461.

Gloria June Broach Independent Executor of the Estate of Doreen Ryan, Deceased
Gloria June Broach,
Trustee for Valerie Claire Broach and
Eric Weston Broach
4707 Bicentennial Court
Houston, Texas 77066, Gloria June Broach Independent Executor of the Estate of Doreen Ryan, Deceased, and Gloria June Broach, Trustee for Valerie Claire Broach and Eric Weston Broach, has answered in this cause and service may be had on the attorney of record, Alfred A. Steinle, Law Offices of Steinle & Wetherbee, P. O. Box 400, Jourdanton, Texas 78026.

Melba Jo Parrott
40 Hedwig Circle
Houston, Texas 77024

William Morris Larimore
2909 Piedmont Ave.
Berkeley, California 94703

David Peterson
2205 First Avenue East
Williston, North Dakota 58801

II.

Real Property

At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the following described lands and premises situated in Live Oak County, Texas, to-wit:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts: with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with

12

250

A167

16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

13

251

A168

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 fro a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest

14

corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre

15

tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

owning and claiming the same in fee simple.

III.

Trespass to Try Title

A.    That on or about the the first day of January, 1989, Plaintiff was in actual possession of the above-described property. On this date, Defendants unlawfully entered upon said lands and premises and withheld from Plaintiff the possession thereof. Defendants continue to withhold the possession of the above described property.

B.    That Defendants have no right, title or interest in said lands, or any part thereof.

IV.

Adverse Possession

Without waiving the foregoing plea or Plaintiff's ownership or record title, and cumulative thereof, Plaintiff would show unto the Court:

A.    Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the real property hereinabove described, claiming under Deed dated October 31, 1975,

16

and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County, Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on this property as they became due, and before delinquency.

B. Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the real property herein described for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of their possession.

C. Plaintiff and Plaintiff's predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the real property herein described for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held said real property under claim of right, in good faith and under duly recorded deed purporting to convey said real property.

D. Plaintiff and Plaintiff's predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the real property herein described for a period of more than twenty-five (25) years preceding the commencement of this

17

A172

action. Plaintiff has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

E. Plaintiff and Plaintiff's predecessors in interest have openly exercised dominion over and asserted claim to this real property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action. The persons holding the apparent record title to the property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years during the twenty-five (25) years preceding the commencement of this action.

### Prayer

WHEREFORE, Plaintiff prays that the Defendants be cited to appear and answer, and that upon final hearing, Plaintiff have judgment for the title and possession of the real property which is the subject of this suit, for costs of suit, and for such other and further relief of which Plaintiff may be justly entitled.

Respectfully submitted,

Michael C. Sartori
Attorney for Plaintiff
P. O. Box 1222
George West, Texas   78022
(512) 449-2691
(512) 449-2380 (Telecopier)
State Bar No. 17655500

18

A173

# CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been delivered to all attorneys of record in accordance with Rule 21a of the Texas Rules of Civil Procedure, on this the 23rd day of October, 1991.

_____
Michael C. Sartori

STATE OF TEXAS
COUNTY OF LIVE OAK

I, Melanie Matkin, District Clerk of Live Oak County, Texas, do hereby certify that the foregoing is a true and correct copy of the original record, now in my lawful custody, and possession, as appears of record in Vol. _____ Page _____, minutes of said Court on file in my office

Witness my official hand and seal of office this _____

_____ 19____

Melanie Matkin, DISTRICT CLERK
Live Oak County, Texas

By _____

257

A174

NO. 6990-A

| | | |
|---|---|---|
| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

## STATEMENT OF FACTS

On the 12th day of May, 1993, the trial of the above entitled and numbered Cause came on to be heard before this Court.

Plaintiffs appeared by and through their attorney of record, Michael C. Sartori, and announced ready for trial. Defendants, G. W. KOLSTAD and DORIS FRASER, having answered, did not appear. Those Defendants cited by publication appeared by and through their attorney ad litem, William L. Hardwick, and announced ready for trial.

The following Defendants, although duly cited to appear, did not appear and wholly made default:

Mrs. Henrietta Willimann; Fintan J. Willimann; Mrs. Fintan J. Willimann; Fred Anderson; Mrs. Fred Anderson; M. J. Couch; Mrs. M. J. Couch; S. L. McKay; Mrs. S. L. McKay; Joseph Vanderyacht; Mrs. Joseph Vanderyacht; Earl E. Vanderyacht; Mrs. Earl E. Vanderyacht; J. W. Hauser; Mrs. J. W. Hauser; H. S. Tallakson; Mrs. H. S. Tallakson; Herman S. Tallakson; Mrs. Hermann S. Tallakson; Joseph Reichert; Mrs. Joseph Reichert; W. E. Ruckmann; Pearl M. Ruckmann; J. B. Hazlitt; Mrs. J. B. Hazlitt; W. A. Felix; Mrs. W. A. Felix; H. H. Johnson; Mrs. H. H. Johnson; Ottilie M. Gensch; Mrs. Ottilie M. Gensch; Fred Stadelman; Mrs. Fred Stadelman; C. E. Crook; Mrs. C. E. Crook; Jeannie E. Scoby; E. B. Grabow; Mrs. E. B. Grabow; Albert James; Mrs. Albert James; Adolph Hanson; Mrs. Adolph Hanson; Norman M. Negaard; Mrs. Norman M. Negaard; Charles Burkhard; Mrs. Charles Burkhard; Herman Burkhard; Mrs. Herman Burkhard; L. W. Greer; Mrs. L. W. Greer; T. L. Thoreson; Mrs. T. L. Thoreson; Henry L. Thoreson; Mrs. Henry L. Thoreson; A. E. Gage; Mrs. A. E. Gage; Mrs. Nellie Cooley; R. E. Baum; Mrs. R. E. Baum; A. Wenger; Mrs. A. Wenger; Adolph Wenger; Mrs. Adolph Wenger; W. S. Duffy; Mrs. W. S. Duffy; John T. Strand; Mrs. John T. Strand; George H. McMurtie; Mrs. George H. McMurtie; Carl A. Jensen; Mrs. Carl A. Jensen; Marie Bertha Jensen; Leo M. Foley; Mrs. Leo M. Foley; Arthur H. Forsan; Mrs. Arthur H. Forsan; A. J. LeFebvre; Mrs. A. J. LeFebvre; Arthur C. Voss; Mrs. Arthur C. Voss; D. F. Wade; Mrs. D. F. Wade; J. V. McAfee; Mrs. J. V. McAfee; Helge S. Casperson; Lewis Mortenson; Mrs. Lewis Mortenson; Peter E. Parson; Mrs. Peter E. Parson; Rev. A. Richter; Mrs. A. Richter; Bernard Powers; Mrs. Bernard Powers; James B. Fitzgerald; Mrs. James B. Fitzgerald; W. D. Youngquist; Mrs. W. D. Youngquist; L. T. Bougie; Mrs. L. T. Bougie; Swan Ericson; Mrs. Swan Ericson; Hans H. Jaul; Mrs. Hans H. Jaul; David Henry; Mrs. David Henry; W. P. Spangenberg;

Mrs. W. P. Spangenberg; W. F. Marquardt; Mrs. W. F. Marquardt; O. P. Kendel; Mrs. O. P. Kendel; Grover J. Krumsiek; Mrs. Grover J. Krumsiek; A. H. Hoyne; Mrs. A. H. Hoyne; Hulda Bergdahl; P. A. Bergdahl; Mrs. P. A. Bergdahl; Albert Pederson; Mrs. Albert Pederson; Jeannine Powell Corley; Charles D. Lovelace; Mrs. Charles D. Lovelace; Albert Pederson; Marie E. Mattison; V. H. Houston; Mrs. V. H. Houston; J. B. Martindale; Mrs. J. B. Martindale; R. N. Martindale; Mrs. R. N. Martindale. The unknown stockholders of The First State Bank of Le Sueur Center; The unknown stockholders of U. S. I. Realty Co.; The unknown stockholders of Mid-Frio Petroleum Co.; The unknown stockholders of George C. Vaughn & Sons, Inc.; The unknown stockholders of Martindale Mortgage Co.; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 and recorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and

2

42 PAGE 64

282

A176

recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas; The. unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and. recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16,

3

VOLUME 42 PAGE 65

283

A177

1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger, dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and

4

284

A178

recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 and recorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920

5

A179

and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas.

No jury was demanded and all matters in controversy, including questions of fact and of law, were submitted to the Court.

After examining the pleadings the Plaintiff, Charles R. Merrell, testified as follows:

A.    That he claims the ownership in and to the following described lands, and premises in Live Oak County, Texas:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following

6

A180

acreage in the various tracts: with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest

7

A181

corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the

8

East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

## TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South

9

A183

47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

(hereinafter referred to as the "Property").

B.    That the records of the District Clerk and County Clerk were searched to obtain the names and addresses of all persons claiming or who could possibly claim an interest in the Property and all such people were served with citation or if their addresses were unavailable they were served by publication.

C.    The Plaintiff, Margie L. Merrell, is deceased. All references in this judgment to the Plaintiff is to CHARLES R. MERRELL.

D.    At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the Property owning and claiming the same in fee simple.

E.    Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the Property, claiming under Deed dated October 31, 1975, and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County,

10

A184

Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on the Property as they became due, and before delinquency.

F.    Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the Property for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of his possession.

G.    Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held the Property under claim of right, in good faith and under duly recorded deed purporting to convey the Property.

H.    Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. Plaintiff has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

I.    Plaintiff and Plaintiffs' predecessors in interest have openly exercised dominion over and asserted claim to the Property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action. The persons holding the apparent record title to the Property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years during the twenty-five (25) years preceding the commencement of this action.

Plaintiff asked the Court to quiet title to the Property in the Plaintiff; to remove the cloud created by Defendants on the Property; have judgment for the title and possession of the Property which is the subject of this suit as set forth above and award such other and further relief to which Plaintiff may be justly entitled.

SIGNED this the _12th_ day of ____MAY_____, 1993.



_____
JUDGE PRESIDING
RONALD M. YEAGER

11

A185

APPROVED AS TO FORM:

Michael C. Sartori, Attorney for
Plaintiffs


William L. Hardwick, Attorney ad Litem for
Defendants served by publication.

**FILED**

At 10:50 O'Clock A M

MAY 1 2 1993

ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _____ Deputy

12

A186

NO. 6990-A

| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
|---|---|---|
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

## JUDGMENT

On _12th day_ of ___MAY___, 1993, this case came on for hearing. Plaintiffs appeared by and through their attorney of record, Michael C. Sartori, and announced ready for trial. Defendants, G. W. KOLSTAD and DORIS FRASER, having answered, did not appear. Those Defendants cited by publication appeared by and through their attorney ad litem, William L. Hardwick, and announced ready for trial.

The following Defendants, although duly cited to appear, did not appear and wholly made default:

Mrs. Henrietta Willimann; Fintan J. Willimann; Mrs. Fintan J. Willimann; Fred Anderson; Mrs. Fred Anderson; M. J. Couch; Mrs. M. J. Couch; S. L. McKay; Mrs. S. L. McKay; Joseph Vanderyacht; Mrs. Joseph Vanderyacht; Earl E. Vanderyacht; Mrs. Earl E. Vanderyacht; J. W. Hauser; Mrs. J. W. Hauser; H. S. Tallakson; Mrs. H. S. Tallakson; Herman S. Tallakson; Mrs. Hermann S. Tallakson; Joseph Reichert; Mrs. Joseph Reichert; W. E. Ruckmann; Pearl M. Ruckmann; J. B. Hazlitt; Mrs. J. B. Hazlitt; W. A. Felix; Mrs. W. A. Felix; H. H. Johnson; Mrs. H. H. Johnson; Ottilie M. Gensch; Mrs. Ottilie M. Gensch; Fred Stadelman; Mrs. Fred Stadelman; C. E. Crook; Mrs. C. E. Crook; Jeannie E. Scoby; E. B. Grabow; Mrs. E. B. Grabow; Albert James; Mrs. Albert James; Adolph Hanson; Mrs. Adolph Hanson; Norman M. Negaard; Mrs. Norman M. Negaard; Charles Burkhard; Mrs. Charles Burkhard; Herman Burkhard; Mrs. Herman Burkhard; L. W. Greer; Mrs. L. W. Greer; T. L. Thoreson; Mrs. T. L. Thoreson; Henry L. Thoreson; Mrs. Henry L. Thoreson; A. E. Gage; Mrs. A. E. Gage; Mrs. Nellie Cooley; R. E. Baum; Mrs. R. E. Baum; A. Wenger; Mrs. A. Wenger; Adolph Wenger; Mrs. Adolph Wenger; W. S. Duffy; Mrs. W. S. Duffy; John T. Strand; Mrs. John T. Strand; George H. McMurtie; Mrs. George H. McMurtie; Carl A. Jensen; Mrs. Carl A. Jensen; Marie Bertha Jensen; Leo M. Foley; Mrs. Leo M. Foley; Arthur H. Forsan; Mrs. Arthur H. Forsan; A. J. LeFebvre; Mrs. A.

J. LeFebvre; Arthur C. Voss; Mrs. Arthur C. Voss; D. F. Wade; Mrs. D. F. Wade; J. V. McAfee; Mrs. J. V. McAfee; Helge S. Casperson; Lewis Mortenson; Mrs. Lewis Mortenson; Peter E. Parson; Mrs. Peter E. Parson; Rev. A. Richter; Mrs. A. Richter; Bernard Powers; Mrs. Bernard Powers; James B. Fitzgerald; Mrs. James B. Fitzgerald; W. D. Youngquist; Mrs. W. D. Youngquist; L. T. Bougie; Mrs. L. T. Bougie; Swan Ericson; Mrs. Swan Ericson; Hans H. Jaul; Mrs. Hans H. Jaul; David Henry; Mrs. David Henry; W. P. Spangenberg; Mrs. W. P. Spangenberg; W. F. Marquardt; Mrs. W. F. Marquardt; O. P. Kendel; Mrs. O. P. Kendel; Grover J. Krumsiek; Mrs. Grover J. Krumsiek; A. H. Hoyne; Mrs. A. H. Hoyne; Hulda Bergdahl; P. A. Bergdahl; Mrs. P. A. Bergdahl; Albert Pederson; Mrs. Albert Pederson; Jeannine Powell Corley; Charles D. Lovelace; Mrs. Charles D. Lovelace; Albert Pederson; Marie E. Mattison; V. H. Houston; Mrs. V. H. Houston; J. B. Martindale; Mrs. J. B. Martindale; R. N. Martindale; Mrs. R. N. Martindale. The unknown stockholders of The First State Bank of Le Sueur Center; The unknown stockholders of U. S. I. Realty Co.; The unknown stockholders of Mid-Frio Petroleum Co.; The unknown stockholders of George C. Vaughn & Sons, Inc.; The unknown stockholders of Martindale Mortgage Co.; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 and recorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward

2

A188

Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward

3

A189

Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16, 1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger,

4

A190

dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 and recorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas; The unknown claimants who may

5

A191

claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920 and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of

6

A192

Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas.

The Court finds that the pleadings of the Plaintiffs and Defendants are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction over this cause of action and the parties. All persons entitled to citation were properly cited. A jury was waived, and all questions of fact and of law were submitted to the Court.

The Court, after hearing the evidence and arguments of counsel, finds that:

7

300

A193

1.      The Property which is the subject of this suit is situated in Live Oak County, Texas, and is described as follows:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts:  with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri

8

301

Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

## TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post

9

302

A195

for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

## TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172

10

and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

(hereinafter referred to as the "Property").

2.    The Plaintiff, Margie L. Merrell, is deceased. All references in this judgment to the Plaintiff is to CHARLES R. MERRELL.

3.    As to Plaintiffs' claim of ownership the Court finds that:

11

A197

a. At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the Property owning and claiming the same in fee simple.

b. Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the Property, claiming under Deed dated October 31, 1975, and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County, Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on the Property as they became due, and before delinquency.

c. Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the Property for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of his possession.

d. Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held the Property under claim of right, in good faith and under duly recorded deed purporting to convey the Property.

e. Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. Plaintiff

12

A198

has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

f.    Plaintiff and Plaintiffs' predecessors in interest have openly exercised dominion over and asserted claim to the Property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action.   The persons holding the apparent record title to the Property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years  during the twenty-five (25) years preceding the commencement of this action.

4.    That the ownership of the Property which is the subject of Plaintiff's suit is vested one hundred percent (100%) in the Plaintiff.

IT IS THEREFORE ORDERED, DECREED AND ADJUDGED, that the Plaintiff shall have and recover from the Defendants, and shall hold in fee simple, the following described tracts and parcels of land:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts:  with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of

13

A199

Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page

14

A200

24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

15

A201

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

16

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

together with all and singular the rights and appurtenances thereto.

All costs of court incurred are taxed against the party incurring same, for which execution may issue.

SIGNED AND ENTERED, this the _12ᵗʰ_ day of ___MAY___, 1993.

_____
JUDGE PRESIDING
RONALD M. YEAGER

APPROVED AS TO FORM:

_____
Michael C. Sartori, Attorney for
Plaintiff

_____
William L. Hardwick, Attorney ad Litem for
Defendants served by publication.

FILED
At _10:50_ O'Clock _a_ M
MAY 12 1993
ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By_____Deputy

VOLUME __42__ PAGE __91__

310

**CLERK'S RECORD**

**VOLUME 1 OF 1**

**Trial Court Cause No. L-13-0197-CV-B**
**In the 156th District Court**
**Of Live Oak County, Texas**
**Honorable Joel B. Johnson, Judge Presiding**

====================================================================

**G.W. KOLSTAD AND WILLIAM FRASER, Appellant**

**v.**

**MARY JUNE OWEN MERRELL, Appellee**

====================================================================

**Appealed to the**
**Court of Appeals, at Corpus Christi, Texas**
**For the 13th District of Texas, at Corpus Christi, Texas**

====================================================================

Attorney for Appellant:

| | |
|---|---|
| Name: | **SYED-SAIFUDDIN TIM YUSUF** |
| Address: | **11200 Broadway St. Ste. 2743** |
| | **Pearland, Texas 77584** |
| Telephone: | **866-249-7633** |
| Fax: | **866-249-7635** |
| SBOT No. | **50511534** |
| Attorney for: | **G.W. Kolstad and William Fraser, Appellant** |

====================================================================

**Delivered to the Court of Appeals,**
**For the Thirteenth District of Texas, at Corpus Christi,**
**Texas On this the 3rd day of February, 2015**

**Melanie Matkin, District Clerk**
**Live Oak County, Texas**

**BY: /S/ Aleasha French deputy**

====================================================================

**Appellate Court Cause No. 13-14-00623-CV**
**Filed in the Court of Appeals for the 13th District of Texas,**
**At Corpus Christi, Texas**
**This _____ day of February, 2015**

**Dorian Ramirez, Clerk**

**By _____, Clerk**

1

**TRIAL COURT CAUSE NO. L-13-0197-CV-B**
**APPELLANT COURT CAUSE NO. 13-14-00623-CV**

| | | |
|---|---|---|
| G.W. KOLSTAD AND WILLIAM FRASER § | | IN THE DISTRICT COURT |
| V. | § | 156th DISTRICT COURT |
| MARY JUNE OWEN MERRELL | § | LIVE OAK COUNTY, TEXAS |

**Volume 1**                 **INDEX**

Cover...…………………………………………………………….……....1

Index…………………………………………………………………………2

Caption ………………………………………………………………………4

Original Petition – Filed October 28, 2013……………………………………… 5

Defendant's Original Answer – Filed November 21, 2013………………………….13

Defendant's First Amended Original Answer – Filed July 14, 2014………………………41

Defendant's Second Amended Original Answer – Filed July 17, 2014 …………….…..… 53

Defendant's Motion for Traditional Summary Judgment – Filed August 15, 2014 …....…126

Plaintiff's Response to Defendant's Motion for Summary Judgment –

Filed September 19, 2014 …………………………………………………….....…341

Defendant's Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment –

Filed September 22, 2014 ...................................................................................347

Order Granting Defendant's Motion for Summary Judgment –

Filed September 24, 2014 ...................................................................................357

Plaintiff's Notice of Appeal – Filed October 28, 2014………………………….....358

Letter of Designation of Clerk's Record – Filed January 8, 2015 ………………...…..360

Bill of Costs – Filed January 9, 2015 …………………………………………………361

Payment Receipt in Full for Clerk's Record – Filed February 2, 2015 ………………362

Judge's Docket Sheet…………………………………………………………………..363

Clerk's Certificate ……………………………………………………………………364

**The State of Texas**                    §

**County of Live Oak**                    §


       In the 156th District Court of **Live Oak** County, Texas, the Honorable **Joel B. Johnson,** Judge Presiding, the following proceedings were held and the following instruments and other papers were filed in this cause, to-wit:


**Trial Court Cause Number L-13-0197-CV-B**


                              §       **IN THE 156th DISTRICT COURT**

**G.W. KOLSTAD and WILLIAM FRASER,**
    **Appellant**

                                    **OF**

**v.**

**MARY JUNE OWN MERRELL,**    §    **LIVE OAK COUNTY, TEXAS**
    **Appellee**

No. L-13-0197-CV-B

| | | |
|---|---|---|
| G.W. KOLSTAD and | § | IN THE DISTRICT COURT OF |
| WILLIAM FRASER | § | |
| Plaintiffs | § | |
| | § | |
| | § | |
| V. | § | LIVE OAK COUNTY, TEXAS |
| | § | |
| MARY JUNE OWEN MERRELL | § | |
| Defendant | § | |
| | § | |
| | § | 156TH JUDICIAL DISTRICT |
| | § | |

## ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, G.W. KOLSTAD and WILLIAM FRASER, Plaintiffs in the above named and numbered suit and file their Original Petition and Requests for Disclosure complaining of Defendant MARY JUNE OWEN MERRELL and for cause would show unto the Court as follows:

### I.
### DISCOVERY CONTROL PLAN

1. Plaintiffs intend to conduct discovery under Level 2 of the Texas Rules of Civil Procedure and affirmatively plead that this suit is not governed by the expedited-actions process in TEX. R. CIV. P. 169.

### II.
### CLAIM FOR RELIEF

2. Pursuant to TEX. R. CIV. P. 47, Plaintiffs seek any and all monetary compensation delivered to Defendant by virtue of that certain Oil, Gas and Mineral Lease dated March 24, 2010, recorded in Volume 157, Page 487 of the Deed Record, from Mary June Merrell, as Lessor, to Killam Oil Co, LTD, as Lessee, as it pertains to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4.

FILED
At 1:30 O'Clock P M
At George West, Texas

OCT 28 2013

MELANIE MATKIN
District Clerk, Live Oak County, Texas
By LorAnne Johnson Deputy

1

## III.
## PARTIES

3. Plaintiff, G. W. Kolstad is a resident of Montana who may be contacted by and through Counsel of Record.

4. Plaintiff William Fraser, successor in interest to Ms. Doris Fraser, is a resident of Montana who may be contacted by and through Counsel of Record.

5. Defendant Mary June Owen Merrill is the surviving spouse of Charles R. Merrell, and may be served with citation of suit at her place of residence 2411 Oak Brooke, Portland, Texas 78274.

## IV.
## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction because this suit seeks to establish title on real property.

7. Venue is proper in Live Oak County, Texas, pursuant to TEX. CIV. PRAC. & REM. CODE §§ 15.000 as this suit involves real property located in Live Oak County, Texas.

## V.
## FACTS

8. In Cause No. 6990-A, *Charles R. Merrell and wife, Margie L. Merrell v. Henrietta Willimann, et al.,* in the 36th Judicial District Court of Live Oak County, Texas, filed suit against Doris Fraser and G. W. Kolstead, successors in interest to Hannah Keeney and Annie Kolstad, for Trespass to Try Title and Adverse Possession as it relates to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, since October 31, 1975.

9. On May 12, 1993, the 36th Judicial District Court of Live Oak County, Texas, issued a "Statement of Facts and Judgment" in favor of Plaintiffs finding that actual, open,

2

peaceable notorious, exclusive, hostile and adverse possession of Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, had been had since October 31, 1975.

10. By Warranty Deed dated November 1, 1917, recorded in the Deed Records of Live Oak County, Texas, C. W. Reynolds, as Trustee and the United States Installment Realty Company, as Grantors, conveyed Tracts 191, 192, and 193 in Block 16 of the Live Bee Land Subdivision No. 4, and originally a part of the Festus Doyle Survey, No. 4, Live Oak County, Texas, to H. E. Hanson, as Grantee, and reserved a one-half (1/2) mineral interest. Thereafter, H. E. Hanson passed away intestate in January, 1940. As such, his one-half (1/2) mineral interest devolved in accordance with the Texas laws concerning intestate distribution as follows: one-half of one-half (1/2 of 1/2) to Eli Ness Hanson, and one-third of one-half (1/3 of 1/2) to Annie H. Kolstad, Hannah H. Keeney, and Sophia R. Routier, each. Eli Ness Hanson passed away intestate on January 26, 1955, and her interested devolved in equal shares to Annie H. Kolstad, Hannah H. Keeney, and Sophia R. Routier.

11. By Quit-Claim deed dated January 29, 1965, Sophia Routier, as Grantor, quit-claimed all her interest in Lots 191, 192, and 193 of Block 16 of the Live Bee Land Subdivision in the Festus Doyle Survey No. 4, to Hannah Keeney, as Grantee. By Warranty Deed dated June 10, 1970, recorded in Volume 227, Page 208 of the Deed Records, Hannah Keeney and Annie Kolstad, as Grantors, conveyed the surface only to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, to Maurice M. Chapman, as Grantee, and specifically reserved all minerals. After this Warranty Deed in 1970, 100% of the surface was vested in Maurice M. Chapman, and a 2/3 of 1/2 mineral interest was vested in Hannah Keeney and a 1/3 of 1/2 mineral interest was vested in Annie Kolstad.

7

12. By Oil, Gas and Mineral Lease dated March 24, 2010, recorded in Volume 157, Page 487 of the Deed Record, Mary June Merrell, as Lessor, granted, leased and let Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, Killam Oil Co, LTD, as Lessee.

## VI.
## CAUSES OF ACTION
### SUIT TO QUIET TITLE

13. Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein.

14. Plaintiffs seek to have the title record corrected by the filing of a judgment in the deed records to show ownership of the mineral rights and/or mineral title to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4.

15. Plaintiffs have title to the mineral rights based upon the previously mentioned facts. To wit: By Warranty Deed dated June 10, 1970, recorded in Volume 227, Page 208 of the Deed Records, Hannah Keeney and Annie Kolstad, as Grantors, conveyed the surface only to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, to Maurice M. Chapman, as Grantee, and specifically reserved all minerals. After this Warranty Deed in 1970, 100% of the surface was vested in Maurice M. Chapman, and a 2/3 of 1/2 mineral interest was vested in Hannah Keeney and a 1/3 of 1/2 mineral interest was vested in Annie Kolstad.

16. When a mineral interest has been separated from the surface ownership, no interest in the minerals can be acquired; for the mineral owner has an estate that is distinct from the surface fee. As such, the Trespass to Try Title and Adverse Possession matter brought did not divest Mr. William Fraser (as successor in interest to Ms. Doris Fraser) and Mr. G. W. Kolstad of their mineral interest in Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4.

4

## TRESPASS TO TRY TITLE

17. Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein.

18. Plaintiffs seek to recover the possession of mineral rights from that certain land unlawfully withheld from Defendants who currently maintain rights of immediate possession.

19. Plaintiffs can show title in the mineral rights to the disputed land emanating from a common source to which the Defendant claim. Specifically: by Warranty Deed dated June 10, 1970, recorded in Volume 227, Page 208 of the Deed Records, Hannah Keeney and Annie Kolstad, as Grantors, conveyed the surface only to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, to Maurice M. Chapman, as Grantee, and specifically reserved all minerals. After this Warranty Deed in 1970, 100% of the surface was vested in Maurice M. Chapman, and a 2/3 of 1/2 mineral interest was vested in Hannah Keeney and a 1/3 of 1/2 mineral interest was vested in Annie Kolstad.

20. As such, the previous litigation could not have divested Plaintiffs of their mineral interest in the land because the mineral interest has been separated from the surface ownership before the Defendants adversely possessed the subject land.

## DECLARATORY JUDGMENTS ACT

21. Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein.

22. Plaintiffs bring suit under the Declaratory Judgments Act (DJA) TEX. CIV. PRAC. & REM. CODE §§ 37.001, et seq. "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations" relating to the mineral rights associated with the subject land.

5

23. Plaintiffs bring suit under the Declaratory Judgments Act (DJA) TEX. CIV. PRAC. & REM. CODE §§ 37.001, et seq. "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations" relating to the Oil, Gas and Mineral Lease dated March 24, 2010, recorded in Volume 157, Page 487 of the Deed Record, Mary June Merrell, as Lessor, granted, leased and let Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, Killam Oil Co, LTD, as Lessee.

24. Pursuant to TEX. CIV. PRAC. & REM. CODE §§ 37.004, et seq., Plaintiffs petition this Court for a declaration that Cause No. 6990-A, *Charles R. Merrell and wife, Margie L. Merrell v. Henrietta Willimann, et al.*, the Trespass to Try Title and Adverse Possession matter, did not divest Plaintiffs of their mineral interest in the real property described as Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4.

## VII.
## DAMAGES

25. Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein.

26. Plaintiffs herein seek damages relating to the Oil, Gas and Mineral Lease dated March 24, 2010, recorded in Volume 157, Page 487 of the Deed Record, Mary June Merrell, as Lessor, granted, leased and let Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, Killam Oil Co, LTD, as Lessee. To wit, any amounts payable to Defendant under said lease are properly owed to Plaintiffs.

6

## VIII.
## ATTORNEYS' FEES

27. Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein.

28. As a result of Defendants' actions, Plaintiffs were forced to retain the Law Offices of S. Tim Yusuf, PLLC to file this action for declaratory relief and have agreed to pay the firm reasonable and necessary attorney's fees. An award of reasonable and necessary attorney's fees to the Plaintiffs would be equitable and just and therefore authorized by Section 37.009 of the Texas Civil Practice and Remedies Code.

## IX.
## REQUESTS FOR DISCLOSURE

29. Pursuant to TEX. R. CIV. P. 194.3(a), Defendants are requested to disclose, within 50 days of service of this request, the information and material described in TEX. R. CIV. P. 194.2(a) – (l).

## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, and that this Court , and that upon final judgment, this Court award Plaintiffs all damages, attorneys fees, costs and all other relief; general or specific; at law or in equity; to which Plaintiffs may be entitled.

**LAW OFFICES OF S. TIM YUSUF, PLLC.**

By: _____
S. Tim Yusuf
State Bar No. 50511534
Pearland Town Center
11200 Broadway, Suite 2743
Pearland, Texas 77584
Telephone: 866-249-7633
Facsimile: 866-249-7635

KIRBY, MATHEWS & WALRATH, PLLC

By: _____
M. Ryan Kirby
State Bar Number: 24036915
Esperson Building
815 Walker St., Suite 240
Houston, TX 77002
Telephone: (713) 489-4620
Telecopier: (713) 489-4619

**ATTORNEYS FOR PLAINTIFFS**

8

12

Cause No. L-13-0197-CV-B

G. W. KOLSTAD and     At __3:00__ o'Clock __P.m__ IN THE DISTRICT COURT OF
WILLIAM FRASER,     FILED
       At George West, Texas
        Plaintiffs     §
        NOV 2 1 2013 §
v.        MELANIE MATKIN     LIVE OAK COUNTY, TEXAS
     District Clerk, Live Oak County, Texas
MARY JUNE OWEN MERRELL, By, ROYAnne Johnson Deputy
        Defendant     §     156TH JUDICIAL DISTRICT

## DEFENDANT'S ORIGINAL ANSWER

MARY JUNE OWEN MERRELL (social security number ending in 229) and (driver's license number ending in 443), Defendant in the above-entitled and numbered cause, makes, files and serves her Special Exceptions, Original Answer to Plaintiffs' Original Petition, Verified Denial, Affirmative Defenses, and Plea of "Not Guilty" to Plaintiffs' Original Petition and any petition filed thereafter, and respectfully shows the Court the following:

### I.

*Discovery Level*

1. Discovery is intended to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

### II.

*Special Exceptions*

2. Defendant, in addition to pleading the affirmative defense of *res judicata*, hereinafter, would specially except, as a predicate to the subsequent filing of a Rule 91a of the Texas Rules of Civil Procedure motion to dismiss, to Plaintiffs' pleadings as a whole in that said causes of action, if any

*Defendant's Original Answer*
*Page - 1 -*



truly be asserted, are barred by the doctrine of *res judicata* as a matter of law. Defendant represents that previously, judgment was entered in a trespass to try title action styled *"Charles R. Merrell and wife, Margie L. Merrell, Plaintiffs, vs. Mrs. Henrietta Willimann, et al,"* in the 36th Judicial District Court of Live Oak County, Texas. The judgment of that suit, Cause No. 6990-A, signed and entered May 12, 1993, is recorded in Volume 42, Page 75, of the minutes of the District Court of Live Oak County, Texas. That judgment granted Plaintiff, Charles R. Merrell (Plaintiff Margie L. Merrell being deceased), all relief sought in such action and decreed that the ownership of the Property which is also the subject of this action, amongst others, was vested one hundred percent (100%) in Charles R. Merrell. (*See* Judgment marked Exhibit "A", attached hereto and incorporated herein for all purposes as if copied verbatim)(hereinafter the "Judgment"). The land described in Plaintiffs' Original Petition is carved out of the same land described in the Judgment. Two of the Defendants named in the Judgment are the same persons or privies to the same persons as the Plaintiffs in this suit. The Defendant in this suit is a successor to Charles R. Merrell, a Plaintiff in the earlier action. Defendant is the surviving spouse of Charles R. Merrell. Plaintiff G. W. Kolstad was a named Defendant in that earlier action, and was served, answered and noticed in said cause. Plaintiff William Fraser is the successor in interest to Doris Fraser, a named Defendant in that earlier action, who was served, answered and noticed in said cause. The Judgment remains in full force and has not been appealed, reversed, modified, or voided, and is a valid and final judgment. The Judgment is *res judicata* of the matters complained of by the Plaintiffs herein. Plaintiffs are estopped to seek recovery in this suit of the title to the property described therein, and the Judgment is expressly pleaded as a complete bar to the cause of action asserted by Plaintiffs. The facts set forth by Plaintiffs do not constitute a valid cause of action because the same are barred by the doctrine of *res*

*Defendant's Original Answer*
*Page - 2 -*

14

*judicata.* Defendant requests that the court sustain this special exception and order Plaintiffs' pleadings dismissed.

3.      Defendant specially excepts to Section II., ¶2. of Plaintiffs' Original Petition in that it fails to set forth a cause of action sufficient to give Defendant fair notice of the jurisdictional amount claimed by Plaintiffs in this matter. Plaintiffs, allege unleased mineral ownership of 52.6 acres of land, and seek to recover all monies received by Defendant from a third party contract (Oil, Gas and Mineral Lease, dated March 24, 2010, from Mary June Merrell, as Lessor, and Killam Oil Co., as Lessee, covering 246.33 acres of land out of the Live Bee Land Subdivision No. 4, Live Oak County, Texas, and recorded in Vol. 157, Page 487 of the Official Public Records of Live Oak County, Texas, (hereinafter "the Lease"). The Lease covers 246.33 acres of land. Plaintiffs claim ownership of 55.04 acres of land. The Lease contains a warranty clause only for the benefit of the Lessee and the same is subject to a proportionate reduction clause. Plaintiffs fail to identify what, if any monies payable under the Lease are due Plaintiffs. Terms, conditions and royalties payable under the Lease are the subject to the Lease/contract between Defendant and a third party lessee. Plaintiffs have no contract with such third party lessee. Plaintiffs are not parties to the Lease, nor direct beneficiaries or third party beneficiaries, thereof. Plaintiffs' lack of specificity makes it impossible to know what monies, attributable to what payment obligation and to what acreage, Plaintiffs are seeking. Plaintiffs further specify such damages, as set forth in Article VII., ¶ 26., of Plaintiffs' Original Petition, to be "any amounts payable to Defendant under the Lease are properly owned by Plaintiffs." Plaintiffs have failed to allege any viable cause of action against Defendant for which damages may be sought against Defendant irrespective of the amount of such claimed. Plaintiffs have failed to allege any facts supporting a claim that they are parties to the "Lease"; that they are "third party

beneficiaries" to the Lease; nor that the parties to the Lease intended the Plaintiffs to be parties to or beneficiaries under the Lease. Plaintiffs have failed to allege any breach of the Lease by any party thereto. Defendant would point out that any deficiency of ownership by the Defendant that might be alleged having been excused by the "proportionate reduction" clause contained in the Lease. Plaintiffs have failed to assert any damages to Plaintiffs by Defendant by Defendant's entering into the Lease with a third party, which third party sought out and contracted with the Defendant and not Plaintiffs. Plaintiffs have failed to allege that the Lease upon which Plaintiffs base their claim has been breached by anyone owing a duty to Plaintiffs. Plaintiffs have failed to set forth the manner in which monies payable under the Lease to which Plaintiffs may have a claim are calculated. The facts set forth by Plaintiffs do not constitute a valid cause of action. It is impossible to determine the amount in controversy in this matter so as to establish that this Court has jurisdiction over this case and which amount the Plaintiffs have the burden of alleging and proving. Defendant requests that the court sustain this special exception and order Plaintiffs to set forth a short statement of the cause of action sufficient to give fair notice of the claim involved and the amount in controversy at issue, and that such amendment to their pleadings be made on or before thirty (30) days of the filing of this Original Answer, and that, if the Plaintiffs fail or refuse to do so, this action be dismissed.

4. Defendant specially excepts to the allegations in Paragraph II and VII of Plaintiffs' Original Petition, on the ground that the pleading demonstrates that Plaintiffs are making a claim under a contract/Lease in which the Plaintiffs have no standing to bring. Standing is a party's justiciable interest in the suit and is a component of subject-matter jurisdiction. Plaintiffs, at best, are unleased mineral owners and not royalty owners, not being a party to any oil, gas and other mineral lease. Defendant is no a mineral owner, but his mineral interest was sold to a lessee with a possiblity of

*Defendant's Original Answer*
*Page - 4 -*

reverter. Defendant is now a royalty owner under an oil, gas and other mineral lease. The Defendant receives royalties by reason of a third party contract to which Plaintiffs are strangers, and as such, Plaintiffs have no cause of action against Defendant for such royalties. Plaintiffs are neither parties to the Lease nor third party beneficiaries of the Lease. The Lease indicates on its face that Plaintiffs lack standing to bring suit against Defendant for the acts and/or omissions complained of in Plaintiffs' Original Petition. Defendant requests that the court sustain this special exception and order Plaintiffs to set forth a short statement of the cause of action sufficient to give fair notice to Defendant that Plaintiffs having standing to bring this action, and that such amendment to their pleadings be made on or before thirty (30) days of the filing of this Original Answer, and that, if the Plaintiffs fail or refuse to do so, this action be dismissed.

5.    Defendant specially excepts to the allegations in Article VII, ¶28 on the ground that the pleading demonstrates that Plaintiffs are attempting to artfully plead a title dispute as a declaratory judgment action just to obtain attorney's fees when that claim is a trespass-to-try-title action. A trespass to try title lawsuit is an action to recover possession of land withheld from an owner with a right to immediate possession. The Declaratory Judgment Act, on the other hand, provides a method to seek a declaration of rights under certain instruments, and permits an award of attorney's fees subject to the trial court's discretion. The language in Texas Property Code §22.001 ("trespass to try title action is *the* method of determining title") is mandatory. Texas courts have held that if the determination only *prospectively* implicates title, then the dispute does not have to be brought as a trespass to try title action. Here the Plaintiffs are not asking for a prospective determination of title but one that goes backwards. The substance and not the form of the pleadings is used to determine whether an action is properly considered as a trespass or declaratory judgment action. Any

suit involving a dispute over the title to land is an action in trespass to try title, whatever its form and regardless of the relief sought. Defendant requests that the court sustain this special exception and order Plaintiffs to strike Article VIII of Plaintiffs' Original Petition from said pleading on or before thirty (30) days of the filing of this Original Answer.

### III.

### *General Denial*

6.     Subject to the foregoing special exception, Defendant denies generally each and every allegation in Plaintiffs' Original Petition and demands strict proof thereof upon the trial of this case. Subject to such special exceptions, stipulations, affirmative defenses and admissions as may be hereafter made, the Defendant asserts a general denial, as authorized by Rule 92, Texas Rules of Civil Procedure, and requests that the Plaintiffs be required to prove by a preponderance of the evidence all of the charges and allegations made against the Defendant in Plaintiffs' Original Petition, as required by the Texas Rules of Civil Procedure, and the laws of the State of Texas.

7.     Pursuant to Rule 63, 69 and 98 of the Texas Rules of Civil Procedure, the Defendant reserves the right to amend and/or supplement her answer to further answer and specially except to Plaintiffs' allegations and claims.

### IV.

### *Verified Denial*

8.     Subject to and without waiving the foregoing Special Exceptions and General Denial, or in the alternative, but only to the extent necessary to protect her rights, Defendant specifically asserts, pursuant to Rule 93(4) of the Texas Rules of Civil Procedure, that there is a defect of parties as

claimed and set forth by Plaintiffs.

## V.

## *Affirmative Defenses*

9.      Subject to and without waiving the foregoing Special Exceptions, General Denial and Verified Denial, Defendant asserts, pursuant to Rule 94 of the Texas Rules of Civil Procedure, the following affirmative defenses which, singly or in combination, bar Plaintiffs' right to recover, in whole or in part, the damages alleged in Plaintiff's Original Petition:

a.      Plaintiffs' claims are barred, in whole or in part, because Plaintiff lacks the requisite standing to bring this action. Plaintiffs are not parties to the Lease made the subject of Plaintiffs' suit. Plaintiffs are not third party beneficiaries to the Lease made the subject of this suit. Defendant owes no duty to Plaintiffs. Defendant has no contractual relationship with Plaintiffs. As pled by Plaintiffs there is no real controversy between Plaintiffs and Defendant which can be determined by this suit. Plaintiffs lack standing to sue over proceeds of the Lease, the Lease is a contract, Plaintiffs are not parties to the Lease, the Lease is a contract that is subject to its terms and conditions, the Lease clearly states that it covers 246.33 acres of land, and that the Lessor is to be paid under the Lease based upon that the terms and conditions of the Lease subject to a proportionate reduction clause. Assuming that Plaintiffs are owners of unleased minerals covered by the description in the Lease, Plaintiffs are still not parties to the Lease nor a third party beneficiaries to the Lease. They are and remain unlease mineral owners and their rights do not stem from the Lease but rather than from the alleged ownership in the minerals. If correct in their claim, Plaintiffs are entitled to their proportionate share of the proceeds derived by the working interest owner under the Lease less any

*Defendant's Original Answer*
*Page - 7 -*

and all costs of production.

b.     Defendant would further show that Plaintiffs' lawsuit is frivolous, groundless, unreasonable, and brought in bad faith. As a result of the frivolous lawsuit, Defendant has been forced to hire the undersigned attorneys to defend herself and has incurred and will incur reasonable and necessary attorneys' fees for the trial and any appeals of this case. Defendant is entitled to and hereby seek an award of all its reasonable attorneys' fees, as well as her costs incurred in defending this lawsuit.

c.     Plaintiffs' claims and issues are barred, in whole or in part, by application of the doctrine of *res judicata* because a final judgment on the merits has been rendered in litigation involving the same parties or their privies, claims and issues, including trespass to try title. The claims and issues asserted by Plaintiffs could have been raised, in the earlier litigation and are now barred by *res judicata*. In determining whether a claim or cause of action not asserted in a prior action is considered to be one that should have been raised there, Texas follows the "transactional approach," which, generally stated, looks to whether the subsequent claim or cause of action arises out of the same subject matter and set of facts as the previous action and which, through the exercise of "diligence," could have been litigated in the previous suit. There has been no change in the nucleus of operative facts which existed at the time of the previous suit and at this time. A change of legal theories will not prevent the doctrine of *res judicata* from barring claims. The doctrine stands for the position that any cause of action which arises out of those same facts should be litigated in the same lawsuit. In other words, a final judgment in an action should bar subsequent suits based on the same "transaction," or series of connected "transactions," out of which the first

*Defendant's Original Answer*
*Page - 8 -*

action arose.

d. Plaintiffs' claims and issues are barred, in whole or in part, by application of the doctrine of collateral estoppel because a final judgment on the merits has been rendered in litigation involving the same claims and issues, including trespass to try title. The claims and issues addressed by Plaintiffs could have been raised in the earlier litigation and are now barred by collateral estoppel.

e. Plaintiffs' claims and issues are barred, in whole or in part, by application of the statute of limitations.

f. Plaintiffs' claims and issues are barred, in whole or in part, by application of the Statute of Frauds.

## VI.

### *Plea of Not Guilty*

Pursuant to Rule 788 of the Texas Rules of Civil Procedure, Defendant pleads that she is "not guilty" of the injury complained of in the Plaintiffs' Original Petition filed against Defendant.

## VII.

### *Request For Disclosure*

10. Pursuant to Rule 194 of the Texas Rules of Civil Procedure, you (Plaintiffs) are requested to disclose, within 30 days after service of this request, the information or material described in rule 194.2 of the Texas Rules of Civil Procedure. The originals or copies of documents and other tangible items requested must be produced for inspection and copying at the Law Office of Michael C. Sartori, 502A Houston Street, George West, Texas 78022, within 30 days after service of this

*Defendant's Original Answer*
*Page - 9 -*

request, together with a written response. Each written response must be preceded by the request to which it applies. No objection or assertion of work product privilege is permitted to a request under this rule. If you fail to comply with this request, the court may order sanctions against you in accordance with the Texas Rules of Civil Procedure. Your response must be signed.

WHEREFORE, Defendant requests judgment of the court as follows:

1. That Plaintiffs take nothing by their suit.

2. That Defendant have judgment over and against Plaintiffs to compensate her for reasonable attorney's fees.

3. That Defendant recover all costs, together with such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

MICHAEL C. SARTORI, Attorney for Defendant
502A Houston Street
P. O. Box 1222
George West, Texas 78022
(361) 449-2691
(361) 449-2380 (FAX)
SBN# 17655500

*Defendant's Original Answer*
*Page - 10 -*

22

<u>**VERIFICATION**</u>

STATE OF TEXAS                    §

COUNTY OF Sen Patricio      §

ANGELINA A. MENDEZ
Notary Public
STATE OF TEXAS
My Comm. Exp. 05-06-2017

Before me, the undersigned Notary Public, on this day personally appeared **MARY JUNE OWEN MERRELL**, and after being duly sworn stated under oath that she is the Defendant in this cause; that she has read the above Defendant's Original Answer; and that every Verified Denial contained in the answer is within her personal knowledge and is true and correct.


_Mary June Owen Merrell_
**MARY JUNE OWEN MERRELL**


SUBSCRIBED AND SWORN TO BEFORE ME on  \\ / 20              , 2013.


Notary Public in and for the State of Texas


## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the <u>Texas Rules of Civil Procedure</u> on _November 21_, 2013.


Michael C. Sartori
Attorney for Defendant


*Defendant's Original Answer*
*Page - 11 -*


NO. 6990-A

| | | |
|---|---|---|
| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

JUDGMENT

On 12th day of __MAY__, 1993, this case came on for hearing. Plaintiffs appeared by and through their attorney of record, Michael C. Sartori, and announced ready for trial. Defendants, G. W. KOLSTAD and DORIS FRASER, having answered, did not appear. Those Defendants cited by publication appeared by and through their attorney ad litem, William L. Hardwick, and announced ready for trial.

The following Defendants, although duly cited to appear, did not appear and wholly made default:

Mrs. Henrietta Willimann; Fintan J. Willimann; Mrs. Fintan J. Willimann; Fred Anderson; Mrs. Fred Anderson; M. J. Couch; Mrs. M. J. Couch; S. L. McKay; Mrs. S. L. McKay; Joseph Vanderyacht; Mrs. Joseph Vanderyacht; Earl E. Vanderyacht; Mrs. Earl E. Vanderyacht; J. W. Hauser; Mrs. J. W. Hauser; H. S. Tallakson; Mrs. H. S. Tallakson; Herman S. Tallakson; Mrs. Hermann S. Tallakson; Joseph Reichert; Mrs. Joseph Reichert; W. E. Ruckmann; Pearl M. Ruckmann; J. B. Hazlitt; Mrs. J. B. Hazlitt; W. A. Felix; Mrs. W. A. Felix; H. H. Johnson; Mrs. H. H. Johnson; Ottilie M. Gensch; Mrs. Ottilie M. Gensch; Fred Stadelman; Mrs. Fred Stadelman; C. E. Crook; Mrs. C. E. Crook; Jeannie E. Scoby; E. B. Grabow; Mrs. E. B. Grabow; Albert James; Mrs. Albert James; Adolph Hanson; Mrs. Adolph Hanson; Norman M. Negaard; Mrs. Norman M. Negaard; Charles Burkhard; Mrs. Charles Burkhard; Herman Burkhard; Mrs. Herman Burkhard; L. W. Greer; Mrs. L. W. Greer; T. L. Thoreson; Mrs. T. L. Thoreson; Henry L. Thoreson; Mrs. Henry L. Thoreson; A. E. Gage; Mrs. A. E. Gage; Mrs. Nellie Cooley; R. E. Baum; Mrs. R. E. Baum; A. Wenger; Mrs. A. Wenger; Adolph Wenger; Mrs. Adolph Wenger; W. S. Duffy; Mrs. W. S. Duffy; John T. Strand; Mrs. John T. Strand; George H. McMurtie; Mrs. George H. McMurtie; Carl A. Jensen; Mrs. Carl A. Jensen; Marie Bertha Jensen; Leo M. Foley; Mrs. Leo M. Foley; Arthur H. Forsan; Mrs. Arthur H. Forsan; A. J. LeFebvre; Mrs. A.

42 page 25

24



J. LeFebvre; Arthur C. Voss; Mrs. Arthur C. Voss; D. F. Wade; Mrs. D. F. Wade; J. V. McAfee; Mrs. J. V. McAfee; Helge S. Casperson; Lewis Mortenson; Mrs. Lewis Mortenson; Peter E. Parson; Mrs. Peter E. Parson; Rev. A. Richter; Mrs. A. Richter; Bernard Powers; Mrs. Bernard Powers; James B. Fitzgerald; Mrs. James B. Fitzgerald; W. D. Youngquist; Mrs. W. D. Youngquist; L. T. Bougie; Mrs. L. T. Bougie; Swan Ericson; Mrs. Swan Ericson; Hans H. Jaul; Mrs. Hans H. Jaul; David Henry; Mrs. David Henry; W. P. Spangenberg; Mrs. W. P. Spangenberg; W. F. Marquardt; Mrs. W. F. Marquardt; O. P. Kendel; Mrs. O. P. Kendel; Grover J. Krumsiek; Mrs. Grover J. Krumsiek; A. H. Hoyne; Mrs. A. H. Hoyne; Hulda Bergdahl; P. A. Bergdahl; Mrs. P. A. Bergdahl; Albert Pederson; Mrs. Albert Pederson; Jeannine Powell Corley; Charles D. Lovelace; Mrs. Charles D. Lovelace; Albert Pederson; Marie E. Mattison; V. H. Houston; Mrs. V. H. Houston; J. B. Martindale; Mrs. J. B. Martindale; R. N. Martindale; Mrs. R. N. Martindale. The unknown stockholders of The First State Bank of Le Sueur Center; The unknown stockholders of U. S. I. Realty Co.; The unknown stockholders of Mid-Frio Petroleum Co.; The unknown stockholders of George C. Vaughn & Sons, Inc.; The unknown stockholders of Martindale Mortgage Co.; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J. Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 and recorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward

2



Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward

3

VOLUME __42__ PAGE __77__

26



Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16, 1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger,

4



dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 and recorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas; The unknown claimants who may

5

claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920 and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of

6

29



Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas.

The Court finds that the pleadings of the Plaintiffs and Defendants are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction over this cause of action and the parties. All persons entitled to citation were properly cited. A jury was waived, and all questions of fact and of law were submitted to the Court.

The Court, after hearing the evidence and arguments of counsel, finds that:

7



1.    The Property which is the subject of this suit is situated in Live Oak County, Texas, and is described as follows:

<u>Tract I</u>

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts:  with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri

8

31

Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

## TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post

9



for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

## TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172

10

33

 

and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

(hereinafter referred to as the "Property").

2.      The Plaintiff, Margie L. Merrell, is deceased. All references in this judgment to the Plaintiff is to CHARLES R. MERRELL.

3.      As to Plaintiffs' claim of ownership the Court finds that:

11

a.     At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the Property owning and claiming the same in fee simple.

b.     Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the Property, claiming under Deed dated October 31, 1975, and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County, Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on the Property as they became due, and before delinquency.

c.     Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the Property for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of his possession.

d.     Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held the Property under claim of right, in good faith and under duly recorded deed purporting to convey the Property.

e.     Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. Plaintiff

12

has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

f.     Plaintiff and Plaintiffs' predecessors in interest have openly exercised dominion over and asserted claim to the Property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action.   The persons holding the apparent record title to the Property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years  during the twenty-five (25) years preceding the commencement of this action.

4.     That the ownership of the Property which is the subject of Plaintiff's suit is vested one hundred percent (100%) in the Plaintiff.

IT IS THEREFORE ORDERED, DECREED AND ADJUDGED, that the Plaintiff shall have and recover from the Defendants, and shall hold in fee simple, the following described tracts and parcels of land:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts:  with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of

13

Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page

14

24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

15



THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

16




THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

together with all and singular the rights and appurtenances thereto.

All costs of court incurred are taxed against the party incurring same, for which execution may issue.

SIGNED AND ENTERED, this the _12th_ day of _MAY_, 1993.

_____
JUDGE PRESIDING
RONALD M. YEAGER

APPROVED AS TO FORM:

_____
Michael C. Sartori, Attorney for
Plaintiff

FILED

At _10:50_ O'Clock _a_ M

MAY 1 2 1993

ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By_____ Deputy

_____
William L. Hardwick, Attorney ad Litem for
Defendants served by publication.

17

Cause No. L-13-0197-CV-B

| | | |
|---|---|---|
| G. W. KOLSTAD and<br>WILLIAM FRASER,<br>Plaintiffs | §<br>§<br>§<br>§ | IN THE DISTRICT COURT OF |
| v. | §<br>§ | LIVE OAK COUNTY, TEXAS |
| MARY JUNE OWEN MERRELL,<br>Defendant | §<br>§<br>§ | 156TH JUDICIAL DISTRICT |

## DEFENDANT'S FIRST AMENDED ORIGINAL ANSWER

MARY JUNE OWEN MERRELL (social security number ending in 229) and (driver's license number ending in 443), Defendant in the above-entitled and numbered cause, makes, files and serves her Special Exceptions, First Amended Original Answer to Plaintiffs' Original Petition, Verified Denial, Affirmative Defenses, and Plea of "Not Guilty" to Plaintiffs' Original Petition and any petition filed thereafter, and respectfully shows the Court the following:

### I.

### *Discovery Level*

1.      Discovery is intended to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

### II.

### *Special Exceptions*

2.      Defendant, in addition to pleading the affirmative defense of *res judicata*, hereinafter, would specially except, as a predicate to the subsequent filing of a Texas Rules of Civil Procedure Rule 166a motion for summary judgment, to Plaintiffs' pleadings as a whole in that said causes of action,

*Defendant's First Amended Answer*
*Page - 1 -*

At _1:05_ O'Clock _____ P M
FILED
At George West, Texas

JUL 1 4 2014

MELANIE MATKIN
District Clerk, Live Oak County, Texas
By_Roxanne Johnson_Deputy
41

if any truly be asserted, are barred by the doctrine of *res judicata* as a matter of law. *Res judicata* requires proof of the following three elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action on the same claims as were raised or could have been raised in the first action. The above listed *res judicata* elements exist in the case before the bar. The first element is met by the Final Judgment, as supported by a Statement of Facts on file in this case, both of which having been signed and entered May 12, 1993, a trespass to try title action styled *"Cause No. 6990-A, Charles R. Merrell and wife, Margie L. Merrell, Plaintiffs, vs. Mrs. Henrietta Willimann, et al,"* was filed in the 36th Judicial District Court of Live Oak County, Texas and recorded in Volume 42, Page 75, of the minutes of the District Court of Live Oak County, Texas. (The judgment in the prior case was based upon Plaintiff's First Amended Original Petition, a copy of the same being marked as Exhibit "A", attached hereto and incorporated herein for all purposes as if copied verbatim; a copy of the final, and appealable, judgment rendered in that suit being marked as Exhibit "B", attached hereto and incorporated herein for all purposes as if copied verbatim (hereinafter the "Judgment"); and Statement of Facts marked Exhibit "C" attached hereto and incorporated herein for all purposes as if copied verbatim (hereinafter "Statement of Facts"). The Judgment granted Plaintiff, Charles R. Merrell all relief sought in such action and decreed that the ownership of the Property which is also the subject of this action, amongst others, was vested one hundred percent (100%) in Charles R. Merrell. The land described in the petition in the earlier action was a tract of land out of which the Property in this case was carved. The second element of *res judicata* is met in that the Plaintiffs in this case, or their privies were Defendants in the earlier case. The Defendant in this case is the successor to Charles R. Merrell, the Plaintiff in the earlier action. Plaintiff G. W. Kolstad was a

named Defendant in that earlier action, and was served, and answered and noticed in said cause. Plaintiff William Fraser is the successor in interest to Doris Fraser, a named Defendant in that earlier action, who was served, and answered in said cause. The Defendants G. W. Kolstad and Doris Fraser in the earlier case filed a joint answer and in addition to a general denial raised the issue of mineral ownership, and claimed that they owned collectively one-half (½) the minerals under the minerals which are the subject of this suit, a copy of said joint answer is marked Exhibit "D" attached hereto and incorporated herein for all purposes as if copied verbatim (hereinafter "Answer"). The Judgment remains in full force and has not been appealed, reversed, modified, or voided, and is a valid and final judgment. The Judgment is *res judicata* of the matters complained of by the Plaintiffs herein. Plaintiffs are estopped to seek recovery in this suit of the title to the property described therein, and the Judgment is expressly pleaded as a complete bar to the causes of action asserted by Plaintiffs. Defendant requests that the court sustain this special exception and order Plaintiff to replead the petition within thirty days of the date of the Court's Order in accordance with Texas law and this Court's ruling on this special exception.

3.      Defendant, in addition to pleading the affirmative defense of *collateral estoppel*, hereinafter, would specially except, as a predicate to the subsequent filing of a Texas Rules of Civil Procedure Rule 166a motion for summary judgment, to Plaintiffs' pleadings as a whole in that said causes of action, if any truly be asserted, are barred by the doctrine of *collateral estoppel*, issue preclusion, as a matter of law. The party seeking to assert the bar of collateral estoppel must establish that 1) the facts sought to be litigated in the second suit (trespass to try title, quiet title) were fully and fairly litigated in the first action, an issue was "actually litigated" when it was properly raised, by the pleadings or otherwise, and it was submitted for determination, and determined (*See* Petition,

*Defendant's First Amended Answer*
*Page - 3 -*

Answer, Judgment and Statement of Facts); 2) those facts were essential to the first judgment, the fact issues litigated in first action were the essential elements necessary to prevail under trespass to try tile, including all elements necessary to prove and/or defend title under the 5, 10 and 25 year adverse possession statutes of limitation, 10, and 25 year statutes, and which represented the factual determinations necessary to form a basis of the judgement; and 3) the parties in the present case were cast as adversaries in that first suit. In this case the Plaintiffs are identical to Defendants in the prior case or priviy to such Defendants. The Defendant in this case is priviy to the Plaintiff in the prior case.

4.      Defendant specially excepts to Section II., ¶2. of Plaintiffs' Original Petition in that it fails to set forth a cause of action sufficient to give Defendant fair notice of the jurisdictional amount claimed by Plaintiffs in this matter. Plaintiffs, allege unleased mineral ownership of 52.6 acres of land, and seek to recover all monies received by Defendant from a third party contract (Oil, Gas and Mineral Lease, dated March 24, 2010, from Mary June Merrell, as Lessor, and Killam Oil Co., as Lessee, covering 246.33 acres of land out of the Live Bee Land Subdivision No. 4, Live Oak County, Texas, and recorded in Vol. 157, Page 487 of the Official Public Records of Live Oak County, Texas, (marked as Exhibit "C" attached hereto and incoporated herein for all purposes as if copied verbatim)(hereinafter "the Lease"). The Lease covers 246.33 acres of land. Plaintiffs claim ownership of an interest in 55.04 acres of land. The Lease contains a warranty clause only for the benefit of the Lessee and the same is subject to a proportionate reduction clause. Plaintiffs fail to identify what, if any monies payable under the Lease are due Plaintiffs. Terms, conditions and royalties payable under the Lease are the subject to the Lease/contract between Defendant and a third party lessee. Plaintiffs have no contract with such third party lessee. Plaintiffs are not parties to the

*Defendant's First Amended Answer*
*Page - 4 -*

Lease, nor direct beneficiaries or third party beneficiaries, thereof. Plaintiffs' lack of specificity makes it impossible to know what monies, attributable to what payment obligation and to what acreage, Plaintiffs are seeking. Plaintiffs further specify such damages, as set forth in Article VII., ¶ 26., of Plaintiffs' Original Petition, to be "any amounts payable to Defendant under the Lease are properly owned by Plaintiffs." Plaintiffs have failed to allege any viable cause of action against Defendant for which damages may be sought against Defendant irrespective of the amount of such claimed. Plaintiffs have failed to allege any facts supporting a claim that they are parties to the "Lease"; that they are "third party beneficiaries" to the Lease; nor that the parties to the Lease intended the Plaintiffs to be parties to or beneficiaries under the Lease. Plaintiffs have failed to allege any breach of the Lease by any party thereto. Defendant would point out that any deficiency of ownership by the Defendant that might be alleged having been excused by the "proportionate reduction" clause contained in the Lease. Plaintiffs have failed to assert any damages to Plaintiffs by Defendant by Defendant's entering into the Lease with a third party, which third party sought out and contracted with the Defendant and not Plaintiffs. Plaintiffs have failed to allege that the Lease upon which Plaintiffs base their claim has been breached by anyone owing a duty to Plaintiffs. Plaintiffs have failed to set forth the manner in which monies payable under the Lease to which Plaintiffs may have a claim are calculated. The facts set forth by Plaintiffs do not constitute a valid cause of action. It is impossible to determine the amount in controversy in this matter so as to establish that this Court has jurisdiction over this case and which amount the Plaintiffs have the burden of alleging and proving. Defendant requests that the court sustain this special exception and order Plaintiffs to set forth a short statement of the cause of action sufficient to give fair notice of the claim involved and the amount in controversy at issue, and that such amendment to their

pleadings be made on or before thirty (30) days of the filing of this Original Answer, and that, if the Plaintiffs fail or refuse to do so, this action be dismissed.

5.     Defendant specially excepts to the allegations in Paragraph II and VII of Plaintiffs' Original Petition, on the ground that the pleading demonstrates that Plaintiffs are making a claim under a contract/Lease in which the Plaintiffs have no standing to bring. Standing is a party's justiciable interest in the suit and is a component of subject-matter jurisdiction. Plaintiffs, at best, are unleased mineral owners and not royalty owners, not being a party to any oil, gas and other mineral lease. Defendant is no a mineral owner, but his mineral interest was sold to a lessee with a possiblity of reverter. Defendant is now a royalty owner under an oil, gas and other mineral lease. The Defendant receives royalties by reason of a third party contract to which Plaintiffs are strangers, and as such, Plaintiffs have no cause of action against Defendant for such royalties. Plaintiffs are neither parties to the Lease nor third party beneficiaries of the Lease. The Lease indicates on its face that Plaintiffs lack standing to bring suit against Defendant for the acts and/or omissions complained of in Plaintiffs' Original Petition. Defendant requests that the court sustain this special exception and order Plaintiffs to set forth a short statement of the cause of action sufficient to give fair notice to Defendant that Plaintiffs having standing to bring this action, and that such amendment to their pleadings be made on or before thirty (30) days of the filing of this Original Answer, and that, if the Plaintiffs fail or refuse to do so, this action be dismissed.

6.     Defendant specially excepts to the allegations in Article VII, ¶28 on the ground that the pleading demonstrates that Plaintiffs are attempting to artfully plead a title dispute as a declaratory judgment action just to obtain attorney's fees when that claim is a trespass-to-try-title action. A

trespass to try title lawsuit is an action to recover possession of land withheld from an owner with a right to immediate possession. The Declaratory Judgment Act, on the other hand, provides a method to seek a declaration of rights under certain instruments, and permits an award of attorney's fees subject to the trial court's discretion. The language in Texas Property Code §22.001 ("trespass to try title action is *the* method of determining title") is mandatory. Texas courts have held that if the determination only *prospectively* implicates title, then the dispute does not have to be brought as a trespass to try title action. Here the Plaintiffs are not asking for a prospective determination of title but one that goes backwards. The substance and not the form of the pleadings is used to determine whether an action is properly considered as a trespass or declaratory judgment action. Any suit involving a dispute over the title to land is an action in trespass to try title, whatever its form and regardless of the relief sought. Defendant requests that the court sustain this special exception and order Plaintiffs to strike Article VIII of Plaintiffs' Original Petition from said pleading on or before thirty (30) days of the filing of this Original Answer.

## III.

### *General Denial*

7. Subject to the foregoing special exception, Defendant denies generally each and every allegation in Plaintiffs' Original Petition and demands strict proof thereof upon the trial of this case. Subject to such special exceptions, stipulations, affirmative defenses and admissions as may be hereafter made, the Defendant asserts a general denial, as authorized by Rule 92, Texas Rules of Civil Procedure, and requests that the Plaintiffs be required to prove by a preponderance of the evidence all of the charges and allegations made against the Defendant in Plaintiffs' Original

*Defendant's First Amended Answer*
*Page - 7 -*

Petition, as required by the Texas Rules of Civil Procedure, and the laws of the State of Texas.

8.      Pursuant to Rule 63, 69 and 98 of the Texas Rules of Civil Procedure, the Defendant reserves the right to amend and/or supplement her answer to further answer and specially except to Plaintiffs' allegations and claims.

## IV.

### *Verified Denial*

9.      Subject to and without waiving the foregoing Special Exceptions and General Denial, or in the alternative, but only to the extent necessary to protect her rights, Defendant specifically asserts, pursuant to Rule 93(4) of the Texas Rules of Civil Procedure, that there is a defect of parties as claimed and set forth by Plaintiffs.

## V.

### *Affirmative Defenses*

10.      Subject to and without waiving the foregoing Special Exceptions, General Denial and Verified Denial, Defendant asserts, pursuant to Rule 94 of the Texas Rules of Civil Procedure, the following affirmative defenses which, singly or in combination, bar Plaintiffs' right to recover, in whole or in part, the damages alleged in Plaintiff's Original Petition:

      a.      Plaintiffs' claims are barred, in whole or in part, because Plaintiff lacks the requisite standing to bring this action. Plaintiffs are not parties to the Lease made the subject of Plaintiffs' suit. Plaintiffs are not third party beneficiaries to the Lease made the subject of this suit. Defendant owes no duty to Plaintiffs. Defendant has no contractual relationship with Plaintiffs. As pled by

Plaintiffs there is no real controversy between Plaintiffs and Defendant which can be determined by this suit. Plaintiffs lack standing to sue over proceeds of the Lease, the Lease is a contract, Plaintiffs are not parties to the Lease, the Lease is a contract that is subject to its terms and conditions, the Lease clearly states that it covers 246.33 acres of land, and that the Lessor is to be paid under the Lease based upon that the terms and conditions of the Lease subject to a proportionate reduction clause. Assuming that Plaintiffs are owners of unleased minerals covered by the description in the Lease, Plaintiffs are still not parties to the Lease nor a third party beneficiaries to the Lease. They are and remain unlease mineral owners and their rights do not stem from the Lease but rather than from the alleged ownership in the minerals. If correct in their claim, Plaintiffs are entitled to their proportionate share of the proceeds derived by the working interest owner under the Lease less any and all costs of production.

b. Defendant would further show that Plaintiffs' lawsuit is frivolous, groundless, unreasonable, and brought in bad faith. As a result of the frivolous lawsuit, Defendant has been forced to hire the undersigned attorneys to defend herself and has incurred and will incur reasonable and necessary attorneys' fees for the trial and any appeals of this case. Defendant is entitled to and hereby seek an award of all its reasonable attorneys' fees, as well as her costs incurred in defending this lawsuit.

c. Plaintiffs' claims and issues are barred, in whole or in part, by application of the doctrine of *res judicata* because a final judgment on the merits has been rendered in litigation involving the same property, parties or their privies, claims and issues, including trespass to try title. The claims and issues asserted by Plaintiffs in this cause could have been raised, and ***were raised***,

in the earlier litigation and are now barred by *res judicata*. There has been no change in the nucleus of operative facts which existed at the time of the previous suit and at this time. A change of legal theories will not prevent the doctrine of *res judicata* from barring claims. The doctrine stands for the position that any cause of action which arises out of those same facts should be litigated in the same lawsuit. In other words, a final judgment in an action should bar subsequent suits based on the same "transaction," or series of connected "transactions," out of which the first action arose.

d.       Plaintiffs' claims and issues are barred, in whole or in part, by application of the doctrine of *collateral estoppel* because a final judgment on the merits has been rendered in litigation involving the same claims and issues, including trespass to try title. The claims and issues addressed by Plaintiffs could have been raised in the earlier litigation and are now barred by *collateral estoppel*.

e.       Plaintiffs' claims and issues are barred, in whole or in part, by application of the statute of limitations.

f.       Plaintiffs' claims and issues are barred, in whole or in part, by application of the Statute of Frauds.

g.       Plaintiffs' claims and issues are barred, in whole or in part, by application of the affirmative defense of laches.

## VI.

### *Plea of Not Guilty*

Pursuant to Rule 788 of the Texas Rules of Civil Procedure, Defendant pleads that she is "not guilty" of the injury complained of in the Plaintiffs' Original Petition filed against Defendant.

*Defendant's First Amended Answer*
*Page - 10 -*

WHEREFORE, Defendant requests judgment of the court as follows:

1.    That Plaintiffs take nothing by their suit.

2.    That Defendant have judgment over and against Plaintiffs to compensate her for reasonable attorney's fees.

3.    That Defendant recover all costs, together with such other and further relief to which Defendant may be justly entitled.

<div align="right">

Respectfully submitted,

MICHAEL C. SARTORI, Attorney for Defendant
502A Houston Street
P. O. Box 1222
George West, Texas 78022
(361) 449-2691
(361) 449-2380 (FAX)
SBN# 17655500
Email: michael@msartori.com

</div>

## VERIFICATION

STATE OF TEXAS §

COUNTY OF San Patricio

Before me, the undersigned Notary Public, on this day personally appeared **MARY JUNE OWEN MERRELL**, and after being duly sworn stated under oath that she is the Defendant in this cause; that she has read the above Defendant's Original Answer; and that every Verified Denial contained in the answer is within her personal knowledge and is true and correct.

_____
**MARY JUNE OWEN MERRELL**

SUBSCRIBED AND SWORN TO BEFORE ME on July 11 , 2014.

STEPHANIE TURANY
Notary Public
STATE OF TEXAS
My Comm. Exp. 08-03-2016

_____
Notary Public in and for the State of Texas

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on July 14 , 2014.

_____
Michael C. Sartori
Attorney for Defendant

*Defendant's First Amended Answer*
*Page - 12 -*

52

G. W. KOLSTAD and §FILED          IN THE DISTRICT COURT OF
WILLIAM FRASER,       At _3·25_ §'Clock_____ P_M

**Plaintiffs**          At George West, Texas

                                 JUL 1 7 2014

v.                                              LIVE OAK COUNTY, TEXAS

                          MELANIE MATKIN

MARY JUNE OWEN MERRELL, District Clerk, Live Oak County, Texas

**Defendant**      By_LoiAnn Johnson_Deputy 156TH JUDICIAL DISTRICT

## DEFENDANT'S SECOND AMENDED ORIGINAL ANSWER

MARY JUNE OWEN MERRELL (social security number ending in 229) and (driver's license number ending in 443), Defendant in the above-entitled and numbered cause, makes, files and serves her Special Exceptions, Second Amended Original Answer to Plaintiffs' Original Petition, Verified Denial, Affirmative Defenses, and Plea of "Not Guilty" to Plaintiffs' Original Petition and any petition filed thereafter, and respectfully shows the Court the following:

### I.

### *Discovery Level*

1.      Discovery is intended to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

### II.

### *Special Exceptions*

2.      Defendant, in addition to pleading the affirmative defense of *res judicata*, hereinafter, would specially except, as a predicate to the subsequent filing of a Texas Rules of Civil Procedure Rule 166a motion for summary judgment, to Plaintiffs' pleadings as a whole in that said causes of action,

*Defendant's Second Amended Answer*
*Page - 1 -*

if any truly be asserted, are barred by the doctrine of *res judicata* as a matter of law. *Res judicata* requires proof of the following three elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action on the same claims as were raised or could have been raised in the first action. The above listed *res judicata* elements exist in the case before the bar. The first element is met by the Final Judgment, as supported by a Statement of Facts on file in this case, both of which having been signed and entered May 12, 1993, a trespass to try title action styled *"Cause No. 6990-A, Charles R. Merrell and wife, Margie L. Merrell, Plaintiffs, vs. Mrs. Henrietta Willimann, et al,"* was filed in the 36th Judicial District Court of Live Oak County, Texas and recorded in Volume 42, Page 75, of the minutes of the District Court of Live Oak County, Texas. (The judgment in the prior case was based upon Plaintiff's First Amended Original Petition, a copy of the same being marked as Exhibit "A", attached hereto and incorporated herein for all purposes as if copied verbatim; a copy of the final, and appealable, judgment rendered in that suit being marked as Exhibit "B", attached hereto and incorporated herein for all purposes as if copied verbatim (hereinafter the "Judgment"); and Statement of Facts marked Exhibit "C" attached hereto and incorporated herein for all purposes as if copied verbatim (hereinafter "Statement of Facts"). The Judgment granted Plaintiff, Charles R. Merrell all relief sought in such action and decreed that the ownership of the Property which is also the subject of this action, amongst others, was vested one hundred percent (100%) in Charles R. Merrell. The land described in the petition in the earlier action was a tract of land out of which the Property in this case was carved. The second element of *res judicata* is met in that the Plaintiffs in this case, or their privies were Defendants in the earlier case. The Defendant in this case is the successor to Charles R. Merrell, the Plaintiff in the earlier action. Plaintiff G. W. Kolstad was a

*Defendant's Second Amended Answer*
*Page - 2 -*

named Defendant in that earlier action, and was served, and answered and noticed in said cause. Plaintiff William Fraser is the successor in interest to Doris Fraser, a named Defendant in that earlier action, who was served, and answered in said cause. The Defendants G. W. Kolstad and Doris Fraser in the earlier case filed a joint answer and in addition to a general denial raised the issue of mineral ownership, and claimed that they owned collectively one-half (½) the minerals under the minerals which are the subject of this suit, a copy of said joint answer is marked Exhibit "D" attached hereto and incorporated herein for all purposes as if copied verbatim (hereinafter "Answer"). The Judgment remains in full force and has not been appealed, reversed, modified, or voided, and is a valid and final judgment. The Judgment is *res judicata* of the matters complained of by the Plaintiffs herein. Plaintiffs are estopped to seek recovery in this suit of the title to the property described therein, and the Judgment is expressly pleaded as a complete bar to the causes of action asserted by Plaintiffs. Defendant requests that the court sustain this special exception and order Plaintiff to replead the petition within thirty days of the date of the Court's Order in accordance with Texas law and this Court's ruling on this special exception.

3. Defendant, in addition to pleading the affirmative defense of *collateral estoppel*, hereinafter, would specially except, as a predicate to the subsequent filing of a Texas Rules of Civil Procedure Rule 166a motion for summary judgment, to Plaintiffs' pleadings as a whole in that said causes of action, if any truly be asserted, are barred by the doctrine of *collateral estoppel*, issue preclusion, as a matter of law. The party seeking to assert the bar of collateral estoppel must establish that 1) the facts sought to be litigated in the second suit (trespass to try title, quiet title) were fully and fairly litigated in the first action, an issue was "actually litigated" when it was properly raised, by the pleadings or otherwise, and it was submitted for determination, and determined (*See* Petition,

*Defendant's Second Amended Answer*
*Page - 3 -*

Answer, Judgment and Statement of Facts); 2) those facts were essential to the first judgment, the fact issues litigated in first action were the essential elements necessary to prevail under trespass to try tile, including all elements necessary to prove and/or defend title under the 5, 10 and 25 year adverse possession statutes of limitation, 10, and 25 year statutes, and which represented the factual determinations necessary to form a basis of the judgement; and 3) the parties in the present case were cast as adversaries in that first suit. In this case the Plaintiffs are identical to Defendants in the prior case or priviy to such Defendants. The Defendant in this case is priviy to the Plaintiff in the prior case.

4.      Defendant specially excepts to Section II., ¶2. of Plaintiffs' Original Petition in that it fails to set  forth a cause of action sufficient to give Defendant fair notice of the jurisdictional amount claimed by Plaintiffs in this matter.  Plaintiffs, allege unleased mineral ownership of 52.6 acres of land, and seek to  recover all monies received by Defendant from a third party contract (Oil, Gas and Mineral Lease, dated March 24, 2010, from Mary June Merrell, as Lessor, and Killam Oil Co., as Lessee, covering 246.33 acres of land out of the Live Bee Land Subdivision No. 4, Live Oak County, Texas, and recorded in Vol. 157, Page 487 of the Official Public Records of Live Oak County, Texas, (marked as Exhibit "E" attached hereto and incoporated herein for all purposes as if copied verbatim)(hereinafter "the Lease").  The Lease covers 246.33 acres of land.  Plaintiffs claim ownership of an interest in 55.04 acres of land.  The Lease contains a warranty clause only for the benefit of the Lessee and the same is subject to a proportionate reduction clause.  Plaintiffs fail to identify what, if any monies payable under the Lease are due Plaintiffs.  Terms, conditions and royalties payable under the Lease are the subject to the Lease/contract between Defendant and a third party lessee.  Plaintiffs have no contract with such third party lessee.  Plaintiffs are not parties to the

Lease, nor direct beneficiaries or third party beneficiaries, thereof. Plaintiffs' lack of specificity makes it impossible to know what monies, attributable to what payment obligation and to what acreage, Plaintiffs are seeking. Plaintiffs further specify such damages, as set forth in Article VII., ¶ 26., of Plaintiffs' Original Petition, to be "any amounts payable to Defendant under the Lease are properly owned by Plaintiffs." Plaintiffs have failed to allege any viable cause of action against Defendant for which damages may be sought against Defendant irrespective of the amount of such claimed. Plaintiffs have failed to allege any facts supporting a claim that they are parties to the "Lease"; that they are "third party beneficiaries" to the Lease; nor that the parties to the Lease intended the Plaintiffs to be parties to or beneficiaries under the Lease. Plaintiffs have failed to allege any breach of the Lease by any party thereto. Defendant would point out that any deficiency of ownership by the Defendant that might be alleged having been excused by the "proportionate reduction" clause contained in the Lease. Plaintiffs have failed to assert any damages to Plaintiffs by Defendant by Defendant's entering into the Lease with a third party, which third party sought out and contracted with the Defendant and not Plaintiffs. Plaintiffs have failed to allege that the Lease upon which Plaintiffs base their claim has been breached by anyone owing a duty to Plaintiffs. Plaintiffs have failed to set forth the manner in which monies payable under the Lease to which Plaintiffs may have a claim are calculated. The facts set forth by Plaintiffs do not constitute a valid cause of action. It is impossible to determine the amount in controversy in this matter so as to establish that this Court has jurisdiction over this case and which amount the Plaintiffs have the burden of alleging and proving. Defendant requests that the court sustain this special exception and order Plaintiffs to set forth a short statement of the cause of action sufficient to give fair notice of the claim involved and the amount in controversy at issue, and that such amendment to their

pleadings be made on or before thirty (30) days of the filing of this Original Answer, and that, if the Plaintiffs fail or refuse to do so, this action be dismissed.

5.     Defendant specially excepts to the allegations in Paragraph II and VII of Plaintiffs' Original Petition, on the ground that the pleading demonstrates that Plaintiffs are making a claim under a contract/Lease in which the Plaintiffs have no standing to bring.  Standing is a party's justiciable interest in the suit and is a component of subject-matter jurisdiction.  Plaintiffs, at best, are unleased mineral owners and not royalty owners, not being a party to any oil, gas and other mineral lease. Defendant is no a mineral owner, but his mineral interest was sold to a lessee with a possiblity of reverter.  Defendant is now a royalty owner under an oil, gas and other mineral lease.  The Defendant receives royalties by reason of a third party contract to which Plaintiffs are strangers, and as such, Plaintiffs have no cause of action against Defendant for such royalties.  Plaintiffs are neither parties to the Lease nor third party beneficiaries of the Lease.  The Lease indicates on its face that Plaintiffs lack standing to bring suit against Defendant for the acts and/or omissions complained of in Plaintiffs' Original Petition.  Defendant requests that the court sustain this special exception and order Plaintiffs to set forth a short statement of the cause of action sufficient to give fair notice to Defendant that Plaintiffs having standing to bring this action, and that such amendment to their pleadings be made on or before thirty (30) days of the filing of this Original Answer, and that, if the Plaintiffs fail or refuse to do so, this action be dismissed.

6.     Defendant specially excepts to the allegations in Article VII, ¶28 on the ground that the pleading demonstrates that Plaintiffs are attempting to artfully plead a title dispute as a declaratory judgment action just to obtain attorney's fees when that claim is a trespass-to-try-title action.  A

trespass to try title lawsuit is an action to recover possession of land withheld from an owner with a right to immediate possession. The Declaratory Judgment Act, on the other hand, provides a method to seek a declaration of rights under certain instruments, and permits an award of attorney's fees subject to the trial court's discretion. The language in Texas Property Code §22.001 ("trespass to try title action is *the* method of determining title") is mandatory. Texas courts have held that if the determination only *prospectively* implicates title, then the dispute does not have to be brought as a trespass to try title action. Here the Plaintiffs are not asking for a prospective determination of title but one that goes backwards. The substance and not the form of the pleadings is used to determine whether an action is properly considered as a trespass or declaratory judgment action. Any suit involving a dispute over the title to land is an action in trespass to try title, whatever its form and regardless of the relief sought. Defendant requests that the court sustain this special exception and order Plaintiffs to strike Article VIII of Plaintiffs' Original Petition from said pleading on or before thirty (30) days of the filing of this Original Answer.

## III.

### *General Denial*

7.     Subject to the foregoing special exception, Defendant denies generally each and every allegation in Plaintiffs' Original Petition and demands strict proof thereof upon the trial of this case. Subject to such special exceptions, stipulations, affirmative defenses and admissions as may be hereafter made, the Defendant asserts a general denial, as authorized by Rule 92, Texas Rules of Civil Procedure, and requests that the Plaintiffs be required to prove by a preponderance of the evidence all of the charges and allegations made against the Defendant in Plaintiffs' Original

Petition, as required by the Texas Rules of Civil Procedure, and the laws of the State of Texas.

8.      Pursuant to Rule 63, 69 and 98 of the Texas Rules of Civil Procedure, the Defendant reserves the right to amend and/or supplement her answer to further answer and specially except to Plaintiffs' allegations and claims.

## IV.

### *Verified Denial*

9.      Subject to and without waiving the foregoing Special Exceptions and General Denial, or in the alternative, but only to the extent necessary to protect her rights, Defendant specifically asserts, pursuant to Rule 93(4) of the Texas Rules of Civil Procedure, that there is a defect of parties as claimed and set forth by Plaintiffs. The Plaintiffs have failed to serve and include all necessary parties this suit, and in particular, all owners of interests in the mineral estate made the subject of Plaintiffs claims.

## V.

### *Affirmative Defenses*

10.     Subject to and without waiving the foregoing Special Exceptions, General Denial and Verified Denial, Defendant asserts, pursuant to Rule 94 of the Texas Rules of Civil Procedure, the following affirmative defenses which, singly or in combination, bar Plaintiffs' right to recover, in whole or in part, the damages alleged in Plaintiff's Original Petition:

a.      Plaintiffs' claims are barred, in whole or in part, because Plaintiff lacks the requisite standing to bring this action. Plaintiffs are not parties to the Lease made the subject of Plaintiffs'

suit. Plaintiffs are not third party beneficiaries to the Lease made the subject of this suit. Defendant owes no duty to Plaintiffs. Defendant has no contractual relationship with Plaintiffs. As pled by Plaintiffs there is no real controversy between Plaintiffs and Defendant which can be determined by this suit. Plaintiffs lack standing to sue over proceeds of the Lease, the Lease is a contract, Plaintiffs are not parties to the Lease, the Lease is a contract that is subject to its terms and conditions, the Lease clearly states that it covers 246.33 acres of land, and that the Lessor is to be paid under the Lease based upon that the terms and conditions of the Lease subject to a proportionate reduction clause. Assuming that Plaintiffs are owners of unleased minerals covered by the description in the Lease, Plaintiffs are still not parties to the Lease nor a third party beneficiaries to the Lease. They are and remain unlease mineral owners and their rights do not stem from the Lease but rather than from the alleged ownership in the minerals. If correct in their claim, Plaintiffs are entitled to their proportionate share of the proceeds derived by the working interest owner under the Lease less any and all costs of production.

b.     Defendant would further show that Plaintiff's' lawsuit is frivolous, groundless, unreasonable, and brought in bad faith. As a result of the frivolous lawsuit, Defendant has been forced to hire the undersigned attorneys to defend herself and has incurred and will incur reasonable and necessary attorneys' fees for the trial and any appeals of this case. Defendant is entitled to and hereby seek an award of all its reasonable attorneys' fees, as well as her costs incurred in defending this lawsuit.

c.     Plaintiffs' claims and issues are barred, in whole or in part, by application of the doctrine of *res judicata* because a final judgment on the merits has been rendered in litigation

involving the same property, parties or their privies, claims and issues, including trespass to try title. The claims and issues asserted by Plaintiffs in this cause could have been raised, and *__were raised__*, in the earlier litigation and are now barred by *res judicata*. There has been no change in the nucleus of operative facts which existed at the time of the previous suit and at this time. A change of legal theories will not prevent the doctrine of *res judicata* from barring claims. The doctrine stands for the position that any cause of action which arises out of those same facts should be litigated in the same lawsuit. In other words, a final judgment in an action should bar subsequent suits based on the same "transaction," or series of connected "transactions," out of which the first action arose.

d.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the doctrine of *collateral estoppel* because a final judgment on the merits has been rendered in litigation involving the same claims and issues, including trespass to try title. The claims and issues addressed by Plaintiffs could have been raised in the earlier litigation and are now barred by *collateral estoppel*.

e.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the statute of limitations.

f.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the Statute of Frauds.

g.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the affirmative defense of laches.

# VI.

## *Plea of Not Guilty*

Pursuant to Rule 788 of the Texas Rules of Civil Procedure, Defendant pleads that she is "not

*Defendant's Second Amended Answer*
*Page - 10 -*

guilty" of the injury complained of in the Plaintiffs' Original Petition filed against Defendant.

WHEREFORE, Defendant requests judgment of the court as follows:

1.    That Plaintiffs take nothing by their suit.

2.    That Defendant have judgment over and against Plaintiffs to compensate her for reasonable attorney's fees.

3.    That Defendant recover all costs, together with such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

MICHAEL C. SARTORI, Attorney for
Defendant
502A Houston Street
P. O. Box 1222
George West, Texas 78022
(361) 449-2691
(361) 449-2380 (FAX)
SBN# 17655500
Email: michael@msartori.com

*Defendant's Second Amended Answer*
*Page - 11 -*

<u>**VERIFICATION**</u>

STATE OF TEXAS §

COUNTY OF *San Patricio*

Before me, the undersigned Notary Public, on this day personally appeared **MARY JUNE OWEN MERRELL**, and after being duly sworn stated under oath that she is the Defendant in this cause; that she has read the above Defendant's Original Answer; and that every Verified Denial contained in the answer is within her personal knowledge and is true and correct.

*Mary June Owen Merrell*
**MARY JUNE OWEN MERRELL**

SUBSCRIBED AND SWORN TO BEFORE ME on ___July 15___, 2014.

STEPHANIE TURANY
Notary Public
STATE OF TEXAS
My Comm. Exp. 08-03-2016

*Stephanie Turany*
Notary Public in and for the State of Texas

**CERTIFICATE OF SERVICE**

I certify that a true copy of the above was served on each attorney of record or party in accordance with the <u>Texas Rules of Civil Procedure</u> on _____, 2014.

_____
Michael C. Sartori
Attorney for Defendant

*Defendant's Second Amended Answer*
*Page - 12 -*

64

STATE OF TEXAS                    §

COUNTY OF _San Patricio_

Before me, the undersigned Notary Public, on this day personally appeared **MARY JUNE OWEN MERRELL**, and after being duly sworn stated under oath that she is the Defendant in this cause; that she has read the above Defendant's Original Answer; and that every Verified Denial contained in the answer is within her personal knowledge and is true and correct.

_Mary June Owen Merrell_
**MARY JUNE OWEN MERRELL**

SUBSCRIBED AND SWORN TO BEFORE ME on _July 15_____, 2014.

> **STEPHANIE TURANY**
> Notary Public
> STATE OF TEXAS
> My Comm. Exp. 08-03-2016

_Stephanie Turany_
Notary Public in and for the State of Texas

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on _17 July_____, 2014.

Michael C. Sartori
Attorney for Defendant

_Defendant's Second Amended Answer_
_Page - 12 -_

# EXHIBIT "A"

NO. 6990-A

| | | |
|---|---|---|
| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, CHARLES R. MERRELL, hereinafter called Plaintiff, complaining of:

Mrs. Henrietta Willimann;
Fintan J. Willimann;
Mrs. Fintan J. Willimann;
Fred Anderson;
Mrs. Fred Anderson;
M. J. Couch;
Mrs. M. J. Couch;
S. L. McKay;
Mrs. S. L. McKay;
Joseph Vanderyacht;
Mrs. Joseph Vanderyacht;
Earl E. Vanderyacht;
Mrs. Earl E. Vanderyacht;
J. W. Hauser;
Mrs. J. W. Hauser;
H. S. Tallakson;
Mrs. H. S. Tallakson;
Herman S. Tallakson;
Mrs. Hermann S. Tallakson;
Joseph Reichert;
Mrs. Joseph Reichert;
W. E. Ruckmann;
Pearl M. Ruckmann;
J. B. Hazlitt;
Mrs. J. B. Hazlitt;
W. A. Felix;
Mrs. W. A. Felix;
H. H. Johnson;
Mrs. H. H. Johnson;
Ottilie M. Gensch;
Mrs. Ottilie M. Gensch;
Fred Stadelman;
Mrs. Fred Stadelman;
C. E. Crook;
Mrs. C. E. Crook;
Jeannie E. Scoby;



FILED
At 2:25 O'Clock P M
Oct 2 3 1991
ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _____ Deputy

E. B. Grabow;
Mrs. E. B. Grabow;
Albert James;
Mrs. Albert James;
Adolph Hanson;
Mrs. Adolph Hanson;
Norman M. Negaard;
Mrs. Norman M. Negaard;
Charles Burkhard;
Mrs. Charles Burkhard;
Herman Burkhard;
Mrs. Herman Burkhard;
L. W. Greer;
Mrs. L. W. Greer;
T. L. Thoreson;
Mrs. T. L. Thoreson;
Henry L. Thoreson;
Mrs. Henry L. Thoreson;
A. E. Gage;
Mrs. A. E. Gage;
Mrs. Nellie Cooley;
R. E. Baum;
Mrs. R. E. Baum;
A. Wenger;
Mrs. A. Wenger;
Adolph Wenger;
Mrs. Adolph Wenger;
W. S. Duffy;
Mrs. W. S. Duffy;
John T. Strand;
Mrs. John T. Strand;
George H. McMurtie;
Mrs. George H. McMurtie;
Carl A. Jensen;
Mrs. Carl A. Jensen;
Marie Bertha Jensen;
Leo M. Foley;
Mrs. Leo M. Foley;
Arthur H. Forsan;
Mrs. Arthur H. Forsan;
A. J. LeFebvre
Mrs. A. J. LeFebvre;
Arthur C. Voss;
Mrs. Arthur C. Voss;
D. F. Wade;
Mrs. D. F. Wade;
J. V. McAfee;
Mrs. J. V. McAfee;
Helge S. Casperson;
Lewis Mortenson;
Mrs. Lewis Mortenson;
Peter E. Parson;

2

68

Mrs. Peter E. Parson;
Reverand A. Richter;
Mrs. A. Richter;
Bernard Powers;
Mrs. Bernard Powers;
James B. Fitzgerald;
Mrs. James B. Fitzgerald;
W. D. Youngquist;
Mrs. W. D. Youngquist;
L. T. Bougie;
Mrs. L. T. Bougie;
Swan Ericson;
Mrs. Swan Ericson;
Hans H. Jaul;
Mrs. Hans H. Jaul;
David Henry;
Mrs. David Henry;
W. P. Spangenberg;
Mrs. W. P. Spangenberg;
W. F. Marquardt;
Mrs. W. F. Marquardt;
O. P. Kendel;
Mrs. O. P. Kendel;
Grover J. Krumsiek;
Mrs. Grover J. Krumsiek;
A. H. Hoyne;
Mrs. A. H. Hoyne;
Hulda Bergdahl;
P. A. Bergdahl;
Mrs. P. A. Bergdahl;
Doris Fraser;
G. W. Kolstad;
Mrs. G. W. Kolstad;
Albert Pederson;
Mrs. Albert Pederson;
Gloria June Broach, Inedpendent Executrix of the Estate of Doreen
Ryan, Deceased;
Gloria June Broach, Trustee for Valerie Claire Broach;
Gloria June Broach, Trustee for Eric Weston Broach;
Melba Jo Parrott;
Jeannine Powell Corley;
William Morris Larimore;
Mrs. William Morris Larimore;
Charles D. Lovelace;
Mrs. Charles D. Lovelace;
David Peterson;
Mrs. David Peterson;
Albert Pederson;
Marie E. Mattison;
V. H. Houston;
Mrs. V. H. Houston;
J. B. Martindale;

3

Mrs. J. B. Martindale;
R. N. Martindale;
Mrs. R. N. Martindale;

In the event that any of the above named are deceased, their estates, their estates administrator or executor, if any, and their unknown heirs;

The unknown stockholders of The First State Bank of Le Sueur Center;
The unknown stockholders of U. S. I. Realty Co.;
The unknown stockholders of Mid-Frio Petroleum Co.;
The unknown stockholders of George C. Vaughn & Sons, Inc.;
The unknown stockholders of Martindale Mortgage Co.; and

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants;

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 andrecorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the

4

hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas.

5

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee,to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16, 1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to

6

Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger, dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas.

7

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 andrecorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas.

8

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920 and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas.

9

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas;

all of whom are hereinafter collectively called Defendants, and for cause of action would respectfully show unto the Court:

I.

Parties

Plaintiff, CHARLES R. MERRELL is an individual residing in Live Oak County, Texas. MARGIE L. MERRELL, a named Plaintiff in

10

Plaintiffs' Original Petition is deceased.

With the exception of the hereinafter set forth and identified Defendants, the place of residence of each of the above named Defendants is unknown to Plaintiff, and after due diligence, Plaintiff have been unable to locate the whereabouts of any of such Defendants.

The names and addresses of the heirs of the persons above-named as are now deceased are unknown to the Plaintiff.

Plaintiff does not know the names of any person claiming title or an interest in the lands hereinafter described under the above-mentioned unrecorded Deeds.

Plaintiff does not know the names of any person claiming title or an interest in the lands hereinafter described under the above-mentioned Deeds.

Plaintiff does not know the names and addresses of the stockholders of The First State Bank of Le SuererCenter; U. S. I. Realty Co.; Mid-Frio Petroleum Co.; George C. Vaughn & Sons, Inc.; and Martindale Mortgage Co. Plaintiff has diligently checked and searched the records of the relevant Secretaries of State, but have been unable to locate such stockholders.

The Defendant's addresses which are known to Plaintiff, but which are not known to be current, are as follows:

Doris Fraser
P. O. Box 608
Chester, Montana 59522, Doris Fraser has answered in this cause and service may be had on Doris Fraser, acting Pro Se, at P. O. Box 608, Chester Montana 59522.

G. W. Kolstad
P. O. Box 121

11

Lothair, Montana 59461, G. W. Kolstad has answered in this cause and service may be had on G. W. Kolstad, acting Pro Se, at P. O. Box 121, Lothair Montana 59461.

Gloria June Broach Independent Executor of the Estate of Doreen Ryan, Deceased
Gloria June Broach,
Trustee for Valerie Claire Broach and
Eric Weston Broach
4707 Bicentennial Court
Houston, Texas 77066, Gloria June Broach Independent Executor of the Estate of Doreen Ryan, Deceased, and Gloria June Broach, Trustee for Valerie Claire Broach and Eric Weston Broach, has answered in this cause and service may be had on the attorney of record, Alfred A. Steinle, Law Offices of Steinle & Wetherbee, P. O. Box 400, Jourdanton, Texas 78026.

Melba Jo Parrott
40 Hedwig Circle
Houston, Texas 77024

William Morris Larimore
2909 Piedmont Ave.
Berkeley, California 94703

David Peterson
2205 First Avenue East
Williston, North Dakota 58801

II.

Real Property

At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the following described lands and premises situated in Live Oak County, Texas, to-wit:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts:  with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with

12

16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

13

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 fro a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest

14

corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre

15

81

tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45  50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

owning and claiming the same in fee simple.

### III.

### Trespass to Try Title

A.   That on or about the the first day of January, 1989, Plaintiff was in actual possession of the above-described property. On this date, Defendants unlawfully entered upon said lands and premises and withheld from Plaintiff the possession thereof. Defendants continue to withhold the possession of the above described property.

B.   That Defendants have no right, title or interest in said lands, or any part thereof.

### IV.

### Adverse Possession

Without waiving the foregoing plea or Plaintiff's ownership or record title, and cumulative thereof, Plaintiff would show unto the Court:

A.   Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the real property hereinabove described, claiming under Deed dated October 31, 1975,

16

and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County, Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on this property as they became due, and before delinquency.

B. Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the real property herein described for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of their possession.

C. Plaintiff and Plaintiff's predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the real property herein described for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held said real property under claim of right, in good faith and under duly recorded deed purporting to convey said real property.

D. Plaintiff and Plaintiff's predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the real property herein described for a period of more than twenty-five (25) years preceding the commencement of this

17

action. Plaintiff has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

E. Plaintiff and Plaintiff's predecessors in interest have openly exercised dominion over and asserted claim to this real property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action. The persons holding the apparent record title to the property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years during the twenty-five (25) years preceding the commencement of this action.

### Prayer

WHEREFORE, Plaintiff prays that the Defendants be cited to appear and answer, and that upon final hearing, Plaintiff have judgment for the title and possession of the real property which is the subject of this suit, for costs of suit, and for such other and further relief of which Plaintiff may be justly entitled.

Respectfully submitted,

_____
Michael C. Sartori
Attorney for Plaintiff
P. O. Box 1222
George West, Texas 78022
(512) 449-2691
(512) 449-2380 (Telecopier)
State Bar No. 17655500

18

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been delivered to all attorneys of record in accordance with Rule 21a of the Texas Rules of Civil Procedure, on this the 23rd day of October, 1991.

_____
Michael C. Sartori

19

# EXHIBIT "B"

 Exhibit "B"



## NO. 6990-A

| | | |
|---|---|---|
| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

## JUDGMENT

On _12th_ day of ___MAY___, 1993, this case came on for hearing. Plaintiffs appeared by and through their attorney of record, Michael C. Sartori, and announced ready for trial. Defendants, G. W. KOLSTAD and DORIS FRASER, having answered, did not appear. Those Defendants cited by publication appeared by and through their attorney ad litem, William L. Hardwick, and announced ready for trial.

The following Defendants, although duly cited to appear, did not appear and wholly made default:

Mrs. Henrietta Willimann; Fintan J. Willimann; Mrs. Fintan J. Willimann; Fred Anderson; Mrs. Fred Anderson; M. J. Couch; Mrs. M. J. Couch; S. L. McKay; Mrs. S. L. McKay; Joseph Vanderyacht; Mrs. Joseph Vanderyacht; Earl E. Vanderyacht; Mrs. Earl E. Vanderyacht; J. W. Hauser; Mrs. J. W. Hauser; H. S. Tallakson; Mrs. H. S. Tallakson; Herman S. Tallakson; Mrs. Hermann S. Tallakson; Joseph Reichert; Mrs. Joseph Reichert; W. E. Ruckmann; Pearl M. Ruckmann; J. B. Hazlitt; Mrs. J. B. Hazlitt; W. A. Felix; Mrs. W. A. Felix; H. H. Johnson; Mrs. H. H. Johnson; Ottilie M. Gensch; Mrs. Ottilie M. Gensch; Fred Stadelman; Mrs. Fred Stadelman; C. E. Crook; Mrs. C. E. Crook; Jeannie E. Scoby; E. B. Grabow; Mrs. E. B. Grabow; Albert James; Mrs. Albert James; Adolph Hanson; Mrs. Adolph Hanson; Norman M. Negaard; Mrs. Norman M. Negaard; Charles Burkhard; Mrs. Charles Burkhard; Herman Burkhard; Mrs. Herman Burkhard; L. W. Greer; Mrs. L. W. Greer; T. L. Thoreson; Mrs. T. L. Thoreson; Henry L. Thoreson; Mrs. Henry L. Thoreson; A. E. Gage; Mrs. A. E. Gage; Mrs. Nellie Cooley; R. E. Baum; Mrs. R. E. Baum; A. Wenger; Mrs. A. Wenger; Adolph Wenger; Mrs. Adolph Wenger; W. S. Duffy; Mrs. W. S. Duffy; John T. Strand; Mrs. John T. Strand; George H. McMurtie; Mrs. George H. McMurtie; Carl A. Jensen; Mrs. Carl A. Jensen; Marie Bertha Jensen; Leo M. Foley; Mrs. Leo M. Foley; Arthur H. Forsan; Mrs. Arthur H. Forsan; A. J. LeFebvre; Mrs. A.

42   75

J. LeFebvre; Arthur C. Voss; Mrs. Arthur C. Voss; D. F. Wade; Mrs. D. F. Wade; J. V. McAfee; Mrs. J. V. McAfee; Helge S. Casperson; Lewis Mortenson; Mrs. Lewis Mortenson; Peter E. Parson; Mrs. Peter E. Parson; Rev. A. Richter; Mrs. A. Richter; Bernard Powers; Mrs. Bernard Powers; James B. Fitzgerald; Mrs. James B. Fitzgerald; W. D. Youngquist; Mrs. W. D. Youngquist; L. T. Bougie; Mrs. L. T. Bougie; Swan Ericson; Mrs. Swan Ericson; Hans H. Jaul; Mrs. Hans H. Jaul; David Henry; Mrs. David Henry; W. P. Spangenberg; Mrs. W. P. Spangenberg; W. F. Marquardt; Mrs. W. F. Marquardt; O. P. Kendel; Mrs. O. P. Kendel; Grover J. Krumsiek; Mrs. Grover J. Krumsiek; A. H. Hoyne; Mrs. A. H. Hoyne; Hulda Bergdahl; P. A. Bergdahl; Mrs. P. A. Bergdahl; Albert Pederson; Mrs. Albert Pederson; Jeannine Powell Corley; Charles D. Lovelace; Mrs. Charles D. Lovelace; Albert Pederson; Marie E. Mattison; V. H. Houston; Mrs. V. H. Houston; J. B. Martindale; Mrs. J. B. Martindale; R. N. Martindale; Mrs. R. N. Martindale. The unknown stockholders of The First State Bank of Le Sueur Center; The unknown stockholders of U. S. I. Realty Co.; The unknown stockholders of Mid-Frio Petroleum Co.; The unknown stockholders of George C. Vaughn & Sons, Inc.; The unknown stockholders of Martindale Mortgage Co.; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 and recorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward

2

4/2    76

88

Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward

3

Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16, 1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger,

4

dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 and recorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas; The unknown claimants who may

5

claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920 and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of

6

Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas.

The Court finds that the pleadings of the Plaintiffs and Defendants are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction over this cause of action and the parties. All persons entitled to citation were properly cited. A jury was waived, and all questions of fact and of law were submitted to the Court.

The Court, after hearing the evidence and arguments of counsel, finds that:

7

1.    The Property which is the subject of this suit is situated in Live Oak County,

Texas, and is described as follows:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts: with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri

8

94

Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

## TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post

9

for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

## TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172

10

and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45  50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

(hereinafter referred to as the "Property").

2.    The Plaintiff, Margie L. Merrell, is deceased. All references in this judgment to the Plaintiff is to CHARLES R. MERRELL.

3.    As to Plaintiffs' claim of ownership the Court finds that:

11

97

a.	At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the Property owning and claiming the same in fee simple.

b.	Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the Property, claiming under Deed dated October 31, 1975, and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County, Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on the Property as they became due, and before delinquency.

c.	Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the Property for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of his possession.

d.	Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held the Property under claim of right, in good faith and under duly recorded deed purporting to convey the Property.

e.	Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. Plaintiff

12

has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

f.     Plaintiff and Plaintiffs' predecessors in interest have openly exercised dominion over and asserted claim to the Property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action. The persons holding the apparent record title to the Property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years during the twenty-five (25) years preceding the commencement of this action.

4.     That the ownership of the Property which is the subject of Plaintiff's suit is vested one hundred percent (100%) in the Plaintiff.

IT IS THEREFORE ORDERED, DECREED AND ADJUDGED, that the Plaintiff shall have and recover from the Defendants, and shall hold in fee simple, the following described tracts and parcels of land:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts:  with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of

13

Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page

14

24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

15

42     85

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

16

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

together with all and singular the rights and appurtenances thereto.

All costs of court incurred are taxed against the party incurring same, for which execution may issue.

SIGNED AND ENTERED, this the 12ᵗʰ day of _MAY_____, 1993.



JUDGE PRESIDING

RONALD M. YEAGER

APPROVED AS TO FORM:

Michael C. Sartori, Attorney for
Plaintiff

William L. Hardwick, Attorney ad Litem for
Defendants served by publication.

**FILED**
At _10:50_ O'Clock _a_ M

MAY 1 2 1993

ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _Ellen Jane McCarley_ Deputy

17

# EXHIBIT "C"

NO. <u>6990-A</u>

| | | |
|---|---|---|
| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

## STATEMENT OF FACTS

On the 12th day of May, 1993, the trial of the above entitled and numbered Cause came on to be heard before this Court.

Plaintiffs appeared by and through their attorney of record, Michael C. Sartori, and announced ready for trial. Defendants, G. W. KOLSTAD and DORIS FRASER, having answered, did not appear. Those Defendants cited by publication appeared by and through their attorney ad litem, William L. Hardwick, and announced ready for trial.

The following Defendants, although duly cited to appear, did not appear and wholly made default:

Mrs. Henrietta Willimann; Fintan J. Willimann; Mrs. Fintan J. Willimann; Fred Anderson; Mrs. Fred Anderson; M. J. Couch; Mrs. M. J. Couch; S. L. McKay; Mrs. S. L. McKay; Joseph Vanderyacht; Mrs. Joseph Vanderyacht; Earl E. Vanderyacht; Mrs. Earl E. Vanderyacht; J. W. Hauser; Mrs. J. W. Hauser; H. S. Tallakson; Mrs. H. S. Tallakson; Herman S. Tallakson; Mrs. Hermann S. Tallakson; Joseph Reichert; Mrs. Joseph Reichert; W. E. Ruckmann; Pearl M. Ruckmann; J. B. Hazlitt; Mrs. J. B. Hazlitt; W. A. Felix; Mrs. W. A. Felix; H. H. Johnson; Mrs. H. H. Johnson; Ottilie M. Gensch; Mrs. Ottilie M. Gensch; Fred Stadelman; Mrs. Fred Stadelman; C. E. Crook; Mrs. C. E. Crook; Jeannie E. Scoby; E. B. Grabow; Mrs. E. B. Grabow; Albert James; Mrs. Albert James; Adolph Hanson; Mrs. Adolph Hanson; Norman M. Negaard; Mrs. Norman M. Negaard; Charles Burkhard; Mrs. Charles Burkhard; Herman Burkhard; Mrs. Herman Burkhard; L. W. Greer; Mrs. L. W. Greer; T. L. Thoreson; Mrs. T. L. Thoreson; Henry L. Thoreson; Mrs. Henry L. Thoreson; A. E. Gage; Mrs. A. E. Gage; Mrs. Nellie Cooley; R. E. Baum; Mrs. R. E. Baum; A. Wenger; Mrs. A. Wenger; Adolph Wenger; Mrs. Adolph Wenger; W. S. Duffy; Mrs. W. S. Duffy; John T. Strand; Mrs. John T. Strand; George H. McMurtie; Mrs. George H. McMurtie; Carl A. Jensen; Mrs. Carl A. Jensen; Marie Bertha Jensen; Leo M. Foley; Mrs. Leo M. Foley; Arthur H. Forsan; Mrs. Arthur H. Forsan; A. J. LeFebvre; Mrs. A. J. LeFebvre; Arthur C. Voss; Mrs. Arthur C. Voss; D. F. Wade; Mrs. D. F. Wade; J. V. McAfee; Mrs. J. V. McAfee; Helge S. Casperson; Lewis Mortenson; Mrs. Lewis Mortenson; Peter E. Parson; Mrs. Peter E. Parson; Rev. A. Richter; Mrs. A. Richter; Bernard Powers; Mrs. Bernard Powers; James B. Fitzgerald; Mrs. James B. Fitzgerald; W. D. Youngquist; Mrs. W. D. Youngquist; L. T. Bougie; Mrs. L. T. Bougie; Swan Ericson; Mrs. Swan Ericson; Hans H. Jaul; Mrs. Hans H. Jaul; David Henry; Mrs. David Henry; W. P. Spangenberg;

Mrs. W. P. Spangenberg; W. F. Marquardt; Mrs. W. F. Marquardt; O. P. Kendel; Mrs. O. P. Kendel; Grover J. Krumsiek; Mrs. Grover J. Krumsiek; A. H. Hoyne; Mrs. A. H. Hoyne; Hulda Bergdahl; P. A. Bergdahl; Mrs. P. A. Bergdahl; Albert Pederson; Mrs. Albert Pederson; Jeannine Powell Corley; Charles D. Lovelace; Mrs. Charles D. Lovelace; Albert Pederson; Marie E. Mattison; V. H. Houston; Mrs. V. H. Houston; J. B. Martindale; Mrs. J. B. Martindale; R. N. Martindale; Mrs. R. N. Martindale. The unknown stockholders of The First State Bank of Le Sueur Center; The unknown stockholders of U. S. I. Realty Co.; The unknown stockholders of Mid-Frio Petroleum Co.; The unknown stockholders of George C. Vaughn & Sons, Inc.; The unknown stockholders of Martindale Mortgage Co.; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 and recorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and

2

recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16,

3

1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger, dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and

4

recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 and recorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920

5

and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas.

No jury was demanded and all matters in controversy, including questions of fact and of law, were submitted to the Court.

After examining the pleadings the Plaintiff, Charles R. Merrell, testified as follows:

A.     That he claims the ownership in and to the following described lands, and premises in Live Oak County, Texas:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following

6

acreage in the various tracts: with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest

7

corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

## TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the

8

East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

## TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South

9

47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

(hereinafter referred to as the "Property").

B.    That the records of the District Clerk and County Clerk were searched to obtain the names and addresses of all persons claiming or who could possibly claim an interest in the Property and all such people were served with citation or if their addresses were unavailable they were served by publication.

C.    The Plaintiff, Margie L. Merrell, is deceased. All references in this judgment to the Plaintiff is to CHARLES R. MERRELL.

D.    At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the Property owning and claiming the same in fee simple.

E.    Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the Property, claiming under Deed dated October 31, 1975, and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County,

10

42    72

Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on the Property as they became due, and before delinquency.

F.     Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the Property for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of his possession.

G.     Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held the Property under claim of right, in good faith and under duly recorded deed purporting to convey the Property.

H.     Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. Plaintiff has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

I.     Plaintiff and Plaintiffs' predecessors in interest have openly exercised dominion over and asserted claim to the Property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action. The persons holding the apparent record title to the Property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years during the twenty-five (25) years preceding the commencement of this action.

Plaintiff asked the Court to quiet title to the Property in the Plaintiff; to remove the cloud created by Defendants on the Property; have judgment for the title and possession of the Property which is the subject of this suit as set forth above and award such other and further relief to which Plaintiff may be justly entitled.

SIGNED this the _12th_ day of ___MAY___, 1993.

JUDGE PRESIDING
RONALD M. YEAGER

11

42     23

APPROVED AS TO FORM:

_Michael C. Sartori, Attorney for_
Plaintiffs

_William L. Hardwick, Attorney ad Litem for_
Defendants served by publication.

**FILED**

At ___10:50___ O'Clock ___A___ M

MAY 1 2 1993

ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas

By_____Deputy

12

42 PAGE 14

116

# EXHIBIT "D"

G. W. Kolstad
P. O. Box 121
Lothair, MT  59461

Doris Fraser
P. O. Box 608
Chester, MT  59522



FILED
At __11:11__ O'Clock __a__ M
APR 2 1 1989
ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _____ Deputy

NO. 6990-A

| | |
|---|---|
| CHARLES R. MERRELL and wife, ) | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs, ) | |
| ) | LIVE OAK COUNTY, TEXAS |
| VS. ) | |
| ) | 36TH JUDICIAL DISTRICT |
| MRS. HENRIETTA WILLIMANN, ET AL ) | |

### ANSWER OF DEFENDANTS G. W. KOLSTAD AND

### DORIS FRASER TO PLAINTIFF'S ORIGINAL PETITION

COME NOW, G. W. KOLSTAD and DORIS FRASER, two of the Defendants in the above entitled action and in answer to Plaintiff's Original Petition, admit, deny and allege as follows:

I.

In answer to Paragraph I of Plaintiff's Original Petition, these answering Defendants admit that their names and addresses as listed therein are current and correct, allege they are without sufficient information as to the remainder of the allegations in Paragraph I and therefore deny the same.

II.

In answer to Paragraph II of Plaintiff's Original Petition, these answering Defendants deny that Plaintiffs were and are now seized and possessed of all interest in Tracts 191, 192, 193 and

118

the portion of the old abandoned roadway appurtenant thereto as set forth in said Petition as being a portion of Tract III, deny that Plaintiffs own the same in fee simple and affirmatively allege that these answering Defendants are the owners of one-half (1/2) of the oil and gas mineral estate and ores underlying said Tracts 191, 192, 193 and the appurtenant portions of the abandoned roadway adjacent thereto, being out of Block No. 16 of the Live Bee Land Subdivision No. 4 as per plat thereof recorded in Volume 1, page 24 of the Plat Records of Live Oak County, Texas, by virtue of a reservation of the same by these answering Defendants' predecessors in interest recorded in the records of Live Oak County, Texas, as set forth on Exhibit "A" attached hereto, with G. W. Kolstad being the owner of an undivided one-third of one-half (1/3 of 1/2) and Doris Fraser being the owner of an undivided two-thirds of one-half (2/3 of 1/2) thereof.

### III.

These answering Defendants deny in its entirety the allegations of Paragraph III of Plaintiff's Original Petition insofar as it may apply to the interest set forth in the paragraph next preceding.

### IV.

These answering Defendants deny in its entirety the allegations of Paragraph IV of Plaintiff's Original Petition insofar as they apply to the interest set forth in Paragraph II of this Answer and affirmatively allege that these answering Defendants asserted ownership over such interests in said lands by way of

oil and gas mineral lease (a copy of one of said leases being attached hereto as Exhibit "B") and that these answering Defendants are and remain the owners of such interest as of the date hereof.

PRAYER

Wherefore, these answering Defendants pray that the Plaintiffs' Original Petition be dismissed as to these Defendants, that Plaintiffs take nothing by their petition as against these Defendants and that these Defendants have judgment for the title and possession of the real property interests set forth in Paragraph II of this Answer, and for such other and further relief to which these Defendants be justly entitled.

Respectfully submitted,

_G W Kolstad_____
G. W. Kolstad

_Doris Fraser_____
Doris Fraser

STATE OF TEXAS
COUNTY OF ...
I, ..., Clerk of Live Oak County, Texas, do
hereby certify ...
...
... same as the same now appears on file in my office
...
DISTRICT CLERK
..., Texas

# EXHIBIT "E"

Exhibit "E"

30Producers 88 (7-69)-Paid Up
With 640 Acres Pooling Provision

**Notice of Confidentiality Rights: If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the Public Records: Your Social Security Number or your Drivers License Number.**

# OIL, GAS AND MINERAL LEASE

THIS AGREEMENT made this __24th__ day of __March__ __2010__ between __Mary June Merrell,__ lessor (whether one or more), whose address is: __P.O. Box 1135, Portland, TX 78374__ and, __Killam Oil Co., LTD__ whose address __P.O. Box 499, Laredo, TX 78102__, lessee, WITNESSETH:

1. Lessor, in consideration of Ten (\$10.00) Dollars, receipt of which is hereby acknowledged, and of the covenants and agreements of lessee hereinafter contained, does hereby grant, lease and let unto lessee the land covered hereby for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas, sulphur and all other minerals (whether or not similar to those mentioned), together with the right to make surveys on said land, lay pipe lines, establish and utilize facilities for surface and subsurface disposal of salt water, construct roads and bridges, dig canals, build tanks, power stations, telephone lines, employee houses, and other structures on said land, necessary or useful in lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto. The land covered hereby, herein called " said land ", is located in the County of Live Oak, State of _Texas_, and is described as follows:

Being 246.33 acres of land, more or less, out of the Festus Doyle Survey 4, A-6, Live Oak County Texas, and being composed of the following two tracts to wit:

TRACT 1: 183.91 acres, more or less, being part of the Live Bee Subdivision No. 4, Block No. 16, Live Oak County, Texas, according to the map or plat of record recorded in Vol 1, Page 24 of the Plat Records of Live Oak County, Texas as follows: 7.14 acres of Tract No. 55; 5.67 acres of Tract No. 65; 3.81 acres of Tract No. 107; 11.62 acres of Tract No. 110; 22.35 acres in Tract No 111; 19.96 acres in Tract No. 112; 19.03 acres in Tract No.127; 20.05 acres in Tract No. 130; 20.00 acres in Tract No. 172; 16.12 acres in Tract No. 173; 17.76 acres in Tract No. 174; and 1.59 acres in the old abandoned roadway, in all a total of 183.91 acres and described as Tract 1, by metes and bounds in the deed reference below.

TRACT 2: 62.42 acres ,more or less, being part of the Live Bee Subdivision No. 4, Block No. 16, Live Oak County, Texas, according to the map or plat of record recorded in Vol 1, Page 24 of the Plat Records of Live Oak County, Texas as follows: 0.09 acres out of Tract No. 188; 25.20 acres out of Tract No. 191; 16.09 acres out of Tract No. 191; 13.75 acres out of Tract No. 193; 1.47 acres in the old abandoned roadway and 5.82 acres in Tract No. 171, in all a total of 62.42 acres and described as Tract 2, by metes and bounds in a certain deed dated April 27, 1999 from Charles R. Merrell, et ux Mary June Merrell to Rodrigo Lopez as recorded in Volume 557 at Page 141 of the Deed Records of Live Oak County, Texas.

This lease also covers and includes, in addition to that above described, all land, if any, contiguous or adjacent to or adjoining the land above described and (a) owned or claimed by lessor by limitation, prescription, possession, reversion or unrecorded instrument or (b) as to which lessor has a preference right of acquisition. Lessor agrees to execute any supplemental instrument requested by lessee for a more complete or accurate description of said land. For the purpose of determining the amount of any bonus or other payment hereunder, said land shall be deemed to contain __246.33__ acres, whether actually containing more or less, and the above recital of acreage in any tract shall be deemed to be the true acreage thereof. Lessor accepts the bonus as lump sum consideration for this lease and all rights and options hereunder.

2. Unless sooner terminated or longer kept in force under other provisions hereof, this lease shall remain in force for a term of __Three (3)__ years from the date hereof, hereinafter called "primary term", and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

3. As royalty, lessee covenants and agrees: (a) To deliver to the credit of lessor, in the pipe line to which lessee may connect its wells, the equal One Fifth (1/5) part of all oil produced and saved by lessee from said land, or from time to time, at the option of lessee, to pay lessor the average posted market price of such One Fifth (1/5) part of such oil at the wells as of the day it is run to the pipe line or storage tanks, lessor's interest, in either case, to bear One Fifth (1/5) of the cost of treating oil to render it marketable pipe line oil; (b) To pay lessor on gas and casinghead gas produced from said land (1) when sold by lessee, One Fifth (1/5) of the amount realized by lessee, computed at the mouth of the well or (2) when used by lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of One Fifth (1/5) of such gas and casinghead gas; (c) To pay lessor on all other minerals mined and marketed or utilized by lessee from said land, one-tenth either in kind or value at the well or mine at lessee's election, except that on sulphur mined and marketed the royalty shall be one dollar (\$1.00) per long ton. If, at the expiration of the primary term or at any time or times thereafter, there is any well on said land or on lands with which said land or any portion thereof has been pooled, capable of producing oil or gas, and all such wells are shut-in, this lease shall, nevertheless, continue in force as though operations were being conducted on said land for so long as said wells are shut-in, and thereafter this lease may be continued in force as if no shut-in had occurred. Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee. If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of ninety consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, lessee shall pay or tender, by check or draft of lessee, as royalty, a sum equal to ten dollars (\$10.00) for each acre of land then covered hereby. Lessee shall make like payments or tenders at or before the end of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions of this paragraph. Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid under this lease if the wells were producing, and may be deposited in the _____ Bank at _____ , or its successors, which shall continue as the depositories, regardless of changes in the ownership of shut-in royalty. If at any time that lessee pays or tenders shut-in royalty, two or more parties are, or claim to be, entitled to receive same, lessee may, in lieu of any other method of payment herein provided, pay or tender such shut-in royalty, in the manner above specified, either jointly to such parties or separately to each in accordance with their respective ownership thereof, as lessee may elect. Any payment hereunder may be made by check or draft of lessee deposited in the mail or delivered to the party entitled to receive payment or to a depository bank provided for above on or before the last date for payment. Nothing herein shall impair lessee's right to release as provided in paragraph 5 hereof. In the event of assignment of this lease in whole or in part, liability for payment hereunder shall rest exclusively on the then owner or owners of this lease, severally as to the acreage owned by each.

4. Lessee is hereby granted the right, at its option, to pool or unitize any land covered by this lease with any other land covered by this lease, and / or with any other land, lease, or leases, as to any or all minerals or horizons, so as to establish units containing not more than 640 surface acres, plus 10% acreage tolerance; provided, however, units may be established as to any one or more horizons, or existing units may be enlarged as to any one or more horizons, so as to contain not more than 640 surface acres plus 10% acreage tolerance, if limited to one or more of the following: (1) gas,

*PAGE 1*

other than casinghead gas, (2) liquid hydrocarbons ( condensate) which are not liquids in the subsurface reservoir, (3) minerals produced from wells classified as gas wells by the conservation agency having jurisdiction. If larger units than any of those herein permitted, either at the time established. or after enlargement, are required under any governmental rule or order, for the drilling or operation of a well at a regular location, or for obtaining maximum allowable from any well to be drilled, drilling, or already drilled, any such unit may be established or enlarged to conform to the size required by such governmental order or rule. Lessee shall exercise said option as to each desired unit by executing an instrument identifying such unit and filling it for record in the public office in which this lease is recorded. Each of said options may be exercised by lessee at any time and from time to time while this lease is in force, and whether before or after production has been established either on said land, or on the portion of said land included in the unit, or on other land unitized therewith. A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be mineral, royalty, or leasehold interests in lands within the unit which are not effectively pooled or unitized. Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted upon said land under this lease. There shall be allocated to the land covered by this lease within each such unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) that proportion of the total production of unitized minerals from the unit, after deducting any used in lease or unit operations, which the number of surface acres in such land ( or in each separate tract) covered by this lease within the unit bears to the total number of surface acres in the unit, and the production so allocated shall be considered for all purposes, including payment or delivery of royalty, overriding royalty and any other payments out of production, to be the entire production of unitized minerals from the land to which allocated in the same manner as though produced therefrom under the terms of this lease. The owner of the reversionary estate of any term royalty or mineral estate agrees that the accrual of royalties pursuant to this paragraph or of shut-in royalties from a well on the unit shall satisfy any limitation of term requiring production of oil or gas. The formation of any unit hereunder which includes land not covered by this lease shall not have the effect of exchanging or transferring any interest under this lease ( including, without limitation, any shut- in royalty which may become payable under this lease) between parties owning interests in land covered by this lease and parties owning interest in land not covered by this lease. Neither shall it impair the right of lessee to release as provided in paragraph 5 hereof, except that lessee may not so release as to lands within a unit while there are operations thereon for unitized minerals unless all pooled leases are released as to lands within the unit. At any time while this lease is in force lessee may dissolve any unit established hereunder by filling for record in the public office where this lease is recorded a declaration to that effect, if at that time no operations are being conducted thereon for unitized minerals. Subject to the provisions of this paragraph 4, a unit once established hereunder shall remain in force so long as any lease subject thereto shall remain in force. If this lease now or hereafter covers separate tracts, no pooling or unitization of royalty interests as between any such separate tracts is intended or shall be implied or result merely from the inclusion of such separate tracts within this lease but lessee shall nevertheless have the right to pool or unitize as provided in this paragraph 4 with consequent allocation of production as herein provided. As used in this paragraph 4, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises.

5. Lessee may at any time and from time to time execute and deliver to lessor or file of record a release or releases of this lease as to any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations as to the released acreage or interest.

6. Whenever used in this lease the word "operations" shall mean operations for and any of the following: drilling, testing, completing, reworking, recompleting, deepening, plugging back or repairing of a well in search for or in an endeavor to obtain production of oil, gas, sulphur or other minerals, excavating a mine, production of oil, gas, sulphur or other mineral, whether or not in paying quantities.

7. Lessee shall have the use, free from royalty, of water, other than from lessor's water wells, and of oil and gas produced from said land in all operations hereunder. Lessee shall have the right at any time to remove all machinery and fixtures placed on said land, including the right to draw and remove casing. No well shall be drilled nearer than 200 feet to the house or barn now on said land without the consent of the lessor. Lessee shall pay for damages caused by its operations to growing crops and timber on said land.

8. The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any mineral or horizon. All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns. No change or division in the ownership of said land, royalties, or other moneys, or any part thereof, howsoever effected, shall increase the obligations or diminish the rights of lessee, including , but not limited to, the location and drilling of wells and the measurement of production. Notwithstanding any other actual or constructive knowledge or notice thereof of or to lessee, its successors or assigns, no change or division in the ownership of said land or of the royalties, or other moneys, or the right to receive the same, howsoever effected, shall be binding upon the then record owner of this lease until thirty (30) days after there has been furnished to such record owner at his or its principle place of business by lessor or lessor's heirs, successors, or assigns, notice of such change or division, supported by either originals or duly certified copies of the instruments which have been properly filed for record and which evidence such change or division, and of such court records and proceedings, transcripts, or other documents as shall be necessary in the opinion of such record owner to establish the validity of such change or division. If any such change in owner-ship occurs by reason of the death of the owner, lessee may, nevertheless pay or tender such royalties, or other moneys, or part thereof, to the credit of the decedent in a depository bank provided for above.

9. In the event lessor considers that lessee has not complied with all its obligations hereunder, both expressed and implied, lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by lessor. The service of said notice shall be precedent to the bringing of any action by lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee. Neither the service of said notice nor the doing of any act by lessee aimed to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligations hereunder. If this lease is canceled for any cause, it shall nevertheless remain in force and effect as to (1) sufficient acreage around each well as to which there are operations to constitute a drilling or maximum allowable unit under applicable governmental regulations, (but in no event less than forty acres), such acreage to be designated by lessee as nearly as practicable in the form of a square centered at the well, or in such shape as then existing spacing rules require: and (2) any part of said land included in a pooled unit on which there are operations. Lessee shall also have such easements on said land as are necessary to operations on the acreage so retained.

10. Lessor hereby warrants and agrees to defend title to said land, against the claims of all persons whomsoever, Lessor's rights and interests hereunder shall be charged primarily with any mortgages, taxes or other liens, or interest and other charges on said land, but lessor agrees that lessee shall have the right at any time to pay or reduce the same for lessor, either before or after maturity, and be subrogated to the rights of the holder thereof and to deduct amounts so paid from royalties or other payments payable or which may become payable to lessor and / or assigns under this lease. If this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate ( whether lessor's interest is herein specified or not ), or no interest therein, then the royalties and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease ( whether or not owned by lessor) shall be paid out of the royalty herein provided. This lease shall be binding upon each party who executes it without regard to whether it is executed by all those named herein as lessor.

11. If, while this lease is in force, at, or after the expiration of the primary term hereof, it is not being continued in force by reason of the shut-in well provisions of paragraph 3 hereof, and lessee is not conducting operations on said land by reason of (1) any law, order, rule or regulation, (whether or not subsequently determined to be invalid) or (2) any other cause, whether similar or dissimilar, (except financial) beyond the reasonable control of lessee, the primary term hereof shall be extended until the first anniversary date hereof occurring ninety (90) or more days following the removal of such delaying cause, and this lease may be extended thereafter by operations as if such delay had not occurred.

12. It is expressly understood and agreed that the following typewritten agreements and provisions shall supersede and govern the provisions in the printed form of this lease whenever such printed form is in direct conflict herewith and shall inure to the benefit of and be finding upon the parties hereto and their respective heirs, devisees, legal representatives, successors and and assigns.

*PAGE 2*

13. It is understood and agreed that wherever the fractions "one-eighth" and "one-tenth" appear in paragraph 3 hereof, they are hereby expressly amended and increased to "One Fifth (1/5)."

14. It is understood and agreed that this lease covers and includes oil and gas only (including with oil and gas, all constituent elements thereof and all other liquid or liquefiable hydrocarbons and products of every kind or character derived therefrom and produced therewith, including sulphur), and that all minerals other than oil and gas are excepted herefrom and reserved to Lessor. Including, but not limited to, among the minerals reserved to Lessor and excluded from this lease are coal, uranium and lignite.

15. Lessee agrees to conduct all operation on the leased premises according to the rules of the Texas Railroad Commission and all other regulatory authorities having jurisdiction over operations under this lease.

16. Those portions of this Agreement that pertain to the surface are applicable and cover only those certain tracts of land wherein the Lessor owns an interest in the surface.

17.     A.  Lessee shall pay for all damage to roads, fences, improvements and growing crops caused by its operations hereunder and will fill and level all pits and mounds, remove all board roads and board road materials, level and fill all ruts, and restore the surface of the ground to as near its original condition as is reasonably practical within a reasonable period of time after cessation of operations at each well location on the leased premises.

        B.  Lessee shall not cut any fence or fences unless Lessee shall brace the existing fence adequately on both side of such cut so that there will be no slackening of the wires. Lessee agrees to promptly install either a substantial metal gate in such opening or a substantial cattle guard and such gate or cattle guard shall become the property of the surface owner upon the termination of the lease. Lessee agrees to promptly close all gates which Lessee, his agents, servants or employees use in Lessee's operations on the leased premises. The surface owner may from time to time designate gates to be locked, closed or left open when not in use and Lessee shall comply with each such request.

        C.  All operation of Lessee shall be conducted so as to minimize the amount of surface land used or damaged by Lessee and Lessee agrees to grade and reasonably maintain all roads used by Lessee on the leased premises in connection with operations on this lease to be the extent that they are passable in a passenger vehicle at all time. If production is established, then all roads constructed by Lessee shall be of good quality and design, crowned to turn water from the surface and surfaced with and with material suitable for all weather use. Lessee shall consult with the surface owner prior to the construction of any reads by Lessee and shall cooperate with the surface owner in the establishment of a reasonably satisfactory location for such road prior to commencement of any road construction.

        D.  Lessee, his agents, servants or employees shall not being firearms or dogs on the leased premises, nor shall anyone have the right to hunt, fish

18. Notwithstanding anything to the contrary herein contained, drilling operations on or production from a pooled unit or units established under the provisions of Paragraph No. 4 hereof, embracing land covered hereby and other land, shall maintain this lease in force only as to land included in such unit or units. This lease may be maintained in force as to the remainder of the land in any manner herein provided for.

19. It is understood and provided this lease cannot be held, maintained nor extended by virtue of the shut-in gas well provisions of this lease for a longer term than the primary term and three (3) years immediately thereafter, or for shorter terms of different periods not to exceed three (3) years in the aggregate.

20. Notwithstanding any provisions hereof to the contrary, Lessor shall have the option to obtain any water well drilled by Lessee on this lease when said water well or wells have wholly served the purposes of Lessee, and are no longer needed by Lessee, its successors or assigns. The Lessor shall give notice, in writing, to Lessee of his desire to acquire such well or wells by executing all instruments required for transfer and liability of the same prior to the actual abandonment of same by Lessee.

21. Merrell Lease Service located in Gregory, TX shall be given on opportunity to bid any location or pipeline work that involves this lease.

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

Lessor:

_Mary June Merrell_
Mary June Merrell

PAGE 3

124

**ACKNOWLEDGEMENT**

THE STATE OF TEXAS                §
COUNTY OF SAN PATRICIO            §

This instrument was acknowledged before me on the 25 day of March, 2010, by Mary June Merrell.

My Commission Expires:

10-18-2011

STEPHANIE TURANY
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-18-2011

Notary Public for The State of Texas

Notary's Printed Name: Stephanie Turany

(Seal)

FILED FOR RECORD IN:

LIVE OAK COUNTY

ON: MAY 25, 2010 AT 04:15P

AS A(N) PUBLIC RECORDS

Karen Irvins, COUNTY CLERK

CLERK NUMBER    188929    PAGES    4

AMOUNT:    28.00

RECEIPT NUMBER 10002977

BY SHERRI
STATE OF TEXAS                    LIVE OAK COUNTY
THIS IS TO CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE DOCUMENT ON FILE IN
MY OFFICE WITNESS MY HAND AND OFFICIAL SEAL ON
THIS 25th DAY OF May, 20.10.
AS STAMPED HEREON BY ME. /MAY 25, 2010

Karen Irvins, COUNTY CLERK
Recorded:

After Recording Return to:
Killam Oil Co, LTD
Attn: Steve Marshall
P.O. Box 499
Laredo, TX 78102

*PAGE 4*

125

Cause No. L-13-0197-CV-B

| | | |
|---|---|---|
| G. W. KOLSTAD and | | IN THE DISTRICT COURT OF |
| WILLIAM FRASER, | § | |
| **Plaintiffs** | § | |
| | § | |
| v. | § | LIVE OAK COUNTY, TEXAS |
| | § | |
| MARY JUNE OWEN MERRELL, | § | |
| **Defendant** | § | 156TH JUDICIAL DISTRICT |

FILED
At 1:38 o'Clock P
At George West, Texas

AUG 15 2014

MELISSA MATKIN
District Clerk, Live Oak County, Texas
By _____ Deputy

## DEFENDANT'S MOTION FOR TRADITIONAL SUMMARY JUDGMENT

MARY JUNE OWEN MERRELL, Defendant in the above-entitled and numbered cause, files this, her Motion for Traditional Summary Judgment, pursuant to Tex. R. Civ. P. 166(a), as to every claim asserted by Plaintiffs in Plaintiffs' Original Petition on the basis that Plaintiffs' claims are barred, as a matter of law, under the doctrine of res judicata, and would respectfully show the court as follows:

### I. INTRODUCTION

1. This is a Trespass to Try Title Suit filed by Plaintiffs. Defendant seeks Summary Judgment because Plaintiffs' claims are barred as a matter of law under the doctrine of res judicata. There are no issues of material fact rather, there are purely legal issues concerning this suit and a prior case before the Court. The prior Trespass to Try Title case ("prior case") covered the same Property covered in this suit; was between the same parties or their privies; and this suit covers the same claims raised, or claims that could have been raised, in the prior suit.[1] The Judgment in the prior case found in favor of Charles R. Merrell (Plaintiff therein) and that he had been in actual, notorious, exclusive, hostile and adverse possession of the Property for periods of more than 5, 10 and 25 years

---

[1] *See,* Ex. A, Ex. C, Ex. G, Ex. H, Ex. I and Ex. M; *See, Compania Flnanciara libano. S.A. v. Simmons,* 53 S.W.3d 365. 367 (Tex. 2001) (per curiam); *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 630 (Tex. 1992); *Texas Water Rights Comm. v. Crow Iron Works,* 582 S.W.2d 768, 771–772 (Tex.1979)

prior to the commencement of the prior case (March 29, 1989).[2] The Judgment in the prior case was neither appealed nor subject to a bill of review and is final.[3]

2.      Plaintiffs in this case are G. W. KOLSTAD and WILLIAM FRASER.

3.      Defendant in this case is MARY JUNE OWEN MERRELL.

## II.

## SUMMARY JUDGMENT EVIDENCE

4.      In support of this Motion, Defendant asks the Court to take judicial notice of all pleadings, motion and other matters filed in this suit,[4] as well as the Judgment and Statement of Facts in the prior case[5]. Defendant also relies upon the following, and all of which are incorporated herein by reference:

   a.      Exhibit A:     Certified Copy of Plaintiffs' Original Petition, *G. W. Kolstad and William Fraser V. Mary Jane Owen Merrell*, Cause No. L-13-0197-CV-B, 156th Judicial District Court, Live Oak County, Texas;

   b.      Exhibit B:     Certified Copy of Defendant's Second Amended Original Answer, *G. W. Kolstad and William Fraser V. Mary Jane Owen Merrell*, Cause No. L-13-0197-CV-B, 156th Judicial District Court, Live Oak County, Texas;

   c.      Exhibit C:     Certified Copy of Plaintiffs' Original Petition, *Charles R. Merrell and Wife, Margie L. Merrell V. Mrs. Henrietta Willimann, et al*, Cause No. 6990-A, 36th Judicial District Court, Live Oak County, Texas, filed March 29, 1989;

   d.      Exhibit D:     Certified Copy of Plaintiffs' First Amended Petition, *Charles R. Merrell and Wife, Margie L. Merrell V. Mrs. Henrietta Willimann, et al*, Cause No. 6990-A, 36th Judicial District Court, Live Oak County, Texas, filed October 23, 1991;

   e.      Exhibit E:     Certified Copy of Citation served upon G. W. Kolstad, *Charles R. Merrell and Wife, Margie L. Merrell V. Mrs. Henrietta Willimann, et al*, Cause No. 6990-A, 36th Judicial District Court, Live Oak County, Texas, filed April 5, 1989;

---

[2] *See,* Ex. C.

[3] *See,* Ex. I.

[4] *See,* Ex. A; *Tx. Civ. Prac. & Rem. Code,* §38.04, Judicial Notice.

[5] *See,* Ex. I, Ex. I; *Tx. R. Evid,* Rule 201, Judicial Notice of Adjudicated Facts.

f.	Exhibit F:	Certified Copy of Citation served upon Doris Fraser, *Charles R. Merrell and Wife, Margie L. Merrell V. Mrs. Henrietta Willimann, et al*, Cause No. 6990-A, 36th Judicial District Court, Live Oak County, Texas, filed April 7, 1989;

g.	Exhibit G:	Certified Copy of Answers of Defendants G. W. Kolstad and Doris Fraser to Plaintiff's Original Petition, *Charles R. Merrell and Wife, Margie L. Merrell V. Mrs. Henrietta Willimann, et al*, Cause No. 6990-A, 36th Judicial District Court, Live Oak County, Texas, filed April 21, 1989;

h.	Exhibit H:	Certified Copy of Statement of Facts, *Charles R. Merrell and Wife, Margie L. Merrell V. Mrs. Henrietta Willimann, et al*, Cause No. 6990-A, 36th Judicial District Court, Live Oak County, Texas, signed May 12, 1993;

i.	Exhibit I:	Certified Copy of Judgment, *Charles R. Merrell and wife, Margie L. Merrell V. Mrs. Henrietta Willimann, et al,* Cause No. 6990-A, 36th Judicial District Court, Live Oak County, Texas, rendered, signed and entered May 12, 1993;

j.	Exhibit J:	Affidavit of Identity Charles R. Merrell, Margie L. Merrell and Mary June Owen Merrell, by Mary June Owen Merrell, Affiant, dated August 8, 2014;

k.	Exhibit K:	Affidavit of Michael C. Sartori, dated August 13, 2014;

l.	Exhibit L:	Certified Copy of the Probate in Cause No. 12635, *Estate of Charles Roy Merrell, Deceased*, In the County Court of San Patricio County, Texas;

m.	Exhibit M:	Copy of Plaintiffs' Answers to Disclosures, *G. W. Kolstad and William Fraser V. Mary Jane Owen Merrell*, Cause No. L-13-0197-CV-B, 156th Judicial District Court, Live Oak County, Texas, dated June 26, 2014; and

n.	Exhibit N:	Certified Copy of Spanish Land Grant to Festus Doyle dated June 23, 1835, and recorded in Vol. Tr A, Page 131 of the Deed Records of Live Oak County, Texas, and in Vol. 19, Page 378 of the Deed Records of Live Oak County, Texas.

All Court and publically filed documents used as exhibits have been certified by either Melanie Matkin, District Clerk, Live Oak County, Texas, or Karen Irving, County Clerk of Live Oak County, Texas, and a copy of the certification is attached to each such Exhibit. Each included Affidavit has been authenticated and is based upon personal knowledge. The remaining document was obtained from Plaintiffs in Discovery.

## III.

## DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT BECAUSE ALL CLAIMS ASSERTED BY PLAINTIFFS ARE BARRED BY *RES JUDICATA*

5. Defendant moves for summary judgment based upon her affirmative defense of res judicata.[6] When a Defendant moves for Summary Judgment on an affirmative defense she is entitled to Summary Judgment if she proves all essential elements of her defense as a matter of law.[7]

6. Res judicata requires proof of three essential elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action.[8]

### Judgment

a. The prior case was concluded by a Judgment on the merits dated May 12, 1993.[9] The Judgment was entered by a court of competent jurisdiction.[10] The Judgment was never appealed nor a bill of review filed.

### Parties

b. The parties in the prior case are the same parties in this suit or are in privity with the parties in this suit.

    i. Plaintiff G. W. KOLSTAD was a Defendant in the prior case, and was served

---

[6] *See,* Ex. B.

[7] *Frost Nat. Bank v. Fernandez,* 315 SW3d 494, *(Tex. 2010); Randall's Food Markets, Inc. v. Johnson,* 891 SW2d (Tex. 1995); *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991); Tex. R. Civ. P 166a(c).

[8] *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 652 (Tex.1996); *Barr v. Resolution Trust Corp. ex rel. Sunbelt Federal Sav.,* 837 S.W.2d 627 (Tex. 1992).

[9] See, Ex. G.

[10] Article V, Section 8, Texas Constitution, V.T.C.A. Government Code §24.007.

and answered.[11]

      ii.     Plaintiff WILLIAM FRASER is the successor in interest to DORIS FRASER, a Defendant in the prior case, who was served and answered, and privity exists between them.[12]

      iii.    Defendant MARY JUNE OWEN MERRELL is the widow and beneficiary of CHARLES R. MERREL, the Plaintiff in the prior case, and privity exists between them.[13]

## Plaintiffs' Claims in this suit and claims made or could have been made in the prior case.

c.     Plaintiffs' Original Petition in this suit's claims a Suit to Quiet Title, a Trespass to Try Title suit, a Declaratory Judgment, and damages[14] These claims have, as their predicate, as well as basis, the same claims that were raised or could have been raised in the prior case:[15]

## Plaintiffs' Claim to the same Property and Mineral Interest

d.     Plaintiffs, as Defendants or privies in the prior case, claimed, and as Plaintiffs in this suit claim, ownership of an undivided one-half (½) mineral interest in and to the following lands and premises, to-wit:

> 62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas. (The "Property").[16]

---

[11] *See,* Ex. E and Ex. G.

[12] *See,* Ex. A, Art. III ¶ 4, Ex. F and Ex. G.

[13] *See,* Ex. A ¶ 5, Ex. J, Ex.K; *Amstad,* 919 S.W.2d at 653; *Getty Oil Co. v. Insurance Co. of N. Am.,* 845 S.W.2d 794, 800 (Tex.1992).

[14] *See,* Ex. A.

[15] *See,* Ex. G.

[16] *See,* Ex. G and Ex. A.

## Plaintiffs' Claims made in this suit, that are the same as the claims brought or could have been brought in the prior case

e.      Plaintiffs now raise the claim of severance of the surface estate and the mineral estate taking place prior to the commencement of adverse possession by Defendant's predecessor in interest in order to have the Court declare that the Judgment in the prior case did not divest the Plaintiffs of their claimed mineral interest, and that such claim be quieted by removing Defendant's claim to said mineral interest.[17] Plaintiffs petition in this suit and Answer in the prior suit claim that severance occured either November 1, 1917 or June 10, 1970.[18] Either way, this claim is barred by the doctrine of res judicata because severance is a claim made in this suit and was a claim made in the prior suit or was a claim that could have been raised. The Statement of Facts and Judgment in the prior case found that severance, if it occurred, took place on neither date. The Judgment reads:

"The Court, **after hearing the evidence** and arguments of counsel, finds that:

...

"2.      As to Plaintiff's claim of ownership the Court finds that:

...

"Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action."[19]

The same rules of interpretation apply in construing a Judgment as in construing other written instruments.[20] As a matter of law, there is no ambiguity in the judgment. The Property is contained within the Festus Doyle Survey No. 4, Abstract No. 6. The Festus Doyle Abstract was conveyed by Spanish Grant to Festus Doyle on June 23, 1835.[21] Defendant's predecessors' adverse possession

---

[17] *See,* Ex. A, VI, and Ex. M.

[18] *See,* Ex. A, VI, and Ex. G.

[19] *See,* Ex. H and Ex. I

[20] *Lone Star Cement Corp. v. Fair,* 467 S.W.2d 402, 404–05 (Tex.1971). (The determinative factor is the intention of the court.) *Id.* (If a judgment is unambiguous with no room for interpretation, it is our duty to declare its effect in light of the literal language used); *Permian Oil Co. v. Smith,* 129 Tex. 413, 107 S.W.2d 564 (Tex. 1937); *Ellis v. Mortgage & Trust, Inc.,* 751 S.W.2d 721 (Tex.App.-Fort Worth 1988, no writ).

[21] *See,* Ex N.

could have commenced at any time during the 82 years following November 1, 1917. The record in the prior case does not contain the exact date on which the adverse possession commenced. The date certain will be supplied as prior to November 1, 1917 will be presumed in order to support the judgment.[22] The presumption of validity will supply by implication every proof, element, factual finding, or proper application of the law needed to support the judgment, and no presumption will be indulged against the validity of the judgment.[23] As to judgments the Texas Supreme Court has stated:

> "Moreover, the presumption of validity extends to judgments derived with or without the benefit of a jury. In fact, the presumption of validity is perhaps even stronger in a bench trial where an experienced judge exercises the functions of a jury and is charged with the responsibility of assessing the credibility of the witnesses, logically evaluating the evidence, rationally resolving factual disputes on the basis of such evidence, and correctly applying the law to the facts.... These things the trial court is presumed to have done because the judge is assumed to have conscientiously done his duty."[24]

The Defendant's predecessor in interest in the prior case claimed title to the Property by adverse possession under *Tex.Civ.Prac.&Rem. Code*, Limitations of Real Property Actions, §§16.025, et seq. The Judgment entered May 12, 1993, recited that the Court read and considered all of pleadings filed in the case, including the Defendants', G. W. Kolstad and Doris Fraser's, Original Answer, and heard all of the evidence and found all of the facts as set out in the Plaintiff's

---

[22] *Vickery v. Commission for Lawyer Discipline*, 5 S.W.3d 241 (Tex. 1999)"(However, where the court specifically finds one or more elements of a ground of recovery or defense, this fact constitutes some evidence the court relied upon the ground or defense in reaching its decision. In such case, the omission of some of the elements of a ground of recovery or defense is deemed to be inadvertent. Thus, "when one or more elements thereof have been found by the trial court, omitted unrequested elements, when supported by evidence, will be supplied by presumption in support of the judgment."); Tex.R.Civ.Pro., Rule 299

[23] Johnson v. Blount, 48 Tex. 38, (Tex. 1877); *Vickery v. Commission for Lawyer Discipline*, 5 S.W.3d 241, 251 (Tex.Civ.App.-Houston (14ᵗʰ Dist.)1999, rehrg. overruled, rev. denied); *Jackson v. Slaughter*, 185 S.W. 2d 759, 761 (Tex.Civ.App.-Texarkana 1944, writ ref'd w.o.m.).

[24] *Vickery v. Commission for Lawyer Discipline*, 5 S.W.3d 241 (Tex. 1999); *Mortensen v. Mortensen*, 186 S.W.2d 297, 299 (Tex.Civ.App.-San Antonio 1945, no writ); *Meyers v. Baylor University*, 6 S.W.2d 393, 395 (Tex.Civ.App.-Dallas 1928, writ ref'd); *See, Barnes v Rayment*, 214 S.W.2d 341, 343, (Tex Civ App Eastland 1948, no writ).

pleadings as true and correct and entered in favor of the Plaintiff, Charles R. Merrell, all of the relief as requested by Plaintiff.[25]

### Collateral Attack

7.    Plaintiffs cannot avoid the consequence of the doctrine of res judicata by seeking to "correct" the prior final Judgment. This would be a collateral attack on the Judgment. Plaintiffs' petition "seek(s) to have the title record corrected by the filing of a judgment in the deed records" to show ownership in the property that is different than the judgment entered in the prior case.[26] Plaintiff, by attempting to change the Judgment of the Court in the prior case, seeks to obtain relief which the prior Judgment bars.[27] The Judgment and Statement of Facts in the prior case finds that Plaintiffs do not own the claimed mineral interest.[28] This is, by definition a collateral attack on the prior Judgment and cannot be done. The Judgment in the prior case is a final Judgment and only a void judgment may be collaterally attacked.[29] A judgment is void only when it is apparent that the court rendering the judgment "had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act."[30] Only a clerical error in a final judgment can be corrected. A judicial error in a final judgment cannot be corrected.[31]

---

[25] *See*, Ex. I

[26] *See*, Ex. A ¶ 14.

[27] *See*, *Henderson v. Chambers*, 208 S.W.3d 546, (Tex.Civ.App.-Austin, 2006, no writ); *Biaza v. Simon*, 879 S.W.2d 349, 353 (Tex.Civ.App. - Houston [14ᵗʰ Dist.] 1994, writ denied).

[28] See, Ex. H and Ex I.

[29] *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex.1985).

[30] *Austin Indep. Sch. Dist. v. Sierra Club*, 495 S.W.2d 878, 881 (Tex.1973)).

[31] Escobar v. Escobar, 711 S.W.2d 230 (1986) (After the trial court loses its jurisdiction over a judgment, it can correct only clerical errors in the judgment by judgment nunc pro tunc. In this regard, the trial court has plenary power to correct a clerical error made in *entering* final judgment). *Comet Aluminum Co. v. Dibrell*, 450 S.W.2d 56 (Tex.1970). However, the trial court cannot correct a judicial error made in *rendering* a final judgment. *Comet*, 450 S.W.2d at 58. A judicial error is an error which occurs in the *rendering* as opposed to the *entering* of a judgment. *Comet*, 450 S.W.2d at 58 (Tex.1970); *Knox v. Long*, 152 Tex.291, 257 S.W.2d 289 (1953); *Petroleum Equipment Financial Corp. v. First National Bank of Fort Worth*, 622 S.W.2d 152 (Tex.App.—Fort Worth 1981,

## CONCLUSION

Defendant has affirmatively established each element of the affirmative defense of res judicata. Defendant respectfully submits that there is no genuine issue as to any material fact, and that Defendant is entitled to summary judgment as a matter of law. Defendant respectfully requests that her motion for summary judgment be granted, that Plaintiffs' claims be dismissed with prejudice, and that Defendant be awarded her costs of court and any other relief to which she is entitled.

Respectfully submitted,

MICHAEL C. SARTORI, Attorney for Defendant
502A Houston Street
P. O. Box 1222
George West, Texas 78022
(361) 449-2691
(361) 449-2380 (FAX)
SBN# 17655500
Email: michael@msartori.com

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on August 15, 2014.

Michael C. Sartori
Attorney for Defendant

---

*Comet*, 450 S.W.2d at 58. A judicial error is an error which occurs in the *rendering* as opposed to the *entering* of a judgment. *Comet*, 450 S.W.2d at 58 (Tex.1970); *Knox v. Long*, 152 Tex. 291, 257 S.W.2d 289 (1953); *Petroleum Equipment Financial Corp. v. First National Bank of Fort Worth*, 622 S.W.2d 152 (Tex.App.—Fort Worth 1981, writ ref'd n.r.e.). *See also Samples Exterminator v. Samples*, 640 S.W.2d 873 (Tex.1982) (definition of rendering). When deciding whether a correction is of a judicial or a clerical error, we look to the judgment actually rendered, not the judgment that should or might have been rendered. *Coleman v. Zapp*, 105 Tex. 491, 151 S.W. 1040 (Tex.1912). The court can only correct the entry of a final written judgment that incorrectly states the judgment actually rendered. Thus, even if the court renders incorrectly, it cannot alter a written judgment which precisely reflects the incorrect rendition. *Love v. State Bank & Trust Co. of San Antonio*, 126 Tex. 591, 90 S.W.2d 819 (1935); *Shepherd v. Estate of Long*, 480 S.W.2d 51 (Tex.Civ.App.—Fort Worth 1972, writ ref'd n.r.e.))

*Defendant's Motion for Traditional Summary Judgment*

# EXHIBIT "A"

Certified Copy of Plaintiffs' Original Petition,
*G. W. Kolstad and William Fraser V. Mary Jane Owen Merrell*,
Cause No. L-13-0197-CV-B,
156th Judicial District Court, Live Oak County, Texas

135

No. L-13-0197-CV-B

| | | |
|---|---|---|
| G.W. KOLSTAD and | § | IN THE DISTRICT COURT OF |
| WILLIAM FRASER | § | |
| Plaintiffs | § | |
| | § | |
| | § | |
| V. | § | LIVE OAK COUNTY, TEXAS |
| | § | |
| MARY JUNE OWEN MERRELL | § | |
| Defendant | § | |
| | § | |
| | § | 156TH JUDICIAL DISTRICT |
| | § | |

## ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, G.W. KOLSTAD and WILLIAM FRASER, Plaintiffs in the above named and numbered suit and file their Original Petition and Requests for Disclosure complaining of Defendant MARY JUNE OWEN MERRELL and for cause would show unto the Court as follows:

### I.
### DISCOVERY CONTROL PLAN

1. Plaintiffs intend to conduct discovery under Level 2 of the Texas Rules of Civil Procedure and affirmatively plead that this suit is not governed by the expedited-actions process in TEX. R. CIV. P. 169.

### II.
### CLAIM FOR RELIEF

2. Pursuant to TEX. R. CIV. P. 47, Plaintiffs seek any and all monetary compensation delivered to Defendant by virtue of that certain Oil, Gas and Mineral Lease dated March 24, 2010, recorded in Volume 157, Page 487 of the Deed Record, from Mary June Merrell, as Lessor, to Killam Oil Co, LTD, as Lessee, as it pertains to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4.

FILED
At 1:30 O'Clock P M
At George West, Texas

OCT 28 2013

MELANIE MATKIN
District Clerk, Live Oak County, Texas
By _____ Deputy

1

136

## III.
## PARTIES

3. Plaintiff, G. W. Kolstad is a resident of Montana who may be contacted by and through Counsel of Record.

4. Plaintiff William Fraser, successor in interest to Ms. Doris Fraser, is a resident of Montana who may be contacted by and through Counsel of Record.

5. Defendant Mary June Owen Merrill is the surviving spouse of Charles R. Merrell, and may be served with citation of suit at her place of residence 2411 Oak Brooke, Portland, Texas 78274.

## IV.
## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction because this suit seeks to establish title on real property.

7. Venue is proper in Live Oak County, Texas, pursuant to TEX. CIV. PRAC. & REM. CODE §§ 15.000 as this suit involves real property located in Live Oak County, Texas.

## V.
## FACTS

8. In Cause No. 6990-A, *Charles R. Merrell and wife, Margie L. Merrell v. Henrietta Willimann, et al.*, in the 36th Judicial District Court of Live Oak County, Texas, filed suit against Doris Fraser and G. W. Kolstead, successors in interest to Hannah Keeney and Annie Kolstad, for Trespass to Try Title and Adverse Possession as it relates to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, since October 31, 1975.

9. On May 12, 1993, the 36th Judicial District Court of Live Oak County, Texas, issued a "Statement of Facts and Judgment" in favor of Plaintiffs finding that actual, open,

2

peaceable notorious, exclusive, hostile and adverse possession of Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, had been had since October 31, 1975.

10. By Warranty Deed dated November 1, 1917, recorded in the Deed Records of Live Oak County, Texas, C. W. Reynolds, as Trustee and the United States Installment Realty Company, as Grantors, conveyed Tracts 191, 192, and 193 in Block 16 of the Live Bee Land Subdivision No. 4, and originally a part of the Festus Doyle Survey, No. 4, Live Oak County, Texas, to H. E. Hanson, as Grantee, and reserved a one-half (1/2) mineral interest. Thereafter, H. E. Hanson passed away intestate in January, 1940. As such, his one-half (1/2) mineral interest devolved in accordance with the Texas laws concerning intestate distribution as follows: one-half of one-half (1/2 of 1/2) to Eli Ness Hanson, and one-third of one-half (1/3 of 1/2) to Annie H. Kolstad, Hannah H. Keeney, and Sophia R. Routier, each. Eli Ness Hanson passed away intestate on January 26, 1955, and her interested devolved in equal shares to Annie H. Kolstad, Hannah H. Keeney, and Sophia R. Routier.

11. By Quit-Claim deed dated January 29, 1965, Sophia Routier, as Grantor, quit-claimed all her interest in Lots 191, 192, and 193 of Block 16 of the Live Bee Land Subdivision in the Festus Doyle Survey No. 4, to Hannah Keeney, as Grantee. By Warranty Deed dated June 10, 1970, recorded in Volume 227, Page 208 of the Deed Records, Hannah Keeney and Annie Kolstad, as Grantors, conveyed the surface only to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, to Maurice M. Chapman, as Grantee, and specifically reserved all minerals. After this Warranty Deed in 1970, 100% of the surface was vested in Maurice M. Chapman, and a 2/3 of 1/2 mineral interest was vested in Hannah Keeney and a 1/3 of 1/2 mineral interest was vested in Annie Kolstad.

3

12. By Oil, Gas and Mineral Lease dated March 24, 2010, recorded in Volume 157, Page 487 of the Deed Record, Mary June Merrell, as Lessor, granted, leased and let Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, Killam Oil Co, LTD, as Lessee.

## VI.
## CAUSES OF ACTION
### SUIT TO QUIET TITLE

13. Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein.

14. Plaintiffs seek to have the title record corrected by the filing of a judgment in the deed records to show ownership of the mineral rights and/or mineral title to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4.

15. Plaintiffs have title to the mineral rights based upon the previously mentioned facts. To wit: By Warranty Deed dated June 10, 1970, recorded in Volume 227, Page 208 of the Deed Records, Hannah Keeney and Annie Kolstad, as Grantors, conveyed the surface only to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, to Maurice M. Chapman, as Grantee, and specifically reserved all minerals. After this Warranty Deed in 1970, 100% of the surface was vested in Maurice M. Chapman, and a 2/3 of 1/2 mineral interest was vested in Hannah Keeney and a 1/3 of 1/2 mineral interest was vested in Annie Kolstad.

16. When a mineral interest has been separated from the surface ownership, no interest in the minerals can be acquired; for the mineral owner has an estate that is distinct from the surface fee. As such, the Trespass to Try Title and Adverse Possession matter brought did not divest Mr. William Fraser (as successor in interest to Ms. Doris Fraser) and Mr. G. W. Kolstad of their mineral interest in Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4.

4

## TRESPASS TO TRY TITLE

17. Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein.

18. Plaintiffs seek to recover the possession of mineral rights from that certain land unlawfully withheld from Defendants who currently maintain rights of immediate possession.

19. Plaintiffs can show title in the mineral rights to the disputed land emanating from a common source to which the Defendant claim. Specifically: by Warranty Deed dated June 10, 1970, recorded in Volume 227, Page 208 of the Deed Records, Hannah Keeney and Annie Kolstad, as Grantors, conveyed the surface only to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, to Maurice M. Chapman, as Grantee, and specifically reserved all minerals. After this Warranty Deed in 1970, 100% of the surface was vested in Maurice M. Chapman, and a 2/3 of 1/2 mineral interest was vested in Hannah Keeney and a 1/3 of 1/2 mineral interest was vested in Annie Kolstad.

20. As such, the previous litigation could not have divested Plaintiffs of their mineral interest in the land because the mineral interest has been separated from the surface ownership before the Defendants adversely possessed the subject land.

## DECLARATORY JUDGMENTS ACT

21. Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein.

22. Plaintiffs bring suit under the Declaratory Judgments Act (DJA) TEX. CIV. PRAC. & REM. CODE §§ 37.001, et seq. "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations" relating to the mineral rights associated with the subject land.

5

23. Plaintiffs bring suit under the Declaratory Judgments Act (DJA) TEX. CIV. PRAC. & REM. CODE §§ 37.001, et seq. "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations" relating to the Oil, Gas and Mineral Lease dated March 24, 2010, recorded in Volume 157, Page 487 of the Deed Record, Mary June Merrell, as Lessor, granted, leased and let Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, Killam Oil Co, LTD, as Lessee.

24. Pursuant to TEX. CIV. PRAC. & REM. CODE §§ 37.004, et seq., Plaintiffs petition this Court for a declaration that Cause No. 6990-A, *Charles R. Merrell and wife, Margie L. Merrell v. Henrietta Willimann, et al.,* the Trespass to Try Title and Adverse Possession matter, did not divest Plaintiffs of their mineral interest in the real property described as Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4.

## VII.
## DAMAGES

25. Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein.

26. Plaintiffs herein seek damages relating to the Oil, Gas and Mineral Lease dated March 24, 2010, recorded in Volume 157, Page 487 of the Deed Record, Mary June Merrell, as Lessor, granted, leased and let Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, Killam Oil Co, LTD, as Lessee. To wit, any amounts payable to Defendant under said lease are properly owed to Plaintiffs.

6

141

## VIII.
## ATTORNEYS' FEES

27. Plaintiffs incorporate all previous paragraphs by reference as if fully set forth herein.

28. As a result of Defendants' actions, Plaintiffs were forced to retain the Law Offices of S. Tim Yusuf, PLLC to file this action for declaratory relief and have agreed to pay the firm reasonable and necessary attorney's fees. An award of reasonable and necessary attorney's fees to the Plaintiffs would be equitable and just and therefore authorized by Section 37.009 of the Texas Civil Practice and Remedies Code.

## IX.
## REQUESTS FOR DISCLOSURE

29. Pursuant to TEX. R. CIV. P. 194.3(a), Defendants are requested to disclose, within 50 days of service of this request, the information and material described in TEX. R. CIV. P. 194.2(a) – (l).

7

## PRAYER

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer herein, and that this Court , and that upon final judgment, this Court award Plaintiffs all damages, attorneys fees, costs and all other relief; general or specific; at law or in equity; to which Plaintiffs may be entitled.

**LAW OFFICES OF S. TIM YUSUF, PLLC.**

By: _____

S. Tim Yusuf
State Bar No. 50511534
Pearland Town Center
11200 Broadway, Suite 2743
Pearland, Texas 77584
Telephone: 866-249-7633
Facsimile: 866-249-7635

**KIRBY, MATHEWS & WALRATH, PLLC**

By: _____

M. Ryan Kirby
State Bar Number: 24036915
Esperson Building
815 Walker St., Suite 240
Houston, TX 77002
Telephone: (713) 489-4620
Telecopier: (713) 489-4619

**ATTORNEYS FOR PLAINTIFFS**

143

# EXHIBIT "B"

Certified Copy of Defendant's Second Amended Original Answer,
*G. W. Kolstad and William Fraser V. Mary Jane Owen Merrell*,
Cause No. L-13-0197-CV-B,
156th Judicial District Court, Live Oak County, Texas

Cause No. L-13-0197-CV-B

| | | |
|---|---|---|
| G. W. KOLSTAD and WILLIAM FRASER, | § | IN THE DISTRICT COURT OF |
| Plaintiffs | § | |
| | § | |
| v. | § | LIVE OAK COUNTY, TEXAS |
| | § | |
| MARY JUNE OWEN MERRELL, | § | |
| Defendant | § | 156TH JUDICIAL DISTRICT |

FILED
At _3·25_ O'Clock ___P__ M
At George We st, Texas

JUL 17 2014

MEL§VIE M/;TKIN
District Clerk, Ig/6 =/ok/County, Texas
By _Lorann? Johnson_ Deputy

## DEFENDANT'S SECOND AMENDED ORIGINAL ANSWER

MARY JUNE OWEN MERRELL (social security number ending in 229) and (driver's license number ending in 443), Defendant in the above-entitled and numbered cause, makes, files and serves her Special Exceptions, Second Amended Original Answer to Plaintiffs' Original Petition, Verified Denial, Affirmative Defenses, and Plea of "Not Guilty" to Plaintiffs' Original Petition and any petition filed thereafter, and respectfully shows the Court the following:

**I.**

*Discovery Level*

1. Discovery is intended to be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

**II.**

*Special Exceptions*

2. Defendant, in addition to pleading the affirmative defense of *res judicata*, hereinafter, would specially except, as a predicate to the subsequent filing of a Texas Rules of Civil Procedure Rule 166a motion for summary judgment, to Plaintiffs' pleadings as a whole in that said causes of action,

*Defendant's Second Amended Answer*
*Page - 1 -*

if any truly be asserted, are barred by the doctrine of *res judicata* as a matter of law. *Res judicata* requires proof of the following three elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action on the same claims as were raised or could have been raised in the first action. The above listed *res judicata* elements exist in the case before the bar. The first element is met by the Final Judgment, as supported by a Statement of Facts on file in this case, both of which having been signed and entered May 12, 1993, a trespass to try title action styled *"Cause No. 6990-A, Charles R. Merrell and wife, Margie L. Merrell, Plaintiffs, vs. Mrs. Henrietta Willimann, et al,"* was filed in the 36th Judicial District Court of Live Oak County, Texas and recorded in Volume 42, Page 75, of the minutes of the District Court of Live Oak County, Texas. (The judgment in the prior case was based upon Plaintiff's First Amended Original Petition, a copy of the same being marked as Exhibit "A", attached hereto and incorporated herein for all purposes as if copied verbatim; a copy of the final, and appealable, judgment rendered in that suit being marked as Exhibit "B", attached hereto and incorporated herein for all purposes as if copied verbatim (hereinafter the "Judgment"); and Statement of Facts marked Exhibit "C" attached hereto and incorporated herein for all purposes as if copied verbatim (hereinafter "Statement of Facts"). The Judgment granted Plaintiff, Charles R. Merrell all relief sought in such action and decreed that the ownership of the Property which is also the subject of this action, amongst others, was vested one hundred percent (100%) in Charles R. Merrell. The land described in the petition in the earlier action was a tract of land out of which the Property in this case was carved. The second element of *res judicata* is met in that the Plaintiffs in this case, or their privies were Defendants in the earlier case. The Defendant in this case is the successor to Charles R. Merrell, the Plaintiff in the earlier action. Plaintiff G. W. Kolstad was a

*Defendant's Second Amended Answer*
*Page - 2 -*

named Defendant in that earlier action, and was served, and answered and noticed in said cause. Plaintiff William Fraser is the successor in interest to Doris Fraser, a named Defendant in that earlier action, who was served, and answered in said cause. The Defendants G. W. Kolstad and Doris Fraser in the earlier case filed a joint answer and in addition to a general denial raised the issue of mineral ownership, and claimed that they owned collectively one-half (½) the minerals under the minerals which are the subject of this suit, a copy of said joint answer is marked Exhibit "D" attached hereto and incorporated herein for all purposes as if copied verbatim (hereinafter "Answer"). The Judgment remains in full force and has not been appealed, reversed, modified, or voided, and is a valid and final judgment. The Judgment is *res judicata* of the matters complained of by the Plaintiffs herein. Plaintiffs are estopped to seek recovery in this suit of the title to the property described therein, and the Judgment is expressly pleaded as a complete bar to the causes of action asserted by Plaintiffs. Defendant requests that the court sustain this special exception and order Plaintiff to replead the petition within thirty days of the date of the Court's Order in accordance with Texas law and this Court's ruling on this special exception.

3.      Defendant, in addition to pleading the affirmative defense of *collateral estoppel*, hereinafter, would specially except, as a predicate to the subsequent filing of a Texas Rules of Civil Procedure Rule 166a motion for summary judgment, to Plaintiffs' pleadings as a whole in that said causes of action, if any truly be asserted, are barred by the doctrine of *collateral estoppel*, issue preclusion, as a matter of law. The party seeking to assert the bar of collateral estoppel must establish that 1) the facts sought to be litigated in the second suit (trespass to try title, quiet title) were fully and fairly litigated in the first action, an issue was "actually litigated" when it was properly raised, by the pleadings or otherwise, and it was submitted for determination, and determined (*See* Petition,

Answer, Judgment and Statement of Facts); 2) those facts were essential to the first judgment, the fact issues litigated in first action were the essential elements necessary to prevail under trespass to try tile, including all elements necessary to prove and/or defend title under the 5, 10 and 25 year adverse possession statutes of limitation, 10, and 25 year statutes, and which represented the factual determinations necessary to form a basis of the judgement; and 3) the parties in the present case were cast as adversaries in that first suit. In this case the Plaintiffs are identical to Defendants in the prior case or priviy to such Defendants. The Defendant in this case is priviy to the Plaintiff in the prior case.

4.      Defendant specially excepts to Section II., ¶2. of Plaintiffs' Original Petition in that it fails to set forth a cause of action sufficient to give Defendant fair notice of the jurisdictional amount claimed by Plaintiffs in this matter. Plaintiffs, allege unleased mineral ownership of 52.6 acres of land, and seek to recover all monies received by Defendant from a third party contract (Oil, Gas and Mineral Lease, dated March 24, 2010, from Mary June Merrell, as Lessor, and Killam Oil Co., as Lessee, covering 246.33 acres of land out of the Live Bee Land Subdivision No. 4, Live Oak County, Texas, and recorded in Vol. 157, Page 487 of the Official Public Records of Live Oak County, Texas, (marked as Exhibit "E" attached hereto and incoporated herein for all purposes as if copied verbatim)(hereinafter "the Lease"). The Lease covers 246.33 acres of land. Plaintiffs claim ownership of an interest in 55.04 acres of land. The Lease contains a warranty clause only for the benefit of the Lessee and the same is subject to a proportionate reduction clause. Plaintiffs fail to identify what, if any monies payable under the Lease are due Plaintiffs. Terms, conditions and royalties payable under the Lease are the subject to the Lease/contract between Defendant and a third party lessee. Plaintiffs have no contract with such third party lessee. Plaintiffs are not parties to the

*Defendant's Second Amended Answer*
*Page - 4 -*

Lease, nor direct beneficiaries or third party beneficiaries, thereof. Plaintiffs' lack of specificity makes it impossible to know what monies, attributable to what payment obligation and to what acreage, Plaintiffs are seeking. Plaintiffs further specify such damages, as set forth in Article VII., ¶ 26., of Plaintiffs' Original Petition, to be "any amounts payable to Defendant under the Lease are properly owned by Plaintiffs." Plaintiffs have failed to allege any viable cause of action against Defendant for which damages may be sought against Defendant irrespective of the amount of such claimed. Plaintiffs have failed to allege any facts supporting a claim that they are parties to the "Lease"; that they are "third party beneficiaries" to the Lease; nor that the parties to the Lease intended the Plaintiffs to be parties to or beneficiaries under the Lease. Plaintiffs have failed to allege any breach of the Lease by any party thereto. Defendant would point out that any deficiency of ownership by the Defendant that might be alleged having been excused by the "proportionate reduction" clause contained in the Lease. Plaintiffs have failed to assert any damages to Plaintiffs by Defendant by Defendant's entering into the Lease with a third party, which third party sought out and contracted with the Defendant and not Plaintiffs. Plaintiffs have failed to allege that the Lease upon which Plaintiffs base their claim has been breached by anyone owing a duty to Plaintiffs. Plaintiffs have failed to set forth the manner in which monies payable under the Lease to which Plaintiffs may have a claim are calculated. The facts set forth by Plaintiffs do not constitute a valid cause of action. It is impossible to determine the amount in controversy in this matter so as to establish that this Court has jurisdiction over this case and which amount the Plaintiffs have the burden of alleging and proving. Defendant requests that the court sustain this special exception and order Plaintiffs to set forth a short statement of the cause of action sufficient to give fair notice of the claim involved and the amount in controversy at issue, and that such amendment to their

*Defendant's Second Amended Answer*
*Page - 5 -*

pleadings be made on or before thirty (30) days of the filing of this Original Answer, and that, if the Plaintiffs fail or refuse to do so, this action be dismissed.

5.      Defendant specially excepts to the allegations in Paragraph II and VII of Plaintiffs' Original Petition, on the ground that the pleading demonstrates that Plaintiffs are making a claim under a contract/Lease in which the Plaintiffs have no standing to bring.  Standing is a party's justiciable interest in the suit and is a component of subject-matter jurisdiction.  Plaintiffs, at best, are unleased mineral owners and not royalty owners, not being a party to any oil, gas and other mineral lease.  Defendant is no a mineral owner, but his mineral interest was sold to a lessee with a possiblity of reverter.  Defendant is now a royalty owner under an oil, gas and other mineral lease.  The Defendant receives royalties by reason of a third party contract to which Plaintiffs are strangers, and as such, Plaintiffs have no cause of action against Defendant for such royalties.  Plaintiffs are neither parties to the Lease nor third party beneficiaries of the Lease.  The Lease indicates on its face that Plaintiffs lack standing to bring suit against Defendant for the acts and/or omissions complained of in Plaintiffs' Original Petition.  Defendant requests that the court sustain this special exception and order Plaintiffs to set forth a short statement of the cause of action sufficient to give fair notice to Defendant that Plaintiffs having standing to bring this action, and that such amendment to their pleadings be made on or before thirty (30) days of the filing of this Original Answer, and that, if the Plaintiffs fail or refuse to do so, this action be dismissed.

6.      Defendant specially excepts to the allegations in Article VII, ¶28 on the ground that the pleading demonstrates that Plaintiffs are attempting to artfully plead a title dispute as a declaratory judgment action just to obtain attorney's fees when that claim is a trespass-to-try-title action.  A

*Defendant's Second Amended Answer*
*Page - 6 -*

150

trespass to try title lawsuit is an action to recover possession of land withheld from an owner with a right to immediate possession. The Declaratory Judgment Act, on the other hand, provides a method to seek a declaration of rights under certain instruments, and permits an award of attorney's fees subject to the trial court's discretion. The language in Texas Property Code §22.001 ("trespass to try title action is *the* method of determining title") is mandatory. Texas courts have held that if the determination only *prospectively* implicates title, then the dispute does not have to be brought as a trespass to try title action. Here the Plaintiffs are not asking for a prospective determination of title but one that goes backwards. The substance and not the form of the pleadings is used to determine whether an action is properly considered as a trespass or declaratory judgment action. Any suit involving a dispute over the title to land is an action in trespass to try title, whatever its form and regardless of the relief sought. Defendant requests that the court sustain this special exception and order Plaintiffs to strike Article VIII of Plaintiffs' Original Petition from said pleading on or before thirty (30) days of the filing of this Original Answer.

## III.

### *General Denial*

7.    Subject to the foregoing special exception, Defendant denies generally each and every allegation in Plaintiffs' Original Petition and demands strict proof thereof upon the trial of this case. Subject to such special exceptions, stipulations, affirmative defenses and admissions as may be hereafter made, the Defendant asserts a general denial, as authorized by Rule 92, Texas Rules of Civil Procedure, and requests that the Plaintiffs be required to prove by a preponderance of the evidence all of the charges and allegations made against the Defendant in Plaintiffs' Original

*Defendant's Second Amended Answer*
*Page - 7 -*

Petition, as required by the Texas Rules of Civil Procedure, and the laws of the State of Texas.

8.  Pursuant to Rule 63, 69 and 98 of the Texas Rules of Civil Procedure, the Defendant reserves the right to amend and/or supplement her answer to further answer and specially except to Plaintiffs' allegations and claims.

## IV.

### *Verified Denial*

9.  Subject to and without waiving the foregoing Special Exceptions and General Denial, or in the alternative, but only to the extent necessary to protect her rights, Defendant specifically asserts, pursuant to Rule 93(4) of the Texas Rules of Civil Procedure, that there is a defect of parties as claimed and set forth by Plaintiffs. The Plaintiffs have failed to serve and include all necessary parties this suit, and in particular, all owners of interests in the mineral estate made the subject of Plaintiffs claims.

## V.

### *Affirmative Defenses*

10. Subject to and without waiving the foregoing Special Exceptions, General Denial and Verified Denial, Defendant asserts, pursuant to Rule 94 of the Texas Rules of Civil Procedure, the following affirmative defenses which, singly or in combination, bar Plaintiffs' right to recover, in whole or in part, the damages alleged in Plaintiff's Original Petition:

a.  Plaintiffs' claims are barred, in whole or in part, because Plaintiff lacks the requisite standing to bring this action. Plaintiffs are not parties to the Lease made the subject of Plaintiffs'

*Defendant's Second Amended Answer*
*Page - 8 -*

152

suit. Plaintiffs are not third party beneficiaries to the Lease made the subject of this suit. Defendant owes no duty to Plaintiffs. Defendant has no contractual relationship with Plaintiffs. As pled by Plaintiffs there is no real controversy between Plaintiffs and Defendant which can be determined by this suit. Plaintiffs lack standing to sue over proceeds of the Lease, the Lease is a contract, Plaintiffs are not parties to the Lease, the Lease is a contract that is subject to its terms and conditions, the Lease clearly states that it covers 246.33 acres of land, and that the Lessor is to be paid under the Lease based upon that the terms and conditions of the Lease subject to a proportionate reduction clause. Assuming that Plaintiffs are owners of unleased minerals covered by the description in the Lease, Plaintiffs are still not parties to the Lease nor a third party beneficiaries to the Lease. They are and remain unlease mineral owners and their rights do not stem from the Lease but rather than from the alleged ownership in the minerals. If correct in their claim, Plaintiffs are entitled to their proportionate share of the proceeds derived by the working interest owner under the Lease less any and all costs of production.

b.      Defendant would further show that Plaintiffs' lawsuit is frivolous, groundless, unreasonable, and brought in bad faith. As a result of the frivolous lawsuit, Defendant has been forced to hire the undersigned attorneys to defend herself and has incurred and will incur reasonable and necessary attorneys' fees for the trial and any appeals of this case. Defendant is entitled to and hereby seek an award of all its reasonable attorneys' fees, as well as her costs incurred in defending this lawsuit.

c.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the doctrine of *res judicata* because a final judgment on the merits has been rendered in litigation

involving the same property, parties or their privies, claims and issues, including trespass to try title. The claims and issues asserted by Plaintiffs in this cause could have been raised, and *were raised*, in the earlier litigation and are now barred by *res judicata*. There has been no change in the nucleus of operative facts which existed at the time of the previous suit and at this time. A change of legal theories will not prevent the doctrine of *res judicata* from barring claims. The doctrine stands for the position that any cause of action which arises out of those same facts should be litigated in the same lawsuit. In other words, a final judgment in an action should bar subsequent suits based on the same "transaction," or series of connected "transactions," out of which the first action arose.

d.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the doctrine of *collateral estoppel* because a final judgment on the merits has been rendered in litigation involving the same claims and issues, including trespass to try title. The claims and issues addressed by Plaintiffs could have been raised in the earlier litigation and are now barred by *collateral estoppel*.

e.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the statute of limitations.

f.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the Statute of Frauds.

g.      Plaintiffs' claims and issues are barred, in whole or in part, by application of the affirmative defense of laches.

## VI.

### *Plea of Not Guilty*

Pursuant to Rule 788 of the Texas Rules of Civil Procedure. Defendant pleads that she is "not

*Defendant's Second Amended Answer*
*Page - 10 -*

guilty" of the injury complained of in the Plaintiffs' Original Petition filed against Defendant.

WHEREFORE, Defendant requests judgment of the court as follows:

1.    That Plaintiffs take nothing by their suit.

2.    That Defendant have judgment over and against Plaintiffs to compensate her for reasonable attorney's fees.

3.    That Defendant recover all costs, together with such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

MICHAEL C. SARTORI, Attorney for Defendant
502A Houston Street
P. O. Box 1222
George West, Texas 78022
(361) 449-2691
(361) 449-2380 (FAX)
SBN# 17655500
Email: michael@msartori.com

*Defendant's Second Amended Answer*
*Page - 11 -*

155

<u>VERIFICATION</u>

STATE OF TEXAS       §

COUNTY OF _San Patricio_

       Before me, the undersigned Notary Public, on this day personally appeared MARY JUNE OWEN MERRELL, and after being duly sworn stated under oath that she is the Defendant in this cause; that she has read the above Defendant's Original Answer; and that every Verified Denial contained in the answer is within her personal knowledge and is true and correct.


                              MARY JUNE OWEN MERRELL

SUBSCRIBED AND SWORN TO BEFORE ME on _July 15_ , 2014.

STEPHANIE TURANY
Notary Public
STATE OF TEXAS
My Comm. Exp. 08-03-2016

Notary Public in and for the State of Texas


## CERTIFICATE OF SERVICE

       I certify that a true copy of the above was served on each attorney of record or party in accordance with the <u>Texas Rules of Civil Procedure</u> on _____, 2014.


                           Michael C. Sartori
                           Attorney for Defendant


*Defendant's Second Amended Answer*
*Page - 12 -*

156

<u>VERIFICATION</u>

STATE OF TEXAS          §

COUNTY OF _Sun Patricio_

 Before me, the undersigned Notary Public, on this day personally appeared MARY JUNE OWEN MERRELL, and after being duly sworn stated under oath that she is the Defendant in this cause; that she has read the above Defendant's Original Answer; and that every Verified Denial contained in the answer is within her personal knowledge and is true and correct.


          _Mary June Owen Merrell_
          MARY JUNE OWEN MERRELL

SUBSCRIBED AND SWORN TO BEFORE ME on _July 15_ , 2014.

| STEPHANIE TURANY |
| Notary Public |
| STATE OF TEXAS |
| My Comm. Exp. 08-03-2016 |

_Stephanie Turany_
Notary Public in and for the State of Texas


## CERTIFICATE OF SERVICE

 I certify that a true copy of the above was served on each attorney of record or party in accordance with the <u>Texas Rules of Civil Procedure</u> on _17 July_ , 2014.


          Michael C. Sartori
          Attorney for Defendant


*Defendant's Second Amended Answer*
*Page - 12 -*

157

# EXHIBIT "A"

Exhibit "A"

NO. 6990-A

| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

### PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, CHARLES R. MERRELL, hereinafter called Plaintiff,

complaining of:

Mrs. Henrietta Willimann;
Fintan J. Willimann;
Mrs. Fintan J. Willimann;
Fred Anderson;
Mrs. Fred Anderson;
M. J. Couch;
Mrs. M. J. Couch;
S. L. McKay;
Mrs. S. L. McKay;
Joseph Vanderyacht;
Mrs. Joseph Vanderyacht;
Earl E. Vanderyacht;
Mrs. Earl E. Vanderyacht;
J. W. Hauser;
Mrs. J. W. Hauser;
H. S. Tallakson;
Mrs. H. S. Tallakson;
Herman S. Tallakson;
Mrs. Hermann S. Tallakson;
Joseph Reichert;
Mrs. Joseph Reichert;
W. E. Ruckmann;
Pearl M. Ruckmann;
J. B. Hazlitt;
Mrs. J. B. Hazlitt;
W. A. Felix;
Mrs. W. A. Felix;
H. H. Johnson;
Mrs. H. H. Johnson;
Ottilie M. Gensch;
Mrs. Ottilie M. Gensch;
Fred Stadelman;
Mrs. Fred Stadelman;
C. E. Crook;
Mrs. C. E. Crook;
Jeannie E. Scoby;



FILED
At 2:25 O'Clock P M
Oct 2 3 1991
ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _____ Deputy

159

E. B. Grabow;
Mrs. E. B. Grabow;
Albert James;
Mrs. Albert James;
Adolph Hanson;
Mrs. Adolph Hanson;
Norman M. Negaard;
Mrs. Norman M. Negaard;
Charles Burkhard;
Mrs. Charles Burkhard;
Herman Burkhard;
Mrs. Herman Burkhard;
L. W. Greer;
Mrs. L. W. Greer;
T. L. Thoreson;
Mrs. T. L. Thoreson;
Henry L. Thoreson;
Mrs. Henry L. Thoreson;
A. E. Gage;
Mrs. A. E. Gage;
Mrs. Nellie Cooley;
R. E. Baum;
Mrs. R. E. Baum;
A. Wenger;
Mrs. A. Wenger;
Adolph Wenger;
Mrs. Adolph Wenger;
W. S. Duffy;
Mrs. W. S. Duffy;
John T. Strand;
Mrs. John T. Strand;
George H. McMurtie;
Mrs. George H. McMurtie;
Carl A. Jensen;
Mrs. Carl A. Jensen;
Marie Bertha Jensen;
Leo M. Foley;
Mrs. Leo M. Foley;
Arthur H. Forsan;
Mrs. Arthur H. Forsan;
A. J. LeFebvre
Mrs. A. J. LeFebvre;
Arthur C. Voss;
Mrs. Arthur C. Voss;
D. F. Wade;
Mrs. D. F. Wade;
J. V. McAfee;
Mrs. J. V. McAfee;
Helge S. Casperson;
Lewis Mortenson;
Mrs. Lewis Mortenson;
Peter E. Parson;

2

160

Mrs. Peter E. Parson;
Reverand A. Richter;
Mrs. A. Richter;
Bernard Powers;
Mrs. Bernard Powers;
James B. Fitzgerald;
Mrs. James B. Fitzgerald;
W. D. Youngquist;
Mrs. W. D. Youngquist;
L. T. Bougie;
Mrs. L. T. Bougie;
Swan Ericson;
Mrs. Swan Ericson;
Hans H. Jaul;
Mrs. Hans H. Jaul;
David Henry;
Mrs. David Henry;
W. P. Spangenberg;
Mrs. W. P. Spangenberg;
W. F. Marquardt;
Mrs. W. F. Marquardt;
O. P. Kendel;
Mrs. O. P. Kendel;
Grover J. Krumsiek;
Mrs. Grover J. Krumsiek;
A. H. Hoyne;
Mrs. A. H. Hoyne;
Hulda Bergdahl;
P. A. Bergdahl;
Mrs. P. A. Bergdahl;
Doris Fraser;
G. W. Kolstad;
Mrs. G. W. Kolstad;
Albert Pederson;
Mrs. Albert Pederson;
Gloria June Broach, Inedependent Executrix of the Estate of Doreen
Ryan, Deceased;
Gloria June Broach, Trustee for Valerie Claire Broach;
Gloria June Broach, Trustee for Eric Weston Broach;
Melba Jo Parrott;
Jeannine Powell Corley;
William Morris Larimore;
Mrs. William Morris Larimore;
Charles D. Lovelace;
Mrs. Charles D. Lovelace;
David Peterson;
Mrs. David Peterson;
Albert Pederson;
Marie E. Mattison;
V. H. Houston;
Mrs. V. H. Houston;
J. B. Martindale;

3

Mrs. J. B. Martindale;
R. N. Martindale;
Mrs. R. N. Martindale;

In the event that any of the above named are deceased, their estates, their estates administrator or executor, if any, and their unknown heirs;

The unknown stockholders of The First State Bank of Le Sueur Center;
The unknown stockholders of U. S. I. Realty Co.;
The unknown stockholders of Mid-Frio Petroleum Co.;
The unknown stockholders of George C. Vaughn & Sons, Inc.;
The unknown stockholders of Martindale Mortgage Co.; and

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants;

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 andrecorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the

4

hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas.

5

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16, 1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to

6

164

Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger, dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas.

7

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 andrecorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas.

8

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920 and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas.

9

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of. Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas;

all of whom are hereinafter collectively called Defendants, and for

cause of action would respectfully show unto the Court:

I.

Parties

Plaintiff, CHARLES R. MERRELL is an individual residing in

Live Oak County, Texas. MARGIE L. MERRELL, a named Plaintiff in

10

Plaintiffs' Original Petition is deceased.

With the exception of the hereinafter set forth and identified Defendants, the place of residence of each of the above named Defendants is unknown to Plaintiff, and after due diligence, Plaintiff have been unable to locate the whereabouts of any of such Defendants.

The names and addresses of the heirs of the persons above-named as are now deceased are unknown to the Plaintiff.

Plaintiff does not know the names of any person claiming title or an interest in the lands hereinafter described under the above-mentioned unrecorded Deeds.

Plaintiff does not know the names of any person claiming title or an interest in the lands hereinafter described under the above-mentioned Deeds.

Plaintiff does not know the names and addresses of the stockholders of The First State Bank of Le SuererCenter; U. S. I. Realty Co.; Mid-Frio Petroleum Co.; George C. Vaughn & Sons, Inc.; and Martindale Mortgage Co. Plaintiff has diligently checked and searched the records of the relevant Secretaries of State, but have been unable to locate such stockholders.

The Defendant's addresses which are known to Plaintiff, but which are not known to be current, are as follows:

Doris Fraser
P. O. Box 608
Chester, Montana 59522, Doris Fraser has answered in this cause and service may be had on Doris Fraser, acting Pro Se, at P. O. Box 608, Chester Montana 59522.

G. W. Kolstad
P. O. Box 121

11

Lothair, Montana 59461, G. W. Kolstad has answered in this cause and service may be had on G. W. Kolstad, acting Pro Se, at P. O. Box 121, Lothair Montana 59461.

Gloria June Broach Independent Executor of the Estate of Doreen Ryan, Deceased
Gloria June Broach,
Trustee for Valerie Claire Broach and
Eric Weston Broach
4707 Bicentennial Court
Houston, Texas 77066, Gloria June Broach Independent Executor of the Estate of Doreen Ryan, Deceased, and Gloria June Broach, Trustee for Valerie Claire Broach and Eric Weston Broach, has answered in this cause and service may be had on the attorney of record, Alfred A. Steinle, Law Offices of Steinle & Wetherbee, P. O. Box 400, Jourdanton, Texas 78026.

Melba Jo Parrott
40 Hedwig Circle
Houston, Texas 77024

William Morris Larimore
2909 Piedmont Ave.
Berkeley, California 94703

David Peterson
2205 First Avenue East
Williston, North Dakota 58801

II.

Real Property

At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the following described lands and premises situated in Live Oak County, Texas, to-wit:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts:  with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with

12

16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

13

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 fro a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest

14

corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre

15

tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

owning and claiming the same in fee simple.

III.

Trespass to Try Title

A.   That on or about the the first day of January, 1989, Plaintiff was in actual possession of the above-described property. On this date, Defendants unlawfully entered upon said lands and premises and withheld from Plaintiff the possession thereof. Defendants continue to withhold the possession of the above described property.

B.   That Defendants have no right, title or interest in said lands, or any part thereof.

IV.

Adverse Possession

Without waiving the foregoing plea or Plaintiff's ownership or record title, and cumulative thereof, Plaintiff would show unto the Court:

A.   Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the real property hereinabove described, claiming under Deed dated October 31, 1975,

16

174

and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County, Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on this property as they became due, and before delinquency.

B. Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the real property herein described for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of their possession.

C. Plaintiff and Plaintiff's predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the real property herein described for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held said real property under claim of right, in good faith and under duly recorded deed purporting to convey said real property.

D. Plaintiff and Plaintiff's predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the real property herein described for a period of more than twenty-five (25) years preceding the commencement of this

17

action. Plaintiff has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

E. Plaintiff and Plaintiff's predecessors in interest have openly exercised dominion over and asserted claim to this real property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action. The persons holding the apparent record title to the property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years during the twenty-five (25) years preceding the commencement of this action.

### Prayer

WHEREFORE, Plaintiff prays that the Defendants be cited to appear and answer, and that upon final hearing, Plaintiff have judgment for the title and possession of the real property which is the subject of this suit, for costs of suit, and for such other and further relief of which Plaintiff may be justly entitled.

Respectfully submitted,

Michael C. Sartori
Attorney for Plaintiff
P. O. Box 1222
George West, Texas 78022
(512) 449-2691
(512) 449-2380 (Telecopier)
State Bar No. 17655500

18

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been delivered to all attorneys of record in accordance with Rule 21a of the Texas Rules of Civil Procedure, on this the 23rd day of October, 1991.

_____
Michael C. Sartori

19

# EXHIBIT "B"

 

NO. 6990-A

| | | |
|---|---|---|
| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

## JUDGMENT

On 12th day of MAY, 1993, this case came on for hearing. Plaintiffs appeared by and through their attorney of record, Michael C. Sartori, and announced ready for trial. Defendants, G. W. KOLSTAD and DORIS FRASER, having answered, did not appear. Those Defendants cited by publication appeared by and through their attorney ad litem, William L. Hardwick, and announced ready for trial.

The following Defendants, although duly cited to appear, did not appear and wholly made default:

Mrs. Henrietta Willimann; Fintan J. Willimann; Mrs. Fintan J. Willimann; Fred Anderson; Mrs. Fred Anderson; M. J. Couch; Mrs. M. J. Couch; S. L. McKay; Mrs. S. L. McKay; Joseph Vanderyacht; Mrs. Joseph Vanderyacht; Earl E. Vanderyacht; Mrs. Earl E. Vanderyacht; J. W. Hauser; Mrs. J. W. Hauser; H. S. Tallakson; Mrs. H. S. Tallakson; Herman S. Tallakson; Mrs. Hermann S. Tallakson; Joseph Reichert; Mrs. Joseph Reichert; W. E. Ruckmann; Pearl M. Ruckmann; J. B. Hazlitt; Mrs. J. B. Hazlitt; W. A. Felix; Mrs. W. A. Felix; H. H. Johnson; Mrs. H. H. Johnson; Ottilie M. Gensch; Mrs. Ottilie M. Gensch; Fred Stadelman; Mrs. Fred Stadelman; C. E. Crook; Mrs. C. E. Crook; Jeannie E. Scoby; E. B. Grabow; Mrs. E. B. Grabow; Albert James; Mrs. Albert James; Adolph Hanson; Mrs. Adolph Hanson; Norman M. Negaard; Mrs. Norman M. Negaard; Charles Burkhard; Mrs. Charles Burkhard; Herman Burkhard; Mrs. Herman Burkhard; L. W. Greer; Mrs. L. W. Greer; T. L. Thoreson; Mrs. T. L. Thoreson; Henry L. Thoreson; Mrs. Henry L. Thoreson; A. E. Gage; Mrs. A. E. Gage; Mrs. Nellie Cooley; R. E. Baum; Mrs. R. E. Baum; A. Wenger; Mrs. A. Wenger; Adolph Wenger; Mrs. Adolph Wenger; W. S. Duffy; Mrs. W. S. Duffy; John T. Strand; Mrs. John T. Strand; George H. McMurtie; Mrs. George H. McMurtie; Carl A. Jensen; Mrs. Carl A. Jensen; Marie Bertha Jensen; Leo M. Foley; Mrs. Leo M. Foley; Arthur H. Forsan; Mrs. Arthur H. Forsan; A. J. LeFebvre; Mrs. A.

42 25

179



J. LeFebvre; Arthur C. Voss; Mrs. Arthur C. Voss; D. F. Wade; Mrs. D. F. Wade; J. V. McAfee; Mrs. J. V. McAfee; Helge S. Casperson; Lewis Mortenson; Mrs. Lewis Mortenson; Peter E. Parson; Mrs. Peter E. Parson; Rev. A. Richter; Mrs. A. Richter; Bernard Powers; Mrs. Bernard Powers; James B. Fitzgerald; Mrs. James B. Fitzgerald; W. D. Youngquist; Mrs. W. D. Youngquist; L. T. Bougie; Mrs. L. T. Bougie; Swan Ericson; Mrs. Swan Ericson; Hans H. Jaul; Mrs. Hans H. Jaul; David Henry; Mrs. David Henry; W. P. Spangenberg; Mrs. W. P. Spangenberg; W. F. Marquardt; Mrs. W. F. Marquardt; O. P. Kendel; Mrs. O. P. Kendel; Grover J. Krumsiek; Mrs. Grover J. Krumsiek; A. H. Hoyne; Mrs. A. H. Hoyne; Hulda Bergdahl; P. A. Bergdahl; Mrs. P. A. Bergdahl; Albert Pederson; Mrs. Albert Pederson; Jeannine Powell Corley; Charles D. Lovelace; Mrs. Charles D. Lovelace; Albert Pederson; Marie E. Mattison; V. H. Houston; Mrs. V. H. Houston; J. B. Martindale; Mrs. J. B. Martindale; R. N. Martindale; Mrs. R. N. Martindale. The unknown stockholders of The First State Bank of Le Sueur Center; The unknown stockholders of U. S. I. Realty Co.; The unknown stockholders of Mid-Frio Petroleum Co.; The unknown stockholders of George C. Vaughn & Sons, Inc.; The unknown stockholders of Martindale Mortgage Co.; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J. Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 and recorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward

2

180

Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward

3

VOLUME 42 PAGE 77

181



Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16, 1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger,

4

VOLUME 42 PAGE 78



dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 and recorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas; The unknown claimants who may

5



claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920 and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of

6

VOLUME 42 PAGE 80



Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas.

The Court finds that the pleadings of the Plaintiffs and Defendants are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction over this cause of action and the parties. All persons entitled to citation were properly cited. A jury was waived, and all questions of fact and of law were submitted to the Court.

The Court, after hearing the evidence and arguments of counsel, finds that:

7



1.    The Property which is the subject of this suit is situated in Live Oak County, Texas, and is described as follows:

## Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts: with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri

8

186



Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

## TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post

9

VOLUME 42 PAGE 83



for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

## TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172

10



and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

(hereinafter referred to as the "Property").

2.      The Plaintiff, Margie L. Merrell, is deceased. All references in this judgment to the Plaintiff is to CHARLES R. MERRELL.

3.      As to Plaintiffs' claim of ownership the Court finds that:

11



a. At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the Property owning and claiming the same in fee simple.

b. Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the Property, claiming under Deed dated October 31, 1975, and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County, Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on the Property as they became due, and before delinquency.

c. Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the Property for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of his possession.

d. Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held the Property under claim of right, in good faith and under duly recorded deed purporting to convey the Property.

e. Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. Plaintiff

12



has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

f.    Plaintiff and Plaintiffs' predecessors in interest have openly exercised dominion over and asserted claim to the Property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action.   The persons holding the apparent record title to the Property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years  during the twenty-five (25) years preceding the commencement of this action.

4.    That the ownership of the Property which is the subject of Plaintiff's suit is vested one hundred percent (100%) in the Plaintiff.

IT IS THEREFORE ORDERED, DECREED AND ADJUDGED, that the Plaintiff shall have and recover from the Defendants, and shall hold in fee simple, the following described tracts and parcels of land:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts:  with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of

13

VOLUME 42 PAGE 87



Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page

14

VOLUME 42 PAGE 88



24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

15

VOL 42 PAGE 85



THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

## TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

16



THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

together with all and singular the rights and appurtenances thereto.

All costs of court incurred are taxed against the party incurring same, for which execution may issue.

SIGNED AND ENTERED, this the 12ᵗʰ day of ___MAY___, 1993.

_____
JUDGE PRESIDING

RONALD M. YEAGER

APPROVED AS TO FORM:

_____
Michael C. Sartori, Attorney for
Plaintiff

_____
William L. Hardwick, Attorney ad Litem for
Defendants served by publication.

FILED
At 10:50 O'Clock a M

MAY 1 2 1993

ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _____ Deputy

17

# EXHIBIT "C"

 Exhibit 'C'

NO. 6990-A

| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
|---|---|---|
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

## STATEMENT OF FACTS

On the 12th day of May, 1993, the trial of the above entitled and numbered Cause came on to be heard before this Court.

Plaintiffs appeared by and through their attorney of record, Michael C. Sartori, and announced ready for trial. Defendants, G. W. KOLSTAD and DORIS FRASER, having answered, did not appear. Those Defendants cited by publication appeared by and through their attorney ad litem, William L. Hardwick, and announced ready for trial.

The following Defendants, although duly cited to appear, did not appear and wholly made default:

Mrs. Henrietta Willimann; Fintan J. Willimann; Mrs. Fintan J. Willimann; Fred Anderson; Mrs. Fred Anderson; M. J. Couch; Mrs. M. J. Couch; S. L. McKay; Mrs. S. L. McKay; Joseph Vanderyacht; Mrs. Joseph Vanderyacht; Earl E. Vanderyacht; Mrs. Earl E. Vanderyacht; J. W. Hauser; Mrs. J. W. Hauser; H. S. Tallakson; Mrs. H. S. Tallakson; Herman S. Tallakson; Mrs. Hermann S. Tallakson; Joseph Reichert; Mrs. Joseph Reichert; W. E. Ruckmann; Pearl M. Ruckmann; J. B. Hazlitt; Mrs. J. B. Hazlitt; W. A. Felix; Mrs. W. A. Felix; H. H. Johnson; Mrs. H. H. Johnson; Ottilie M. Gensch; Mrs. Ottilie M. Gensch; Fred Stadelman; Mrs. Fred Stadelman; C. E. Crook; Mrs. C. E. Crook; Jeannie E. Scoby; E. B. Grabow; Mrs. E. B. Grabow; Albert James; Mrs. Albert James; Adolph Hanson; Mrs. Adolph Hanson; Norman M. Negaard; Mrs. Norman M. Negaard; Charles Burkhard; Mrs. Charles Burkhard; Herman Burkhard; Mrs. Herman Burkhard; L. W. Greer; Mrs. L. W. Greer; T. L. Thoreson; Mrs. T. L. Thoreson; Henry L. Thoreson; Mrs. Henry L. Thoreson; A. E. Gage; Mrs. A. E. Gage; Mrs. Nellie Cooley; R. E. Baum; Mrs. R. E. Baum; A. Wenger; Mrs. A. Wenger; Adolph Wenger; Mrs. Adolph Wenger; W. S. Duffy; Mrs. W. S. Duffy; John T. Strand; Mrs. John T. Strand; George H. McMurtie; Mrs. George H. McMurtie; Carl A. Jensen; Mrs. Carl A. Jensen; Marie Bertha Jensen; Leo M. Foley; Mrs. Leo M. Foley; Arthur H. Forsan; Mrs. Arthur H. Forsan; A. J. LeFebvre; Mrs. A. J. LeFebvre; Arthur C. Voss; Mrs. Arthur C. Voss; D. F. Wade; Mrs. D. F. Wade; J. V. McAfee; Mrs. J. V. McAfee; Helge S. Casperson; Lewis Mortenson; Mrs. Lewis Mortenson; Peter E. Parson; Mrs. Peter E. Parson; Rev. A. Richter; Mrs. A. Richter; Bernard Powers; Mrs. Bernard Powers; James B. Fitzgerald; Mrs. James B. Fitzgerald; W. D. Youngquist; Mrs. W. D. Youngquist; L. T. Bougie; Mrs. L. T. Bougie; Swan Ericson; Mrs. Swan Ericson; Hans H. Jaul; Mrs. Hans H. Jaul; David Henry; Mrs. David Henry; W. P. Spangenberg;

Mrs. W. P. Spangenberg; W. F. Marquardt; Mrs. W. F. Marquardt; O. P. Kendel; Mrs. O. P. Kendel; Grover J. Krumsiek; Mrs. Grover J. Krumsiek; A. H. Hoyne; Mrs. A. H. Hoyne; Hulda Bergdahl; P. A. Bergdahl; Mrs. P. A. Bergdahl; Albert Pederson; Mrs. Albert Pederson; Jeannine Powell Corley; Charles D. Lovelace; Mrs. Charles D. Lovelace; Albert Pederson; Marie E. Mattison; V. H. Houston; Mrs. V. H. Houston; J. B. Martindale; Mrs. J. B. Martindale; R. N. Martindale; Mrs. R. N. Martindale. The unknown stockholders of The First State Bank of Le Sueur Center; The unknown stockholders of U. S. I. Realty Co.; The unknown stockholders of Mid-Frio Petroleum Co.; The unknown stockholders of George C. Vaughn & Sons, Inc.; The unknown stockholders of Martindale Mortgage Co.; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 and recorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and

2

recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16,

3

42    65

1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger, dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and

4

recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 and recorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920

5

and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas.

No jury was demanded and all matters in controversy, including questions of fact and of law, were submitted to the Court.

After examining the pleadings the Plaintiff, Charles R. Merrell, testified as follows:

A.     That he claims the ownership in and to the following described lands, and premises in Live Oak County, Texas:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following

6

acreage in the various tracts: with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest

7

corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the

8

42    70

East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

## TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South

9

47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract 1), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

(hereinafter referred to as the "Property").

B.     That the records of the District Clerk and County Clerk were searched to obtain the names and addresses of all persons claiming or who could possibly claim an interest in the Property and all such people were served with citation or if their addresses were unavailable they were served by publication.

C.     The Plaintiff, Margie L. Merrell, is deceased. All references in this judgment to the Plaintiff is to CHARLES R. MERRELL.

D.     At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the Property owning and claiming the same in fee simple.

E.     Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the Property, claiming under Deed dated October 31, 1975, and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County,

10

Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on the Property as they became due, and before delinquency.

F.    Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the Property for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of his possession.

G.    Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held the Property under claim of right, in good faith and under duly recorded deed purporting to convey the Property.

H.    Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. Plaintiff has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

I.    Plaintiff and Plaintiffs' predecessors in interest have openly exercised dominion over and asserted claim to the Property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action. The persons holding the apparent record title to the Property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years during the twenty-five (25) years preceding the commencement of this action.

Plaintiff asked the Court to quiet title to the Property in the Plaintiff; to remove the cloud created by Defendants on the Property; have judgment for the title and possession of the Property which is the subject of this suit as set forth above and award such other and further relief to which Plaintiff may be justly entitled.

SIGNED this the _12th_ day of ___MAY___, 1993.

_____
JUDGE PRESIDING
RONALD M. YEAGER

11

42    23

APPROVED AS TO FORM:

Michael C. Sartori, Attorney for
Plaintiffs

William L. Hardwick, Attorney ad Litem for
Defendants served by publication.

FILED

At __10:50__ O'Clock __A__ M

MAY 1 2 1993

ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _____ Deputy

12

42 PAGE 14

# EXHIBIT "D"

G. W. Kolstad
P. O. Box 121
Lothair, MT 59461

Doris Fraser
P. O. Box 608
Chester, MT 59522



FILED

At ___11:11___ O'Clock ___A___ M

APR 2 1 1989

ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _____

NO. 6990-A

| | | |
|---|---|---|
| CHARLES R. MERRELL and wife, | ) | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs, | ) | |
| | ) | LIVE OAK COUNTY, TEXAS |
| VS. | ) | |
| | ) | 36TH JUDICIAL DISTRICT |
| MRS. HENRIETTA WILLIMANN, ET AL | ) | |

### ANSWER OF DEFENDANTS G. W. KOLSTAD AND

### DORIS FRASER TO PLAINTIFF'S ORIGINAL PETITION

COME NOW, G. W. KOLSTAD and DORIS FRASER, two of the Defendants in the above entitled action and in answer to Plaintiff's Original Petition, admit, deny and allege as follows:

I.

In answer to Paragraph I of Plaintiff's Original Petition, these answering Defendants admit that their names and addresses as listed therein are current and correct, allege they are without sufficient information as to the remainder of the allegations in Paragraph I and therefore deny the same.

II.

In answer to Paragraph II of Plaintiff's Original Petition, these answering Defendants deny that Plaintiffs were and are now seized and possessed of all interest in Tracts 191, 192, 193 and

210

the portion of the old abandoned roadway appurtenant thereto as set forth in said Petition as being a portion of Tract III, deny that Plaintiffs own the same in fee simple and affirmatively allege that these answering Defendants are the owners of one-half (1/2) of the oil and gas mineral estate and ores underlying said Tracts 191, 192, 193 and the appurtenant portions of the abandoned roadway adjacent thereto, being out of Block No. 16 of the Live Bee Land Subdivision No. 4 as per plat thereof recorded in Volume 1, page 24 of the Plat Records of Live Oak County, Texas, by virtue of a reservation of the same by these answering Defendants' predecessors in interest recorded in the records of Live Oak County, Texas, as set forth on Exhibit "A" attached hereto, with G. W. Kolstad being the owner of an undivided one-third of one-half (1/3 of 1/2) and Doris Fraser being the owner of an undivided two-thirds of one-half (2/3 of 1/2) thereof.

III.

These answering Defendants deny in its entirety the allegations of Paragraph III of Plaintiff's Original Petition insofar as it may apply to the interest set forth in the paragraph next preceding.

IV.

These answering Defendants deny in its entirety the allegations of Paragraph IV of Plaintiff's Original Petition insofar as they apply to the interest set forth in Paragraph II of this Answer and affirmatively allege that these answering Defendants asserted ownership over such interests in said lands by way of

211

oil and gas mineral lease (a copy of one of said leases being attached hereto as Exhibit "B") and that these answering

Defendants are and remain the owners of such interest as of the date hereof.

## PRAYER

Wherefore, these answering Defendants pray that the Plaintiffs' Original Petition be dismissed as to these Defendants, that Plaintiffs take nothing by their petition as against these Defendants and that these Defendants have judgment for the title and possession of the real property interests set forth in Paragraph II of this Answer, and for such other and further relief to which these Defendants be justly entitled.

Respectfully submitted,

_G W Kolstad_

G. W. Kolstad

_Chris Fraser_

Doris Fraser

STATE OF TEXAS
OAK
I, the Clerk of Live Oak County, Texas, do
hereby certify
on file or on this office
and same to be a true copy

FILED
Texas

212

# EXHIBIT "E"



*Exhibit "E"*

Notice of Confidentiality Rights: If you are a natural person, you may remove or strike any of the following information from this instrument before it is filed for record in the Public Records: Your Social Security Number or your Drivers License Number.

# OIL, GAS AND MINERAL LEASE

THIS AGREEMENT made this __24ᵗʰ__ day of March __ 2010_ between __ Mary June Merrell, lessor (whether one or more), whose address is: __ P.O. Box 1135, Portland, TX 78374 __ and __ Killam Oil Co., LTD whose address P.O. Box 499, Laredo, TX 78102 __, lessee, WITNESSETH:

1. Lessor, in consideration of Ten ($10.00) Dollars, receipt of which is hereby acknowledged, and of the covenants and agreements of lessee hereinafter contained, does hereby grant, lease and let unto lessee the land covered hereby for the purposes and with the exclusive right of exploring, drilling, mining and operating for, producing and owning oil, gas, sulphur and all other minerals (whether or not similar to those mentioned), together with the right to make surveys on said land, lay pipe lines, establish and utilize facilities for surface and subsurface disposal of salt water, construct roads and bridges, dig canals, build tanks, power stations, telephone lines, employee houses, and other structures on said land, necessary or useful in lessee's operations in exploring, drilling for, producing, treating, storing and transporting minerals produced from the land covered hereby or any other land adjacent thereto. The land covered hereby, herein called "said land", is located in the County of **Live Oak**, State of **Texas**, and is described as follows:

Being 246.33 acres of land, more or less, out of the Festus Doyle Survey 4, A-6, Live Oak County Texas, and being composed of the following two tracts to wit:

TRACT 1: 183.91 acres, more or less, being part of the Live Bee Subdivision No. 4, Block No. 16, Live Oak County, Texas, according to the map or plat of record recorded in Vol 1, Page 24 of the Plat Records of Live Oak County, Texas as follows: 7.14 acres of Tract No. 55; 5.67 acres of Tract No. 65; 3.81 acres of Tract No. 107; 11.62 acres of Tract No. 110; 22.35 acres in Tract No 111; 19.96 acres in Tract No. 112; 19.03 acres in Tract No.127; 20.05 acres in Tract No. 130; 20.00 acres in Tract No. 172; 16.12 acres in Tract No. 173; 17.76 acres in Tract No. 174; and 1.59 acres in the old abandoned roadway, in all a total of 183.91 acres and described as Tract 1, by metes and bounds in the deed reference below.

TRACT 2: 62.42 acres, more or less, being part of the Live Bee Subdivision No. 4, Block No. 16, Live Oak County, Texas, according to the map or plat of record recorded in Vol 1, Page 24 of the Plat Records of Live Oak County, Texas as follows: 0.09 acres out of Tract No. 188; 25.20 acres out of Tract No. 191; 16.09 acres out of Tract No. 191; 13.75 acres out of Tract No. 193; 1.47 acres in the old abandoned roadway and 5.82 acres in Tract No. 171, in all a total of 62.42 acres and described as Tract 2, by metes and bounds in a certain deed dated April 27, 1999 from Charles R. Merrell, et ux Mary June Merrell to Rodrigo Lopez as recorded in Volume 557 at Page 141 of the Deed Records of Live Oak County, Texas.

This lease also covers and includes, in addition to that above described, all land, if any, contiguous or adjacent to or adjoining the land above described and (a) owned or claimed by lessor by limitation, prescription, possession, reversion or unrecorded instrument or (b) as to which lessor has a preference right of acquisition. Lessor agrees to execute any supplemental instrument requested by lessee for a more complete or accurate description of said land. For the purpose of determining the amount of any bonus or other payment hereunder, said land shall be deemed to contain **246.33** acres, whether actually containing more or less, and the above recital of acreage in any tract shall be deemed to be the true acreage thereof. Lessor accepts the bonus as lump sum consideration for this lease and all rights and options hereunder.

2. Unless sooner terminated or longer kept in force under other provisions hereof, this lease shall remain in force for a term of **Three (3)** years from the date hereof, hereinafter called "primary term", and as long thereafter as operations, as hereinafter defined, are conducted upon said land with no cessation for more than ninety (90) consecutive days.

3. As royalty, lessee covenants and agrees: (a) To deliver to the credit of lessor, in the pipe line to which lessee may connect its wells, the equal One Fifth (1/5) part of all oil produced and saved by lessee from said land, or from time to time, at the option of lessee, to pay lessor the average posted market price of such One Fifth (1/5) part of such oil at the wells as of the day it is run to the pipe line or storage tanks, lessor's interest, in either case, to bear One Fifth (1/5) of the cost of treating oil to render it marketable pipe line oil; (b) To pay lessor on gas and casinghead gas produced from said land (1) when sold by lessee, One Fifth (1/5) of the amount realized by lessee, computed at the mouth of the well or (2) when used by lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of One Fifth (1/5) of such gas and casinghead gas; (c) To pay lessor on all other minerals mined and marketed or utilized by lessee from said land, one-tenth either in kind or value at the well or mine at lessee's election, except that on sulphur mined and marketed the royalty shall be one dollar ($1.00) per long ton. If, at the expiration of the primary term or at any time or times thereafter, there is any well on said land or on lands with which said land or any portion thereof has been pooled, capable of producing oil or gas, and all such wells are shut-in, this lease shall, nevertheless, continue in force as though operations were being conducted on said land for so long as said wells are shut-in, and thereafter this lease may be continued in force as if no shut-in had occurred. Lessee covenants and agrees to use reasonable diligence to produce, utilize, or market the minerals capable of being produced from said wells, but in the exercise of such diligence, lessee shall not be obligated to install or furnish facilities other than well facilities and ordinary lease facilities of flow lines, separator, and lease tank, and shall not be required to settle labor trouble or to market gas upon terms unacceptable to lessee. If, at any time or times after the expiration of the primary term, all such wells are shut-in for a period of ninety consecutive days, and during such time there are no operations on said land, then at or before the expiration of said ninety day period, lessee shall pay or tender, by check or draft of lessee, as royalty, a sum equal to ten dollars ($10.00) for each acre of land then covered hereby. Lessee shall make like payments or tenders at or before the end of each anniversary of the expiration of said ninety day period if upon such anniversary this lease is being continued in force solely by reason of the provisions of this paragraph. Each such payment or tender shall be made to the parties who at the time of payment would be entitled to receive the royalties which would be paid under this lease if the wells were producing, and may be deposited in the _____ Bank at _____, or its successors, which shall continue as the depositories, regardless of changes in the ownership of shut-in royalty. If at any time that lessee pays or tenders shut-in royalty, two or more parties are, or claim to be, entitled to receive same, lessee may, in lieu of any other method of payment herein provided, pay or tender such shut-in royalty, in the manner above specified, either jointly to such parties or separately to each in accordance with their respective ownership thereof, as lessee may elect. Any payment hereunder may be made by check or draft of lessee deposited in the mail or delivered to the party entitled to receive payment or to a depository bank provided for above on or before the last date for payment. Nothing herein shall impair lessee's right to release as provided in paragraph 5 hereof. In the event of assignment of this lease in whole or in part, liability for payment hereunder shall rest exclusively on the then owner or owners of this lease, severally as to the acreage owned by each.

4. Lessee is hereby granted the right, at its option, to pool or unitize any land covered by this lease with any other land covered by this lease, and / or with any other land, lease, or leases, as to any or all minerals or horizons, so as to establish units containing not more than 640 surface acres, plus 10% acreage tolerance; provided, however, units may be established as to any one or more horizons, or existing units may be enlarged as to any one or more horizons, so as to contain not more than 640 surface acres plus 10% acreage tolerance, if limited to one or more of the following: (1) gas,

214

other than casinghead gas, (2) liquid hydrocarbons (condensate) which are not liquids in the subsurface reservoir, (3) minerals produced from wells classified as gas wells by the conservation agency having jurisdiction. If larger units than any of those herein permitted, either at the time established, or after enlargement, are required under any governmental rule or order, for the drilling or operation of a well at a regular location, or for obtaining maximum allowable from any well to be drilled, drilling, or already drilled, any such unit may be established or enlarged to conform to the size required by such governmental order or rule. Lessee shall exercise said option as to each desired unit by executing an instrument identifying such unit and filing it for record in the public office in which this lease is recorded. Each of said options may be exercised by lessee at any time and from time to time while this lease is in force, and whether before or after production has been established either on said land, or on the portion of said land included in the unit, or on other land unitized therewith. A unit established hereunder shall be valid and effective for all purposes of this lease even though there may be mineral, royalty, or leasehold interests in lands within the unit which are not effectively pooled or unitized. Any operations conducted on any part of such unitized land shall be considered, for all purposes, except the payment of royalty, operations conducted upon said land under this lease. There shall be allocated to the land covered by this lease within each such unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) that proportion of the total production of unitized minerals from the unit, after deducting any used in lease or unit operations, which the number of surface acres in such land (or in each separate tract) covered by this lease within the unit bears to the total number of surface acres in the unit, and the production so allocated shall be considered for all purposes, including payment or delivery of royalty, overriding royalty and any other payments out of production, to be the entire production of unitized minerals from the land to which allocated in the same manner as though produced therefrom under the terms of this lease. The owner of the reversionary estate of any term royalty or mineral estate agrees that the accrual of royalties pursuant to this paragraph or of shut-in royalties from a well on the unit shall satisfy any limitation of term requiring production of oil or gas. The formation of any unit hereunder which includes land not covered by this lease shall not have the effect of exchanging or transferring any interest under this lease (including, without limitation, any shut-in royalty which may become payable under this lease) between parties owning interests in land covered by this lease and parties owning interest in land not covered by this lease. Neither shall it impair the right of lessee to release as provided in paragraph 5 hereof, except that lessee may not so release as to lands within a unit while there are operations thereon for unitized minerals unless all pooled leases are released as to lands within the unit. At any time while this lease is in force lessee may dissolve any unit established hereunder by filing for record in the public office where this lease is recorded a declaration to that effect, if at that time no operations are being conducted thereon for unitized minerals. Subject to the provisions of this paragraph 4, a unit once established hereunder shall remain in force so long as any lease subject thereto shall remain in force. If this lease now or hereafter covers separate tracts, no pooling or unitization of royalty interests as between any such separate tracts is intended or shall be implied or result merely from the inclusion of such separate tracts within this lease but lessee shall nevertheless have the right to pool or unitize as provided in this paragraph 4 with consequent allocation of production as herein provided. As used in this paragraph 4, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises.

5. Lessee may at any time and from time to time execute and deliver to lessor or file of record a release or releases of this lease as to any part or all of said land or of any mineral or horizon thereunder, and thereby be relieved of all obligations as to the released acreage or interest.

6. Whenever used in this lease the word "operations" shall mean operations for and any of the following: drilling, testing, completing, reworking, recompleting, deepening, plugging back or repairing of a well in search for or in an endeavor to obtain production of oil, gas, sulphur or other mineral, excavating a mine, production of oil, gas, sulphur or other mineral, whether or not in paying quantities.

7. Lessee shall have the use, free from royalty, of water, other than from lessor's water wells, and of oil and gas produced from said land in all operations hereunder. Lessee shall have the right at any time to remove all machinery and fixtures placed on said land, including the right to draw and remove casing. No well shall be drilled nearer than 200 feet to the house or barn now on said land without the consent of the lessor. Lessee shall pay for damages caused by its operations to growing crops and timber on said land.

8. The rights and estate of any party hereto may be assigned from time to time in whole or in part and as to any mineral or horizon. All of the covenants, obligations, and considerations of this lease shall extend to and be binding upon the parties hereto, their heirs, successors, assigns, and successive assigns. No change or division in the ownership of said land, royalties, or other moneys, or any part thereof, howsoever effected, shall increase the obligations or diminish the rights of lessee, including, but not limited to, the location and drilling of wells and the measurement of production. Notwithstanding any other actual or constructive knowledge or notice thereof of or to lessee, its successors or assigns, no change or division in the ownership of said land or of the royalties, or other moneys, or the right to receive the same, howsoever effected, shall be binding upon the then record owner of this lease until thirty (30) days after there has been furnished to such record owner at his or its principal place of business by lessor or lessor's heirs, successors, or assigns, notice of such change or division, supported by either originals or duly certified copies of the instruments which have been properly filed for record and which evidence such change or division, and of such court records and proceedings, transcripts, or other documents as shall be necessary in the opinion of such record owner to establish the validity of such change or division. If any such change in ownership occurs by reason of the death of the owner, lessee may, nevertheless pay or tender such royalties, or other moneys, or part thereof, to the credit of the decedent in a depository bank provided for above.

9. In the event lessor considers that lessee has not complied with all its obligations hereunder, both expressed and implied, lessor shall notify lessee in writing, setting out specifically in what respects lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by lessor. The service of said notice shall be precedent to the bringing of any action by lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on lessee. Neither the service of said notice nor the doing of any act by lessee intended to meet all or any of the alleged breaches shall be deemed an admission or presumption that lessee has failed to perform all its obligations hereunder. If this lease is cancelled for any cause, it shall nevertheless remain in force and effect as to (1) sufficient acreage around each well as to which there are operations to constitute a drilling or maximum allowable unit under applicable governmental regulations, (but in no event less than forty acres), such acreage to be designated by lessee as nearly as practicable in the form of a square centered at the well, or in such shape as then existing spacing rules require; and (2) any part of said land included in a pooled unit on which there are operations. Lessee shall also have such easements on said land as are necessary to operations on the acreage so retained.

10. Lessor hereby warrants and agrees to defend title to said land, against the claims of all persons whomsoever. Lessor's rights and interests hereunder shall be charged primarily with any mortgages, taxes or other liens, or interest and other charges on said land, but lessor agrees that lessee shall have the right at any time to pay or reduce the same for lessor, either before or after maturity, and be subrogated to the rights of the holder thereof and to deduct amounts so paid from royalties or other payments payable or which may become payable to lessor and/or assigns under this lease. If this lease covers a less interest in the oil, gas, sulphur, or other minerals in all or any part of said land than the entire and undivided fee simple estate (whether lessor's interest is herein specified or not), or no interest therein, then the royalties and other moneys accruing from any part as to which this lease covers less than such full interest, shall be paid only in the proportion which the interest therein, if any, covered by this lease, bears to the whole and undivided fee simple estate therein. All royalty interest covered by this lease (whether or not owned by lessor) shall be paid out of the royalty herein provided. This lease shall be binding upon each party who executes it without regard to whether it is executed by all those named herein as lessor.

11. If, while this lease is in force, at, or after the expiration of the primary term hereof, it is not being continued in force by reason of the shut-in well provisions of paragraph 3 hereof, and lessee is not conducting operations on said land by reason of (1) any law, order, rule or regulation, (whether or not subsequently determined to be invalid) or (2) any other cause, whether similar or dissimilar, (except financial) beyond the reasonable control of lessee, the primary term hereof shall be extended until the first anniversary date hereof occurring ninety (90) or more days following the removal of such delaying cause, and this lease may be extended thereafter by operations as if such delay had not occurred.

12. It is expressly understood and agreed that the following typewritten agreements and provisions shall supersede and govern the provisions in the printed form of this lease whenever such printed form is in direct conflict herewith and shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, devisees, legal representatives, successors and and assigns.

PAGE 2

13. It is understood and agreed that wherever the fractions "one-eighth" and "one-tenth" appear in paragraph 3 hereof, they are hereby expressly amended and increased to "One Fifth (1/5)."

14. It is understood and agreed that this lease covers and includes oil and gas only (including with oil and gas, all constituent elements thereof and all other liquid or liquefiable hydrocarbons and products of every kind or character derived therefrom and produced therewith, including sulphur), and that all minerals other than oil and gas are excepted herefrom and reserved to Lessor. Including, but not limited to, among the minerals reserved to Lessor and excluded from this lease are coal, uranium and lignite.

15. Lessee agrees to conduct all operation on the leased premises according to the rules of the Texas Railroad Commission and all other regulatory authorities having jurisdiction over operations under this lease.

16. Those portions of this Agreement that pertain to the surface are applicable and cover only those certain tracts of land wherein the Lessor owns an interest in the surface.

17.     A. Lessee shall pay for all damage to roads, fences, improvements and growing crops caused by its operations hereunder and will fill and level all pits and mounds, remove all board roads and board road materials, level and fill all ruts, and restore the surface of the ground to as near its original condition as is reasonably practical within a reasonable period of time after cessation of operations at each well location on the leased premises.

     B. Lessee shall not cut any fence or fences unless Lessee shall brace the existing fence adequately on both side of such cut so that there will be no slackening of the wires. Lessee agrees to promptly install either a substantial metal gate in such opening or a substantial cattle guard and such gate or cattle guard shall become the property of the surface owner upon the termination of the lease. Lessee agrees to promptly close all gates which Lessee, his agents, servants or employees use in Lessee's operations on the leased premises. The surface owner may from time to time designate gates to be locked, closed or left open when not in use and Lessee shall comply with each such request.

     C. All operation of Lessee shall be conducted so as to minimize the amount of surface land used or damaged by Lessee and Lessee agrees to grade and reasonably maintain all roads used by Lessee on the leased premises in connection with operations on this lease to be the extent that they are passable in a passenger vehicle at all time. If production is established, then all roads constructed by Lessee shall be of good quality and design, crowned to turn water from the surface and surfaced with and with material suitable for all weather use. Lessee shall consult with the surface owner prior to the construction of any roads by Lessee and shall cooperate with the surface owner in the establishment of a reasonably satisfactory location for such road prior to commencement of any road construction.

     D. Lessee, his agents, servants or employees shall not being firearms or dogs on the leased premises, nor shall anyone have the right to hunt, fish

18. Notwithstanding anything to the contrary herein contained, drilling operations on or production from a pooled unit or units established under the provisions of Paragraph No. 4 hereof, embracing land covered hereby and other land, shall maintain this lease in force only as to land included in such unit or units. This lease may be maintained in force as to the remainder of the land in any manner herein provided for.

19. It is understood and provided this lease cannot be held, maintained nor extended by virtue of the shut-in gas well provisions of this lease for a longer term than the primary term and three (3) years immediately thereafter, or for shorter terms of different periods not to exceed three (3) years in the aggregate.

20. Notwithstanding any provisions hereof to the contrary, Lessor shall have the option to obtain any water well drilled by Lessee on this lease when said water well or wells have wholly served the purposes of Lessee, and are no longer needed by Lessee, its successors or assigns. The Lessor shall give notice, in writing, to Lessee of his desire to acquire such well or wells by executing all instruments required for transfer and liability of the same prior to the actual abandonment of same by Lessee.

21. Merrell Lease Service located in Gregory, TX shall be given an opportunity to bid any location or pipeline work that involves this lease.

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

Lessor:

_Mary June Merrell_
Mary June Merrell

PAGE 3

216

# ACKNOWLEDGEMENT

THE STATE OF TEXAS §
COUNTY OF SAN PATRICIO §

This instrument was acknowledged before me on the 25 day of March, 2010, by Mary June Merrell.

My Commission Expires:

10-18-2011

STEPHANIE TURANY
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-18-2011

Notary Public for The State of Texas

Notary's Printed Name: Stephanie Turany

(Seal)

2/10

FILED FOR RECORD IN:

LIVE OAK COUNTY

ON: MAY 25, 2010 AT 04:15P

AS A(N) PUBLIC RECORDS

Karen Irvine, COUNTY CLERK

CLERK NUMBER   138929  PAGES   4

AMOUNT:        28.00

RECEIPT NUMBER 10002977

BY SHERRI
STATE OF TEXAS                     LIVE OAK COUNTY
THIS IS TO CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE DOCUMENT ON FILE IN
MY OFFICE WITNESS MY HAND AND OFFICIAL SEAL ON
THIS 25th DAY OF May, 20 10.
AS STAMPED HEREON BY ME. MAY 25, 2010

Karen Irvine, COUNTY CLERK

Recorded:

After Recording Return to:
Killam Oil Co. LTD
Attn: Steve Marshall
P.O. Box 499
Laredo, TX 78102

PAGE 4

217

# EXHIBIT "C"

Certified Copy of Plaintiffs' Original Petition,
*Charles R. Merrell and Wife, Margie L. Merrell V. Mrs. Henrietta Willimann, et al*,
Cause No. 6990-A,
36th Judicial District Court, Live Oak County, Texas,
filed March 29, 1989

NO. _6990-A_

| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | _36_[th] JUDICIAL DISTRICT |

### PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, CHARLES R. MERRELL and wife, MARGIE L. MERRELL, hereinafter called Plaintiffs, complaining of:

Mrs. Henrietta Willimann;
Fintan J. Willimann;
Mrs. Fintan J. Willimann;
Fred Anderson;
Mrs. Fred Anderson;
M. J. Couch;
Mrs. M. J. Couch;
S. L. McKay;
Mrs. S. L. McKay;
Joseph Vanderyacht;
Mrs. Joseph Vanderyacht;
Earl E. Vanderyacht;
Mrs. Earl E. Vanderyacht;
J. W. Hauser;
Mrs. J. W. Hauser;
H. S. Tallakson;
Mrs. H. S. Tallakson;
Herman S. Tallakson;
Mrs. Hermann S. Tallakson;
Joseph Reichert;
Mrs. Joseph Reichert;
W. E. Ruckmann;
Pearl M. Ruckmann;
J. B. Hazlitt;
Mrs. J. B. Hazlitt;
W. A. Felix;
Mrs. W. A. Felix;
H. H. Johnson;
Mrs. H. H. Johnson;
Ottilie M. Gensch;
Mrs. Ottilie M. Gensch;
Fred Stadelman;
Mrs. Fred Stadelman;



FILED
At _4:16_ O'Clock ___P___ M
MAR 29 1989
ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _____ Deputy

C. E. Crook;
Mrs. C. E. Crook;
Jeannie E. Scoby;
E. B. Grabow;
Mrs. E. B. Grabow;
Albert James;
Mrs. Albert James;
Adolph Hanson;
Mrs. Adolph Hanson;
Norman M. Negaard;
Mrs. Norman M. Negaard;
Charles Burkhard;
Mrs. Charles Burkhard;
Herman Burkhard;
Mrs. Herman Burkhard;
L. W. Greer;
Mrs. L. W. Greer;
T. L. Thoreson;
Mrs. T. L. Thoreson;
Henry L. Thoreson;
Mrs. Henry L. Thoreson;
A. E. Gage;
Mrs. A. E. Gage;
Mrs. Nellie Cooley;
R. E. Baum;
Mrs. R. E. Baum;
A. Wenger;
Mrs. A. Wenger;
Adolph Wenger;
Mrs. Adolph Wenger;
W. S. Duffy;
Mrs. W. S. Duffy;
John T. Strand;
Mrs. John T. Strand;
George H. McMurtie;
Mrs. George H. McMurtie;
Carl A. Jensen;
Mrs. Carl A. Jensen;
Marie Bertha Jensen;
Leo M. Foley;
Mrs. Leo M. Foley;
Arthur H. Forsan;
Mrs. Arthur H. Forsan;
A. J. LeFebvre
Mrs. A. J. LeFebvre;
Arthur C. Voss;
Mrs. Arthur C. Voss;
D. F. Wade;
Mrs. D. F. Wade;
J. V. McAfee;
Mrs. J. V. McAfee;

2

220

Helge S. Casperson;
Lewis Mortenson;
Mrs. Lewis Mortenson;
Peter E. Parson;
Mrs. Peter E. Parson;
Reverand A. Richter;
Mrs. A. Richter;
Bernard Powers;
Mrs. Bernard Powers;
James B. Fitzgerald;
Mrs. James B. Fitzgerald;
W. D. Youngquist;
Mrs. W. D. Youngquist;
L. T. Bougie;
Mrs. L. T. Bougie;
Swan Ericson;
Mrs. Swan Ericson;
Hans H. Jaul;
Mrs. Hans H. Jaul;
David Henry;
Mrs. David Henry;
W. P. Spangenberg;
Mrs. W. P. Spangenberg;
W. F. Marquardt;
Mrs. W. F. Marquardt;
O. P. Kendel;
Mrs. O. P. Kendel;
Grover J. Krumsiek;
Mrs. Grover J. Krumsiek;
A. H. Hoyne;
Mrs. A. H. Hoyne;
Hulda Bergdahl;
P. A. Bergdahl;
Mrs. P. A. Bergdahl;
Doris Fraser;
G. W. Kolstad;
Mrs. G. W. Kolstad;
Albert Pederson;
Mrs. Albert Pederson;
Doreen Ryan;
Gloria June Broach, Trustee for Valerie Claire Broach;
Gloria June Broach, Trustee for Eric Weston Broach;
Melba Jo Parrott;
Jeannine Powell Corley;
William Morris Larimore;
Mrs. William Morris Larimore;
Charles D. Lovelace;
Mrs. Charles D. Lovelace;
Peter Bahn;
Mrs. Peter Bahn;
David Peterson;

3

Mrs. David Peterson;
Albert Pederson;
Marie E. Mattison;
V. H. Houston;
Mrs. V. H. Houston;
J. B. Martindale;
Mrs. J. B. Martindale;
R. N. Martindale;
Mrs. R. N. Martindale;

In the event that any of the above named are deceased, their estates, their estates administrator or executor, if any, and their unknown heirs;

The unknown stockholders of The First State Bank of Le Sueur Center;
The unknown stockholders of U. S. I. Realty Co.;
The unknown stockholders of Mid-Frio Petroleum Co.;
The unknown stockholders of George C. Vaughn & Sons, Inc.;
The unknown stockholders of Martindale Mortgage Co.; and

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants;

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph

4

Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 andrecorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded

5

in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16, 1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger, dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas.

7

225

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded

8

in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 andrecorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard

9

Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920 and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl,

10

dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas;

all of whom are hereinafter collectively called Defendants, and for cause of action would respectfully show unto the Court:

I.

Parties

Plaintiffs, CHARLES R. MERRELL and wife, MARGIE L. MERRELL, are individuals residing in Live Oak County, Texas.

With the exception of the hereinafter set forth and identified Defendants, the place of residence of each of the above named Defendants is unknown to Plaintiffs, and after due diligence, Plaintiffs have been unable to locate the whereabouts of any of such Defendants.

The names and addresses of the heirs of the persons above-named as are now deceased are unknown to the Plaintiffs.

Plaintiffs do not know the names of any person claiming title or an interest in the lands hereinafter described under the above-mentioned unrecorded Deeds.

11

Plaintiffs do not know the names of any person claiming title or an interest in the lands hereinafter described under the above-mentioned Deeds.

Plaintiffs do not know the names and addresses of the stockholders of The First State Bank of Le SuererCenter; U. S. I. Realty Co.; Mid-Frio Petroleum Co.; George C. Vaughn & Sons, Inc.; and Martindale Mortgage Co. Plaintiffs have diligently checked and searched the records of the relevant Secretaries of State, but have been unable to locate such stockholders.

The Defendant's addresses which are known to Plaintiffs, but which are not known to be current, are as follows:

Doris Fraser
P. O. Box 608
Chester, Montana 59522

G. W. Kolstad
P. O. Box 121
Lothair, Montana 59461

Doreen Ryan
4707 Bicentennial Court
Houston, Texas 77066

Gloria June Broach,
Trustee for Valerie Claire Broach and
Eric Weston Broach
4707 Bicentennial Court
Houston, Texas 77066

Melba Jo Parrott
40 Hedwig Circle
Houston, Texas 77024

William Morris Larimore
2909 Piedmont Ave.
Berkeley, California 94703

Peter Bahn
Route 1
Bingham Lake, Minnesota 56118

12

David Peterson
2205 First Avenue East
Williston, North Dakota 58801

II.

Real Property

At all times mentioned and relevant to this action Plaintiffs were and are now, lawfully ceased and possessed of the following described lands and premises situated in Live Oak County, Texas, to wit:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts: with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

13

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

14

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 fro a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

15

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

owing and claiming the same in fee simple.

16

## III.

## Trespass to Try Title

A. That on or about the the first day of January, 1989, Plaintiffs were in actual possession of the above-described property. On this date, Defendants unlawfully entered upon said lands and premises and withheld from Plaintiffs the possession thereof. Defendants continue to withhold the possession of the above described property.

B. That Defendants have no right, title or interest in said lands, or any part thereof.

## IV.

## Adverse Possession

Without waiving the foregoing plea or Plaintiffs' ownership or record title, and cumulative thereof, Plaintiffs would show unto the Court:

A. Plaintiffs have been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the real property hereinabove described, claiming under Deed dated October 31, 1975, and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County, Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiffs have continuously cultivated, used or enjoyed these premises and paid the taxes on this property as they became due, and before delinquency.

B. Plaintiffs have been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the real

17

property herein described for more than ten (10) years preceding the commencement of this action. During this period Plaintiffs' possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiffs have cultivated, fenced, used and enjoyed these premises continuously during the entire period of their possession.

C. Plaintiffs and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the real property herein described for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiffs and their predecessors in interest have held said real property under claim of right, in good faith and under duly recorded deed purporting to convey said real property.

D. Plaintiffs and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the real property herein described for a period of more than twenty-five (25) years preceding the commencement of this action. Plaintiffs have been and now are cultivating, using and enjoying these premises continuously during the entire period of Plaintiffs' possession.

E. Plaintiffs and Plaintiffs' predecessors in interesthave openly exercised dominion over and asserted claim to this real property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action. The persons holding the

18

apparent record title to the property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years during the twenty-five (25) years preceding the commencement of this action.

<p style="text-align:center">Prayer</p>

WHEREFORE, Plaintiffs pray that the Defendants be cited to appear and answer, and that upon final hearing, Plaintiffs have judgment for the title and possession of the real property which is the subject of this suit, for costs of suit, and for such other and further relief of which Plaintiffs may be justly entitled.

Respectfully submitted,

Michael C. Sartori
Attorney for Plaintiffs
P. O. Box 1222
George West, Texas 78022
(512) 449-2691
State Bar No. 17655500

STATE OF TEXAS
CO. NTY CF LIVE OAK

I, al L. .. Matlin, District Clerk of Live Oak County, Texas, do hereby certify that the for going line is a true and correct copy of the original record, now in my lawful custody and posse sion, as app are of recc... ...son 'f vn. qge as ..ore ec, and 'foreg loful w vm m won ,bnoon in an of .no .. , ___ ge L ___ .Vol. offe; yn ni oiff no noC biseo se: um ,
Witness my official hand and seal of office this _____

_____ D_b_t_ , DISTRICT CLERK
Live Oak County, Texas

by _____

19

# EXHIBIT "D"

Certified Copy of Plaintiffs' First Amended Petition,
*Charles R. Merrell and Wife, Margie L. Merrell V. Mrs. Henrietta Willimann, et al*,
Cause No. 6990-A, 36th Judicial District Court,
Live Oak County, Texas,
filed October 23, 1991

NO. 6990-A

| | | |
|---|---|---|
| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

## PLAINTIFF'S FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, CHARLES R. MERRELL, hereinafter called Plaintiff, complaining of:

Mrs. Henrietta Willimann;
Fintan J. Willimann;
Mrs. Fintan J. Willimann;
Fred Anderson;
Mrs. Fred Anderson;
M. J. Couch;
Mrs. M. J. Couch;
S. L. McKay;
Mrs. S. L. McKay;
Joseph Vanderyacht;
Mrs. Joseph Vanderyacht;
Earl E. Vanderyacht;
Mrs. Earl E. Vanderyacht;
J. W. Hauser;
Mrs. J. W. Hauser;
H. S. Tallakson;
Mrs. H. S. Tallakson;
Herman S. Tallakson;
Mrs. Hermann S. Tallakson;
Joseph Reichert;
Mrs. Joseph Reichert;
W. E. Ruckmann;
Pearl M. Ruckmann;
J. B. Hazlitt;
Mrs. J. B. Hazlitt;
W. A. Felix;
Mrs. W. A. Felix;
H. H. Johnson;
Mrs. H. H. Johnson;
Ottilie M. Gensch;
Mrs. Ottilie M. Gensch;
Fred Stadelman;
Mrs. Fred Stadelman;
C. E. Crook;
Mrs. C. E. Crook;
Jeannie E. Scoby;



FILED
At 2:25 O'Clock P M
Oct 2 3 1991
ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _____ Deputy

239

E. B. Grabow;
Mrs. E. B. Grabow;
Albert James;
Mrs. Albert James;
Adolph Hanson;
Mrs. Adolph Hanson;
Norman M. Negaard;
Mrs. Norman M. Negaard;
Charles Burkhard;
Mrs. Charles Burkhard;
Herman Burkhard;
Mrs. Herman Burkhard;
L. W. Greer;
Mrs. L. W. Greer;
T. L. Thoreson;
Mrs. T. L. Thoreson;
Henry L. Thoreson;
Mrs. Henry L. Thoreson;
A. E. Gage;
Mrs. A. E. Gage;
Mrs. Nellie Cooley;
R. E. Baum;
Mrs. R. E. Baum;
A. Wenger;
Mrs. A. Wenger;
Adolph Wenger;
Mrs. Adolph Wenger;
W. S. Duffy;
Mrs. W. S. Duffy;
John T. Strand;
Mrs. John T. Strand;
George H. McMurtie;
Mrs. George H. McMurtie;
Carl A. Jensen;
Mrs. Carl A. Jensen;
Marie Bertha Jensen;
Leo M. Foley;
Mrs. Leo M. Foley;
Arthur H. Forsan;
Mrs. Arthur H. Forsan;
A. J. LeFebvre
Mrs. A. J. LeFebvre;
Arthur C. Voss;
Mrs. Arthur C. Voss;
D. F. Wade;
Mrs. D. F. Wade;
J. V. McAfee;
Mrs. J. V. McAfee;
Helge S. Casperson;
Lewis Mortenson;
Mrs. Lewis Mortenson;
Peter E. Parson;

2

240

Mrs. Peter E. Parson;
Reverand A. Richter;
Mrs. A. Richter;
Bernard Powers;
Mrs. Bernard Powers;
James B. Fitzgerald;
Mrs. James B. Fitzgerald;
W. D. Youngquist;
Mrs. W. D. Youngquist;
L. T. Bougie;
Mrs. L. T. Bougie;
Swan Ericson;
Mrs. Swan Ericson;
Hans H. Jaul;
Mrs. Hans H. Jaul;
David Henry;
Mrs. David Henry;
W. P. Spangenberg;
Mrs. W. P. Spangenberg;
W. F. Marquardt;
Mrs. W. F. Marquardt;
O. P. Kendel;
Mrs. O. P. Kendel;
Grover J. Krumsiek;
Mrs. Grover J. Krumsiek;
A. H. Hoyne;
Mrs. A. H. Hoyne;
Hulda Bergdahl;
P. A. Bergdahl;
Mrs. P. A. Bergdahl;
Doris Fraser;
G. W. Kolstad;
Mrs. G. W. Kolstad;
Albert Pederson;
Mrs. Albert Pederson;
Gloria June Broach, Inedpendent Executrix of the Estate of Doreen Ryan, Deceased;
Gloria June Broach, Trustee for Valerie Claire Broach;
Gloria June Broach, Trustee for Eric Weston Broach;
Melba Jo Parrott;
Jeannine Powell Corley;
William Morris Larimore;
Mrs. William Morris Larimore;
Charles D. Lovelace;
Mrs. Charles D. Lovelace;
David Peterson;
Mrs. David Peterson;
Albert Pederson;
Marie E. Mattison;
V. H. Houston;
Mrs. V. H. Houston;
J. B. Martindale;

3

241

Mrs. J. B. Martindale;
R. N. Martindale;
Mrs. R. N. Martindale;

In the event that any of the above named are deceased, their estates, their estates administrator or executor, if any, and their unknown heirs;

The unknown stockholders of The First State Bank of Le Sueur Center;
The unknown stockholders of U. S. I. Realty Co.;
The unknown stockholders of Mid-Frio Petroleum Co.;
The unknown stockholders of George C. Vaughn & Sons, Inc.;
The unknown stockholders of Martindale Mortgage Co.; and

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants;

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 andrecorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the

4

hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas.

5

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee,to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16, 1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to

6

Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger, dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas.

7

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 andrecorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas.

8

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920 and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas.

9

247

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas.

The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas;

all of whom are hereinafter collectively called Defendants, and for cause of action would respectfully show unto the Court:

I.

Parties

Plaintiff, CHARLES R. MERRELL is an individual residing in Live Oak County, Texas. MARGIE L. MERRELL, a named Plaintiff in

10

248

Plaintiffs' Original Petition is deceased.

With the exception of the hereinafter set forth and identified Defendants, the place of residence of each of the above named Defendants is unknown to Plaintiff, and after due diligence, Plaintiff have been unable to locate the whereabouts of any of such Defendants.

The names and addresses of the heirs of the persons above-named as are now deceased are unknown to the Plaintiff.

Plaintiff does not know the names of any person claiming title or an interest in the lands hereinafter described under the above-mentioned unrecorded Deeds.

Plaintiff does not know the names of any person claiming title or an interest in the lands hereinafter described under the above-mentioned Deeds.

Plaintiff does not know the names and addresses of the stockholders of The First State Bank of Le SuererCenter; U. S. I. Realty Co.; Mid-Frio Petroleum Co.; George C. Vaughn & Sons, Inc.; and Martindale Mortgage Co. Plaintiff has diligently checked and searched the records of the relevant Secretaries of State, but have been unable to locate such stockholders.

The Defendant's addresses which are known to Plaintiff, but which are not known to be current, are as follows:

Doris Fraser
P. O. Box 608
Chester, Montana 59522, Doris Fraser has answered in this cause and service may be had on Doris Fraser, acting Pro Se, at P. O. Box 608, Chester Montana 59522.

G. W. Kolstad
P. O. Box 121

11

249

Lothair, Montana 59461, G. W. Kolstad has answered in this cause and service may be had on G. W. Kolstad, acting Pro Se, at P. O. Box 121, Lothair Montana 59461.

Gloria June Broach Independent Executor of the Estate of Doreen Ryan, Deceased
Gloria June Broach,
Trustee for Valerie Claire Broach and
Eric Weston Broach
4707 Bicentennial Court
Houston, Texas 77066, Gloria June Broach Independent Executor of the Estate of Doreen Ryan, Deceased, and Gloria June Broach, Trustee for Valerie Claire Broach and Eric Weston Broach, has answered in this cause and service may be had on the attorney of record, Alfred A. Steinle, Law Offices of Steinle & Wetherbee, P. O. Box 400, Jourdanton, Texas 78026.

Melba Jo Parrott
40 Hedwig Circle
Houston, Texas 77024

William Morris Larimore
2909 Piedmont Ave.
Berkeley, California 94703

David Peterson
2205 First Avenue East
Williston, North Dakota 58801

II.

Real Property

At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the following described lands and premises situated in Live Oak County, Texas, to-wit:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts: with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with

12

16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

13

<u>TRACT II:</u>

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 fro a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest

14

corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre

15

tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

owning and claiming the same in fee simple.

## III.

## Trespass to Try Title

A. That on or about the the first day of January, 1989, Plaintiff was in actual possession of the above-described property. On this date, Defendants unlawfully entered upon said lands and premises and withheld from Plaintiff the possession thereof. Defendants continue to withhold the possession of the above described property.

B. That Defendants have no right, title or interest in said lands, or any part thereof.

## IV.

## Adverse Possession

Without waiving the foregoing plea or Plaintiff's ownership or record title, and cumulative thereof, Plaintiff would show unto the Court:

A. Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the real property hereinabove described, claiming under Deed dated October 31, 1975,

16

254

and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County, Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on this property as they became due, and before delinquency.

B. Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the real property herein described for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of their possession.

C. Plaintiff and Plaintiff's predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the real property herein described for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held said real property under claim of right, in good faith and under duly recorded deed purporting to convey said real property.

D. Plaintiff and Plaintiff's predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the real property herein described for a period of more than twenty-five (25) years preceding the commencement of this

17

action. Plaintiff has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

E. Plaintiff and Plaintiff's predecessors in interest have openly exercised dominion over and asserted claim to this real property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action. The persons holding the apparent record title to the property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years during the twenty-five (25) years preceding the commencement of this action.

## Prayer

WHEREFORE, Plaintiff prays that the Defendants be cited to appear and answer, and that upon final hearing, Plaintiff have judgment for the title and possession of the real property which is the subject of this suit, for costs of suit, and for such other and further relief of which Plaintiff may be justly entitled.

Respectfully submitted,

Michael C. Sartori
Attorney for Plaintiff
P. O. Box 1222
George West, Texas 78022
(512) 449-2691
(512) 449-2380 (Telecopier)
State Bar No. 17655500

18

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing has been delivered to all attorneys of record in accordance with Rule 21a of the Texas Rules of Civil Procedure, on this the 23rd day of October, 1991.

Michael C. Sartori

# EXHIBIT "E"

Certified Copy of Citation served upon G. W. Kolstad,
*Charles R. Merrell and Wife, Margie L. Merrell V. Mrs. Henrietta Willimann, et al,*
Cause No. 6990-A, 36th Judicial District Court,
Live Oak County, Texas,
filed April 5, 1989

# THE STATE OF TEXAS

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

To ___G. W. KOLSTAD, P.O. Box 121, Lothair, Montana 59461___

_____ Defendant, Greeting:

You are hereby commanded to appear by filing a written answer to the Plaintiff's _____ _____ Original _____ Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable District Court ___36th_____ Judicial District of ___Live Oak___ County, Texas at the Court House of said County in ___George West___, Texas.

Said Plaintiff's Petition was filed in said court, by ___Michael Sartori___ (†attorney for Plaintiff or Plaintiff), whose address is ___Box 1222, George West, Texas 78022___, on the ___29th___ day of ___March___ A.D. 19_89_, in this case, numbered ___6990-A___ on the docket of said court, and styled,

CHARLES R. MERRELL and wife, MARGIE L. MERRELL _____Plaintiff. s

VS. ___MRS. HENRIETTA WILLIMANN, ET AL_____Defendant. s

The nature of Plaintiff's demand is fully shown by a true and correct copy of Plaintiff's ___Original___ Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly mail the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at ___George West___, Texas this the ___30th___ day of ___March___ A. D. 19_89_. Attest: ___Ellen Jane McCarley___ Clerk ___District___ Court,

CLERK OF THE COURT

Ellen Jane McCarley
Drawer O
George West ___, TEXAS,

Live Oak ___County, Texas.

___Lois Shannon___, Deputy.

## CERTIFICATE OF DELIVERY BY MAIL

I hereby certify that on the ___30th___

day of ___March___, 19_89_

at _____ o'clock _____M, I mailed

to _____
Defendant(s) by registered mail or certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of this citation with a copy of the petition attached thereto.

## ATTACH RETURN RECEIPTS WITH ADDRESSEE'S SIGNATURE

Rule 106 (a) (2) the citation shall be served by mailing to the defendant by........certified mail............Return receipt requested, a true copy of the Citation........

Sec. 17.027 Rules of Civil Practice and Remedies Code if not prepared by Clerk of Court.

| *NAME OF PREPARER | TITLE |
|---|---|
|  |  |

ADDRESS

| CITY | STATE | ZIP |
|---|---|---|

†Strike the one not applicable.
*If not applicable so state N.A.

5990-A

P 698 990 809

## RECEIPT FOR CERTIFIED MAIL
NO INSURANCE COVERAGE PROVIDED
NOT FOR INTERNATIONAL MAIL
*(See Reverse)*

| | |
|---|---|
| Sent to G. W. Kolstad | |
| Street and No. P.O. Box 121 | |
| P.O., State and ZIP Code Lothair, Montana 59461 | |
| Postage | $ 85 |
| Certified Fee | 85 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt showing to whom and Date Delivered | 90 |
| Return Receipt showing to whom, Date, and Address of Delivery | |
| TOTAL Postage and Fees | $ 2.60 |
| Postmark or Date | MAR 30 1989 259 |

S Form 3800, June 1985

SENDER: Complete items 1 and 2 when additional services are desired, and complete items 3 and 4.

Put your address in the RETURN TO Space on the reverse side. Failure to do this will prevent this card from being returned to you. The return receipt fee will provide you the name of the person delivered to and the date of delivery. For additional fees the following services are available. Consult postmaster for fees and check box(es) for additional service(s) requested.

1. ☐ Show to whom delivered, date, and addressee's address. 2. ☐ Restricted Delivery
*(Extra charge)* *(Extra charge)*

| 3. Article Addressed to: | 4. Article Number |
|---|---|
| G. W. Kolstad P.O. Box 121 Lothair, Montana 59461 6990-A | P 698 990 809 |
|  | Type of Service: ☐ Registered ☐ Insured ☐ Certified ☐ COD ☐ Express Mail ☐ Return Receipt for Merchandise |
|  | Always obtain signature of addressee or agent and DATE DELIVERED |
| 5. Signature — Address X | 8. Addressee's Address (ONLY if requested and fee paid) |
| 6. Signature — Agent X | |
| 7. Date of Delivery 4/3/89 | |

PS Form 3811, Mar. 1988 *U.S.G.P.O. 1988-212-865 DOMESTIC RETURN RECEIPT

847

Case No. 6990-A

CHARLES R. MERRELL and wife,
MARGIE L. MERRELL

vs.

MRS. HENRIETTA WILLIMANN ET AL.

## Citation by Certified Mail

IN ...DISTRICT... COURT

of ...Live Oak............... County, Texas

Issued

This 30 day of March A. D. 19.89.
Ellen Jane McCarley

Clerk, ...District... Court,
...Live Oak............... County, Texas
By .................................., Deputy

Filed

This 5 day of April A. D. 1989
Ellen Jane McCarley
Clerk, ...District... Court,
Live Oak............... County, Texas
By .................................., Deputy

FOR SALE BY ROYER & SCHUTTS
Commercial Printing Div. Fort Worth, TX

UNITED STATES POSTAL SERVICE
OFFICIAL BUSINESS

SENDER INSTRUCTIONS
Print your name, address and ZIP Code
in the space below.
• Complete items 1, 2, 3, and 4 on the
reverse.
• Attach to front of article if space
permits, otherwise affix to back of
article.
• Endorse article "Return Receipt
Requested" adjacent to number.

PENALTY FOR PRIVATE
USE $300

U.S. MAIL

FILED
O'Clock
APR 5 1989
ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By .................................. Deputy

260

# EXHIBIT "F"

Certified Copy of Citation served upon Doris Fraser,
*Charles R. Merrell and Wife, Margie L. Merrell V. Mrs. Henrietta Willimann, et al,*
Cause No. 6990-A, 36th Judicial District Court,
Live Oak County, Texas,
filed April 7, 1989

# THE STATE OF TEXAS

NOTICE TO DEFENDANT: "You have been sued. You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10:00 a.m. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you."

To ___ DORIS FRASER, P.O. Box 608, Chester, Montana 59522 _____
_____ Defendant, Greeting:

You are hereby commanded to appear by filing a written answer to the Plaintiff's _____
_____ Original _____ Petition at or before ten o'clock A.M. of the Monday next after the expiration of twenty days after the date of service of this citation before the Honorable District Court __ 36th _____ Judicial District of ____ Live Oak _____ County, Texas at the Court House of said County in _____ George West _____, Texas.

Said Plaintiff's Petition was filed in said court, by ____ Michael Sartori _____
(†attorney for Plaintiff or Plaintiff), whose address is __ Box 1222, George West, Texas 78022,
on the __ 29th ___ day of ____ March ____ A.D. 19 89, in this case, numbered __ 6990-A ____
on the docket of said court, and styled,

CHARLES R. MERRELL and wife, MARGIE L. MERRELL
_____ Plaintiff. s

VS. MRS. HENRIETTA WILLIMANN, ET AL
_____ Defendant. s

The nature of Plaintiff's demand is fully shown by a true and correct copy of Plaintiff's
____ Original _____ Petition accompanying this citation and made a part hereof.

The officer executing this writ shall promptly mail the same according to requirements of law, and the mandates thereof, and make due return as the law directs.

Issued and given under my hand and seal of said Court at ____ George West _____, Texas
this the __ 30th ____ day of _____ March _____ A. D. 19 89 ____.
Attest: ____ Ellen Jane McCarley _____ Clerk __ District _____ Court,

CLERK OF THE COURT
Ellen Jane McCarley                          Live Oak _____ County, Texas.
Drawer O
George West _____ TEXAS. _____, Deputy.

ATTACH
RETURN RECEIPTS
WITH
ADDRESSEE'S SIGNATURE

Rule 106 (a) (2) the citation shall be served by mailing to the defendant by........certified mail............Return receipt requested, a true copy of the Citation........

Sec. 17.027 Rules of Civil Practice and Remedies Code if not prepared by Clerk of Court.

| •NAME OF PREPARER | | TITLE |
|---|---|---|
| ADDRESS | | |
| CITY | STATE | ZIP |

†Strike the one not applicable.
•If not applicable so state N.A.

## CERTIFICATE OF DELIVERY BY MAIL

I hereby certify that on the ____ 30th _____

day of __ March _____, 19 __ 89 ____

at _____ o'clock _____ M, I mailed

to _____
Defendant(s) by registered mail or certified mail, with delivery restricted to addressee only, return receipt requested, a true copy of this citation with a copy of the petition attached thereto.

5990-A

P 698 990 808
RECEIPT FOR CERTIFIED MAIL
NO INSURANCE COVERAGE PROVIDED
NOT FOR INTERNATIONAL MAIL
(See Reverse)

| Sent to Doris Fraser | |
|---|---|
| Street and No. P.O. Box 608 | |
| P.O., State and ZIP Code Chester Montana 59522 | |
| Postage | $ 85 |
| Certified Fee | 85 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt showing to whom and Date Delivered | 90 |
| Return Receipt showing to whom, Date, and Address of Delivery | |
| TOTAL Postage and Fees | $ 2.60 |
| Postmark or Date | |

PS Form 3800, June 1985

262

SENDER: Complete items 1 and 2 when additional services are desired, and complete items 3 and 4.
Put your address in the RETURN TO Space on the reverse side. Failure to do this will prevent this card from being returned to you. The return receipt fee will provide you the name of the person delivered to and the date of delivery. For additional fees the following services are available. Consult postmaster for fees and check box(es) for additional service(s) requested.
1. ☐ Show to whom delivered, date, and addressee's address. 2. ☐ Restricted Delivery (Extra charge) (Extra charge)

| 3. Article Addressed to: | 4. Article Number |
|---|---|
| Doris Fraser | P 698 990 808 |
| P.O. Box 608 | Type of Service: |
| Chester, Montana 59522 | ☒ Registered ☐ Insured |
| | ☒ Certified ☐ COD |
| | ☒ Express Mail ☐ Return Receipt for Merchandise |
| 6990-A | Always obtain signature of addressee or agent and DATE DELIVERED. |
| 5. Signature—Addressee X | 8. Addressee's Address (ONLY if requested and fee paid) |
| 6. Signature—Agent X | |
| 7. Date of Delivery | |

PS Form 3811, Mar. 1988        U.S.G.P.O. 1988-212-865        DOMESTIC RETURN RECEIPT

867

Case No. 6990-A

CHARLES R. MERRELL and wife,
MARGIE L. MERRELL

vs.

MRS. HENRIETTA WILLMANN ET AL

# Citation by Certified Mail

IN DISTRICT COURT

of Live Oak County, Texas

Issued

This 30 day of March A. D. 19 89.
Ellen Jane McCarley

Clerk, District Court,

Live Oak County, Texas

By _Lou Shema_, Deputy

Filed

This 7th day of April A. D. 1989
Ellen Jane McCarley

Clerk, District Court,

Live Oak County, Texas

By _Lois Skinner_, Deputy

FOR SALE BY ROYER & SCHUTTS
Commercial Printing Div. Fort Worth, TX

UNITED STATES POSTAL SERVICE
OFFICIAL BUSINESS

SENDER INSTRUCTIONS
Print your name, address and ZIP Code
in the space below.
• Complete items 1, 2, 3 and 4 on the
reverse.
• Attach to front of article if space
permits; otherwise affix to back of
article.
• Endorse article Return Receipt
Requested adjacent to number.

RETURN TO

PENALTY FOR PRIVATE
USE, $300

FILED
AT 8:00 O'Clock
APR 7 1989
ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas

Print Sender name, address, and ZIP Code in the space below

263

# EXHIBIT "G"

Certified Copy of Answers of Defendants G. W. Kolstad and Doris Fraser to
Plaintiff's Original Petition,
*Charles R. Merrell and Wife, Margie L. Merrell V. Mrs. Henrietta Willimann, et al*,
Cause No. 6990-A, 36th Judicial District Court,
Live Oak County, Texas,
filed April 21, 1989

G. W. Kolstad
P. O. Box 121
Lothair, MT 59461

Doris Fraser
P. O. Box 608
Chester, MT 59522



FILED

At __11:11__ O'Clock __a__ M

APR 2 1 1989

ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By_____Deputy

NO. 6990-A

| | |
|---|---|
| CHARLES R. MERRELL and wife, ) | IN THE DISTRICT COURT OF |
| MARGIE L. MERRELL, Plaintiffs, ) | |
| ) | LIVE OAK COUNTY, TEXAS |
| VS. ) | |
| ) | 36TH JUDICIAL DISTRICT |
| MRS. HENRIETTA WILLIMANN, ET AL ) | |

### ANSWER OF DEFENDANTS G. W. KOLSTAD AND

### DORIS FRASER TO PLAINTIFF'S ORIGINAL PETITION

COME NOW, G. W. KOLSTAD and DORIS FRASER, two of the Defendants in the above entitled action and in answer to Plaintiff's Original Petition, admit, deny and allege as follows:

I.

In answer to Paragraph I of Plaintiff's Original Petition, these answering Defendants admit that their names and addresses as listed therein are current and correct, allege they are without sufficient information as to the remainder of the allegations in Paragraph I and therefore deny the same.

II.

In answer to Paragraph II of Plaintiff's Original Petition, these answering Defendants deny that Plaintiffs were and are now seized and possessed of all interest in Tracts 191, 192, 193 and

265

the portion of the old abandoned roadway appurtenant thereto as set forth in said Petition as being a portion of Tract III, deny that Plaintiffs own the same in fee simple and affirmatively allege that these answering Defendants are the owners of one-half (1/2) of the oil and gas mineral estate and ores underlying said Tracts 191, 192, 193 and the appurtenant portions of the abandoned roadway adjacent thereto, being out of Block No. 16 of the Live Bee Land Subdivision No. 4 as per plat thereof recorded in Volume 1, page 24 of the Plat Records of Live Oak County, Texas, by virtue of a reservation of the same by these answering Defendants' predecessors in interest recorded in the records of Live Oak County, Texas, as set forth on Exhibit "A" attached hereto, with G. W. Kolstad being the owner of an undivided one-third of one-half (1/3 of 1/2) and Doris Fraser being the owner of an undivided two-thirds of one-half (2/3 of 1/2) thereof.

### III.

These answering Defendants deny in its entirety the allegations of Paragraph III of Plaintiff's Original Petition insofar as it may apply to the interest set forth in the paragraph next preceding.

### IV.

These answering Defendants deny in its entirety the allegations of Paragraph IV of Plaintiff's Original Petition insofar as they apply to the interest set forth in Paragraph II of this Answer and affirmatively allege that these answering Defendants asserted ownership over such interests in said lands by way of

266

oil and gas mineral lease (a copy of one of said leases being attached hereto as Exhibit "B") and that these answering Defendants are and remain the owners of such interest as of the date hereof.

### PRAYER

Wherefore, these answering Defendants pray that the Plaintiffs' Original Petition be dismissed as to these Defendants, that Plaintiffs take nothing by their petition as against these Defendants and that these Defendants have judgment for the title and possession of the real property interests set forth in Paragraph II of this Answer, and for such other and further relief to which these Defendants be justly entitled.

Respectfully submitted,

_G W Kolstad_

G. W. Kolstad

_Doris Fraser_

Doris Fraser

STATE OF TEXAS
COUNTY OF LIVE OAK

I, Melanie Mathis, District Clerk of Live Oak County, Texas, do hereby certify that the foregoing is a true and correct copy of the original now in my lawful custody and possession, as copy of record in ____ minutes of said Court on file in my office

Witness my official hand and seal of office this ____

_____, DISTRICT CLERK
Live Oak County, Texas

By _____

G. W. Kolstad
P. O. Box 121
Lothair, MT 59461

Doris Fraser
P. O. Box 608
Chester, MT 59522



FILED
At__11:11__O'Clock__a__M

APR 21 1989

ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By_____

NO. 6990-A

CHARLES R. MERRELL and wife,  )   IN THE DISTRICT COURT OF
MARGIE L. MERRELL, Plaintiffs,  )
           )   LIVE OAK COUNTY, TEXAS
  VS.          )
           )   36TH JUDICIAL DISTRICT
MRS. HENRIETTA WILLIMANN, ET AL  )

## ANSWER OF DEFENDANTS G. W. KOLSTAD AND

## DORIS FRASER TO PLAINTIFF'S ORIGINAL PETITION

COME NOW, G. W. KOLSTAD and DORIS FRASER, two of the Defendants in the above entitled action and in answer to Plaintiff's Original Petition, admit, deny and allege as follows:

I.

In answer to Paragraph I of Plaintiff's Original Petition, these answering Defendants admit that their names and addresses as listed therein are current and correct, allege they are without sufficient information as to the remainder of the allegations in Paragraph I and therefore deny the same.

II.

In answer to Paragraph II of Plaintiff's Original Petition, these answering Defendants deny that Plaintiffs were and are now seized and possessed of all interest in Tracts 191, 192, 193 and

268

the portion of the old abandoned roadway appurtenant thereto as set forth in said Petition as being a portion of Tract III, deny that Plaintiffs own the same in fee simple and affirmatively allege that these answering Defendants are the owners of one-half (1/2) of the oil and gas mineral estate and ores underlying said Tracts 191, 192, 193 and the appurtenant portions of the abandoned roadway adjacent thereto, being out of Block No. 16 of the Live Bee Land Subdivision No. 4 as per plat thereof recorded in Volume 1, page 24 of the Plat Records of Live Oak County, Texas, by virtue of a reservation of the same by these answering Defendants' predecessors in interest recorded in the records of Live Oak County, Texas, as set forth on Exhibit "A" attached hereto, with G. W. Kolstad being the owner of an undivided one-third of one-half (1/3 of 1/2) and Doris Fraser being the owner of an undivided two-thirds of one-half (2/3 of 1/2) thereof.

III.

These answering Defendants deny in its entirety the allegations of Paragraph III of Plaintiff's Original Petition insofar as it may apply to the interest set forth in the paragraph next preceding.

IV.

These answering Defendants deny in its entirety the allegations of Paragraph IV of Plaintiff's Original Petition insofar as they apply to the interest set forth in Paragraph II of this Answer and affirmatively allege that these answering Defendants asserted ownership over such interests in said lands by way of

269

oil and gas mineral lease (a copy of one of said leases being attached hereto as Exhibit "B") and that these answering Defendants are and remain the owners of such interest as of the date hereof.

## PRAYER

Wherefore, these answering Defendants pray that the Plaintiffs' Original Petition be dismissed as to these Defendants, that Plaintiffs take nothing by their petition as against these Defendants and that these Defendants have judgment for the title and possession of the real property interests set forth in Paragraph II of this Answer, and for such other and further relief to which these Defendants be justly entitled.

Respectfully submitted,

_G. W. Kolstad_
G. W. Kolstad

_Doris Fraser_
Doris Fraser

270

County, Texas, Book "Y" page 437. Said Tract hereby conveyed is bounded as follows:

Beginning at the Most Southerly corner of Lot 501, thence in a Northwesterly direction along the Southwest line of said Lot 501 a distance of 660 feet, thence at right angles to said line of lot 501 in a Northeasterly direction and parallel to what is known as North road on block "A" a distance of 660 feet, thence in a Southeasterly direction to said Southwest line of Lot 501 to the Southeast line of lot 501 which is the Northeast line of said North road, thence in a Southerly direction along the line of said lot 501 and said North Road to the place of beginning 660 feet.

Said tract of land hereby conveyed being a tract of ten (10) acres lying in a square in the most southerly corner of lot 501.

TO HAVE AND TO HOLD the said tract of land unto the said Albert H. Burrell, Thomas McCarrol and E. F. Lea, trustees, and their successors in office in fee simple title forever. And I bind myself, my heirs and representatives, to forever warrant and defend the title thereto unto the said grantees and their successors against all persons lawfully claiming or to claim the same or any part thereof.

THIS CONVEYANCE IS IN TRUST HOWEVER and subject to the following condition; that said tract of land and all improvements thereon be used only for free school purposes as a school house and grounds for the education of the children residing in Live Oak County from time to time, and for religious purposes. And it is expressly stipulated that in event said property is used for any other purposes and such use continues for thirty (30) days after written notice thereof from me or my heirs, then such use for any other purpose shall work a forfeiture of the title to said tract of land, and thereupon title shall immediately pass to and vest in me and my heirs free of said trust.

Dated this 27th day of September, 1917.

Geo W. West.

THE STATE OF TEXAS )
( 
COUNTY OF BEXAR. ) Before me, the undersigned authority, on this day personally appeared George W. West, known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 27th day of September 1917. (Seal) Annie C. Connors, Notary Public in and for Bexar County, Texas.

Filed for record in my office on the 27th day of November 1917 at 10 o'clock, A. M. and duly recorded this the 28th day of November 1917 at 4:30 o'clock P. M.

Clerk County Court, Live Oak County, Texas.

*Deed into H.E. Hanson in which ½ mineral interest is reserved.*

THE STATE OF MINNESOTA )
COUNTY OF HENNEPIN. ) KNOW ALL MEN BY THESE PRESENTS: That C. W. Reynolds, as Trustee and the United States Installment Realty Company, of the County of Hennepin State of Minnesota, for and in consideration of the sum of Two Thousand Nine Hundred Forty-three and 05/100 ($2943.05) Dollars, to them in hand paid by H. E. Hanson, have Granted, Sold and Conveyed and by these presents do Grant, Sell and Convey, unto the said H. E. Hanson, of the County of Grand Forks, State of North Dakota all that certain land and realestate situated in the county of Live Oak, State of Texas, described as follows, to-wit:

Tracts One Hundred Ninety-one (191) One Hundred Ninety-two (192) and One Hundred Ninety-three (193) in Block Sixteen (16) of Live Bee Land Subdivision 4. according to the plat of said land on file and of record in the office of the Clerk of the County Court and Recorded of said Live Oak County, Texas, and originally a part of the Fostus Doyle Survey No. 4. in said County.

This conveyance is made upon the express condition that said land shall not, nor shall any part or portion thereof be by said party of the Second part, his heirs or assigns, sold or conveyed to a negro or person of African Descent, and that if the said Party of the Second Part, his heirs or assigns, shall sell or convey or attempt to sell or convey to a negro any title or interest in the said real estate hereinabove described, then this conveyance shall become null, void and of no effect, and the title to said realestate shall immediately revest in said parties of the first part, as if this conveyance had not been made.

It is agreed that the consideration paid for said land is in payment only for the ownership thereof, exclusively of the ownership of an undivided one-half of any and all oils, gas or minerals, mineral oils, mineral paints, fossils or ores that may be in or upon said land and that the ownership of said one-half of all such oils, gas or minerals, mineral oils, mineral paints, fossils or ores that may be in or upon said land is not sold paid for or conveyed to said second party, and that said ownership is retained by said first parties; that said first parties also retain the right to enter upon the land and the right and every part thereof and/to dig and bore on said land for such oil gas or minerals, and the right to remove all the same from said land, and the right to lay pipe lines and to construct roads over and across said land for the purposes of removing therefrom any and all such oil, gas or minerals; that they, their heirs, administrators, successors or assigns, may sell the same, and all thereof, but that the net proceeds of the sale of any and all such oil, gas or minerals, after paying the cost of mining or drilling, of transportation, of refining or other process to which it may be necessary to subject the same and of sale shall be equally divided between the parties hereto, their heirs administrators successors or assigns; and that the amount of the consideration and purchase price which said second party pays and said first parties accept is lessened by reason of the reservations and rights retained by said first parties.

TO HAVE AND TO HOLD the above described premises together with all and singular the rights and appurtenances thereto in anywise belonging unto the said H. E. Hanson hisheirs and assigns forever. And we do hereby bind ourselves, our heirs, executors administrators and successors, to WARRANT AND FOREVER DEFEND all and singular the said premises unto the said H. E. Hanson, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

Witness our hands at Minneapolis, Minnesota, this 1st day of November, A.D. 1917.

C. W. Reynolds, As Trustee,

UNITED STATES INSTALLMENT REALTY COMPANY (Seal)

By, E. H. Evans, Its President,
By, A. J. Johnson, Its Treasurer,

Witnesses at request of grantor;
Arthur England,
H. V. Waterston,

THE STATE OF MINNESOTA )
( 
COUNTY OF HENNEPIN. )     Before me, H. V. Waterston, a Notary Public, in and for Hennepin County Minnesota, on this day personally appeared , C. W. Reynolds, known to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purposes and considerations therein expressed, and in the capacity therein stated.

Given under my hand and seal of office this 1st day of November A.D. 1917.

(Seal) H. V. Waterston, Notary Public, Hennepin County, Minnesota, My Commission expires July 10, 1923.

THE STATE OF MINNESOTA )
( ss.
COUNTY OF HENNEPIN ) Before me, H. V. Waterston, a Notary Public, in and for

Hennepin County, Minnesota, personally came United States Installment Realty Company, by

its President, E. H. Evans, and its Treasurer, A. J. Johnson, known to me to be the persons

whose names are subscribed to the foregoing instrument as president and treasurer, of

said United States Installment Realty Company, and acknowledged to me that they executed

the same for the purposes and consideration therein expressed, in the capacity therein .

stated, and as the act and deed of said corporation.

Given under my hand and seal of office this 1st day of November, A.D. 1917.

(Seal) H. V. Waterston, Notary Public, Hennepin County, Minnesota, My Commission expires July, 10, 1917.

Filed for record in my office on the 27th day of November 1917 at 4 o'clock

P. M. and duly recorded this the 29th day of November, 1917, at 9:30 o'clock A. M.

Clerk County Court, Live Oak County, Texas.

Release of Lien On
56.21 Ac Hansen Tract.

THE STATE OF CONNECTICUT )
(
COUNTY OF HARTFORD ) WHEREAS, by deed dated December 10th, 1912, and recorded in

Volume S. pages 439 et seq., Deed Records of Live Oak County, Texas, William Green,

Philip Welhausen, R. S. Dilworth and S. V. Houston, did convey unto E. L. Plimpton certain

realestate and premises in Live Oak County, Texas, amounting in the aggregate to

16056 acres of land, more or less, out of the original Pant Ranch, fully set out and

described in said deed, to which reference is here made for more particular description,

retaining therein a vendor's lien to secure the payment of $240,896.32, for which the said

E. L. Plimpton and United States Installment Realty Company, Company executed thirty-five

certain promissory notes; twenty-eight (28) of said notes representing one hundred twenty

thousand four hundred forty-eight and 16/100 ($120,448. 16) Dollars, payable to the order

of William Green, Phillip Welhausen, R. S. Dilworth and S. V. Houston, each note for the

sum of four thousand three hundred one and 72/100 ($4301.72) Dollars, four of said twenty-

eight notes being due January 1st, 1915, four due January 1st 1916, four due January 1st

1917 four due January 1st, 1918, four due January 1st, 1919, four due January 1st, 1920

and four due January 1st, 1921, respectively; and seven of said thirty-five notes represen-

ting the sum of one hundred twenty thousand four hundred forty-eight and 16/100 ($120,448.16

Dollars and being for the sum of Seventeen thousand two hundred six and 88/100 ($17,206.88)

Dollars each, due January 1st, 1915, 1916, 1917, 1918, 1919, 1920, and 1921, respectively

and payable to the order of William Green, Phillip Welhausen, R. S. Dilworth and S. V.

Houston, at the Yoakum State Bank of Yoakum, DeWitt County, Texas, bearing interest at

the rate of eight (8) percent per annum from July 1st, 1913, interest payable annually and

WHEREAS, by instrument in writing dated March 15th 1915, and recorded in

Volume S. page 495-6 deed records of Live Oak County, Texas, the said William Green,

Phillip Welhausen, R. S. Dilworth and S. V. Houston did sell, transfer and assign unto

Aetna Life Insurance Company the seven notes for $17,206.88 each, last above described,

together with the vendor's lien securing the payment of said seven notes, which lien

273

was made a superior lien to that securing payment of twenty-eight notes for

$4301.72 each above described, and

WHEREAS, for a valuable consideration thereunto moving said Aetna Life Insuran-
ce Company, and said William Green, Phillip Welhausen, R. S. Dilworth and S. V. Houston
wish to release from said vendor's lien the following described tracts or parcels of
land, and noe other, to-wit:

56.21 acres of land, being all of tract 191, containing 24.86 acres, all
of tract 192, containing 17.84 acres, and all of tract 193 containing 13.51 acres
all in Block Sixteen (16) , Live Bee Land Subdivision No. 4. a subdivision of the above
mentioned tract of land, as evidenced by the grantees in the above mentioned deed;
said tracts being fully set out and described in a plat of the above mentioned subdivision
which is of record in the records of Live Oak County, Texas, to which said plat and the
record thereof reference is here made for more particular description of said land.

NOW , THEREFORE, Aetna Life Insurance Company, William Green, Phillip Welhausen
R. S. Dilworth, and S. V. houston, owners and holders of all of the above described
notes and the vendor's lien securing same, in consideration of the premises, do hereby
release the tracts of land last above described, amounting in the aggregate to
56.21 acres and none other, from all of the liensretained in the above mentioned deed
to secure the payment of said notes; but said vendor's lien is to remain in full force,
virtue and effect as to the balance of the land in said deed described and not heretofore
released.

IN TESTIMONY WHEREOF, Aetna Life Insurance Company has caused this instrument
to be signed by M. B. Brainard its vice president, and said William Green, Phillip
Welhausen, R. S. Dilworth amd S. V. Houston have hereunto subscribed their names this
3rd day of November A. D. 1917,

(Seal)

AETNA LIFE INSURANCE COMPANY
By, M. B. Brainard, Its Vice President.

Wm. Green
Phillip Welhausen,
R. S. Dilworth,
S. V. Houston,

THE STATE OF CONNECTICUT )
                          (
COUNTY OF HARTFORD.       ) Before me, the undersigned authority, on this day personally
appeared M. B. Brainard, vice president, known to me to be the person whose name is
subscribed to the foregoing instrument ( being a partial release of vendor's lien from
Aetna Life Insurance Company, William Green, et al. to E. L. Plimpton) and acknowledged
to me that he executed the same for the purposes and consideration therein expressed, in
the capacity therein stated and as the act and deed of Aetna Life Insurance Company.

Given under my hand and seal of office this 16th day of November A.D.,1917.

(Seal)  James J. Coleman, Notary Public, Hartford County, Connecticut,

THE STATE OF TEXAS )
                   (
COUNTY OF DEWITT   ) Before me, the undersigned authority, on this day personally appeared
William Green, known to me to be the person whose name is subscribed to the foregoing
instrument, and acknowledged to me that he executed the same for the purposes and
consideration therein expressed.

Given under my hand and seal of office this 3rd day of November, A. D. 1917.

(Seal)  Gladys Messimer, Notary Public, DeWitt County, Texas.

*Heirship affidavit*

# THE STATE OF TEXAS

COUNTY OF .NUECES

BEFORE me, the undersigned authority, on this day personally appeared

HANNAH H. KEENEY, a widow, and ANNIE H. KOLSTAD, a widow,

who being duly sworn by me, on oath depose and say :

That our mother, Eli Ness Hanson, and our father, Hans E. Hanson, were married at Grand Forks, North Dakota, in January, 1892 and they continued to live together as husband and wife until our father's death, which occurred in January, 1940; that to this marriage the following children were born and are now living: (1) Mrs. Annie H. Kolstad, a widow, of Chester, Montana; (2) Mrs. Hannah H. Keeney, a widow, of Paducah, Kentucky; and (3) Mrs. Sophia R. Routier, of Devils Lake, North Dakota; that no other children were born to the marriage of Eli Ness Hanson and Hans E. Hanson, and no children were adopted by them; that said parties were married once and only once and then to each other; that the said Hans E. Hanson died intestate and there was no administration on his estate, as none was necessary there being no debts or claims due or owing by said estate, nor were there any State inheritance taxes or Federal estate taxes due and owing by his estate.

EXECUTED this the 13th day of June, 1970.

_Hannah H. Keeney_
HANNAH H. KEENEY

SUBSCRIBED AND SWORN TO BEFORE ME this the ___24___ day of ___June___, 1970.

My Commission Expires August 5, 1970
Notary Public, _McCracken_ County, Kentucky

x_Annie H. Kolstad_ x
ANNIE H. KOLSTAD

SUBSCRIBED AND SWORN TO BEFORE ME this the 29th day of ___June___, 1970.

_R.H. Anderson_

Commission Expires 7-16-73
Notary Public, _Toole_ County, Montana

KENTUCKY
STATE OF XTEXAS I

COUNTY OF McCracken

BEFORE ME, the undersigned authority, on this day personally appeared

HANNAH H. KEENEY

275



# OIL, GAS



# AND MINERAL LEASE

PRODUCERS 88 REV. TEXAS (1-69)
WITH 80/640 ACRES POOLING PROVISION

THIS AGREEMENT made this _____20th_____ day of _____May_____ 19 83 , between

G. W. Kolstad

Lessor (whether one or more), whose address is: __P. O. Box 121, Lothair, Montana 59461__
and __EXXON CORPORATION, P. O. Box 2304, Houston, Texas 77252__ , Lessee, WITNESSETH:

1. Lessor in consideration of _____Ten and No/100_____ Dollars

($10.00─────────) in hand paid, of the royalties herein provided and of the agreements of Lessee herein contained, hereby grants, leases and lets exclusively to Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas, sulphur, fissionable materials and all other minerals (whether or not similar to those mentioned), conducting exploration, geologic and geophysical tests and surveys, injecting gas, water and other fluids and air into subsurface strata, laying pipelines, establishing and utilizing facilities for the disposition of salt water, dredging and maintaining canals, building roads, bridges, tanks, telephone lines, power stations and other structures thereon, and on, over and across lands owned or claimed by Lessor adjacent and contiguous thereto necessary to Lessee in operations to produce, save, take care of, treat, transport and own said minerals, the following described land in __Live Oak__ County, Texas, to-wit:

56.21 acres of land, more or less, out of and a part of the Festus Doyle Survey No. 4, A-6; and being Tracts Nos. 191,192, and 193, and being out of Block No. 16 of the Live Bee Land Subdivision No. 4, as per plat thereof recorded in Volume 1, Page 24, of the Plat Records of Live Oak County, Texas, reference to which is hereby made for all purposes.

This lease also covers and includes all land and interest in land owned or claimed by Lessor adjacent or contiguous to the land particularly described above, whether the same be in said survey or surveys or in adjacent surveys. For the purpose of calculating rental payments hereunder, said land is estimated to contain __56.21__ acres, whether it contains more or less.

2. Unless sooner terminated or longer kept in force under other provisions hereof, this lease shall remain in force for a term of __three (3)__ years from the date hereof (called "primary term") and as long thereafter as oil, gas, sulphur, fissionable materials or other mineral is produced from said land or land pooled therewith.

3. The royalties to be paid by Lessee are: (a) on oil, one-eighth of that produced and saved from said land, the same to be delivered at the wells or to the credit of Lessor into the pipeline to which the wells may be connected; Lessee may from time to time purchase any royalty oil in its possession, paying the market price therefor prevailing for the field where produced on the date of purchase, and Lessee may sell any royalty oil in its possession and pay Lessor the price received by Lessee for such oil computed at the well; (b) on gas, including casinghead gas or other gaseous substance, produced from said land and sold or used off the premises or for the extraction of gasoline or other product therefrom, the market value at the well of one-eighth of the gas so sold or used, provided that on gas sold by Lessee the market value shall not exceed the amount received by Lessee for such gas computed at the mouth of the well, and on gas sold at the well the royalty shall be one-eighth of the amount realized by Lessee from such sale; and (c) on fissionable materials and all other minerals mined and marketed, one-tenth either in kind or value at the well or, mine, at Lessee's election, except that on sulphur mined or marketed, the royalty shall be Two Dollars ($2.00) per long ton. If the price of any mineral or substance upon which royalty is payable hereunder is regulated by any governmental agency, the market value or market price of such mineral or substance for the purpose of computing royalty hereunder shall not be in excess of the price which Lessee may receive and retain. Lessee shall have free from royalty or other payment the use of water, other than water from Lessor's wells or tanks, and of oil, gas and coal produced from said land in all operations which Lessee may conduct hereunder, including water injection and secondary recovery operations, and the royalty on oil, gas and coal shall be computed after deducting any so used. If Lessee drills a well on land covered by this lease or on land pooled therewith, which well is capable of producing oil or gas but such well is not being produced and this lease is not being maintained otherwise as provided herein, this lease shall not terminate, whether it be during or after the primary term, (unless released by Lessee) and it shall nevertheless be considered that oil or gas is being produced from the land covered by this lease. When the lease is continued in force in this manner, Lessee shall pay or tender as royalty to the parties who at the time of such payment would be entitled to receive royalty hereunder if the well were producing, or deposit to their credit in the depository bank as hereinafter provided a sum equal to 1/12 of the amount of the annual rental payable in lieu of drilling operations during the primary term on the number of acres subject to this lease at the time such payment is made for each calendar month, or portion thereof, thereafter during which said well is situated on said land, or on land pooled therewith, and this lease is not otherwise maintained, or this lease is not released by Lessee as to the land on which or the horizon, zone or formation in which the well is completed. The first payment of such sum shall be made on or before the first day of the calendar month after expiration of ninety (90) days from the date the lease is not otherwise maintained for all accruals to such date, and thereafter on or before the first day of each third calendar month for all accruals to each such date. Lessee's failure to pay or tender or to properly or timely pay or tender any such sum as royalty shall render Lessee liable for the amount due but it shall not operate to terminate this lease.

4. If operations for drilling are not commenced on said land or on land pooled therewith on or before one year from the date hereof, this lease shall terminate as to both parties, unless on or before such date Lessee shall pay or tender (or make a bona fide attempt to pay or tender) to Lessor or to the credit of Lessor in __Northwestern Bank #2 (12-995-5)__ at __Great Falls, Montana__ the sum of __Forty Six and 85/100──────────── Dollars ($46.85──────)__ (herein called "rental"), which shall cover the privilege of deferring commencement of drilling operations for a period of twelve (12) months. In like manner and upon like payment or tender annually, the commencement of drilling operations may be further deferred for successive periods of twelve (12) months each during the primary term. The payment or tender of rental under this paragraph and of royalty under Paragraph 3 on any well which is not being produced, hereinafter referred to as "shut-in royalty", may be made by check or draft of Lessee mailed or delivered to the parties entitled thereto or to said bank on or before the date of payment. Such bank and its successors are Lessor's agent and shall continue as depository for all rental and shut-in royalty payable hereunder regardless of changes in ownership of said land, rental or shut-in royalty. If such bank (or any successor bank) should fail, liquidate or be succeeded by another bank or for any reason fail or refuse to accept rental or shut-in royalty, Lessee shall not be held in default for failure to make such payment or tender of rental or shut-in royalty until thirty (30) days after the party or parties entitled thereto shall deliver to Lessee a proper recordable instrument naming another bank as agent to receive such payment or tender. If Lessee shall make a bona fide attempt on or before any payment date to pay or deposit rental to a party or parties entitled thereto, according to Lessee's records, or to a party or parties who, prior to such attempted payment or deposit, have given Lessee notice in accordance with subsequent provisions of this lease of their right to receive rental, and if such payment or deposit shall be ineffective or erroneous in any regard, Lessee shall be unconditionally obligated to pay to such party or parties entitled thereto the rental properly payable for the rental period involved, and this lease shall not terminate but shall be maintained in the same manner as if such erroneous or ineffective rental payment or deposit had been properly made, provided that the erroneous or ineffective rental payment or deposit be corrected within thirty (30) days after receipt by Lessee of written notice by such party or parties of such error accompanied by such instruments as are necessary to enable Lessee to make proper payment. Failure to make proper payment or deposit of delay rental as to any interest in said land shall not affect this lease as to any interest therein as to which proper payment or deposit is made. The down cash payment is consideration for this lease according to its terms and shall not be allocated as rental for a period. Lessee may at any time, and from time to time, execute and deliver to Lessor, or to the depository bank, or file for record a release or releases of this lease as to any part or all of said land or of any mineral or subsurface interval of any depths thereunder and thereby be relieved of all obligations as to the released land, mineral, horizon, zone or formation. If this lease is released as to all minerals, horizons, zones and formations under a portion of said land, the delay rental, shut-in royalty and other payments computed in accordance therewith shall thereupon be reduced in the proportion that the acreage released bears to the acreage which was covered by this lease immediately prior to such release.

5. Lessee, at its option, is hereby given the right and power during or after the primary term while this lease is in effect to pool or combine the land covered by this lease, or any portion thereof, as to oil, gas and other minerals, or any of them, with any other land covered by this lease, and/or any other land, lease or leases in the immediate vicinity thereof, when in Lessee's judgment it is necessary or advisable to do so in order properly to explore, or to develop and operate the leased premises in compliance with the spacing rules of the Railroad Commission of Texas, or other lawful authority, or when to do so would, in the judgment of Lessee, promote the conservation of oil, gas or other mineral in and under and that may be produced from the premises. Units pooled for oil hereunder shall not substantially exceed in area 80 acres each plus a tolerance of 10% thereof, and units pooled for gas hereunder shall not substantially exceed in area 640 acres each plus a tolerance of 10% thereof, provided that should governmental authority having jurisdiction prescribe or permit the creation of units larger than those specified, units thereafter created may conform substantially in size with those prescribed or permitted by governmental regulations. Lessee may pool or combine land covered by this lease or any portion thereof, as above provided as to oil in any one or more strata and as to gas in any one or more strata. Units formed by pooling as to any stratum or strata need not conform in size or area with units as to any other stratum or strata, and oil units need not conform as to area with gas units. Pooling in one or more instances shall not exhaust the rights of Lessee to pool this lease or portions thereof into other units. Lessee shall file for record in the appropriate records of the county in which the leased premises are situated an instrument describing and designating the pooled acreage as a pooled unit; the unit shall become effective as provided in said instrument, or if said instrument makes no such provision, it shall become effective upon the date it is filed for record. Each unit shall be effective as to all parties hereto, their heirs, successors and assigns, irrespective of whether or not the unit is likewise effective as to all other owners of surface, mineral, royalty or other rights in land included in such unit. Lessee may at its election exercise its pooling option as to oil, gas and other minerals before or after commencing operations for or completing an oil or gas well or well or mine for other mineral on the leased premises, and the pooled unit may include, but is not required to include, land or leases upon which a well or mine capable of producing oil, gas or other mineral in paying quantities has theretofore been completed or upon which operations for drilling of a well or mine for oil, gas or other mineral have theretofore been commenced. Operations for drilling on, or production of oil, gas or other mineral from any part of a pooled unit which includes all or a portion of the land covered by this lease, regardless of whether such operations for drilling were commenced or such production was secured before or after the execution of this lease or the instrument designating the pooled unit, shall be considered as operations for drilling on or production of oil, gas or other mineral from land covered by this lease whether or not the well or wells or mine be located on land covered by this lease, and the entire acreage constituting such unit or units, as to oil, gas or other minerals, or any of them, as herein provided, shall be treated for all purposes, except the payment of royalties on production from the pooled unit, as if the same were included in this lease; provided that if after creation of a pooled unit, a well or mine is drilled on the unit area, other than on the land covered hereby and included in the unit, which well is not classified as the type of well for which the unit was created (oil, gas or other mineral as the case may be), such well or mine shall be considered a dry hole for purposes of applying the additional drilling and reworking and resumption of delay rental provisions of Paragraph 6 hereof. If an oil well on an oil unit, which includes all or a portion of the leased premises, is reclassified as a gas well, or if a gas well on a gas unit, which includes all or a portion of the leased premises, is reclassified as an oil well, the date of such reclassification shall be considered as the date of cessation of production for purposes of applying the additional drilling and reworking and resumption of delay rental provisions of Paragraph 6 hereof as to all leases any part of which are included in the unit other than the leased premises on which the well is located. For the purpose of computing royalties to which owners of royalties and payments out of production and each of them shall be entitled on production of oil, gas or other minerals from each pooled unit, there shall be allocated to the land covered by this lease and included in said unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) a pro rata portion of the oil, gas or other minerals produced from the unit after deducting that used for operations on the unit. Such allocation shall be on an acreage basis - that is, there shall be allocated to the acreage covered by this lease and included in the pooled unit (or to each separate tract within the unit if this lease covers separate tracts within the unit) that pro rata portion of the oil, gas or other minerals produced from the unit which the number of surface acres covered by this lease (or in each separate tract) and included in the unit bears to the total number of surface acres included in the unit. As used in this paragraph, the words "separate tract" mean any tract with royalty ownership differing, now or hereafter, either as to parties or amounts, from that as to any other part of the leased premises. Royalties hereunder shall be computed on the portion of such production, whether it be oil, gas or other minerals, so allocated to the land covered by this lease and included in the unit just as though such production were from such land. Production from an oil well will be considered as production from the lease or gas pooled unit from which it is producing and not as production from a gas pooled unit; and production from a gas well will be considered as production from the lease or gas pooled unit from which it is producing and not from an oil pooled unit. Any pooled unit designated by Lessee in accordance with the terms hereof may be dissolved by Lessee by instrument filed for record in the appropriate records of the county in which the leased premises are situated at any time after completion of a dry hole or cessation of production on said unit.

 

6. If Lessee shall drill a dry hole or holes on said land, or on acreage pooled therewith, and this lease is not being maintained otherwise as provided herein, or if oil, gas or other mineral is discovered and not produced for any cause, or if the production thereof should cease from any cause, this lease shall not terminate if Lessee commences operations for drilling or reworking within sixty (60) days thereafter and continues drilling or reworking operations on said well or any additional well with no cessation of more than sixty (60) consecutive days, or if it be within the primary term, commences or resumes the payment or tender of rental or commences operations for drilling or reworking on or before the rental paying date next ensuing after the expiration of sixty (60) days from the date of completion of dry hole, or discovery of oil, gas or other mineral, or cessation of production and continues drilling or reworking operations on said well or any additional well with no cessation of more than sixty (60) consecutive days. If at any time subsequent to sixty (60) days prior to the beginning of the last year of the primary term and prior to the discovery of oil, gas or other mineral on said land, or on acreage pooled therewith, Lessee should drill a dry hole thereon, no rental payment or operations are necessary in order to keep this lease in force during the remainder of the primary term. If at the expiration of the primary term, oil, gas or other mineral is not being produced on said land, or on acreage pooled therewith, but Lessee is then engaged in drilling or reworking operations thereon or shall have completed a dry hole thereon within sixty (60) days prior to the end of the primary term, this lease shall remain in force so long as operations on said well or for drilling or reworking of any additional well are prosecuted with no cessation of more than sixty (60) consecutive days, and if they result in the production of oil, gas or other mineral so long thereafter as oil, gas or other mineral is produced from said land and acreage pooled therewith. In the event a well or wells producing oil or gas in paying quantities should be brought in by Lessee or any other operator on adjacent land and within three hundred thirty (330) feet of and draining the leased premises, or acreage pooled therewith, Lessee agrees to drill such offset wells, as a reasonably prudent operator would drill under the same or similar circumstances. within 60 days

7. Lessee shall have the right at any time during or after the expiration of this lease to remove all property and fixtures placed by Lessee on said land, including the right to draw and remove all casing. When necessary for utilization of the surface for some intended use by Lessor and upon request of Lessor or when deemed necessary by Lessee for protection of the pipeline, Lessee will bury pipelines below ordinary plow depth, and no well shall be drilled within two hundred (200) feet of any residence or barn now on said land without Lessor's consent.

8. The rights of either party hereunder may be assigned in whole or in part, and the provisions hereof shall extend to their heirs, successors and assigns; but no change or division in ownership of the land, rentals or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of Lessee, including, but not limited to, the location and drilling of wells and the measurement of production; and no change or division in such ownership shall be binding on Lessee until forty-five (45) days after Lessee shall have been furnished by registered U.S. mail at Lessee's principal place of business with a certified copy of recorded instrument or instruments evidencing same. In the event of assignment hereof in whole or in part, liability for breach of any obligation hereunder shall rest exclusively upon the owner of this lease or of a portion thereof who commits such breach. In the event of the death of any person entitled to rentals hereunder, Lessee may pay or tender such rentals to the credit of the deceased or the estate of the deceased until such time as Lessee is furnished with proper evidence of the appointment and qualifications of an executor or administrator of the estate, or if there be none, until Lessee is furnished with evidence satisfactory to it as to the heirs or devisees of the deceased and that all debts of the estate have been paid. If at any time two or more persons be entitled to participate in rental payable hereunder, Lessee may pay or tender said rental jointly to such persons or to their joint credit in the depository bank; or, at Lessee's election, the proportionate part of rental to which each participant is entitled may be paid or tendered to him separately or to his separate credit in said depository; and payment or tender to any participant of his portion of the rental hereunder shall maintain this lease as to such participant. In event of assignment of this lease as to a segregated portion of said land, rental hereunder shall be apportionable as between the several leasehold owners ratably according to the surface area of each, and default in rental payment by one shall not affect the rights of other leasehold owners hereunder. If six or more parties become entitled to royalty hereunder, Lessee may withhold payment thereof unless and until furnished with a recordable instrument executed by all such parties designating an agent to receive payment for all.

9. Breach by Lessee of any obligation hereunder shall not work a forfeiture or termination of this lease nor cause a termination or reversion of the estate created hereby nor be grounds for cancellation hereof in whole or in part. In the event Lessor considers that operations are not at any time being conducted in compliance with this lease, Lessor shall notify Lessee in writing of the facts relied upon as constituting a breach hereof, and Lessee, if in default, shall have sixty (60) days after receipt of such notice in which to commence compliance with the obligations imposed by this lease. After discovery of oil, gas or other mineral in paying quantities on said premises, Lessee shall develop the acreage retained hereunder as a reasonable prudent operator but in discharging this obligation as to oil and gas it shall in no event be required to drill more than one well per eighty (80) acres of the area retained hereunder plus a tolerance of 10% thereof and capable of producing oil in paying quantities and one well per 640 acres plus a tolerance of 10% of 640 acres of the area retained hereunder and capable of producing gas in paying quantities.

10. Lessor hereby warrants and agrees to defend the title to said land and agrees that Lessee at its option may discharge any tax, mortgage or other lien upon said land, either in whole or in part, and if Lessee does so, it shall be subrogated to such lien with right to enforce same and apply rentals and royalties accruing hereunder toward satisfying same. When required by state, federal or other law, Lessee may withhold taxes with respect to rental, royalty and other payments hereunder and remit the amounts withheld to the applicable taxing authority for the credit of Lessor. Without impairment of Lessee's rights under the warranty in event of failure of title, if Lessor owns an interest in the oil, gas or other minerals on, in or under said land less than the entire fee simple estate, whether or not this lease purports to cover the whole or a fractional interest, the royalties, shut-in royalties ____ to be paid Lessor shall be reduced in the proportion that his interest bears to the whole and undivided fee and in accordance with the nature of such estate of which Lessor is seized. Should any one or more of the parties named above as Lessor fail to execute this lease, it shall nevertheless be binding upon the party or parties executing same. Failure of Lessee to reduce rental paid hereunder shall not impair the right of Lessee to reduce royalties.

11. Should Lessee be prevented from complying with any express or implied covenant of this lease, from conducting drilling or reworking operations thereon or on land pooled therewith or, from producing oil, gas or other mineral therefrom or from land pooled therewith by reason of scarcity or of inability to obtain or to use equipment or material, or by operation of force majeure, any federal or state law or any order, rule or regulation of governmental authority, then while so prevented, Lessee's obligation to comply with such covenant shall be suspended, and Lessee shall not be liable in damages for failure to comply therewith; and this lease shall be extended while and so long as Lessee is prevented by any such cause from conducting drilling or reworking operations on or from producing oil, gas or other mineral from the leased premises or land pooled therewith, and the time while Lessee is so prevented shall not be counted against Lessee, anything in this lease to the contrary notwithstanding.

12. Each singular pronoun herein shall include the plural whenever applicable.

SEE ADDENDUM ATTACHED HERETO AND
MADE A PART HEREOF:

IN WITNESS WHEREOF, this instrument is executed on the date first above written.

✓ Soc. Sec. No. _____    ✓ _____
                                                G. W. Kolstad

_____    _____

LESSOR _____ SOCIAL SECURITY NO. ____ LESSOR _____ SOCIAL SECURITY NO.

THE STATE OF ~~TEXAS~~ MONTANA

COUNTY OF _____

BEFORE ME, the undersigned authority, on this day personally appeared _____ G. W. Kolstad _____ known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the _____ day of _____, 19 83

Notary Public in ~~and for~~ _____ County ~~XXXX~~
                                                                        Montana

THE STATE OF TEXAS

COUNTY OF _____

BEFORE ME, the undersigned authority, on this day personally appeared _____

and _____, known to me to be the persons whose names are subscribed to the foregoing instrument, and acknowledged to me that they executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this the _____ day of _____, 19 _____

Notary Public in and for _____ County, Texas

# ADDENDUM

To Oil, Gas, and Mineral Lease dated _____ May 20 _____ , 19 83 from

___ G. W. Kolstad _____ Lessor,

to ___ Exxon Corporation _____ Lessee,

covering ___ 56.21 ___ acres, more or less in _____ Live Oak _____

County, Texas.

## Additional Provisions of Lease

Notwithstanding anything to the contrary in the foregoing printed form Oil, Gas and Mineral Lease, it is agreed and understood as follows, to-wit:

13. It is expressly understood and agreed that this lease covers oil and gas only, along with the products and by-products thereof, but this lease does not cover any other minerals of any type including Uranium, Thorium, and other fissionable materials, Iron Ore, Copper, Coal, Sand, Gravel, or any other minerals of any type, it being understood that this lease is made for oil & gas purposes only.

14. If, within one (1) year after the end of the primary term of this lease, a part but not all of the leased land on a surface acre basis is included within a unit or units, in accordance with the provisions hereof, this lease shall terminate as to such part, or parts of the leased land lying outside of such unit or units, unless this lease is perpetuated as to such land outside of such unit or units by operations conducted thereon or by production of oil, gas or other minerals, or by such operation and such production in accordance with the provisions hereof.

15. Lessee shall level all pits or other excavations dug by it in its operations hereunder promptly after termination of its use hereof. Also, Lessee shall pay for all damage done or caused to be done to all buildings, fences, roads, culverts, trees turf and other improvements, including the surface of cultivated land and growing crops on said land.

16. Lessee's right to maintain this lease solely by virtue of the shut-in gas well royalty payment provided for in paragraph 3 hereof, is hereby limited to a period of no longer than three (3) consecutive years (or for lesser periods whch aggregate together three years) after the end of the primary term of this lease.

17. Notwithstanding the provisions of Paragraph 5 hereof, any unit pooled for gas as specified in Paragraph 5 hereof, as to any or all horizons down to, but not below, a depth of 10,000 feet from the surface shall contain not to exceed 320 acres plus 10% tolerance.

Signed for Identification Only:

✓_____

 G. W. Kolstad

COPY

ON OR BEFORE 15
BANKING DAYS AFTER SIGHT
OR SUBJECT TO TITLE APPROVAL

# CUSTOMER'S DRAFT
(NOT A CASH ITEM)

CORPUS CHRISTI, TEXAS, _____ May 20, _____ 19 83

PAY TO THE
ORDER OF_____ G. W. Kolstad _____ $468.42

Four Hundred Sixty Eight and 42/100_____DOLLARS

Bonus consideration covering Lessor's int. in 56.21 acres, Live Oak County, Texas.

VALUE RECEIVED AND CHARGE TO ACCOUNT OF

TO: CORPUS CHRISTI NATIONAL BANK
P.O. BOX 301, CORPUS CHRISTI, TEXAS 78403 _____ Ronald B. Siebert
ACCOUNT: EXXON COMPANY, U.S.A.

Golden-Banner #1062

279

# EXHIBIT "H"

Certified Copy of Statement of Facts,
*Charles R. Merrell and Wife, Margie L. Merrell V. Mrs. Henrietta Willimann, et al*,
Cause No. 6990-A, 36th Judicial District Court,
Live Oak County, Texas,
signed May 12, 1993

NO. 6990-A

| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
|---|---|---|
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

## STATEMENT OF FACTS

On the _12th_ day of May, 1993, the trial of the above entitled and numbered Cause came on to be heard before this Court.

Plaintiffs appeared by and through their attorney of record, Michael C. Sartori, and announced ready for trial. Defendants, G. W. KOLSTAD and DORIS FRASER, having answered, did not appear. Those Defendants cited by publication appeared by and through their attorney ad litem, William L. Hardwick, and announced ready for trial.

The following Defendants, although duly cited to appear, did not appear and wholly made default:

Mrs. Henrietta Willimann; Fintan J. Willimann; Mrs. Fintan J. Willimann; Fred Anderson; Mrs. Fred Anderson; M. J. Couch; Mrs. M. J. Couch; S. L. McKay; Mrs. S. L. McKay; Joseph Vanderyacht; Mrs. Joseph Vanderyacht; Earl E. Vanderyacht; Mrs. Earl E. Vanderyacht; J. W. Hauser; Mrs. J. W. Hauser; H. S. Tallakson; Mrs. H. S. Tallakson; Herman S. Tallakson; Mrs. Hermann S. Tallakson; Joseph Reichert; Mrs. Joseph Reichert; W. E. Ruckmann; Pearl M. Ruckmann; J. B. Hazlitt; Mrs. J. B. Hazlitt; W. A. Felix; Mrs. W. A. Felix; H. H. Johnson; Mrs. H. H. Johnson; Ottilie M. Gensch; Mrs. Ottilie M. Gensch; Fred Stadelman; Mrs. Fred Stadelman; C. E. Crook; Mrs. C. E. Crook; Jeannie E. Scoby; E. B. Grabow; Mrs. E. B. Grabow; Albert James; Mrs. Albert James; Adolph Hanson; Mrs. Adolph Hanson; Norman M. Negaard; Mrs. Norman M. Negaard; Charles Burkhard; Mrs. Charles Burkhard; Herman Burkhard; Mrs. Herman Burkhard; L. W. Greer; Mrs. L. W. Greer; T. L. Thoreson; Mrs. T. L. Thoreson; Henry L. Thoreson; Mrs. Henry L. Thoreson; A. E. Gage; Mrs. A. E. Gage; Mrs. Nellie Cooley; R. E. Baum; Mrs. R. E. Baum; A. Wenger; Mrs. A. Wenger; Adolph Wenger; Mrs. Adolph Wenger; W. S. Duffy; Mrs. W. S. Duffy; John T. Strand; Mrs. John T. Strand; George H. McMurtie; Mrs. George H. McMurtie; Carl A. Jensen; Mrs. Carl A. Jensen; Marie Bertha Jensen; Leo M. Foley; Mrs. Leo M. Foley; Arthur H. Forsan; Mrs. Arthur H. Forsan; A. J. LeFebvre; Mrs. A. J. LeFebvre; Arthur C. Voss; Mrs. Arthur C. Voss; D. F. Wade; Mrs. D. F. Wade; J. V. McAfee; Mrs. J. V. McAfee; Helge S. Casperson; Lewis Mortenson; Mrs. Lewis Mortenson; Peter E. Parson; Mrs. Peter E. Parson; Rev. A. Richter; Mrs. A. Richter; Bernard Powers; Mrs. Bernard Powers; James B. Fitzgerald; Mrs. James B. Fitzgerald; W. D. Youngquist; Mrs. W. D. Youngquist; L. T. Bougie; Mrs. L. T. Bougie; Swan Ericson; Mrs. Swan Ericson; Hans H. Jaul; Mrs. Hans H. Jaul; David Henry; Mrs. David Henry; W. P. Spangenberg;

Mrs. W. P. Spangenberg; W. F. Marquardt; Mrs. W. F. Marquardt; O. P. Kendel; Mrs. O. P. Kendel; Grover J. Krumsiek; Mrs. Grover J. Krumsiek; A. H. Hoyne; Mrs. A. H. Hoyne; Hulda Bergdahl; P. A. Bergdahl; Mrs. P. A. Bergdahl; Albert Pederson; Mrs. Albert Pederson; Jeannine Powell Corley; Charles D. Lovelace; Mrs. Charles D. Lovelace; Albert Pederson; Marie E. Mattison; V. H. Houston; Mrs. V. H. Houston; J. B. Martindale; Mrs. J. B. Martindale; R. N. Martindale; Mrs. R. N. Martindale. The unknown stockholders of The First State Bank of Le Sueur Center; The unknown stockholders of U. S. I. Realty Co.; The unknown stockholders of Mid-Frio Petroleum Co.; The unknown stockholders of George C. Vaughn & Sons, Inc.; The unknown stockholders of Martindale Mortgage Co.; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 and recorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and

2

recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16,

3

283

1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger, dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and

4

recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 and recorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920

5

and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas.

No jury was demanded and all matters in controversy, including questions of fact and of law, were submitted to the Court.

After examining the pleadings the Plaintiff, Charles R. Merrell, testified as follows:

A.     That he claims the ownership in and to the following described lands, and premises in Live Oak County, Texas:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following

6

acreage in the various tracts: with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest

7

corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the

8

East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

## TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South

9

47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

(hereinafter referred to as the "Property").

B.      That the records of the District Clerk and County Clerk were searched to obtain the names and addresses of all persons claiming or who could possibly claim an interest in the Property and all such people were served with citation or if their addresses were unavailable they were served by publication.

C.      The Plaintiff, Margie L. Merrell, is deceased. All references in this judgment to the Plaintiff is to CHARLES R. MERRELL.

D.      At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the Property owning and claiming the same in fee simple.

E.      Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the Property, claiming under Deed dated October 31, 1975, and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County,

42 PAGE 72

Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on the Property as they became due, and before delinquency.

F.     Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the Property for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of his possession.

G.     Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held the Property under claim of right, in good faith and under duly recorded deed purporting to convey the Property.

H.     Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. Plaintiff has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

I.     Plaintiff and Plaintiffs' predecessors in interest have openly exercised dominion over and asserted claim to the Property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action. The persons holding the apparent record title to the Property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years during the twenty-five (25) years preceding the commencement of this action.

Plaintiff asked the Court to quiet title to the Property in the Plaintiff; to remove the cloud created by Defendants on the Property; have judgment for the title and possession of the Property which is the subject of this suit as set forth above and award such other and further relief to which Plaintiff may be justly entitled.

SIGNED this the _12th_ day of ___MAY___, 1993.

<br>

_____
JUDGE PRESIDING
RONALD M. YEAGER

11

APPROVED AS TO FORM:

_Michael C. Sartori_

Michael C. Sartori, Attorney for
Plaintiffs


_William L. Hardwick_

William L. Hardwick, Attorney ad Litem for
Defendants served by publication.

**FILED**

At __10:50__ O'Clock __A__ M

MAY 1 2 1993

ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas

By _____ Deputy

# EXHIBIT "I"

Certified Copy of Judgment,
*Charles R. Merrell and wife, Margie L. Merrell V. Mrs. Henrietta Willimann, et al.*
Cause No. 6990-A, 36th Judicial District Court,
Live Oak County, Texas,
rendered, signed and entered May 12, 1993

NO. 6990-A

| CHARLES R. MERRELL and wife, | § | IN THE DISTRICT COURT OF |
|---|---|---|
| MARGIE L. MERRELL, Plaintiffs | § | |
| VS. | § | LIVE OAK COUNTY, TEXAS |
| MRS. HENRIETTA WILLIMANN, ET AL | § | 36TH JUDICIAL DISTRICT |

## JUDGMENT

On 12th day of MAY, 1993, this case came on for hearing. Plaintiffs appeared by and through their attorney of record, Michael C. Sartori, and announced ready for trial. Defendants, G. W. KOLSTAD and DORIS FRASER, having answered, did not appear. Those Defendants cited by publication appeared by and through their attorney ad litem, William L. Hardwick, and announced ready for trial.

The following Defendants, although duly cited to appear, did not appear and wholly made default:

Mrs. Henrietta Willimann; Fintan J. Willimann; Mrs. Fintan J. Willimann; Fred Anderson; Mrs. Fred Anderson; M. J. Couch; Mrs. M. J. Couch; S. L. McKay; Mrs. S. L. McKay; Joseph Vanderyacht; Mrs. Joseph Vanderyacht; Earl E. Vanderyacht; Mrs. Earl E. Vanderyacht; J. W. Hauser; Mrs. J. W. Hauser; H. S. Tallakson; Mrs. H. S. Tallakson; Herman S. Tallakson; Mrs. Hermann S. Tallakson; Joseph Reichert; Mrs. Joseph Reichert; W. E. Ruckmann; Pearl M. Ruckmann; J. B. Hazlitt; Mrs. J. B. Hazlitt; W. A. Felix; Mrs. W. A. Felix; H. H. Johnson; Mrs. H. H. Johnson; Ottilie M. Gensch; Mrs. Ottilie M. Gensch; Fred Stadelman; Mrs. Fred Stadelman; C. E. Crook; Mrs. C. E. Crook; Jeannie E. Scoby; E. B. Grabow; Mrs. E. B. Grabow; Albert James; Mrs. Albert James; Adolph Hanson; Mrs. Adolph Hanson; Norman M. Negaard; Mrs. Norman M. Negaard; Charles Burkhard; Mrs. Charles Burkhard; Herman Burkhard; Mrs. Herman Burkhard; L. W. Greer; Mrs. L. W. Greer; T. L. Thoreson; Mrs. T. L. Thoreson; Henry L. Thoreson; Mrs. Henry L. Thoreson; A. E. Gage; Mrs. A. E. Gage; Mrs. Nellie Cooley; R. E. Baum; Mrs. R. E. Baum; A. Wenger; Mrs. A. Wenger; Adolph Wenger; Mrs. Adolph Wenger; W. S. Duffy; Mrs. W. S. Duffy; John T. Strand; Mrs. John T. Strand; George H. McMurtie; Mrs. George H. McMurtie; Carl A. Jensen; Mrs. Carl A. Jensen; Marie Bertha Jensen; Leo M. Foley; Mrs. Leo M. Foley; Arthur H. Forsan; Mrs. Arthur H. Forsan; A. J. LeFebvre; Mrs. A.

J. LeFebvre; Arthur C. Voss; Mrs. Arthur C. Voss; D. F. Wade; Mrs. D. F. Wade; J. V. McAfee; Mrs. J. V. McAfee; Helge S. Casperson; Lewis Mortenson; Mrs. Lewis Mortenson; Peter E. Parson; Mrs. Peter E. Parson; Rev. A. Richter; Mrs. A. Richter; Bernard Powers; Mrs. Bernard Powers; James B. Fitzgerald; Mrs. James B. Fitzgerald; W. D. Youngquist; Mrs. W. D. Youngquist; L. T. Bougie; Mrs. L. T. Bougie; Swan Ericson; Mrs. Swan Ericson; Hans H. Jaul; Mrs. Hans H. Jaul; David Henry; Mrs. David Henry; W. P. Spangenberg; Mrs. W. P. Spangenberg; W. F. Marquardt; Mrs. W. F. Marquardt; O. P. Kendel; Mrs. O. P. Kendel; Grover J. Krumsiek; Mrs. Grover J. Krumsiek; A. H. Hoyne; Mrs. A. H. Hoyne; Hulda Bergdahl; P. A. Bergdahl; Mrs. P. A. Bergdahl; Albert Pederson; Mrs. Albert Pederson; Jeannine Powell Corley; Charles D. Lovelace; Mrs. Charles D. Lovelace; Albert Pederson; Marie E. Mattison; V. H. Houston; Mrs. V. H. Houston; J. B. Martindale; Mrs. J. B. Martindale; R. N. Martindale; Mrs. R. N. Martindale. The unknown stockholders of The First State Bank of Le Sueur Center; The unknown stockholders of U. S. I. Realty Co.; The unknown stockholders of Mid-Frio Petroleum Co.; The unknown stockholders of George C. Vaughn & Sons, Inc.; The unknown stockholders of Martindale Mortgage Co.; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under unrecorded Deeds from the above named Defendants; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Henrietta Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 90 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fintan J.Willimann, dated May 18, 1921 and recorded in Vol. 11, Page 87 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Anderson, dated November 18, 1921 and recorded in Vol. 11, Page 105 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to S. L. McKay, dated June 29, 1921 and recorded in Vol. 11, Page 129 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Joseph Vanderyacht, dated June 8, 1920 and recorded in Vol. 11, Page 131 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Frederich H. Cosgrove, Trustee, to Earl E. Vanderyacht, dated August 19, 1922 and recorded in Vol. 11, Page 268 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward

2

Mattison by attorney in fact J. W. Hauser to H. S. Tallkason, dated May 18, 1920 and recorded in Vol. 11, Page 317 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Herman S. Tallakson, dated August 5, 1920 and recorded in Vol. 11, Page 318 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated December 15, 1930 and recorded in Vol. 41, Page 199 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from J. B. Hazlitt to Joseph Reichert, dated April 12, 1932 and recorded in Vol. 46, Page 354 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. A. Felix, dated November 23, 1920 and recorded in Vol. 6, Page 479 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to H. H. Johnson, dated December 4, 1920 and recorded in Vol. 6, Page 483 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Ottilie Gensch, dated January 26, 1921 and recorded in Vol. 6, Page 515 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Fred Stadelman, dated September 24, 1920 and recorded in Vol. 6, Page 465 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to C. E. Crook, dated March 21, 1921 and recorded in Vol. 9, Page 594 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Jeannie E. Scoby, dated April 5, 1921 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, to E. B. Grabow, dated December 26, 1919 and recorded in Vol. 8, Page 395 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Albert James, dated April 14, 1921 and recorded in Vol. 9, Page 612 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward

3

296

Mattison by attorney in fact James J. Craig to Adolph Hanson, dated April 5, 1921 and recorded in Vol. 9, Page 617 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Norman M. Negaard, dated March 21, 1921 and recorded in Vol. 9, Page 625 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Charles Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 627 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to Herman Burkhard, dated April 15, 1921 and recorded in Vol. 9, Page 628 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to L. W. Greer, dated April 14, 1921 and recorded in Vol. 11, Page 3 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated March 20, 1921 and recorded in Vol. 11, Page 4 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to T. L. Thoreson, dated June 16, 1921 and recorded in Vol. 11, Page 6 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Henry L. Thoreson, dated May 28, 1920 and recorded in Vol. 6, Page 225 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. E. Gage, dated April 19, 1921 and recorded in Vol. 11, Page 7 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Mrs. Nellie Cooley, dated April 5, 1921 and recorded in Vol. 11, Page 8 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to R. E. Baum, dated May 13, 1921 and recorded in Vol. 11, Page 23 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. Wenger, dated May 23, 1921 and recorded in Vol. 11, Page 25 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Adolph Wenger,

dated September 24, 1920 and recorded in Vol. 6, Page 375 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. S. Duffy, dated June 30, 1921 and recorded in Vol. 11, Page 30 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to John T. Strand, dated June 16, 1921 and recorded in Vol. 11, Page 50 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to George H. McMurtie, dated June 16, 1921 and recorded in Vol. 11, Page 55 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Carl A. Jensen, dated October 19, 1921 and recorded in Vol. 11, Page 68 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Leo M. Foley, dated March 21, 1921 and recorded in Vol. 11, Page 72 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Forsan, dated May 13, 1921 and recorded in Vol. 11, Page 81 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to A. J. LeFebvre, dated June 15, 1921 and recorded in Vol. 11, Page 138 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Arthur H. Voss, dated March 21, 1921 and recorded in Vol. 11, Page 226 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to D. F. Wade, dated April 9, 1921 and recorded in Vol. 11, Page 201 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to J. V. McAfee, dated November 3, 1921 and recorded in Vol. 11, Page 242 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Helge S. Casperson, dated July 10, 1920 and recorded in Vol. 11, Page 287 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee, et al, to Lewis Mortenson, dated August 19, 1922 and recorded in Vol. Y, Page 192 of the Deed Records of Live Oak County, Texas; The unknown claimants who may

5

claim an interest in a portion of the hereinafter described lands under the Deed from John M. Arneson, Trustee to Lewis Mortenson, dated November 19, 1916 and recorded in Vol. 22, Page 13 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Peter E. Parson, dated May 18, 1920 and recorded in Vol. 6, Page 43 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Reverand A. Richter, dated May 18, 1920 and recorded in Vol. 6, Page 84 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Bernard Powers, dated May 18, 1920 and recorded in Vol. 6, Page 134 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to James B. Fitzgerald, dated May 18, 1920 and recorded in Vol. 6, Page 150 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. D. Youngquist, dated July 6, 1920 and recorded in Vol. 6, Page 224 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to L. T. Bougie, dated May 28, 1920 and recorded in Vol. 6, Page 228 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Swan Ericson, dated September 9, 1920 and recorded in Vol. 6, Page 264 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig Richard to Hans H. Jaul, dated August 31, 1920 and recorded in Vol. 9, Page 607 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to David Henry, dated September 8, 1920 and recorded in Vol. 6, Page 289 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. P. Spangenberg, dated August 9, 1920 and recorded in Vol. 6, Page 283 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated August 16, 1920 and recorded in Vol. 6, Page 310 of the Deed Records of

6

299

Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to W. F. Marquardt, dated March 25, 1921 and recorded in Vol. 9, Page 595 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to O. P. Kendel, dated August 5, 1920 and recorded in Vol. 6, Page 370 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact J. W. Hauser to Grover J. Krumsiek, dated May 18, 1920 and recorded in Vol. 7, Page 413 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Richard Canning to Hulda Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 433 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Edward Mattison by attorney in fact James J. Craig to P. A. Bergdahl, dated August 27, 1920 and recorded in Vol. 6, Page 439 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from Annie H. Kolstad to G. W. Kolstad, dated July 7, 1970 and recorded in Vol. 227, Page 208 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from C. W. Reynolds, Trustee to The First State Bank of Le Sueur Center, dated December 6, 1919 and recorded in Vol. 4, Page 386 of the Deed Records of Live Oak County, Texas; The unknown claimants who may claim an interest in a portion of the hereinafter described lands under the Deed from United States Realty Company to U. S. I. Realty Co., dated March 7, 1919 and recorded in Vol. 15, Page 96 of the Deed Records of Live Oak County, Texas.

The Court finds that the pleadings of the Plaintiffs and Defendants are in due form and contain all the allegations, information, and prerequisites required by law. The Court, after receiving evidence, finds that it has jurisdiction over this cause of action and the parties. All persons entitled to citation were properly cited. A jury was waived, and all questions of fact and of law were submitted to the Court.

The Court, after hearing the evidence and arguments of counsel, finds that:

7

300

1.    The Property which is the subject of this suit is situated in Live Oak County, Texas, and is described as follows:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts: with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri

Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

## TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page 24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post

9

302

for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172

10

and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

(hereinafter referred to as the "Property").

2. The Plaintiff, Margie L. Merrell, is deceased. All references in this judgment to the Plaintiff is to CHARLES R. MERRELL.

3. As to Plaintiffs' claim of ownership the Court finds that:

11

a. At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the Property owning and claiming the same in fee simple.

b. Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the Property, claiming under Deed dated October 31, 1975, and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County, Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on the Property as they became due, and before delinquency.

c. Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the Property for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of his possession.

d. Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held the Property under claim of right, in good faith and under duly recorded deed purporting to convey the Property.

e. Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. Plaintiff

12

has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

f.      Plaintiff and Plaintiffs' predecessors in interest have openly exercised dominion over and asserted claim to the Property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action.   The persons holding the apparent record title to the Property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years  during the twenty-five (25) years preceding the commencement of this action.

4.      That the ownership of the Property which is the subject of Plaintiff's suit is vested one hundred percent (100%) in the Plaintiff.

IT IS THEREFORE ORDERED, DECREED AND ADJUDGED, that the Plaintiff shall have and recover from the Defendants, and shall hold in fee simple, the following described tracts and parcels of land:

Tract I

183.91 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16, recorded in Vol. 1, Page 24 of the Plat Records of live Oak County, Texas, and the following acreage in the various tracts:  with 7.14 acres in tract 55; with 15.6' acres in Tract 65; with 3.81 acres in Tract 109; with 11.62 acres in Tract No. 110, with 22.35 acres in Tract 111; with 19.95 acres in Tract 112; with 19.03 acres in Tract 127; with 20.05 acres in Tract 128; with 7.98 acres in Tract 129; with 0.83 acres in Tract 120; with 20.00 acres in Tract 172; with 16.12 acres in Tract 173; with 17.76 acres in Tract 174; with 1.59 acres in Old abandoned Roadway in all a total of 183.91 acres and also within Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post at the Northwest corner of Tract No. 55 of

13

Block 16, Live Bee Subdivision No. 4 and which point is the most Northwesterly corner of this 183.91 acre tract of land;

THENCE, South 84° 44' East with the fence on the North boundary of Tract 55 at 232.3 feet a corner fence post set in the Southwest right of way line of U. S. Highway No. 281 and being the most Northeasterly corner of this 183.91 acre tract of land;

THENCE, South 39° 04' East with the Southwest right of way line of U. S. Highway No. 281 and the Northeast boundary of this 183.91 acre tract of land passing along Tract 55, Tract 65, Tract 112, Tract 109, Tract 110, Tract 127, Old abandoned Roadway, Tract 130, Tract 129, Tract 173, at 5915.6 feet a corner fence post in same right of way line and being a post on the East boundary of Tract 173 an inner corner of this 183.91 acre tract;

THENCE, South 00° 22' West with the fence along the East boundary of Tract 172 and Tract 172 at 689.8 feet a corner fence post at the Southeast corner of Tract 172 and being the Southwest corner of Tract 171 and being an inner corner of a 64.42 acre tract and being the Southeast corner of this 183.91 acre tract;

THENCE, North 89° 38' West with the fence along South boundary of Tract 172 and being a part of the North boundary of said 62.42 acre Tract at 1433.8 feet a corner fence post set in the Northeast right of way line of Missouri Pacific Railroad being the Northwest corner of said 62.42 acre tract being a point on the South boundary of Tract 174 and being a Southwest corner of this 183.91 acre tract;

THENCE, North 36° 14' West with the fence the Northeast right of way line of Missouri Pacific Railroad right of way the Southwest boundary of this 183.91 acre tract and passing Tract 174, Tract 128, Tract 111, Tract 112, at 4289.3 feet a corner fence post in the Northeast right of way line of said railroad, a point in the West boundary of Tract 112 and being the Northwest corner of this tract;

THENCE, North 00° 33' East with the fence for the West boundary of this 183.91 acre tract passing along West boundary of Tract 112, West boundary of Tract 65, along West boundary of Tract 55 at 1836.4 feet the Place of Beginning and containing 183.91 acres of land, more or less.

TRACT II:

121.62 acres of land in the name of Charles R. Merrell and wife, Margie L. Merrell, within Live Bee Subdivision No. 4, Block 16 recorded in Vol. 1, Page

14

24, of the Plat Records of Live Oak County, Texas, and the following acreage in the various tracts; with 1.90 acre in tract 57; with 23.04 acres in Tract 54; with 10.84 acres in Tract 55; with 20.02 acres in Tract 52; with 21.45 acres in Tract 53' with 2.72 acres in Tract 65; 20.03 acres in Tract 66; 14.24 acres in Tract 109; with 6.02 acres in Tract 110; with 0.42 acres in Tract 127 and with 0.31 acres in Old Abandoned Roadway between Tract 57 and Tract 54 and 0.59 acres in Old Abandoned Roadway between Tract 52 and Tract 51 in all within the Festus Doyle Survey No. 4, Abstract No. 6, Live Oak County, Texas, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post in the Northeast corner of Tract 53 of Block 16 of Live Bee Subdivision No. 4 as recorded in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas;

THENCE, South 00° 16' West with the fence East boundary of Tract 53 and along the Eastern boundary of this 121.62 acre tract at 673.8 feet a corner fence post for an inner corner of this tract;

THENCE, South 75° 59' East 29.7 feet passing old abandoned Roadway to a point in the fence the West boundary of Tract 51 for a Northeast corner of this 121.62 acre tract;

THENCE, South 0° 10' West with the fence along West boundary of Tract 51 and part of the West boundary of Tract 67 at 854.8 feet a corner fence post for a Northeast corner of this 121.62 acre tract;

THENCE, South 67° 11' West crossing old abandoned Road at 32.5' a corner fence post for a inner corner of this 121.62 acre tract and being a point on the East boundary of Tract 66;

THENCE, South 0° 24' West with the fence along the East boundary of Tract 66, Tract 109, Tract 110 and Tract 127 and all being the East boundary of this 121.62 acre tract at 1915.7' a corner fence post set at the intersection of the East boundary of Tract 27 and the Northeast boundary of U. S. Highway No 281 for the South corner of this 121.62 acre tract;

THENCE, in a Northwesterly direction with the meanders of the fence along the Northeast boundary of U. S. Highway No. 281 and the Southwest boundary of this 121.62 acre tract, also passing across Tract 110; Tract 109; Tract 66; Tract 65; Tract 55; Tract 54; and Tract 57; North 39° 04' West 3612.5'; North 38° 54' West 289.6 feet; North 39° 06' West 209.1 feet; North 39° 02' West 371.9 feet; North 40° 33' West 334.4 feet to a post in said Northeast right of way line and in the North boundary of tract 57 for the Northwest corner of this 121.62 acre tract;

15

308

THENCE, South 84° 49' East with the fence passing along the North boundary of Tract 57 crossing old abandoned roadway passing along the North line of Tract 54, along the North line of Tract 53 in all a total distance of 3973.3 feet to the Place of Beginning and containing 121.62 acres of land, more or less.

TRACT III:

62.42 acres of land, in the name of Charles R. Merrell and wife, Margie L. Merrell and having 0.09 acres in Tract 188, 25.20 acres in Tract 191, 16.09 acres in Tract 192, 13.75 acres in Tract 193, 1.47 acres in Old abandoned roadway, 5.82 acres in Tract 171, all in Block 16 of the Live Bee Subdivision No. 4, of record in Vol. 1, Page 24 of the Plat Records of Live Oak County, Texas, also being within the Festus Doyle Survey No. 4, Abstract No. 6, and being more particularly described by metes and bounds as follows:

Beginning at a corner fence post being a Southeast corner of Tract 172 and the Southwest corner of Tract 171 of said Live Bee Land Subdivision No. 4 and same being the Southeast corner of the 183.91 acre tract described above as "Tract I" and same point being an inner corner of this 62.42 acre tract of land;

THENCE North 00° 22' East with the fence the East boundary of Tract 172 and a part of the East boundary of Tract 173 at 689.8 feet a corner fence post set in the Southwest Right-of-way line of U. S. Highway No. 281 and same being the Northeast corner of the said 183.91 acre tract ("Tract I") and being a Northeast corner of this 62.42 acre tract of land;

THENCE in a Southeasterly direction with the meanders of the fence along the Southwest Right-of-way line of U. S. Highway No. 281 and being the Northeast boundary line of this 62.42 acre tract of land; South 47° 27' East 81.0 feet; South 46° 20' East 200.0 feet; South 45° 50' East 200.1 feet; South 47° 37' East 200.0 feet; South 50° 40' East 200.5 feet; South 50° 17' East 155.1 feet; South 51° 02' East 200.9 feet; South 56° 40' East 199.9 feet; South 57° 58' East 152.2 feet to a corner fence post set in said Right-of-way line and being a point in the Northwest boundary line of Fant City and being the Southeast corner of this 62.42 acre tract;

THENCE South 31° 47' West with the fence along the Old Northwest boundary of Fant City along the Southeast boundary of Tract 192, Southeast boundary of Tract 193 at 1529.7 feet to corner fence post set in the Northeast Right-of-way line of Missouri Pacific Railroad and being the South corner of this 62.42 acre tract;

16

THENCE in a Northwesterly direction with the meanders of the fence along the Northeast boundary of the Missouri Pacific Railroad Right-of-way and being the Southwest boundary of this 62.42 acre tract of land; North 58° 41' West 365.0 feet; North 57° 56' West 200.0 feet; North 57° 42' West 200.1 feet; North 55° 25' West 195.8 feet; North 52° 24' West 213.4 feet; North 49° 07' West 200.0 feet; North 45 50' West 200.5 feet; North 42° 48' West 193.1 feet; North 40° 21' West 230.2 feet; North 36° 52' West 200.0 feet; North 36° 11' West 200.0 feet; North 35° 55' West 98.0 feet to a corner fence post in said Railroad right of way same being the Southwest corner of the 183.91 acre tract (Tract I), same being point in the South line of Tract 174 and being the Northwest corner of this 62.42 acre tract;

THENCE, North 89° 38' West with the fence along South line of Tract 174, South line of Tract 172 at 1433.8 feet the Place of Beginning and containing 62.42 acres of land, more or less;

together with all and singular the rights and appurtenances thereto.

All costs of court incurred are taxed against the party incurring same, for which execution may issue.

SIGNED AND ENTERED, this the _12th_ day of _MAY_____, 1993.

_____
JUDGE PRESIDING

RONALD M. YEAGER

APPROVED AS TO FORM:

_____
Michael C. Sartori, Attorney for Plaintiff

_____
William L. Hardwick, Attorney ad Litem for Defendants served by publication.



FILED

At _10:50_ O'Clock ___ a ___ M

MAY 1 2 1993

ELLEN JANE McCARLEY
District Clerk, Live Oak County, Texas
By _____ Deputy

VOLUME _42_ PAGE _91_

310

# EXHIBIT "J"

Affidavit of Identity
Charles R. Merrell, Margie L. Merrell and Mary June Owen Merrell,
by Mary June Owen Merrell, Affiant, dated August 8, 2014

Cause No. L-13-0197-CV-B

| | | |
|---|---|---|
| G. W. KOLSTAD and | § | IN THE DISTRICT COURT OF |
| WILLIAM FRASER, | § | |
|       Plaintiffs | § | |
| | § | |
| v. | § | LIVE OAK COUNTY, TEXAS |
| | § | |
| MARY JUNE OWEN MERRELL, | § | |
|       Defendant | § | 156TH JUDICIAL DISTRICT |

## AFFIDAVIT

State of Texas      ·    §

County of Live Oak    §

BEFORE ME, the undersigned Notary Public, on this day personally appeared MARY JUNE OWEN MERRELL, who, after being duly sworn, on oath says:

1. My name is MARY JUNE OWEN MERRELL. I am over 18 years of age, of sound mind, capable of making this affidavit, and I have personal knowledge of the facts stated herein, and they are all true and correct;

2. I am a resident of San Patricio County, Texas, and reside at 2411 Oak Brooke, Portland, Texas 78274.

3. I am the Defendant in the captioned cause.

4. I am the named Defendant in the Defendant's Motion for Traditional Summary Judgment to which this Affidavit is attached as Exhibit"__".

5. I am well and truly familiar with the facts and circumstances surrounding the death of Charles R. Merrell, and the beneficiaries of his Last Will and Testament. Charles R. Merrell was the Plaintiff named in the Judgment entered May 12, 1993, in Cause No. 6990-A, *CHARLES R. MERRELL and wife, MARGIE L. MERRELL v. MRS. HENRIETTA WILLIMANN, ET AL*, in the 36th Judicial District Court, Live Oak County, Texas. Charles R. Merrell died testate on February 14, 2010 at the age of 82. The Last Will and Testament of Charles R. Merrell (Charles Roy Merrell) was probated in Cause No. 12635, Estate of Charles Roy Merrell, Deceased, In the County Court of San Patricio County, Texas; and the Order Probating such Will and such Last Will and Testament is filed for record in Vol. 156, Page 855 of the Official Public Records of Live Oak County, Texas. The property that is the

Page -1-

312

subject of the above numbered and entitled cause was, in Article IV of said Last Will and Testament, included in the residuary estate and given to me, JUNE MERRELL, and being the same person as myself, MARY JUNE OWEN MERRELL.

6.     This affidavit is made for the purpose of placing of record those matters of probate as to the Estate of Charles R. Merrell necessary to prove that the property which is the subject of this suit passed from Charles R. Merrell to MARY JUNE OWEN MERRELL, the Defendant in the above numbered and entitled cause.

Witness my hand this ___ day of August, 2014.

_____
MARY JUNE OWEN MERRELL

SUBSCRIBED AND SWORN TO BEFORE ME on August 8th, 2014, by MARY JUNE OWEN MERRELL, to certify which witness my hand and official seal.

_____
Notary Public in and for the State of Texas

BILLIE ANN BOENIG
Notary Public
STATE OF TEXAS
My Comm. Exp. 10-04-2017

Page -2-

313

# EXHIBIT "K"

Affidavit of Michael C. Sartori, dated August 14, 2014

Cause No. L-13-0197-CV-B

| G. W. KOLSTAD and | § | IN THE DISTRICT COURT OF |
| WILLIAM FRASER, | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | LIVE OAK COUNTY, TEXAS |
| | § | |
| MARY JUNE OWEN MERRELL, | § | |
| Defendant | § | 156TH JUDICIAL DISTRICT |

## AFFIDAVIT

State of Texas       §

County of Live Oak   §

BEFORE ME, the undersigned Notary Public, on this day personally appeared Michael C. Sartori, who, after being duly sworn, on oath says:

1.    My name is Michael C. Sartori. I am over 18 years of age, of sound mind, capable of making this affidavit, and I have personal knowledge of the facts stated herein, they are all true and correct, I have represented Charles R. Merrell and Mary June Owen Merrell for the past 26 years, and am aware of the lawsuits in which they have been involved and am further familiar with their marital history to one another and to the facts surrounding the death of Charles R. Merrell in 2010;

2.    I am an attorney licensed to practice law in the State of Texas. I have been licensed for over 35 years and maintain an office and practice in George West, Live Oak County, Texas.

3.    I am attorney of record for MARY JUNE OWEN MERRELL, the Defendant in the captioned cause.

4.    I am the author of the Defendant's Motion for Traditional Summary Judgment to which this Affidavit is attached as Exhibit "K".

5.    That the originals the Exhibits attached to Defendant's Motion for Traditional Summary Judgment have been either personally examined by me or were received in response to discovery requests from the Plaintiffs.

6.    I was the attorney of record for Charles R. Merrell and wife, Margie L. Merrell the original Plaintiffs in Cause No. 6990-A, *CHARLES R. MERRELL and wife, MARGIE L. MERRELL*

Page -1-

*v. MRS. HENRIETTA WILLIMANN, ET AL,* in the 36th Judicial District Court, Live Oak County, Texas Plaintiff in the above numbered and entitled cause. Margie L. Merrell died during the pendency of said cause and her interest in the case and the property that was the subject of said cause passed to her husband, Charles R. Merrell. Subsequent to the entry of the Judgment in said cause, Charles R. Merrell died, and his interest in the property that was the subject of said cause passed to his then spouse, MARY JUNE OWEN MERRELL.

7.      This affidavit is made for the purpose of authenticating the Exhibits attached to the Defendant's Motion for Traditional Summary Judgment, and to place of record those matters of heirship and decent and distribution necessary to prove that the property which is the subject of this suit passed from Charles R. Merrell to MARY JUNE OWEN MERRELL, the Defendant in the above numbered and entitled cause.

Witness my hand this 14th day of August, 2014.

MICHAEL C. SARTORI

        SUBSCRIBED AND SWORN TO BEFORE ME on August 14, 2014, by MICHAEL C. SARTORI, to certify which witness my hand and official seal.

Notary Public in and for the State of Texas

KATHRYN STRAUSE
MY COMMISSION EXPIRES
June 9, 2018

317

CERTIFICATE - PROBATE
This page is a full, true, and correct copy of the original on file in case No. 12635.
ATTESTED: 5-10-10



GRACIE ALANIZ - GONZALES
County Clerk
San Patricio Co. TX

By _____ Deputy

NO. 12635

| | | |
|---|---|---|
| ESTATE OF | § | IN THE COUNTY COURT |
| | § | |
| CHARLES ROY MERRELL | § | OF |
| | § | |
| DECEASED | § | SAN PATRICIO COUNTY, TEXAS |

## ORDER ADMITTING WILL TO PROBATE
## AND GRANTING LETTERS TESTAMENTARY

On this day, came on to be heard the written application for the probate of a certain instrument in writing and now produced in Court, being filed herein with said Application and purporting and alleged to be the Last Will and Testament of Decedent, which application is also for Letters Testamentary, and due proof being taken in the manner required by law; the following was proven to the satisfaction of the Court:

1. The Decedent is dead and that four years have not lapsed since the date of death and prior to the Application for Probate filed herein,

2. The Court has jurisdiction and venue over the estate, .

3. That citation has been served and returned in the manner and for the length of time required by the Texas Probate Code and the law,

4. That the person for whom Letters Testamentary are sought is entitled thereto by law and is not disqualified,

5. That the Testator at the time of executing the Will, was at least nineteen years of age, or was or had been lawfully married and was of sound mind,

6. That the Testator executed the Will with the formalities and solemnities and under the circumstances required by law to make it a valid Will,

7. Such Will was not revoked by the Testator.

8. That no child was born to or adopted by said Decedent after the execution of the Will.

9. That Decedent was never divorced after making said Will.

10. That the person to whom the Letters Testamentary are to be granted is named as personal representative in the Will.



TRUE AND CORRECT COPY OF THE ORIGINAL FILE
IN THE OFFICE OF THE COUNTY CLERK,
LIVE OAK COUNTY, TEXAS
PAGE___1___OF___1___
KAREN IRVING
CLERK COUNTY COURT
LIVE OAK COUNTY, TEXAS
BY_____ DEPUTY



CERTIFICATE - PROBATE
This page is a full, true, and
correct copy of the original on
file in case No. _____. original on
ATTESTED: 5-10-10 .

GRACIE ALANIZ - GONZALES
County Clerk
San Patricio Co. TX

By _____ Deputy

11. That no state, government agency of the state, or charitable organization is named in the Will as a devisee.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that the said Will on file herein be, and the same is hereby admitted to probate as the Last Will of the said Decedent, CHARLES ROY MERRELL. And such Will, together with the Application for Probate thereof and all the testimony given in this proceeding, shall be recorded in the Minutes of this Court.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that upon taking the oath as required by law, and qualified according to law, the Clerk of this Court shall issue Letters Testamentary in accordance with this judgment and the law, to June Merrell, 2411 Oak Brook Drive, Portland, Texas 78374, as Independent Executrix.

SIGNED this the ___10th___ day of ___MAY___, 2010.

_____
COUNTY JUDGE

FILED
AT 1:10 P M O'CLOCK

MAY 1 0 2010

GRACIE ALANIZ-GONZALES County Clerk
San Patricio County, Texas
BY _____ DEPUTY

THE STATE OF TEXAS
COUNTY OF SAN PATRICIO I hereby certify that
the foregoing is a true and correct copy of the
instrument which is filed in the papers of

Cause No. _____ of the Probate Records
of San Patricio County, Texas
WITNESS MY HAND AND SEAL OF OFFICE this
___10th___ day of ___May___ 20 10
GRACIE ALANIZ-GONZALES
County Clerk
San Patricio
By _____ Deputy          County, Texas

TRUE AND CORRECT COPY OF THE ORIGINAL FILE
IN THE OFFICE OF THE COUNTY CLERK,
LIVE OAK COUNTY, TEXAS
PAGE 2 OF 7
KAREN IRVING
CLERK COUNTY COURT
LIVE OAK COUNTY, TEXAS
BY _____ DEPUTY

THE STATE OF TEXAS      §
                      §   KNOW ALL MEN BY THESE PRESENTS:

COUNTY OF LIVE OAK    §

That I, CHARLES ROY MERRELL, of the County of Live Oak and the State aforesaid,

being of sound and disposing mind and memory and having attained the age of eighteen years, do

make, declare and publish this, my Last Will and Testament, hereby revoking all Wills and Codicils

by me at any time heretofore made.

I.

I direct that all of my legally owing debts and expenses of administration of my estate be paid

as soon as practicable after my death.

## II.

I hereby give, devise and bequeath unto my beloved children, DEBRA ELAINE MERRELL

HARRIS and GARY VERNICE MERRELL, share and share alike, the following described property:

    A.     All of the stock that I own in MERRELL LEASE SERVICE, INC.; and

    B.     The five (5) acres located in Gregory, San Patricio County, Texas, which is occupied

           by MERRELL LEASE SERVICE, INC.

## III.

I hereby give, devise and bequeath unto my daughter, DEBRA ELAINE MERRELL HARRIS

all of my interest in the back or North one-half (½) of a 14.57 acre tract which I own near Portland,

San Patricio County, Texas together with the right of ingress and egress across the front one-half (½)

of said tract. The right-of-way to be located along a boundary line of the front one-half (½) of said

tract. This bequest shall be subject to the right of my son GARY VERNICE MERRELL to purchase

this from my daughter DEBRA ELAIN MERRELL HARRIS for $1,500.00 per acre.

## IV.

I hereby give, devise and bequeath unto my wife, JUNE MERRELL all of the rest, residue

and remainder of my property, real, personal and mixed, including any debt owed to me by

MERRELL LEASE SERVICE, INC., of which I may die seized and possessed, or which may be due

me from any and all sources whatsoever and wheresoever situated to be hers absolutely without

restriction or limitation, from any source whatsoever.

## V.

And if any of my children die before me and they leave issue, said issue shall receive per

stirpes. However, if any of my children die before me, without issue, their share shall pass to and vest





TRUE AND CORRECT COPY OF THE ORIGINAL FILE
IN THE OFFICE OF THE COUNTY CLERK,
LIVE OAK COUNTY, TEXAS
PAGE____ OF____
KAREN IRVING
CLERK COUNTY COURT
LIVE OAK COUNTY, TEXAS
BY____

CERTIFICATE - PROBATE
This page is a full, true, and
correct copy of the original on
file in case No. 18638 .
ATTESTED: 5-10-10 .
        GRACIE ALANIZ - GONZALES
        County Clerk
        San Patricio Co. TX

By _____ Deputy


TRUE AND CORRECT COPY OF THE ORIGINAL FILE
IN THE OFFICE OF THE COUNTY CLERK,
LIVE OAK COUNTY, TEXAS
PAGE____4____OF____7____
KAREN IRVING
CLERK COUNTY COURT
LIVE OAK COUNTY, TEXAS
BY_____DEPUTY

in my child or children who are living at the time of my death, and to the issue, if any of any of my deceased children, if any, per stirpes.

## VI.

In the event any of my grandchildren or their issue become beneficiaries under this Will before they have reached the age of 21 years, I hereby give, devise and bequeath their interest to GARY VERNICE MERRELL, in trust, for the use and benefit of said beneficiaries until they have reached the age of 21 years. In the event that GARY VERNICE MERRELL should predecease me, fail, refuse, resign, or for any reason be unable to act as Trustee, I hereby constitute and appoint DEBRA ELAINE MERRELL HARRIS as Trustee. The Trustee shall use such part of the income, and if necessary, the corpus, as the Trustee, in his or her discretion, deems advisable, for the education and benefit of said beneficiaries until they reach the age of 21 years, at which time the remainder of the Trust shall be delivered to them. This trust shall not be subject to assignment or encumbrance by the beneficiaries or to legal process for the beneficiaries' liabilities. The interest of a beneficiary in the income or in the principal or in both may not be voluntarily or involuntarily transferred before payment or delivery of the interest to the beneficiary by the Trustee. The Trustee shall administer this trust in accordance with the Texas Trust Code except that no bond shall be required.

## VII.

I nominate my beloved wife, JUNE MERRELL, as Independent Executrix of my Last Will and Testament and of my estate. In the event that my said wife, JUNE MERRELL, should predecease me or for any reason be unable to act as Independent Executrix, I hereby constitute and appoint GARY VERNICE MERRELL as alternate Independent Executor of my Last Will and Testament and of my estate. In the event that the said GARY VERNICE MERRELL should predecease me or for any reason be unable to act as Independent Executor, I hereby constitute and appoint DEBRA ELAINE MERRELL HARRIS as alternate Independent Executrix of my Last Will and Testament and of my estate.

It is my will and desire that the personal representative of my estate shall be independent of the probate court and all other courts and that she, or he, as the case may be, will not be required to give bond or any other security whatsoever and that no action shall be taken or had in the probate court or any other court except to probate this, my Last Will and Testament, and file an inventory of my said estate, if required.



TRUE AND CORRECT COPY OF THE ORIGINAL FILE
IN THE OFFICE OF THE COUNTY CLERK,
LIVE OAK COUNTY, TEXAS
PAGE ___5___ OF ___7___
KAREN IRVING
CLERK COUNTY COURT
LIVE OAK COUNTY, TEXAS
BY_____ DEPUTY

CERTIFICATE - PROBATE
This page is a full, true, and correct copy of the original on file in case No. _____.
ATTESTED: _____.
GRACIE ALANIZ - GONZALES
County Clerk
San Patricio Co. TX
By_____ Deputy

## VIII.

It is my further will and desire that in the event none of the above beneficiaries are living at the time of my death, that my estate shall pass under this my Last Will and Testament but to those persons entitled to my estate under the laws of descent and distribution of the State of Texas, which are in effect at the time of my death.

IN TESTIMONY WHEREOF, witness my hand this the 13th day of ___June___, 2001, in the presence of _Patricia G. Deaton___, _____, and _Robert L. Joseph_____, who attest the same at my request and in my presence and in the presence of each other.

_____
CHARLES ROY MERRELL, Testator

The above and foregoing instrument was subscribed by CHARLES ROY MERRELL, Testator, in the presence of us, the attesting witnesses, who have hereunto subscribed our names in the presence of the said Testator and in the presence of each other and at the special instance and request of the said Testator, who declared to us the foregoing instrument to be his Last Will and Testament, this the day, month and year last hereinabove written.

_____

_____

ATTESTING WITNESSES

CERTIFICATE - PROBATE
This page is a full, true, and correct copy of the original on file in case No. _____.
ATTESTED: _5-10-10_.
GRACIE ALANIZ - GONZALES
County Clerk
San Patricio Co. TX
By_____ Deputy

3

TRUE AND CORRECT COPY OF THE ORIGINAL FILE
IN THE OFFICE OF THE COUNTY CLERK,
LIVE OAK COUNTY, TEXAS
PAGE __6__ OF __7__
KAREN IRVING
CLERK COUNTY COURT
LIVE OAK COUNTY, TEXAS
BY_____ DEPUTY
323

THE STATE OF TEXAS        §
                                    §

COUNTY OF _SAN PATRICIO_    §

      BEFORE ME, the undersigned authority, on this day personally appeared CHARLES ROY MERRELL, _Patricia G. Deaton_____, _____, and _Robert L. Joseph____, known to me to be the Testator and the witnesses, respectively, whose names are subscribed to the annexed or foregoing instrument in their respective capacities, and all of said persons being by me duly sworn, the said CHARLES ROY MERRELL, Testator, declared to me and to the said witnesses in my presence, that said instrument is his Last Will and Testament, and that he had willingly made and executed it as his free act and deed; and the said witnesses, each . on his oath stated to me, in the presence and hearing of the said Testator, that the said Testator had declared to them that said instrument is his Last Will and Testament, and that he executed same as such and wanted each of them to sign it as a witness; and upon their oaths each witness stated further that they did sign the same as witnesses in the presence of the said Testator and at his request; that he was at that time eighteen (18) years of age or over and was of sound mind; and that each of said witnesses was at least fourteen (14) years of age.

_____
CHARLES ROY MERRELL, Testator

_____

_____
ATTESTING WITNESSES

      Subscribed and sworn to before me by the said CHARLES ROY MERRELL, Testator, and by the said _Patricia G. Deaton_____, and _Robert L. Joseph_ witnesses, this_13th_day of __June_____, 2001.

LINDA M. RODRIGUEZ
MY COMMISSION EXPIRES
May 8, 2004

_____
Notary Public in and for
The State of Texas

ERTIFICATE - PROBATE
This page is a full, true, and correct copy of the original on file in case No. _2035_.
ATTESTED: _5-10-10_.

GRACIE ALANIZ - GONZALES
County Clerk
San Patricio Co. TX

By _____ Deputy

FILED
AT _11:00_ _A_ M O'CLOCK

APR 22 2010

GRACIE ALANIZ-GONZALES County C...
San Patricio County, Texas

4

TRUE AND CORRECT COPY OF THE ORIGINAL FILE
IN THE OFFICE OF THE COUNTY CLERK,
LIVE OAK COUNTY, TEXAS
PAGE____ OF____
KAREN IRVING
CLERK COUNTY COURT
LIVE OAK COUNTY, TEXAS
BY _____ DEPUTY

FILED FOR RECORD IN:

LIVE OAK COUNTY

ON: MAY 17, 2010 AT 11:17A

AS A(N) PUBLIC RECORDS

Karen Irving, COUNTY CLERK

CLERK NUMBER 188798 PAGES 7

AMOUNT: 36.00

RECEIPT NUMBER 100029912

BY SHERRI

STATE OF TEXAS
THIS IS TO CERTIFY THAT THE FOREGOING IS A TRUE
AND CORRECT COPY OF THE DOCUMENT ON FILE IN
MY OFFICE WITNESS MY HAND AND OFFICIAL SEAL ON
THIS ____ DAY OF ____
AS STAMPED HEREON BY ME. MAY 17, 2010.

Karen Irving, COUNTY CLERK

Recorded: _____

LIVE OAK COUNTY

## CERTIFICATE

THE STATE OF TEXAS:

COUNTY OF LIVE OAK:

    I, **KAREN IRVING**, County Clerk of Live Oak County, Texas do hereby certify that the above foregoing is a true and correct copy of

**Certified Copy of Order Admitting Will To Probate And Granting Letters Testamentary**

**FROM**     Estate of Charles Roy Merrell, Deceased

**TO**     Estate of Charles Roy Merrell, Deceased

As the same appears of record in my office in Volume __156__ Page __855__ of the __OFFICIAL PUBLIC__ Records of Live Oak County, Texas.

    In Testimony Whereof, Witness my hand and official seal of office at George West, Texas on this __13th__ day of __August__ A.D. __2014__.

                               *Karen Irving*

                        County Clerk, Live Oak County Clerk

                              Deputy

325

**DO NOT COPY OR ALTER • This document contains security features.**

# EXHIBIT "M"

Copy of Plaintiffs' Answers to Disclosures,
*G. W. Kolstad and William Fraser V. Mary Jane Owen Merrell*,
Cause No. L-13-0197-CV-B,
156th Judicial District Court, Live Oak County, Texas,
dated June 26, 2014

## CAUSE NO. L-13-0197-CV-B

| | | |
|---|---|---|
| G.W. KOLSTAD and WILLIAM FRASER | § § | IN THE DISTRICT COURT OF |
| Plaintiffs | § § | |
| V. | § § | LIVE OAK COUNTY, TEXAS |
| MARY JUNE OWEN MERRELL Defendant | § § § | |
| | § | 156TH JUDICIAL DISTRICT |

### PLAINTIFFS' ANSWERS TO DISCLOSURES

TO DEFENDANT: Mary June Owen Merrell, by and through her attorney of record; Michael C. Sartori, 502A Houston Street, P.O. Box 1222, George West, Texas 78022.

Pursuant to Texas Rule of Civil Procedure 194, G.W. KOLSTAD and WILLIAM FRASER, Plaintiffs in the above named and numbered suit, file their Response to Defendant's Request for Disclosures.

Respectfully submitted,

LAW OFFICES OF S. TIM YUSUF, PLLC.

By: _____

S. Tim Yusuf
State Bar No. 50511534
Pearland Town Center
11200 Broadway, Suite 2743
Pearland, Texas 77584
Telephone: 866-249-7633
Facsimile: 866-249-7635
tyusuf@yusuflegal.com

### ATTORNEY FOR PLAINTIFFS

1

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 26th day of June 2014, a true and correct copy of the attached and foregoing RESPONSE TO REQUESTS FOR DISCLOSURE was served in accordance with the Texas Rules of Civil Procedure upon the following:

*VIA FACSIMILE: 361-449-2380*
*VIA ELECTRONIC MAIL: michael@msartori.com*

Michael C. Sartori
502A Houston Street
P.O. Box 1222
George West, Texas 78022-1222
michael@msartori.com

S. Tim Yusuf

2

328

## PLAINTIFFS' RESPONSES TO REQUEST FOR DISCLOSURE

(a)     the correct names of the parties to the lawsuit;

RESPONSE:

    **Plaintiffs**
    G. W. Kolstad
    William Fraser

    **Defendant**
    Mary June Owen Merrill
    2411 Oak Brooke
    Portland, Texas 78274.

(b)     the name, address, and telephone number of any potential parties;

RESPONSE:
    None.

(c)     the legal theories and, in general, the factual bases of the responding party's claims or defenses;

RESPONSE:

    Plaintiffs seek to have the title record corrected by the filing of a judgment in the deed records to show ownership of the mineral rights and/or mineral title to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4.

    Furthermore, Plaintiffs seek to recover the possession of mineral rights from that certain land unlawfully withheld from Defendants who currently maintain rights of immediate possession.

    Furthermore, Plaintiffs bring suit under the Declaratory Judgments Act (DJA) TEX. CIV. PRAC. & REM. CODE §§ 37.001, et seq. for a declaration that where minerals have been severed, the surface owner cannot claim adverse possession of the minerals by possession of the surface.

    Furthermore, Plaintiffs bring suit under the Declaratory Judgments Act (DJA) TEX. CIV. PRAC. & REM. CODE §§ 37.001, et seq. for a declaration that Cause No. 6990-A, *Charles R. Merrell and wife, Margie L. Merrell v. Henrietta Willimann, et al.*, the Trespass to Try Title and Adverse Possession matter, did not divest Plaintiffs of their mineral interest in the real property described as Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4.

    Plaintiffs can show title in the mineral rights to the disputed land emanating from a common source to which the Defendant claim. Specifically: by Warranty Deed dated June 10, 1970, recorded in Volume 227, Page 208 of the Deed

Records, Hannah Keeney and Annie Kolstad, as Grantors, conveyed the surface only to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, to Maurice M. Chapman, as Grantee, and specifically reserved all minerals. After this Warranty Deed in 1970, 100% of the surface was vested in Maurice M. Chapman, and a 2/3 of 1/2 mineral interest was vested in Hannah Keeney and a 1/3 of 1/2 mineral interest was vested in Annie Kolstad.

As such, the previous litigation could not have divested Plaintiffs of their mineral interest in the land because the mineral interest has been separated from the surface ownership before the Defendants adversely possessed the subject land.

(d)    the amount and any method of calculating economic damages;

RESPONSE:

Plaintiffs herein seek damages relating to the Oil, Gas and Mineral Lease dated March 24, 2010, recorded in Volume 157, Page 487 of the Deed Record, Mary June Merrell, as Lessor, granted, leased and let Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, Killam Oil Co, LTD, as Lessee. To wit, any amounts payable to Defendant under said lease are properly owed to Plaintiffs.

As a result of Defendants' actions, Plaintiffs were forced to retain the Law Offices of S. Tim Yusuf, PLLC to file this action for declaratory relief and have agreed to pay the firm reasonable and necessary attorney's fees. An award of reasonable and necessary attorney's fees to the Plaintiffs would be equitable and just and therefore authorized by Section 37.009 of the Texas Civil Practice and Remedies Code.

(e)    the name, address, and telephone number of persons having knowledge of relevant facts, and a brief statement of each identified person's connection with the case.

RESPONSE:
None known at this time, Plaintiffs will supplement in accordance with the Texas Rules of Civil Procedure.

(f)    for any testifying expert:

(1)    the expert's name, address, and telephone number;
(2)    the subject matter on which the expert will testify;
(3)    the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;
(4)    if the expert is retained by, employed by, or otherwise subject to the control of the responding party:

4

(A)    all documents, tangible things, reports, models, or data compilations that have been provided, to reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

(B)    the expert's current resume and bibliography;

RESPONSE:

None known at this time, Plaintiffs will supplement in accordance with the Texas Rules of Civil Procedure.


(g)    any indemnity and insuring agreements described in Rule 192.3(f);

RESPONSE:

None.


(h)    any settlement agreements described in Rule 192.3(g);

RESPONSE:

None.


(i)    any witness statements described in Rule 192.3(h);

RESPONSE: Plaintiff is not aware of any witness statements at this time.

(j)    in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills that are reasonably related to the injuries or damages asserted or, in lieu thereof, an authorization permitting the disclosure of such medical records and bills; and

RESPONSE:

Not applicable.

(k)    in a suit alleging physical or mental injury and damages from the occurrence that is the subject of the case, all medical records and bills obtained by the responding party by virtue of an authorization furnished by the requesting party.

RESPONSE:

Not applicable.

(l)    the name, address, and telephone number of any person who may be designated as a responsible third party.

RESPONSE:

None known at this time, Plaintiffs will supplement in accordance with the Texas Rules of Civil Procedure.

# EXHIBIT "N"

Certified Copy of Spanish Land Grant to Festus Doyle dated June 23, 1835,
Recorded in Vol. TRA, Page 131 of the Deed Records of Live Oak County, Texas,
and in Vol. 19, Page 378 of the Deed Records of Live Oak County, Texas

$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%$%

| SECOND SEAL<br>For the<br>1832 & 1833 | ( TREASURY<br>( OF THE<br>( FREE STATE OF<br>( COAHUILA AND TEXAS ) | TWELVE REALS<br>Biennial Term of<br>1834 & 1835,<br>Flores (Rubric) |
|---|---|---|

I, Jose Maria Balmaceda, Commissioner for the distribution of lands in the Colony of S. Patricio de las Nueces; certify, in due form, that, in the Archives of this Colony, there exists an original title which, to the letter, is as follows: Hon. Commissioner:- I, Festus Doyle, a native of Ireland and in station a married man, appear before you in due form saying: that, having emigrated from my native country to this country at my expense for the purpose of settling myself therein permanently, I have selected, to that end, this Colony of S. Patricio of which Citizen John McMullen is Empresario; and, therein, I have selected the league and labor which the Colonization Law of this State concedes to the new settlers of my class, on the eastern margin of the Atascosa between the possession of John McGloin and John Hulihan; which land I offer to settle, cultivate and pay for in conformity with the provisions of the law already mentioned. In virtue whereof, I supplicate you to be pleased, as Commissioner for that purpose, to give me the corresponding possession of said land, and therein I shall receive mercy and favor. San Patricio, June 23, 1835. Festus Doyle -----S. Patricio, June 23, 1835. Let Citizen Empresario John McMullen report whether the petitioner is one of the colonists for whom he has contracted; whether he is a married man, a Christian and of good habits; whether he has come at his own expense; and whether the land for which he has applied is entirely vacant. J. Maria Balmaceda--------Mr. Commissioner:-----In view of your preceding decree, I must say that the individual referred to in this petition is one of the colonists for whom I have contracted for this enterprise, to which he has come at his own expense; he is a married man, a Christian of good habits; and the land for which he applies is entirely vacant. San Patricio, June 23, 1835.-- Juan McMullin.------San Patricio, June 25, 1835. Pass this petition to the surveyor appointed by me, Citizen Guillermo (William) O'Docharty, in order that, in view thereof, he proceed to make the survey of the land therein designated, in accordance with the law, previously summoning adjoining owners; and, when finished, he will return to the whole document to me with its respective plat and field notes so as issue the corresponding title. J. Maria Balmaceda.

FOURTH SEAL: ONE-FOURTH REAL

Established by the State of Coahuila and Texas
for the year 1835. Flores
Navarro (rubric)                    (rubric)

In the Town of S. Patricio de las Nueces, Colonization Enterprise of John McMullin, on the Twenty-eighth day of the month of June, One Thousand eight hundred Thirty-four: I, Citizen Jose Maria Balmaceda, Commissioned by Superior Decree of the Supreme Government of this State, dated 2nd of March, 1833, for the distribution of lands in this Colony: having examined the survey made by Citizen Guillermo O'Docharty, Surveyor appointed by me for the purpose, and, in the presence of the original field notes and topographical plat which he has delivered to me and which exist on leaves 4 and 5 of this document, I ordained


TRUE AND CORRECT COPY OF THE ORIGINAL FILE
IN THE OFFICE OF THE COUNTY CLERK,
LIVE OAK COUNTY, TEXAS
PAGE___1___OF___3___
KAREN IRVING
CLERK COUNTY COURT
LIVE OAK COUNTY, TEXAS
BY_____DEPUTY

333

the issuance of the respective title to the league of pasture-land, including one labor more of arable land, which is due the Colonist Festus Doyle, according to Article 16 of the State Colonization Law of March 24, 1825, in the terms hereinafter set forth. The first measurement on the eastern margin of Atascose Creek from a stake which serves for corner of the possession of John Conway. From which stake, following said creek upward along all its meanders, fifteen different measurements were run along the different courses formed by its currents to a stake which serves as corner of the possession of John Hulihan. From which stake and along the same line of this possession, course N. 85° E. eight thousand eighty one varas were measured to where a stake was set. From which, course S. 8° E. three thousand five hundred varas were measured in a straight line through vacant lands to where another stake was set. From which, course S. 85° W. five thousand seven hundred eighty-one varas were measured along the said possession of John Conway to the place where the first measurement began. Which land, comprising an area of twenty-six million square varas, I classify as pastureland without more than one labor of arable land suited to sowing. And this serving as a basis for the sum which, for the whole, the said colonist must pay to the State at the rate of thirty dollars per league of pasture land and twenty reals for each labor of arable land, in conformity with Article 22 of said Colonization Law, it results that he is debtor in the sum of thirty-two dollars, four reals, being the final cost of twenty-five labors of pastureland and one labor more of arable land at the prices stated. Which sum, be it understood, he must pay in the installments and under the penalties designated in same Article of said Law; and that, within the term of one year, at the most, he must erect his permanent landmarks at all and every one of the angles of the measurements that have been given, notifying his adjoining owners to that effect; who, upon the making of the survey, have presented not the slightest objection. Therefore, exercising the power vested in me and in the name of the Free, Sovereign and Independent State of Coahuila and Texas, confer upon, put and place the said Festus Doyle in real, actual, corporal and virtual possession of one league of pastureland, with the augmentation of one labor of aranle land; which land he may enjoy and possess freely, with all the uses, customs and appurtenances thereto appertaining, now and forever, he, his children, heirs or successors or whoever, from him or from them, may have cause or right. And, for the proper evidence, I issue the present title of possession, of which a certified copy should be given to the interested party together with that of the whole document that has given rise thereto, for the purposes that may best suit him. I signed it with two witnesses of assistance in the said Town of San Patricio on the date mentioned at the beginning-----Jose Maria Balmaceda----Of Assistance, Rafael Gomes-----Of Assistance, Santiago McGloin.

Which copy is faithfully taken from its original, the witnesses to its correction and comparison being Citizen Residents Nicolas Rodrigues and Rafael Gomez; and that it may bear evidence at all times, I signed it with them in the Town of San Patricio on the Fifteenth day of the month of July, one Thousand eight hundred thirty-five.

<div style="text-align:center">

J. Maria Balmaceda
(rubric)

</div>

Nicolas Rodriguez                                  Rafael Gomez,
   (rubric)                                          (rubric)

Filed for registration in my office on the 25th day of January 1858 at 3 o'clock P.M. and recorded the 26th, 1858.

S. B. McMillin, Clk,
C.C.L.C.

Austin, Texas,
Nov. 2, 1928.

TRUE AND CORRECT COPY OF THE ORIGINAL FILE IN THE OFFICE OF THE COUNTY CLERK, LIVE OAK COUNTY, TEXAS

PAGE __2__ OF __3__

KAREN IRVING
CLERK COUNTY COURT
LIVE OAK COUNTY, TEXAS

BY _____ DEPUTY
554

I certify that the foregoing five pages contain a true and correct translated

copy of the instrument in Spanish appearing on pages 182, 183, 184, 185 and 186 of a volume entitled "Book A, Record of Deeds, Live Oak County, Texas." together with a true and correct copy of the indorsement in English at the close thereof.

P. H. Buckley, Translator.

Sworn to and subscribed before me, this 2nd day of November, 1928.

Geo. W.Beaver, Notary Public,

(Seal)                                                    Travis, Co., Texas.

Transcribed from Vol. "A" at pages 182, 183, 184, 185 and 186 of the Deed Records of Live Oak County, Texas.

TRUE AND CORRECT COPY OF THE ORIGINAL FILE
IN THE OFFICE OF THE COUNTY CLERK,
LIVE OAK COUNTY, TEXAS
PAGE 3 OF 3
KAREN IRVING
CLERK COUNTY COURT
LIVE OAK COUNTY, TEXAS
BY _____ DEPUTY
335

# CERTIFICATE

THE STATE OF TEXAS:

COUNTY OF LIVE OAK:

I, KAREN IRVING, County Clerk of Live Oak County, Texas do hereby certify that the above foregoing is a true and correct copy of

_____ Transcribed Land Grant _____

FROM ___ Nicolas Rodriguez, Etal _____

TO _____ Festus Doyle _____

As the same appears of record in my office in Volume __A_ Page __131__ of the___ **Transcribed Deed** _____ Records of Live Oak County, Texas.

In Testimony Whereof, Witness my hand and official seal of office at George West, Texas on this __14th__ day of __August__ A.D. 2014.

_____ *Karen Irving* _____
County Clerk, Live Oak County Clerk


_____
Deputy

Without Recourse On Me.

336

DO NOT COPY OR ALTER • This document contains security features.

378

THE STATE OF TEXAS }

COUNTY OF BEXAR }

KNOW ALL MEN BY THESE PRESENTS:

That we, J. M. Brown and Elizabeth Lutts Brown, husband and wife, of Bexar County Texas, for and in consideration of the sum of $10.00 and other valuable considerations to us in hand paid by J. T. Brown of Live Oak County, Texas, receipt of which is hereby acknowledged and confessed, have granted, sold and conveyed, and by these presents, do grant, sell and convey unto the said J. T. Brown of the County of Live Oak, and State of Texas, all those certain tracts or parcels of land described as follows, expressly reserving therefrom however, all gas, oil and other minerals lying in, under and upon said lands, said tracts or parcels of land being described by metes and bounds as follows, to-wit:

All that certain tract of land situated in Live Oak County, State of Texas, described as follows:

1, 862-3/10 acres of land being a part of the western part of a league and labor grant by the Government of Mexico to John Turner by title dated June 30th, 1835, known as Abstract No. 38, situated partly in Live Oak County, Texas, and partly in McMullen County, Texas, said 1862.3 acres hereby conveyed being part of 4605 acres conveyed in two tracts of 2302½ acres each by D.R. Fant to said J. M. Brown, deceased, and J. T. Brown, by deed dated May 10th, 1890, and recorded in Book J at Page 123 of the Deed Records of Live Oak County, Texas, situated about 13 miles n. 80' W. from the town of Oakville, on the right bank of the Frio River. Said 1862.3 acres are more particularly described by Metes and bounds as follows:

Beginning at a pile of flint rocks on the southern boundary of said John Turner grant for the southeast corner or abstract of 3045 acres this day conveyed by the grantees

TRUE AND CORRECT COPY OF THE ORIGINAL FILE
IN THE OFFICE OF THE COUNTY CLERK,
LIVE OAK COUNTY, TEXAS
PAGE____1____OF____3____
KAREN IRVING
CLERK COUNTY COURT
LIVE OAK COUNTY, TEXAS
BY_____DEPUTY

337

TRUE AND CORRECT COPY OF THE ORIGINAL FILE
IN THE OFFICE OF THE COUNTY CLERK,
LIVE OAK COUNTY, TEXAS
PAGE 2 OF 3
KAREN IRVING
COUNTY COURT
TEXAS
BY_____ DEPUTY
379

and grantors herein (except J. T. Brown) to J. T. Brown, whence the southwest corner of said John Turner grant bears S. 650- (65°) 05' W 191.3 vrs. and a mesquite tree 4 inches in diameter marked $\underline{V}$ bears N. 89½° W. 13.7 varas another mesquite tree marked $\underline{X}$ bears N.38¾ E. 21 varas; thence N. 10° E. with the eastern boundary of said 3045 acres for J. T. Brown at about 8540 varas a stake on the right bank of the Frio river, whence a hackberry 24 inches in diameter marked $\underline{X}$ bears S. 85° E. 18.2 varas, another hackberry 10 inches in diameter marked V. bears S. 32° 25' E. 5.4 varas, at 8560-½ varas the channel of the Frio River and thenortheast corner of said 3045 acres for J. T. Bronw, thence down the channel of said river as follows: N 46° E. 7 varas N. 64° 45' E. 136 varas N. 4½° W. 223 varas, S. 86° 173 varas S. 66½° E. 43 varas, N. 60½° E. 124½ varas, S. 59½° 158½ varas, S. 20½° E. 83 varas, S. 74½ E, 154 varas, S. 7½° W. 34 varas, S. 33½° W. 178 varas, S. 23½° 83 varas, S. 74½° E. 154 varas S. 7½° W. 34 varas, S. 33½°W. 178 varas, S. 23½° E. 214 varas, S. 37½ W. 180 varas, S. 11 W. 160 varas, S. 68½° W. 104 varas S. 28½° W. 129 varas S. 1½ W. 275 varas, S. 43° E. 115 varas, S. 72¼ ° E.389 varas N. 71° E. 162 varas, S. 78° E. 188 varas, N. 85 E.at 112 varas right bank and following said bank as follows: N. 59½° E. 39° varas N. 11½° W. 111 varas N. 9° E. 53 varas, N. 50° E. 86 varas, N. 46½° E. at 56.8 varas a stake on the right bank set for the northeast corner of this survey of 1182.6 acres this day conveyed by said J. T. Bronw and this grantee to said Mary Evie Reagan and Susan Elizabeth Reagan, whence an elm tree 10 inches in diameter marked $\underline{V}$ bears S. 55¼ o E. 17.7 varas, and a hackberry 16inches in diameter marked X. bears S. 80 E. 16.2 varas; thence S. 12½ o W. with the western boundary of said 1182.6 at 6880 varas to southern boundary of said John Turner, original grant, pile of flint rocks in a swale for the southeast corner of this survey, whence a mesquite 8 inches in diameter marked $\underline{V}$ bears N. 51 W. 33.4 varas; thence S. 65 o 05' W. with the said southern boundary at 173.7 varas, cross the county Boundary line between Live Oak and McMullen Counties. (Surveyed by R.W. Fenner, August 1910). Variation 0° 45' W.) Of the 1862.3 acres hereby conveyed 374 acres are inMcMullen County and 1488.3 acres are in Live Oak County.

TO HAVE AND TO HOLD, the above described premises, save and except, the oil, gas and other minerals lying in, upon and under said premises, which are expressly rese rved to these grantors, together with all and singular the said rights and appurtenances thereunto in anywise belonging unto the said J. T. Brown, his heirs and assigns, forever. And we do hereby bind ourselves, our heirs, executors and administrators to Warrant and Forever Defend all and singular the said premises unto the said J. T. Brown, his heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

WITNESS our hands at San Antonio, Texas, 11th day of July A. D. 1922.

J. M. Brown

Elizabeth Lutts Brown/

STATE OF TEXAS,
County of Bexar.

Before me, a Notary Public, in and for said County and State, on this day personally appeared J. M. Brown and Elizabeth Lutts Brown, his wife, both known to me to be the persons whose names are subscribed to the foregoing instrument and acknowledged to me that they executed the same for the purposes and consideration therein expressed. And the said Elizabeth L. Brown, wife of the said J. M. Brown, having bee n examined by me privily and

apart from her husband, and having the same fully expalined to her, she, the said Elizabeth
L. Brown, acknowledged such instrument to be her act and deed and declared that she had
willingly signed the same for the purposes and consideration therein expressed and that she
did not wish to retract it.

GIVEN UNDER MY HAND AND SEAL OF OFFICE, this 11th day of July A. D. 1922.

(SEAL)                                             Henry C. king  Jr.,

Notary Public in and for Bexar County, Texas.

Filed for record in my office on the 14th day of August A. D. 1922 at 4.P.M. oclock and
duly recorded on  this the 12th day of October A. D. 1922 at 1.P.M. o'clock.

                                        Clerk, County Court, Live Oak
                                             County, Texas.

TRUE AND CORRECT COPY OF THE ORIGINAL FILE
IN THE OFFICE OF THE COUNTY CLERK,
LIVE OAK COUNTY, TEXAS
PAGE 3 OF 3
KAREN IRVING
CLERK COUNTY COURT
LIVE OAK COUNTY, TEXAS
BY_____ DEPUTY

# CERTIFICATE

THE STATE OF TEXAS:

COUNTY OF LIVE OAK:

I, KAREN IRVING, County Clerk of Live Oak County, Texas do hereby certify that the above foregoing is a true and correct copy of

<u>Deed</u>

FROM _____J.M. Brown, Etux_____

TO _____J.T. Brown_____

As the same appears of record in my office in Volume __10__ Page __378__ of the___Deed_____ Records of Live Oak County, Texas.

In Testimony Whereof, Witness my hand and official seal of office at George West, Texas on this __13th__ day of __August__ A.D. 2014.

_____Karen Irving_____
County Clerk, Live Oak County Clerk

_____
Deputy

340

DO NOT COPY OR ALTER • This document contains security features.

CAUSE NO. L-13-0197-CV-B

| G.W. KOLSTAD and | § | IN THE DISTRICT COURT OF |
| WILLIAM FRASER | § | |
| Plaintiffs | § | |
| | § | |
| V. | § | LIVE OAK COUNTY, TEXAS |
| | § | |
| MARY JUNE OWEN MERRELL | § | |
| Defendant | § | |
| | § | 156TH JUDICIAL DISTRICT |

## PLAINTIFFS' RESPONSE TO DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT

### TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW, G.W. KOLSTAD and WILLIAM FRASER, Plaintiffs in the above named and numbered suit, file their Response to Defendant's Motion for Summary Judgment and for cause would show unto this Court as follows:

### Introduction

The underlying facts in this case are not in dispute. The issues for consideration before this Court relate solely upon the interpretation and application of relevant law. Defendant's motion for summary judgment argues that Plaintiffs' claim for mineral rights are barred by res judicata based upon the May 12, 1993 judgment (the "Judgment") rendered in *Charles R. Merrell, et al vs. Mrs. Henrietta Williman, et al.*, Cause No. 6990-A in the 36th Judicial District Court of Live Oak County, Texas. For the reasons discussed fully infra, the Judgment could not have disposed of Plaintiffs' mineral rights without being void as a matter of law.

FILED
At __1:15__ O'Clock _____M
At George West, Texas

SEP 19 2014

MELANIE MATKIN
(District Clerk, Live Oak County, Texas
By_____Deputy

SCANNED 341

1

## I. The property sought and granted by the prior Judgment was already severed from the mineral estate.

1. The final Judgment rendered in *Charles R. Merrell, et al vs. Mrs. Henrietta Williman, et al.*, Cause No. 6990-A in the 36th Judicial District Court of Live Oak County, Texas (Def. Mot., Ex. I) granted Merrell (Defendant herein) the certain and specific real property: (Def. Mot. Ex. I at 13.)

## recorded in Vol. 265, Page 436 of the Deed Records of Live Oak

Merrell's Original Petition (Def. Mot. Ex. C), Amended Petition (Def. Mot. Ex. D) and Statement of Facts (Def. Mot. Ex. H) upon which the judgment was based, all alleged the following factual statement:

> b. Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the Property, claiming under Deed dated October 31, 1975, and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County, Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on the Property as they became due, and before delinquency.

2. Plaintiffs' mineral rights derive from Warranty Deed dated June 10, 1970, recorded in Volume 227, Page 208 of the Deed Records, in which Hannah Keeney and Annie Kolstad, as Grantors, conveyed the surface only to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, to Maurice M. Chapman, as Grantee, and specifically reserved all minerals. After this Warranty Deed in 1970, 100% of the surface was vested in Maurice M. Chapman, and a 2/3 of 1/2 mineral interest was vested in Hannah Keeney and a 1/3 of 1/2 mineral interest was vested in Annie Kolstad.

2

3. Defendant asserts that the adverse possession "could have commenced at any time during the 82 years following November 1, 1917" (Def. Mot. at 6) and admits, "the record in the prior case does not contain the exact date on which the adverse possession commenced." (Def. Mot. at 7). This is irrelevant because the Judgment specifically granted Merrell the property "claiming under deed dated October 31, 1975." As such, Defendant could only have acquired the property conveyed by that deed. By 1975, however, the surface and mineral estate had already been severed.

## II. Merrell did not exercise adverse possession over the mineral estate.

4. In order for mineral rights to pass along with surface rights to adverse possessors, it must be prior to severance of the minerals from the surface estate. *Conley v. Comstock Oil & Gas, LP*, 356 S.W.3d 755, 769 (Tex. App. – Beaumont 2011, no pet.); *See also Houston Oil Co. of Tex. v. Moss*, 284 S.W.2d 131, 132, 136-37 (1955) (minerals retained); *Laird v. Gulf Production Co.*, 64 S.W.2d 1080, 1083–84 (Tex. App. – Texarkana 1933, writ dism'd) (surface retained). When a mineral interest has been separated from the surface ownership, no interest in the minerals can be acquired; for the mineral owner has an estate that is distinct from the surface fee. As such, the prior Judgment did not divest Mr. William Fraser (as successor in interest to Ms. Doris Fraser) and Mr. G. W. Kolstad of their mineral interest in Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4.

5. Numerous Texas courts have said that in order to mature title by limitations to a mineral estate, actual possession of the minerals must occur. In the case of oil and gas, that means drilling and production of oil or gas. *Natural Gas Pipeline Co. of Am. v. Pool*, 124 S.W.3d 188, 192-93 (Tex. 2003); *Gulley v. Davis*, 321 S.W.3d 213, 220 (Tex.

3

App. — Houston [1st Dist.] 2010, pet. denied); *XTO Energy Inc. v. Nikolai*, 357 S.W.3d 47, 61 (Tex. App. — Fort Worth 2011, pet. denied).

### III. Res judicata is inapplicable and does not bar Plaintiffs' claims.

6. An affirmative defense such as res judicata is a plea in avoidance. It does not deny the plaintiff's claims but rather alleges an independent reason why the plaintiff should not recover. *In re Staley*, 320 S.W.3d 490, 502 (Tex. App. - Dallas 2010, pet. denied). For the doctrine of res judicata to apply in a subsequent proceeding, the original judgment must not be void nor contain fundamental error.

7. For the reasons explained supra, if Defendant alleges that the prior Judgment granted mineral rights, the judgment would be void because it granted property upon which it did not have in rem jurisdiction. If the court rendering the original judgment lacked jurisdiction or power to issue the judgment rendered as to the parties, the judgment is void and cannot operate as res judicata in a subsequent proceeding. *Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 86 (Tex. 2008). Moreover, such judgment can be collaterally attacked. *See Glunz v. Hernandez*, 908 S.W.2d 253, 255 (Tex.App. — San Antonio 1995, writ denied); *Tidwell v. Tidwell*, 604 S.W.2d 540, 542 (Tex.Civ.App. — Texarkana 1980, no writ) (finding that a void judgment may be collaterally attacked by a suit to set aside the judgment after it has become final if such void judgment becomes material). There is neither a set procedure for a collateral attack nor a statute of limitations. *See Glunz*, 908 S.W.2d at 255; *Davis v. Boone*, 786 S.W.2d 85, 87 (Tex.App. — San Antonio 1990, no writ).

8. A judgment is void when the court rendering judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the

particular judgment, or no capacity to act. *Browning v. Prostok*, 165 S.W.3d 336, 346 (Tex.2005). *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010).

## Conclusion

Plaintiffs can show title in the mineral rights to the disputed land emanating from Warranty Deed dated June 10, 1970, recorded in Volume 227, Page 208 of the Deed Records, Hannah Keeney and Annie Kolstad, as Grantors, conveyed the surface only to Tracts 191, 192, and 193, Block 16, Live Bee Land Subdivision No. 4, to Maurice M. Chapman, as Grantee, and specifically reserved all minerals.

After this Warranty Deed in 1970, 100% of the surface was vested in Maurice M. Chapman, and a 2/3 of 1/2 mineral interest was vested in Hannah Keeney and a 1/3 of 1/2 mineral interest was vested in Annie Kolstad. The Judgment, upon which Defendant relies to assert res judicata, specifically granted Merrell the property "claiming under deed dated October 31, 1975."

As such, the previous litigation could not have divested Plaintiffs of their mineral interest in the land because the mineral interest has been separated from the surface ownership before the Defendant adversely possessed the subject land.

WHEREFORE PREMISES CONSIDERED, Plaintiffs pray that this Court deny Defendant's Motion for Summary Judgment and for all such further relief to which Plaintiffs may be entitled, at law or in equity.

Respectfully submitted,

LAW OFFICES OF S. TIM YUSUF, PLLC.

By: _____

S. Tim Yusuf
State Bar No. 50511534
Pearland Town Center
11200 Broadway, Suite 2743
Pearland, Texas 77584
Telephone: 866-249-7633
Facsimile: 866-249-7635
tyusuf@yusuflegal.com

KIRBY, MATHEWS & WALRATH, PLLC
M. Ryan Kirby
State Bar Number: 24036915
Esperson Building
815 Walker St., Suite 240
Houston, TX 77002
Telephone: (713) 489-4620
Telecopier: (713) 489-4619

ATTORNEYS FOR PLAINTIFFS

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 15th day of September 2014, a true and correct copy of the attached and foregoing **RESPONSE TO MOTION FOR SUMMARY JUDGMENT** was served in accordance with the Texas Rules of Civil Procedure upon the following:

*VIA CMRRR # 7006 2150 0000 1853 5069*

Michael C. Sartori
502A Houston Street
P.O. Box 1222
George West, Texas 78022-1222
michael@msartori.com

_____

S. Tim Yusuf

| | | |
|---|---|---|
| G. W. KOLSTAD and | § | IN THE DISTRICT COURT OF |
| WILLIAM FRASER, | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | LIVE OAK COUNTY, TEXAS |
| | § | |
| MARY JUNE OWEN MERRELL, | § | |
| Defendant | § | 156TH JUDICIAL DISTRICT |

## DEFENDANT'S REPLY TO PLAINTIFFS' RESPONSE
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

MARY JUNE OWEN MERRELL, Defendant in the above-entitled and numbered cause, files

this, her Reply to Plaintiffs' Response to Defendant's Motion for Summary, and would respectfully

show the Court as follows:

FILED
At _11:20_ O'Clock_____ _A_ M
At George West, Texas

SEP 2 2 2014

MELANIE MATKIN
District Clerk, Live Oak County, Texas
By _Loranne Vohajoi_ Deputy

### I.

### *Summary of Plaintiffs' Response*

Plaintiffs filed their Response to Defendant's Motion for Summary Judgment alleging that (1)

"The property sought and granted by the prior Judgment was already severed from the mineral

estate"; (2) "Merrell did not exercise adverse possession over the mineral estate"; (3) "Res Judicata

is inapplicable and does not bar Plaintiffs' claims"; and (4) Defendant's Motion should be denied

because the mineral estate had been severed prior to commencement of adverse possession and

Defendant failed to prove adverse possession of the mineral estate separate from the surface estate.

Defendant would show this Court that Plaintiffs' contentions are incorrect and are not

supported by either the facts or the law and Defendant is entitled to summary judgment as a matter

of law.

### II.

### *Objections to Plaintiffs' Summary Judgment Evidence*

Defendant would show this Court that the Plaintiffs' offered evidence of documents filed of

**SCANNED**

record in Live Oak County, Texas.[1] The manner in which such evidence was offered fails to satisfy the requirements of Texas Rule of Civil Procedure 166a. Plaintiffs cite to deeds recorded in Live Oak County in their Response to Defendant's Summary Judgment but no deed accompanied by certified or otherwise authenticated copies of the same.[2] No Affidavits or any other summary judgment evidence was attached to Plaintiffs' response, nor did such response adopt any summary judgment evidence previously provided in this case. Plaintiffs offered evidence of unauthenticated and un-certified pleadings in the prior case which did not meet the requirements of competent summary judgment evidence. This evidence should nor be considered in summary judgment proceedings.[3]

## IV.

### *Defendant's Summary Judgment Evidence*

Defendant herein incorporates by reference her Motion for Traditional Summary Judgment filed with this Court on August 15, 2014, its arguments and authorities, as well as all of the Exhibits attached thereto.

## V.

### *Argument and Authorities*

1.  Plaintiffs' assertion that *"the property sought and granted by the prior Judgment was already severed from the mineral estate"* when Defendant's predecessors in interest went into adverse possession is incorrect. There is no evidence showing that the mineral estate had already

---

[1] *See*, Plaintiffs' Response to Defendant's Motion for Summary Judgment, Pages 1 and 2, Art. I, ¶¶s 1., 2., and 3, and Page 5, Conclusion, ¶¶s 1 and 2.

[2] *Mackey v. Great Lakes Investments, Inc.*, 255 S.W. 3d 243 (Tex.Civ.App.-San Antonio, 2008 rev. denied, rehrg., denied); *Kyle v. Countrywide Home Loan, Inc.*, 232 S.W. 3d 355 (Tex.Civ.App.-Dallas, 2007 rev. denied).

[3] *Laidlaw Waste Systems* (Dallas) v. City of Wimer, (Tex. 1995); *Gardner v. Martin*, 162 Tex. 156, 158-159, 345 S.W.2d 274, 276 (1961) 158-59, 345 S.W.2d 274 at 276; *Chandler v. Carnes Co.*, 604 S.W.2d 485, 486-87 (Tex.Civ.App.-El Paso 1980, writ ref'd n.r.e.); *Gist v. Stamford Hosp. Dist.*, 541 S.W.2d 510, 511 (Tex.Civ.App.-Eastland 1976, writ ref'd n.r.e.).

been severed prior to the Defendant's predecessors in interest commencing their adverse possession of the property. Plaintiffs claim that Defendant's predecessors in interest's adverse possession commenced on October 31, 1975, subsequent to a severance of minerals.[4] This is incorrect. There is no summary judgment evidence proving when the mineral estate was severed, nor specifically when the adverse possession commenced, other than more than 5, 10, and 25 years prior to the commencement of the prior case.[5] Plaintiff's First Amended Petition in the prior case, claimed adverse possession on not only under the five-year, but also the ten-year and twenty-five year statutes of limitations, VATS §§5526a, 5526b, 5518, and 5519.[6] The Findings of Fact and Final Judgment in the prior case were identical in their respective findings of fact, which provided:

> "a.     At all times mentioned and relevant to this action Plaintiff was and is now, lawfully ceased and possessed of the Property owning and claiming the same in fee simple.

> "b.     Plaintiff has been in actual, open, peaceable notorious, exclusive, hostile and adverse possession of the Property, claiming under Deed dated October 31, 1975, and duly registered and recorded in Vol. 265, Page 436 of the Deed Records of Live Oak County, Texas, for more than five (5) years preceding the commencement of this action. During this period, Plaintiff has continuously cultivated, used or enjoyed these premises and paid the taxes on the Property as they became due, and before delinquency.

> "c.     Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the Property for more than ten (10) years preceding the commencement of this action. During this period Plaintiff's possession has been continuous and not interrupted by adverse suit to recover the same. Plaintiff has cultivated, fenced, used and enjoyed these premises continuously during the entire period of his possession.

> "d.     Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. During such period Plaintiff and his predecessors in interest have held the Property under claim of right, in good faith and under duly recorded deed purporting to convey the Property.

---

[4] *See,* Plaintiffs' Response to Defendant's Motion for Summary Judgment, Page 2 Art. I, ¶2.

[5] *See,* Exhibits H & I, Defendant's Motion for Traditional Summary Judgment (Statement of Facts and Judgment).

[6] *See,* Exhibit D, Defendant's Motion for Traditional Summary Judgment. Now, Tex. Civ. Prac. Code §§16.05, 16.06, 16.027 and 16.028.

"e.      Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action. Plaintiff has been and now is cultivating, using and enjoying these premises continuously during the entire period of Plaintiff's possession.

"f.      Plaintiff and Plaintiffs' predecessors in interest have openly exercised dominion over and asserted claim to the Property, paying taxes on these premises annually before such taxes become delinquent, for over twenty-five (25) years before the commencement of this action. The persons holding the apparent record title to the Property, or portions thereof, have not exercised dominion over the property and have not paid taxes on the property at any time or for one or more years during the twenty-five (25) years preceding the commencement of this action."

The Court found that:

"That the ownership of the Property which is the subject of Plaintiff's suit is vested one hundred percent (100%) in the Plaintiff."

The Judgment recited:

"IT IS THEREFORE ORDERED, DECREED AND ADJUDGED, that the Plaintiff shall have and recover from the Defendants, and shall hold in fee simple, the following described tracts and parcels of land:

(Property Description including the property that is the subject of this suit)

together with all and singular the rights and appurtenances thereto."[7]

The findings of facts of the Court was not that the adverse possession had commenced on October 31, 1975, but rather "that Plaintiff has been in actual, open, peaceable, notorious, exclusive, hostile and adverse possession of the Property for more than five (5) years, ten (10) and twenty five (25) years preceding the commencement of this action (March 29, 1989).[8]  Plaintiffs' Answer filed in the prior case made no claim as to when or whether a mineral estate severance occurred.[9]  If relevant, such claim should have been raised in the prior case.  Plaintiffs have failed to provide any summary judgment evidence of when the mineral estate was severed.   Plaintiffs contend that the mineral

---

[7]  *See,* Exhibits H and I, Defendant's Motion for Traditional Summary Judgment, filed August 15, 2014 (Statement of Facts and Judgment)

[8]  *Id, and See,* Exhibit C, Defendant's Motion for Traditional Summary Judgment, filed August 15, 2014.

[9]  Exhibit "G", Defendant's Motion for Traditional Summary Judgment.

severance took place in 1917.[10] Such contention lacks significance, even if correct, because the Judgment in the prior case can be presumed to read that such adverse possession occurred prior to 1917. "Unless the record shows to the contrary, every reasonable presumption will be indulged in favor of the findings and judgment of the trial court and no presumptions will be indulged against the validity of the judgment."[11] The record shows no finding of severance of the mineral estate and it can be reasonably presumed that such adverse possession commenced prior to severance. If adverse possession commences after severance of the minerals then to effect adverse possession the claimant must adversely possess the mineral estate separately and distinctly from the surface estate. However, when the adverse possession commences before a severance of the mineral estate, the adverse possession includes both the surface and the minerals, even if there is a severance of the minerals before limitation title has ripened.[12] The Judgment in the prior finding that "Plaintiff and Plaintiffs' predecessors in interest have been in actual, open, peaceable, notorious, exclusive, and adverse possession of the Property for a period of more than twenty-five (25) years preceding the commencement of this action" and holding that "Plaintiff shall have and recover from the Defendants, and shall hold in fee simple, the ("property"), supports presumption.[13]

2.     Plaintiffs assert *"Merrell did not exercise adverse possession over the mineral estate."* Based upon the facts in the prior case, this assertion is not relevant to the prior case. Merrell's adverse possession and claim of the property commenced prior to the severance of the mineral estate, therefore his adverse possession of the surface goes down and includes the mineral estate, there is no

---

[10]  Plaintiffs' Response to Defendant's Motion for Summary Judgment, Page 3, Art. I, ¶10.

[11]  *Collins v. Tucker*, 333 S.W.2d 218 (Fort Worth Tex.Civ.App., 1960, no writ.); *Jacobini v. Zimmerman*; 487 S.W.2d 249 (Tex.Civ.App.-Ft.Worth 1972, no writ).

[12]  *Clements v. Texas Co.*, 273 S.W. 993, 1005 (Tex.Civ.App.-Galveston, 1925, wr. ref.); *Id.*, *Laird*;

[13]  *See*, Exhibit I, Defendant's Motion for Traditional Summary Judgment (Judgment).

need for a separate adverse possession of the mineral estate.[14]

3.    Plaintiffs assert:  *"Res Judicata is inapplicable and does not bar Plaintiffs' claims"*.
Plaintiffs claim that this is so because the prior Judgment is void on the basis of fundamental error,
so that the Judgment can be collaterally attacked.[15]  Plaintiffs argue that the prior Judgment is void
because the Court lacked jurisdiction; lacked jurisdiction over the parties, lacked in rem jurisdiction
and contains fundamental errors and, therefore, the Judgment can be collaterally attacked.

The moving party in a motion for summary judgment on a defense of Res Judicata must
conclusively establish, amongst other elements, that "a prior final judgment on the merits by a court
of competent jurisdiction."  Plaintiffs contend that the Court in the prior case was not a court of
competent jurisdiction, and therefore Res Judicata cannot bar Plaintiffs' claims.[16]

### *Jurisdiction*

The District Court in the prior case had subject matter jurisdiction under the Texas
Constitution and the Texas Government Code.[17]

The Court had in rem jurisdiction because the property that is the subject of the prior case is
located in the State of Texas.[18]

The District Court had personal jurisdiction over both Plaintiffs.  Plaintiff G. W. Kolstad was
served with citation, voluntarily appeared, did not object to the jurisdiction of the Court, and filed an
answer thereby fully participating in the prior case, as did Plaintiff William Fraser's predecessor in

---

[14]  *Id. Clements,* 1005.

[15]  *See,* Plaintiffs' Response to Defendant's Motion for Summary Judgment, Page 4, Art. III, ¶ 6;
*Browning v. Placke,* 698 S.W.2d 362, 363 (Tex.1985).

[16]  *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 652 (Tex.1996).

[17]  Article V, Section 8, Texas Constitution, V.T.C.A. Government Code §24.007.

[18]  Crithfield v. Boothe, 343 S.W.3d 274 (Tex.Civ.App.-Dallas 2011 no writ); *HMS Aviation v. Layale
Enterprises, S.A.,* 149 S.W.3d 182 (Tex.Civ.App,-Ft. Worth 2004, rehearing overruled).

interest, Doris Fraser.[19]

The 36th Judicial District Court had jurisdiction to act as a court in Tresspass to Try Tile suits.[20]

- *Fundamental Error*

In 1982, the Supreme Court held that a judgment which involved Fundamental Error created a jurisdictional issue and could be asserted and used to collaterally attack a judgment.[21] Fundamental Error has been described in several ways:

(1) "An error is fundamental only if it was so egregious and created such harm that the appellant was denied a fair and impartial trial;[22]

(2) "the public interest is directly and adversely affected as that interest is declared in the statutes or the Texas Constitution;[23]

(3) "an error in a divorce case which has the effect of placing the stigma of illegitimacy upon a minor child;[24] or

(4) "a party declared elected to an election contest did not receive the required number of legal votes."[25]

Due to courts favoring preservation of error during trial or during appeal, the "fundamental error"

---

[19] *BMC Software Belgium, N.V. v. Marchand,* 83 S.W.3d 789 (Tex. 2002); *See,* Exhibits E through I, inclusive, Defendant's Motion for Traditional Summary Judgment (Citations, Answers, Statement of Facts and Judgment.

[20] *Glunz v. Hernandez,* 908 S.W.2d 253, (Tex.Civ.App.-San Antonio 1995, hearing of writ of error overruled).

[21] *Pirtle v. Gregory,* 629 S.W.2d 919, 920 (Tex. 1982).

[22] *In I.L.,* 389 S.W. 3d 445, Tex.Civ.App. - (El Paso 2005, no writ).

[23] *Wal-Mart Stores, Inc. v. Alexander,* 868 S.W.2d 322 (Tex. 1993). ,

[24] *Matter of H.V.R.,* 974 S.W.2d 213 (Tex.Civ.App.-San Antonio 1998 rehearing overruled).

[25] *Adams v. State,* 180 S.W.3d 386 (Tex.Civ.App.-Corpus Christi 2005 no writ).

doctrine has been discredited and is used in rare circumstances only.[26] The case at bar is not a rare circumstance.

Plaintiffs have both stipulated that there are no fact issues but also have not provided any summary judgment evidence that would raise a fact issue as to the the lack of jurisdiction or the existence of fundamental error. The Judgment in the prior case was "a prior final judgment on the merits by a court of competent jurisdiction" and cannot be collaterally attacked.

Plaintiffs make no claim that their action case is based on the same claims as were raised or could have been raised in the first action by the same parties or their privies."[27] Defendant has has demonstrated through summary judgment evidence that this is so.

The Judgment in the prior suit meets the requirements of the Doctrine of Res Judicata.[28]

## VI.

### *Conclusion*

Plaintiffs are unable to direct this Court to any Texas cases supporting their proposition that the Doctrine of Res Judicata is not applicable in this case. Plaintiffs have failed to provide this Court with any summary judgment evidence in opposition to Defendant's Motion for Traditional Summary Judgment. Defendant has cited this Court to a plethora of current and binding Texas cases, as well as numerous summary judgment Exhibits that directly supports Defendant's arguments in her summary judgment motion.

On September 17, 2014 the Plaintiffs' attorney asserted there were no issues of material fact and this case involved only a question of law. Defendant is entitled to Summary Judgment as a matter

---

[26] *Goodson v. Castellanos*, 214 S.W.3d 741 (Tex.Civ.App.-Austin 2007, reh'g overruled and review denied.

[27] *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996).

[28] *Id.*

of law on all of Plaintiffs claims and causes of action asserted against this Defendant. Plaintiffs claims and causes of action are barred by the Doctrine of Res Judicata. Defendant has affirmatively established each element of the affirmative defense of Res Judicata. Defendant has tendered to the Court evidence, as a matter of law, that shows: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. Applying these stipulated facts, Defendant is entitled entitlement to a summary judgment as a matter of law.

## *Prayer*

WHEREFORE, PREMISES CONSIDERED, Defendant, Mary Jean Owen Merrell, prays this Court sustain Defendant's objections to Plaintiff's summary judgment evidence in opposition to Defendant's Motion for Traditional Summary Judgment; grant Defendant's Motion for Traditional Summary Judgment; dismiss Defendant from this cause with prejudice; hold that Plaintiffs recover and take nothing from Defendant; and grant such other and further relief to which Defendant may be justly entitled.

Respectfully submitted,

MICHAEL C. SARTORI, Attorney for Defendant
502A Houston Street
P. O. Box 1222
George West, Texas 78022
(361) 449-2691
(361) 449-2380 (FAX)
SBN# 17655500
Email: michael@msartori.com

## CERTIFICATE OF SERVICE

I certify that a true copy of the above was served on each attorney of record or party in accordance with the Texas Rules of Civil Procedure on August 22, 2014.

Michael C. Sartori
Attorney for Defendant

| | | |
|---|---|---|
| G. W. KOLSTAD and | § | IN THE DISTRICT COURT OF |
| WILLIAM FRASER, | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | LIVE OAK COUNTY, TEXAS |
| | § | |
| MARY JUNE OWEN MERRELL, | § | |
| Defendant | § | 156TH JUDICIAL DISTRICT |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Honorable Joel B. Johnson, Presiding Judge.

On the 24 day of Sept , 2014, came to be considered Defendant's Motion for Summary Judgment. The Court, having read and considered the arguments of Plaintiffs and Defendant's counsel, is of the opinion that Defendant's Motion is well taken and should be GRANTED on all grounds.

It is therefore ORDERED, ADJUDGED and DECREED that Defendant's Motion for Summary Judgment is hereby GRANTED on all grounds and that all relief sought by Plaintiffs is denied with prejudice.

THIS IS A FINAL JUDGMENT DISPOSING OF ALL PARTIES AND ALL CLAIMS AND IS APPEALABLE.

SIGNED on this 24 day of Sept , 2014.

At 4:40 FILED O'Clock P M
At George West, Texas

SEP 24 2014

MELANIE MATKIN
District Clerk, Live Oak County Texas
By_____Deputy

_____
Honorable Judge Joel B. Johnson

CAUSE NO. L-13-0197-CV-B

G.W. KOLSTAD and                    §        IN THE DISTRICT COURT OF
WILLIAM FRASER                      §
                    Plaintiffs      §
                                    §
                                    §
V.                                  §        LIVE OAK COUNTY, TEXAS
                                    §
MARY JUNE OWEN MERRELL              §
Defendant                           §
                                    §
                                    §        156TH JUDICIAL DISTRICT

PLAINTIFFS' NOTICE OF APPEAL

TO THE HONORABLE JUDGE OF SAID COURT:

1. Plaintiffs G.W. Kolstad and William Fraser, desire to appeal from the Order

granting final summary judgment signed by the Court on September 24, 2014.

2. Plaintiffs appeal to the 13th Court of Appeals.

Respectfully submitted,

LAW OFFICES OF S. TIM YUSUF, PLLC.

By: _____
        S. Tim Yusuf
        State Bar No. 50511534
        Pearland Town Center
        11200 Broadway, Suite 2743
        Pearland, Texas 77584
        Telephone: 866-249-7633
        Facsimile: 866-249-7635
        tyusuf@yusuflegal.com

KIRBY, MATHEWS & WALRATH, PLLC
        M. Ryan Kirby
        State Bar Number: 24036915
        Esperson Building
        815 Walker St., Suite 240
        Houston, TX 77002
        Telephone: (713) 489-4620
        Telecopier: (713) 489-4619

ATTORNEYS FOR PLAINTIFFS

FILED
At 10:35 O'Clock A M
At George West, Texas

OCT 28 2014

MELANIE MATKIN
District Clerk, Live Oak County, Texas
By Rovanne Johnson Deputy

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 24th day of October 2014, a true and correct copy of the attached and foregoing NOTICE OF APPEAL was served in accordance with the Texas Rules of Civil Procedure upon the following:

*VIA CMRRR # 7006 2150 0000 1853 5076*

Michael C. Sartori
502A Houston Street
P.O. Box 1222
George West, Texas 78022-1222
michael@msartori.com

S. Tim Yusuf



# LAW OFFICES OF
# S. TIM YUSUF, PLLC

Pearland Town Center • 11200 Broadway, Suite 2743 • Pearland, Texas 77584
Galveston– By Appointment Only • 2423 Market, Suite 100 • Galveston Island, Texas 77550
Telephone: (866) 249-7633 • Facsimile: (866) 249-7635 • Email: tyusuf@yusuflegal.com

January 6, 2015

Honorable Live Oak County District Clerk Melanie Matkin
Live Oak County Courthouse
P.O. Drawer 440
George West, Texas 78022

Re:     Cause No. L-13-0197-CV-B,
        G.W. Kolstad and William Fraser v. Mary June Owen Merrell,
        In the District Court of Live Oak County, Texas
        156th Judicial District.

Attn:  Aleasha French, Deputy District Clerk

Honorable Clerk,

Plaintiffs G.W. Kolstad and William Fraser, request the following documents be included in the Clerk's record as required by Texas Rule of Appellate Procedure 34.5(a):

1.    Plaintiffs' Original Petition.
2.    Defendant's Original Answer.
3.    Defendant's 1st Amended Answer.
4.    Defendant's 2nd Amended Answer.
5.    Defendant's Motion for Summary Judgment.
6.    Plaintiffs' Response to Def. Motion for Summary Judgment.
7.    Defendant's Reply to Plaintiffs' Response to Summary Judgment.
8.    Court's Order granting Def. Motion for Summary Judgment.
9.    Plaintiffs' Notice of Appeal.
10.   Court's docket sheet.
11.   Certified bill of costs.

Please also include Plaintiffs' request for preparation of the Clerk's record (this document) and when completed, receipt of payment.

Thank you,

S. Tim Yusuf

At 1:30 O'Clock FILED P M
At George West, Texas

JAN 0 8 2015

MELANIE MATKIN
District Clerk, Live Oak County, Texas
By _____ Deputy

360

Cause No. L-13-0197-CV-B

G.W. Kolstad and Willliam Fraser

Vs.

Mary June Owen Merrell

IN THE DISTRICT COURT

156th JUDICIAL DISTRICT

LIVE OAK COUNTY, TEXAS

## BILL OF COSTS

|  | DEBITS | CREDITS |
|---|---|---|
| Clerk's Record | $745.00 | |
| TOTAL | $745.00 | |

THE STATE OF TEXAS

COUNTY OF LIVE OAK

I, MELANIE MATKIN, Clerk of District Court in and for said county and state, hereby certify the foregoing to be the correct amount of costs in the above entitled and number suit up to this date.

Witness my hand and seal of said Court, this 9th day of January, 2015.

MELANIE MATKIN, DISTRICT CLERK, LIVE OAK COUNTY

301 HOUSTON ST., GEORGE WEST, TEXAS 78022

BY: _____, Deputy



faxed: (866) 249-7635 ✓

mailed: S. Tim Yosuf, 11200 Broadway, Suite 2743
Pearland, TX 77584

361




DATE 02/02/2015                           RECEIPT #        8541
TIME 13:56                                FILE #           CV130197

RECEIVED OF: LAW OFF S. TIM YUSUF
        FOR: KOLSTAD,G.W.                      PAY TYPE K
DESCRIPTION: PAYMENT IN FULL FOR CLERK'S RECORD ($745.00)/AF    CHECK NO    462
                                               CLERK AF

                                          AMOUNT DUE      **$745.00**

          CERTIFIED COPIES FEE                 $745.00

                                          AMOUNT PAID     **$745.00**
                                               BALANCE       $.00

**LAW OFFICES OF S. TIM YUSUF, PLLC**                                    462
    11200 BROADWAY, SUITE 2743
    PEARLAND, TX 77584                                          32-61 1110
                                                    Date January 27, 2015

Pay to the
order of  Live Oak County District Clerk                    $ 745.00

    Seven hundred forty five dollars                          Dollars

**JPMORGAN CHASE BANK, N.A.**
    WWW.CHASE.COM

For Clerk's Record Case No. L-13 0197-CV-B

⑈000462⑈ ⑈111000614⑈ 940066511

# CIVIL DOCKET

CASE NO. L-13-0197-CV-

| | | | DATE OF FILING | | |
|---|---|---|---|---|---|
| NUMBER OF CASE | STYLE OF CASE | ATTORNEYS | KIND OF ACTION | Month | Day | Year |
| | | | | 10 | 28 | 13 |
| L-13-0197-CV-B | G.W. Kolsted, William Fraser | S. Tim Yusuf | | | | |
| | vs. | Plaintiff. | Quiet Title / | Jury Demanded by | | |
| FEE BOOK | | | Intellectual | Jury Fee, $ | | |
| Vol. Page | Mary Sue Owen Morrell | Mike Satori | Property | Paid by | | |
| | | Defendant. | | | | |

| DATE OF ORDERS | | | ORDERS OF COURT | Minute Book | | PROCESS |
|---|---|---|---|---|---|---|
| Mo. | Day | Year | | Vol. | Page | |
| 6 | 11 | 14 | DCC by Phone Ref 7-10-14 at 9:45 Am | | | |
| 7 | 14 | 14 | PT week 7-17-14 at 9 Am | | | |
| | | | Bench Trial set 10-10-14 at 9 Am (1 day). | | | |
| | | | ♦ Subj. to jury docket ♦ | | | |
| 9 | 19 | 14 | Reset _____ will rule = 1 day NIT. There is | | | L.R. |
| | | | Dismiss to be ruled on = 1 wk.  Ross O to tind No Ptns. | | | |
| 9 | 24,20 | 14 | Order Granting ginal Judgment entered | | | |
| 10 | 28 | 14 | Notice of Appeal filed | | | |

**The State of Texas** § 

**County of Live Oak** §

      **I, Melanie Matkin, Clerk of the 156th District Court of Live Oak County, Texas, do hereby certify that the documents contained in this record to which this certification is attached are all of the documents specified by Texas Rule of Appellate Procedure 34.5(a) and all other documents timely requested by a party to this proceeding under Texas Rule of Appellate Procedure 34.5(b).**

**GIVEN UNDER MY HAND AND SEAL at my office in Live Oak County, Texas, this the 3rd day of February, 2015.**



**MELANIE MATKIN, District Clerk**
**Live Oak County, Texas**


**By  /s/ Aleasha French**
         deputy